# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND

---

In re: CHILD VICTIMS ACT NYC LITIGATION          CASE MANAGEMENT
                                                 ORDER No. 1

---

## I.    Applicability of Order.

    1.    This Case Management Order ("CMO") applies to all actions filed or hereafter filed in the Supreme Courts in and for the counties of Bronx, Kings, New York, Queens, and Richmond pursuant to the Child Victims Act (the "CVA Actions"), including any such matters filed before the one-year window commenced on August 14, 2019, and which were then stayed pending the opening of the window on August 14, 2019.

    2.    This CMO applies to all pre-trial procedures and proceedings in the CVA Actions, except as otherwise directed by the Court upon good cause shown by the party seeking such relief.

## II.    Rules of Procedure.

    1.    The Civil Practice Law and Rules, the Uniform Civil Rules for Supreme and County Courts together with the express provisions of this CMO and further orders issued by this Court, shall govern all pre-trial proceedings.

## III.    Anonymity.

    1.    If consented to by all defendants to an action, a plaintiff may initiate an action and file a complaint by initials or pseudonym, rather than the person's legal name, and proceed on the Court's public docket by initials or pseudonym. If all defendants do not consent, then, together with the filing of the complaint, a plaintiff must file an application by order to show cause seeking permission to proceed by initials or pseudonym.

    2.    If a defendant consents to anonymity, it retains all rights to conduct full discovery, investigate, and otherwise prepare its defenses that would exist in the absence of this order, including without limitation the right to disclose a plaintiff's legal name and information described below in paragraph III.3 (including to its insurers and agencies) in providing notice of the claim and seeking and obtaining discovery and information from third parties and in providing information to any expert witnesses or consultant, so long as such persons provided with this information agree to

maintain the confidentiality of the information and be subject to the
Confidentiality Order discussed at paragraph IX.A.1 below.

3.  Within 14 days of receiving an appearance by a defendant in the matter, a
    plaintiff who files a complaint using initials or a pseudonym must provide
    to defense counsel or, if the defendant appears *pro se*, the defendant, the
    plaintiff's name (including maiden name, if any), plaintiff's name at the
    time of the alleged abuse, date of birth, social security number, parents
    and/or guardian's names at the time of the alleged abuse, current address,
    and address at the time of the alleged abuse, if known. A plaintiff's
    identification information shall be considered Confidential Personal
    Information only to the extent provided by Section 202.5(e) of the
    Uniform Civil Rule of the Supreme Court and shall be omitted or redacted
    in any filings on the Court's public docket. The filing party shall serve
    unredacted copies of any such filings on all parties to the action.

4.  The Court's authorization for a plaintiff to proceed on the docket by
    initials or pseudonym is the result of party agreement or Court Order. The
    Court's Order permitting such agreement is not intended to reflect any
    modification to existing law on the issue.

## IV.   Conferences.

1.  The Court shall hold a General Status Conference on the first Tuesday of
    each month at 2:00 p.m. at 111 Centre Street, Courtroom 1227, unless
    otherwise designated by the Court.

2.  The Plaintiffs' Liaison Committee ("PLC") and Defendants' Liaison
    Committee ("DLC") (collectively, "Liaison Committees") shall confer as
    necessary ten business days prior to each General Status Conference and
    provide an agenda of items to the Court no later than 3:00 p.m. three
    business days prior to a General Status Conference. The PLC and DLC
    may, but are not required to, file separate letter submissions with the Court
    of no more than 3 pages in connection with *each* agenda item, *i.e.* a liaison
    committee may file multiple letter submissions depending on the number
    of agenda items. Any letter submissions must be filed three business days
    prior to a scheduled conference.

3.  Immediately following the General Status Conference, the Court will
    conduct conferences in individual CVA Actions to address case-specific
    matters as necessary. Parties wishing to raise an issue in any individual
    action to the Court shall file a letter not exceeding three pages in the
    applicable individual action no later than 3:00 p.m. seven business days
    prior to the General Status Conference. The opposing party may file a
    letter response not exceeding three pages in the same action no later than
    3:00 p.m. three business days prior to the General Status Conference.

2

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 4 of 103 PageID #: 21

Letters filed with the Court pursuant to this paragraph shall be emailed to each Liaison Committee at the time of filing at the email addresses set forth in section XI.

4. Working copies of the letter submissions described in this section shall be delivered to chambers.

5. Nothing in this Order forecloses a party from seeking relief by appropriate motion.

## V. Individual Actions.

1. The parties may meet and confer on any CVA Action that has been filed by, or on behalf of, multiple plaintiffs as of the date of this Order to discuss the severance, without prejudice, into new and independent individual actions for each plaintiff.

2. If the parties agree to the severance, the parties may enter into a stipulation reflecting such agreement, and each severed plaintiff will file a new action (using the same pleading) under a separate index number. Each re-filed complaint shall be deemed filed as of the date the initial action was filed. If the Complaint has previously been served, each re-filed action may be served pursuant to CPLR §2103(b). Each individual action shall be assigned to the Hon. George J. Silver, Deputy Chief Administrative Judge for the New York City Courts, for all pretrial matters.

3. If the parties cannot resolve the issue of severance after a good faith attempt to do so, a motion may be filed with the Court seeking to sever the action into new and independent individual actions.

4. Any previous orders regarding proceeding on the docket by pseudonym or initials entered in an action shall be deemed to have been made in each severed individual action.

## VI. Coordinated Motion Practice.

1. To conserve resources and avoid burdening the Court with duplicative motion practice, the parties in separate actions may stipulate to address issues common to multiple CVA Actions through a coordinated motion, i.e., one set of opening motion papers, one set of opposition papers, if any, and one set of reply papers, if any. The coordinated motion practice set forth herein may proceed only as stipulated between the parties to such stipulation. The parties may file motion papers in multiple actions under this section. By way of example, the parties may stipulate to filing one motion under CPLR §3211 or CPLR §3212 in multiple cases brought by the same plaintiff's counsel.

2. Counsel shall make a good faith effort to resolve any coordinated motions to dismiss prior to filing, including by taking into consideration decisions that have been rendered by the Court and the existing body of law.

3. Counsel shall provide courtesy copies of all papers related to coordinated motions to each Liaison Committee by email to the email addresses set forth in section XI within three days of filing or service.

## VII. Procedures for Responses to Complaints.

1. The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between August 14, 2019 through and including October 14, 2019, is extended until 35-days from the effective date of this Order.

2. The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between October 15, 2019 through and including December 11, 2019, is extended until 45-days from the effective date of this Order.

3. The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between December 12, 2019 through and including February 11, 2020, is extended until 55-days from the effective date of this Order.

4. The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant on February 12, 2020 and later shall be 60-days from the date of service upon the responding defendant.

5. In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant prior to December 12, 2019, is extended 25-days from the effective date of this Order.

6. In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant between December 12, 2019 through and including February 11, 2020, is extended 30-days from the effective date of this Order.

7. In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant on February 12, 2020 and later shall be 30-days from the date of service upon the individual defendant.

4

8. Where a complaint or amended complaint is re-filed pursuant to a stipulation consenting to or an Order of this Court directing the severance of a CVA Action that was originally filed as a multi-plaintiff CVA Action before the effective date of this Order, the time to answer, move against, or otherwise respond to such re-filed complaint or amended complaint shall be 45-days from the date the complaint is refiled.

9. The deadlines set forth in this section supersede any deadlines for answering or otherwise responding to a complaint or amended complaint that were previously stipulated by the parties or ordered by this Court.

10. Absent agreement by the parties or Order of this Court, no motion to dismiss shall stay discovery unless the moving party seeks to dismiss the complaint in its entirety. In the event that a party moves to dismiss the complaint in its entirety, discovery shall be stayed only as to that moving defendant and shall proceed as against the remaining defendants.

## VIII. Procedures for Responses to Pending Motions.

1. The time to serve opposition papers to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR §§3211 or 3212, but excluding motions to proceed anonymously or by pseudonym, that were filed and served prior to Administrative Order #40 dated February 4, 2020, is extended to 30-days from the effective date of this Order.

2. Should the motion(s) not be resolved and withdrawn by the parties as of the date proscribed by paragraph 1 of this section, the Court will set any additional due dates as necessary for reply papers, return date, and oral argument.

3. The deadlines set forth in this section supersede any deadlines for the service of opposition papers and the filing of working copies of motion papers that were previously stipulated by the parties or ordered by this Court.

## IX. Disclosure.

### A. Confidentiality Order.

1. Within 21 days of the effective date of this Order, Plaintiffs' and Defendants' Liaison Counsel shall jointly submit a proposed Confidentiality Order (or alternate proposals) that will apply to disclosure in all CVA Actions. No disclosure (other than disclosure of plaintiffs' identifying information pursuant to section III.3 above) in any CVA Action may take place prior to entry by the Court of a Confidentiality Order.

5

B.    Disclosure Requests.

    1.    Plaintiffs shall serve responses and/or objections to Standard Automatic
          Disclosures and Common Demand for Verified Bill of Particulars in an
          individual action upon the answering defendant no later than 30 days from
          defendant filing an answer, motion or other response to the complaint or
          amended complaint, except as provided in section VII.10.

    2.    Each defendant shall serve responses and/or objections to Standard
          Automatic Disclosures in each individual action no later than 30 days after
          receiving plaintiff's responses and objections described above in
          paragraph IX.B.1.

    3.    Each plaintiff and defendant shall serve responses and/or objections to
          Standard Combined Demands/Notices to Produce no later than 40 days
          after service of the responding defendant's responses and/or objections
          described above in paragraph IX.B.2.

    4.    Unless otherwise agreed by the parties to a CVA Action, responses and/or
          objections to any disclosure demands are to be served by U.S. Mail or its
          equivalent, and/or by email where agreed to by the parties, and will not be
          e-filed by any party on the Court's docket. However, subject to the
          Court's forthcoming Confidentiality Order, excerpts of such responses
          may be e-filed if they are pertinent exhibits to a motion, *e.g.* in a motion to
          compel.

    5.    Any party may serve supplemental, non-repetitive disclosure requests in
          accordance with the CPLR and applicable discovery submission schedule
          for that action. Counsel shall exercise good faith, in determining the need
          for such further requests.

    6.    None of the requests attached to this Order shall be construed to be
          interrogatories for purposes of CPLR §3130. No party may avoid sitting
          for a deposition by reason of responding to the discovery requests
          contained in this Order.

    7.    To the extent a defendant has filed an answer before the effective date of
          this Order, the time for a plaintiff to serve responses and/or objections to
          Standard Automatic Disclosures and Common Demand for Verified Bill
          of Particulars shall be 50 days from the effective date of this Order. All
          other discovery deadlines shall follow the provisions of this section as set
          forth herein.

C.    Standard Plaintiff Disclosures and Authorizations.

    1.    Standard Automatic Disclosures directed at Plaintiffs shall be provided to
          the Court and shall become Exhibit A to this Order.

6

2. Common Demand for Verified Bill of Particulars directed at Plaintiffs shall be provided to the Court and shall become Exhibit B to this Order.

3. Standard Automatic Disclosures directed at Defendants shall be provided to the Court and shall become Exhibit C to this Order.

4. Standard Combined Demands directed at Plaintiffs shall be provided to the Court and shall become Exhibit D to this Order.

5. Standard Combined Demands directed at Defendants shall be provided to the Court and shall become Exhibit E to this Order.

6. All disclosure requests listed in this section are deemed served as of the date of the response to the complaint.

## X.    Stay of Actions for Settlement Discussions.

1. If the parties to any CVA Action wish to discuss settlement without litigating the action simultaneously, the parties may jointly notify the Court by letter of their intention to do so. The parties' notification shall automatically adjourn all case deadlines (*e.g.*, discovery, motion practice, etc.) by 45 days from the date of the parties' letter notification. The parties' letter notification shall set forth an amended schedule for any court deadlines reflecting this adjournment. Upon further agreement by the parties, the amended schedule shall be automatically effective for the action without further order of the Court for a maximum of two 45-day adjournments for a total of 90 days. Any further adjournments must be so-ordered by the Court.

## XI.    Cooperation.

1. The Court recognizes that cooperation among counsel and parties is essential for the orderly and expeditious resolution of this litigation. The communication of information among the plaintiffs' counsel, among defendants' counsel, and among defendants or other necessary participants shall not be deemed a waiver of the attorney-client privilege, the protection afforded by the attorney work-product doctrine, or any other privilege to which a party may be entitled. Any cooperative efforts described above shall not, in any way, be used against any of the parties and shall not be communicated to the jury.

2. In the interests of justice and cooperation, the parties may stipulate to a two-week extension of any of the deadlines set forth in this Order without further Order of this Court.

3. Any counsel or party who needs to communicate with Plaintiffs' Liaison Counsel, including any notice or communication required by this CMO or future order of this Court, shall email nycplc@cvaplaintiffs.com. The

7

members of this email address shall be limited to Plaintiffs' Liaison Counsel, their staff, and their associates or co-counsel.

4. If the Court needs to communicate with Plaintiffs' Liaison Counsel the Court will email nycplc@cvaplaintiffs.com.

5. All plaintiff's counsel must subscribe to nycplc@cvaplaintiffs.com in order to receive communications from Plaintiffs' Liaison Counsel, including any notice or communication required by this CMO or future order of this Court. The members of this email address shall be limited to plaintiff's counsel, their staff, their associates, and their co-counsel.

6. Any counsel who needs to communicate with Defendants' Liaison Counsel, including any notice or communication required by this CMO or future order of this Court, shall email cvasteering@defendantliaison.com. The members of this email address shall be limited to Defendants' Liaison Counsel, their staff, and their associates or co-counsel.

7. If the Court needs to communicate with Defendants' Liaison Counsel the Court will email cvasteering@defendantliaison.com.

## XII. Effective Date and Future Orders

1. The effective date of this Order shall be the date it is uploaded to the Court's Docket on NYSCEF.

   a. The disclosure requests contemplated by this Order and identified as Exhibits A through E at section IX.C.1-5 will be uploaded to the Court's Docket on NYSCEF.

2. Any pre-trial discovery procedures and proceedings not addressed by this Order, such as depositions, may be addressed in future Orders of this Court.

Dated: February 24, 2020

HON. GEORGE J. SILVER

8

Page Intentionally Left Blank

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND

In re: CHILD VICTIMS ACT LITIGATION    CASE MANAGEMENT
ORDER No. 2

This Case Management Order No. 2 ("CMO 2") applies to all actions filed or hereafter filed in the Supreme Courts in and for the counties of Bronx, Kings, New York, Queens, and Richmond pursuant to the Child Victims Act (the "CVA Actions").

CMO 2 modifies the deadlines set forth in §§ VII, VIII, and IX of Case Management Order No. 1, issued and made effective on February 24, 2020 ("CMO 1"), pursuant to the authority of this Court and the tolling provisions of Executive Order 202.8 as extended by subsequent Executive Orders, including Executive Order 202.38. Pursuant to Executive Order 202.38 the tolling period is set to expire on July 6, 2020. Accordingly,

**IT IS HEREBY ORDERED** that the following supersede and replace sections VII, VIII, and IX of CMO 1, and that those sections are hereby amended to direct, as follows:

**VII.    Procedures for Responses to Complaints.**

1.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between August 14, 2019 through and including October 14, 2019, is extended until **July 22, 2020**.

2.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between October 15, 2019 through and including December 11, 2019, is extended until **August 3, 2020**.

3.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between December 12, 2019 through and including February 11, 2020, is extended until **August 12, 2020**.

4.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between February 12, 2020 through and including May 24, 2020, is extended until **August 21, 2020**.

5.    The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant between May 25, 2020 through and including June 26, 2020, is extended until **August 31, 2020**.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 12 of 103 PageID #: 29

6.  The time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the responding defendant on June 27, 2020 and later shall be **65-days** from the date of service upon the responding defendant.

7.  In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant prior to December 12, 2019, is extended until **July 13, 2020**.

8.  In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant between December 12, 2019 through and including February 11, 2020, is extended until **July 17, 2020**.

9.  In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant between February 12, 2020 through and including May 24, 2020, is extended until **July 22, 2020**.

10.  In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant between May 25, 2020 through and including June 26, 2020, is extended until **July 27, 2020**.

11.  In matters filed solely against individual defendants with no corporate or municipal or institutional defendants, the time to answer, move against, or otherwise respond to any complaint or amended complaint that was served upon the individual defendant on June 27, 2020 and later shall be **35-days** from the date of service upon the individual defendant.

12.  The time to answer, move against, or otherwise respond to any complaint or amended complaint that was re-filed and served upon the responding defendant before June 19, 2020 pursuant to a stipulation consenting to or an Order of this Court directing the severance of a CVA Action that was originally filed as a multi-plaintiff CVA Action, is extended until **August 3, 2020**.

13.  The time to answer, move against, or otherwise respond to any complaint or amended complaint that was re-filed and served upon the responding defendant on June 20, 2020 or later pursuant to a stipulation consenting to or an Order of this Court directing the severance of a CVA Action that was originally filed as a multi-plaintiff CVA Action shall be 45-days from

2

the date the complaint or amended complaint is served upon the responding defendant.

14.    The deadlines set forth in this section supersede any deadlines for answering or otherwise responding to a complaint or amended complaint that were **provided by CMO 1**. In the event the parties stipulated to longer deadlines than those set forth above, the stipulation will control.

15.    Absent agreement by the parties or Order of this Court, no motion to dismiss shall stay discovery unless the moving party seeks to dismiss the complaint in its entirety. In the event that a party moves to dismiss the complaint in its entirety, discovery shall be stayed only as to that moving defendant and shall proceed as against the remaining defendants.

## VIII.   Procedures for Responses to Pending Motions.

1.    **In the absence of a briefing schedule consented to by the parties and/or ordered by the Court**, the time to serve opposition papers to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR 3211 or 3212, but excluding motions to proceed anonymously or by pseudonym, that were filed and served prior to this Court's Administrative Order #40 dated February 4, 2020, is extended to **July 17, 2020**.

2.    **In the absence of a briefing schedule consented to by the parties and/or ordered by the Court**, the time to serve opposition papers to any Order to Show Cause or Notice of Motion, including motions to dismiss under CPLR 3211 or 3212, but excluding motions to proceed anonymously or by pseudonym, that were filed and served between February 4, 2020 through and including May 4, 2020, is extended to **August 3, 2020**.

3.    Should the motion(s) not be resolved or withdrawn by the parties as of the date prescribed by **paragraphs 1 or 2** of this section, the Court will set any additional due dates as necessary for reply papers, return date, and oral argument.

4.    The deadlines set forth in this section supersede the deadlines for the service of opposition papers and the filing of working copies of motion papers that were **provided by CMO 1**. In the event the parties stipulated to longer deadlines than those set forth above, the stipulation will control.

## IX.   Disclosure.

A.    <u>Confidentiality Order.</u>

1.    **On or before June 22, 2020,** Plaintiffs' and Defendants' Liaison Counsel shall jointly submit a proposed Confidentiality Order (or alternate

3

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 14 of 103 PageID #: 31

proposals) that will apply to disclosure in all CVA Actions. Defendants'
disclosure in any CVA Action shall not take place prior to entry by the
Court of a Confidentiality Order.

B.    Disclosure Requests.

1.    Plaintiffs shall serve responses and/or objections to Standard Automatic
      Disclosures and Common Demand for Verified Bill of Particulars in an
      individual action upon the answering defendant **within 30 days of a**
      defendant filing an answer, motion or other response to the complaint or
      amended complaint, except as provided in **section VII.13**.

2.    Each defendant shall serve responses and/or objections to Standard
      Automatic Disclosures in each individual action no later than 30 days after
      receiving plaintiff's responses and objections described above in
      paragraph IX.B.1, or within 25 days of entry by the Court of a
      Confidentiality Order, whichever date is later.

3.    Each plaintiff and defendant shall serve responses and/or objections to
      Standard Combined Demands/Notices to Produce no later than 40 days
      after service of the responding defendant's responses and/or objections
      described above in paragraph IX.B.2.

4.    Unless otherwise agreed by the parties to a CVA Action, responses and/or
      objections to any disclosure demands are to be served by U.S. Mail or its
      equivalent, and/or electronically where consented to by the parties.
      Consent to electronic service shall not be unreasonably withheld.
      Responses and/or objections will not be e-filed on the Court's docket by
      any party. However, subject to the Court's forthcoming Confidentiality
      Order, excerpts of such responses may be e-filed if they are pertinent
      exhibits to a motion, *e.g.* in a motion to compel.

5.    Any party may serve supplemental, non-repetitive disclosure requests in
      accordance with the CPLR and applicable discovery submission schedule
      for that action. Counsel shall exercise good faith in determining the need
      for such further requests.

6.    None of the requests attached to this Order shall be construed to be
      interrogatories for purposes of CPLR § 3130. No party may avoid sitting
      for a deposition by reason of responding to the discovery requests
      contained in this Order.

7.    To the extent a defendant has filed an answer before the effective date of
      this Order, the time for a plaintiff to serve responses and/or objections to
      Standard Automatic Disclosures and Common Demand for Verified Bill
      of Particulars shall be **30 days after the response date to the complaint
      that would be applicable to the matter pursuant to section VII or 30
      days from entry by the Court of a Confidentiality Order, whichever is**

4

**later.** All other discovery deadlines shall follow the provisions of this section as set forth herein.

C.     Standard Plaintiff Disclosures and Authorizations.

1.     Standard Automatic Disclosures directed at Plaintiffs are attached hereto as Exhibit A to this Order.

2.     Common Demand for Verified Bill of Particulars directed at Plaintiffs is attached hereto as Exhibit B to this Order.

3.     Standard Automatic Disclosures directed at Defendants are attached hereto as Exhibit C to this Order.

4.     Proposed Standard Combined Demands directed at Plaintiffs shall be provided to the Court within 20 days of the effective date of this Order and shall become Exhibit D to this Order.

5.     Proposed Standard Combined Demands directed at Defendants shall be provided to the Court within 20 days of the effective date of this Order days and shall become Exhibit E to this Order.

6.     All disclosure requests listed in this section are deemed served as of the date of the response to the complaint.

7.     All parties retain their rights to object and/or to move with regard to the foregoing demands in accordance with the CPLR and existing case law. The fact that these demands are made a part of the Case Management Order does not in any way alter or waive a party's right to object and/or to move with regard to any of the demands herein.

**IT IS HEREBY ORDERED** that sections I-VI, and X-XII of CMO 1 remain unchanged; and

**IT IS FURTHER HEREBY ORDERED** that the effective date of this Order shall be the date it is uploaded to the Court's Docket on NYSCEF.

DATED:     June *16*, 2020

SO ORDERED ·

_George J. Silver_

HON. GEORGE J. SILVER
DEPUTY CHIEF ADMINISTRATIVE JUDGE
NEW YORK CITY COURTS

5          GEORGE J. SILVER

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 16 of 103 PageID #: 33

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
———————————————————————————

In re:  CHILD VICTIMS ACT LITIGATION          EXHIBIT A to CASE MANAGEMENT
                                             ORDER No. 2, Sec. IX.C.1


———————————————————————————

## STANDARD AUTOMATIC DISCLOSURES DIRECTED AT PLAINTIFFS


Plaintiffs' response to Automatic Disclosures:  Absent good cause shown and pursuant to Section IX of Case Management Order No. 2, and any subsequent Case Management Order issued by the Court, within 30 days of the filing of an Answer in a CVA action, plaintiff shall serve upon the answering defendant a response to the following:

1.  Response to this Standard Automatic Disclosures directed at Plaintiffs and Common Demand for Verified Bill of Particulars.

2.  Duly executed HIPAA-compliant authorizations[1] together with the name and last known address for the medical provider and/or facility for the following:


### Item 1.  Medical Records:

(a)  each pediatrician, physician, specialist and/or medical, mental health or other health care provider (e.g. nurse practitioner) or health care screener (i) that treated plaintiff with respect to any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) that treated plaintiff with respect to any physical or mental condition at any time during the two (2) years prior to the first date of the alleged abuse;

(b)  each hospital, emergency room, walk-in clinic and/or urgent care clinic (i) that treated plaintiff for any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) that treated plaintiff with respect to any physical or mental condition at any time during the two (2) years prior to the first date of the alleged abuse;

---

[1]  In processing authorizations provided by plaintiff during the course of the CVA litigation, defendants will make best efforts not to disclose the caption of the subject litigation or the fact that plaintiff is a party to litigation. In the event an authorization is insufficient to obtain the records sought in this and any subsequent demands, defendants reserve their rights and will not be precluded from issuing subpoenas or filing motions for the production of documents from third-parties pursuant to the CPLR and existing case law.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 17 of 103 PageID #: 34

(c) each pharmacy (i) that has provided prescription medications to plaintiff for any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) that provided prescription medications to plaintiff at any time during the two (2) years prior to the first date of the alleged abuse to the present;

(d) each and every hospital or radiology practice where plaintiff has received x-rays; CT scans, MR images, and/or PET scans or any other diagnostic test (i) with respect to any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) with respect to any physical or mental condition at any time during the two (2) years prior to the first date of the alleged abuse;

(e) each infirmary, health center or medical division, department or office within any jail, juvenile detention center or penitentiary (i) that provided medical care and treatment for any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) that provided medical care and treatment to plaintiff for any physical or mental condition at any time during the two (2) years prior to the first date of the alleged abuse;

(f) each school, college or university health services (i) that provided medical care and treatment for any physical or mental condition alleged in the complaint or bill of particulars from the first date of the alleged abuse through the present, and (ii) that provided medical care and treatment to plaintiff for any physical or mental condition at any time during the two (2) years prior to the first date of the alleged abuse.

**Item 2.  Mental Health Records:**

(a) each mental health professional or provider, who has ever treated plaintiff or with whom plaintiff has ever consulted in any capacity at any time in plaintiff's life;

(b) each psychiatric treatment facility, hospital, clinic and/or center where plaintiff has received treatment and/or has been admitted at any time in plaintiff's life;

(c) each infirmary, health center or medical division, department or office within any jail, juvenile detention center or penitentiary where plaintiff has ever been housed at any time in plaintiff's life;

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 18 of 103 PageID #: 35

(d) each school, college or university mental health or counseling services at any time in plaintiff's life;

(e) each alcohol, drug and/or addiction clinic and/or treatment center providing emotional, psychiatric or psychological or neuropsychiatric services where plaintiff has ever received treatment and/or has been admitted at any time in plaintiff's life.

### Item 3.  Marriage/Couples' Counseling:

(a) Where plaintiff alleges damage to his/her marriage or ability to form or maintain romantic and/or sexual relationships, or where plaintiff's spouse or domestic partner asserts a cause of action for loss of services, each plaintiff shall provide an authorization for each provider, practice, group, institution, center, and/or individual practitioner where plaintiff has sought marriage counseling, marriage therapy, couples' counseling and/or couples' therapy at any time in plaintiff's life subject to appropriate redactions where the spouse has not placed his/her condition in controversy.

### Item 4.  Employment Records:

(a) To the extent plaintiff asserts a claim for loss of earnings, plaintiff shall provide a fully executed authorization[2] allowing defendants to obtain plaintiff's employment file(s), personnel file(s), human resources file(s), performance file(s), earnings file(s), benefits file(s), and disciplinary file(s) from plaintiff's current employer.

(b) For any period during which plaintiff asserts a claim for loss of earnings and for five years prior to that period, if a claim for loss of earnings is asserted, plaintiff shall provide with respect to any employers, specifically excluding any current employer, a fully executed authorization allowing defendants to obtain plaintiffs employment file(s), personnel file(s), human resources file(s), performance file(s), benefits file(s), and disciplinary file(s).

### Item 5.  Educational Records:

Fully executed authorizations and waivers of confidentiality, including appropriate HIPAA-compliant and/or FERPA-compliant language allowing for and directing release to defendants of any documents and statements from each elementary, junior high/middle school, and high school or institution of

---

[2]  See fn. 1.

Case 1:22-cv-00125-AMD-RML Document 1-3 Filed 01/07/22 Page 19 of 103 PageID #: 36

higher learning (college, university, graduate school, professional school, etc.,) that plaintiff attended, including but not limited to documents relating to:

(a) grades, and or academic performance;
(b) parent-administration conferences;
(c) attendance records;
(d) standardized testing records;
(e) student transcripts;
(f) disciplinary records; and
(g) student health or mental health or counselling records.

**Item 6. Law Enforcement/Children's Services/Prior Claims:**

(a) Fully executed and unlimited HIPAA-compliant authorizations executed by plaintiff affording defendants unlimited access to any documents and statements relating to any past and/or ongoing or current investigation including all files, documents, referrals and investigations into plaintiff and/or plaintiff's family, including foster family, and the household or foster household in which plaintiff was residing at the time of the alleged abuse and at any time in plaintiff's life before or since the abuse alleged in the Complaint took place, by each private, non-profit or governmental entity that protects and promotes the well-being of children including but not limited to the NYS Office of Children and Family Services, NYC Administration for Children's Services ("ACS") or any child welfare agency or organization or victims' advocacy or counseling organization relating to the allegations in the Complaint;

(b) Fully executed and unlimited HIPAA-compliant authorizations and New York Civil Rights Law 50-b waiver executed by plaintiff affording defendants unlimited access to any documents and statements, including but not limited to complaints, files, documents, referrals and investigations by each law enforcement entity, including but not limited to any police department and any Office of the District Attorney, U.S. Attorney's Office, State Attorneys General or relevant public prosecutor, relating to:

    i. the allegations of sexual abuse of plaintiff as asserted in the Complaint and Verified Bill of Particulars; and
    ii. any other allegation of abuse that plaintiff has ever alleged or asserted against any other entity, individual, institution, employer, school, or organization that is not a party to the CVA action;

(c) All records of any complaint of alleged sexual abuse or assault or physical abuse or assault, including any prior claim, complaint, statement, allegation, and/or sworn statement of plaintiff against any entity or person, including:

4

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 20 of 103 PageID #: 37

      i.   a waiver of any confidentiality which may otherwise preclude disclosure of the underlying facts of such claims; and

     ii.   a waiver of any confidentiality which may otherwise preclude disclosure of plaintiff's allegations, statements and testimony;

(d)  Fully executed, HIPAA-compliant authorizations and New York Civil Rights Law 50-b waivers for all items identified in response to paragraph (c) and (d);

(e)  Fully executed, HIPAA-compliant authorizations, unsealing authorizations, and New York Civil Rights Law 50-b waivers for all Family Court records relating to plaintiff in the CVA action and/or to plaintiff's family of origin, household in which plaintiff resided at the time of the alleged abuse, or foster placement family(ies), if relevant, including HIPAA-compliant and unsealing authorizations for records of neglect, removal, PINS records, or juvenile delinquency proceedings.

3.  Copies of all written statements, tape recordings, videotapes or any transcripts or notes thereof, electronic or otherwise made by or on behalf of the above-named defendant(s) whether signed or unsigned, or the transcript of any electronically recorded statement in accordance with CPLR 3101(e).

4.  The names and addresses of all eyewitnesses and notice witnesses to the allegations set forth in the complaint and/or bill of particulars.

Objections to discovery based on privilege, confidentiality or immunity shall state with some specificity that the documents in each category are entitled to protected status; expressly justify the privilege asserted for each category; and describe the nature of the documents to be protected in a manner that will enable the other parties to assess the claim without revealing the privileged information. No documents or information subject to a claim of privilege, confidentiality or immunity from disclosure shall be produced until the claim of privilege, confidentiality or immunity is resolved by the Court.

Nothing contained in these automatic disclosures shall be considered a waiver of any party's rights to pursue any further discovery including, but not limited to, discovery requested above, but for a different time frame.

These demands shall be deemed to continue during the pendency of the CVA action, including the trial thereof.

All parties retain their rights to object and/or to move with regard to the foregoing demands in accordance with the CPLR and existing case law. The fact that these demands are made a part of the Case Management Order does not in any way alter or waive a party's right to object and/or to move with regard to any of the demands herein.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 21 of 103 PageID #: 38

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
_____

In re:  CHILD VICTIMS ACT LITIGATION   EXHIBIT B to CASE MANAGEMENT
              ORDER No. 2, Sec. IX.C.2


_____

## COMMON DEMAND FOR VERIFIED BILL OF PARTICULARS
## DIRECTED AT PLAINTIFFS


     PLEASE TAKE NOTICE that each Plaintiff is hereby required, pursuant to Civil
Practice Law and Rules § 3041 *et seq.* and Section IX of Case Management Order No. 2, and any
applicable subsequent Case Management Order issued by the Court, to serve upon attorneys for
Defendants a Verified Bill of Particulars responding to the below demands within the time period
specified by the Court pursuant to Case Management Order No. 2.

### I.  Plaintiff's Background Information.

     1.  Set forth Plaintiff's full name including all prior legal names, maiden
names, and any aliases used throughout Plaintiff's life, and the approximate period(s) of time
over which such names were used.

     2.  If not previously provided, set forth Plaintiff's name at the time of the
alleged abuse, date of birth, social security number, parents and/or guardian's names at the time
of the alleged abuse, current address, and address at the time of the alleged abuse, if known.
(Date of birth and social security number may be provided in a document separate from
Plaintiff's other responses to this demand for particulars).

### II.  Alleged Conduct.

     3.  With respect to the alleged sexual abuse claimed in the Complaint
("alleged abuse"), state:

      a. the name of each person who Plaintiff alleges committed the alleged
       abuse;
      b. each act of alleged abuse
      c. the date and approximate time of day of the occurrence; and
      d. the location(s) of the alleged abuse and, if known, the address(es) of the
       locations.

     4.  If Plaintiff claims that the individual(s) identified in response to Demand
No. 3.a violated any statute, law, rule, ordinance or regulation, provide the citation, including
specific subdivision, of each statute, law, rule, ordinance, or regulation allegedly violated and the

alleged acts or omissions giving rise to the alleged violation. (Plaintiff is required to identify the specific subdivision of New York's penal law on which his or her claims are brought under the Child Victims Act.)

5.      If Plaintiff claims that any Defendant violated any statute, law, rule, ordinance or regulation, for each Defendant set forth the specific (including subdivision) statute, law, rule, ordinance(s), or regulation allegedly violated and the alleged acts or omissions giving rise to the alleged violation.

6.      Identify each cause of action and/or theory of liability alleged in the Complaint, and, for each, separately describe in detail all alleged acts or omissions of each Defendant (for institutional Defendants, if known, identify the agents, servants, or employees who allegedly committed the alleged acts or omissions), the date of each act or omission and the basis for any contention that an alleged act or omission was (a) negligent, (b) grossly negligent or reckless and/or (c) intentional.

7.      Describe in detail each action which Plaintiff contends should have been undertaken by each Defendants, specify when the action should have been taken, and the authority under which such action could have been taken.

8.      If Plaintiff claims that any Defendant is vicariously liable for the alleged acts or omissions of another person or entity, identify the person or entity for which each Defendant is alleged to be vicariously liable.

## III.  Alleged Notice.

9.      If Plaintiff, or any person on Plaintiff's behalf, reported at any time the alleged abuse to any person, including without limitation, any Defendant, law enforcement agency, or officer, identify:

   a.  to whom (specific individual or, if unknown, title) the report was allegedly made;
   b.  when and how the report was allegedly communicated; and
   c.  the information that was allegedly reported.

10.     If Plaintiff alleges that any Defendant had *actual* notice, awareness and/or knowledge of (a) the alleged abuse; (b) an alleged propensity of the individual(s) identified in response to Demand No. 3.a to engage in the type of conduct that caused the alleged injury and/or (c) any other alleged notice, for each Defendant identify:

   a.  the information that Plaintiff alleges Defendant had;
   b.  when Plaintiff alleges Defendant first acquired the information;
   c.  how and from whom Plaintiff alleges Defendant acquired such information (for institutional Defendants, identify Defendant's agent, servant, or employee who allegedly acquired the alleged information); and
   d.  any response(s) by each Defendant to such information.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 23 of 103 PageID #: 40

11.  If Plaintiff alleges that any Defendant had *constructive* notice, awareness and/or knowledge of (a) the alleged abuse; (b) an alleged propensity of the individual(s) identified in response to Demand No. 3.a to engage in the type of conduct that caused the alleged injury and/or (c) any other alleged notice, for each Defendant identify:

    a. the information that Plaintiff alleges Defendant should have had;

    b. when Plaintiff alleges Defendant should have first acquired the information; and

    c. how and from whom Plaintiff alleges Defendant should have acquired such information (for institutional Defendants, identify Defendant's agent, servant, or employee who allegedly should have acquired the alleged information).

## IV. Alleged Injuries.

12.  Identify each and every physical, emotional, psychological and psychiatric injury, disease, diagnosis, condition or syndrome (collectively, "injury") that Plaintiff alleges resulted from the alleged abuse, including:

    a. when the alleged injury first occurred or manifested;

    b. when, where and by whom (name and address) each alleged injury was first diagnosed;

    c. when, where, and by whom (name and address) treatment was sought (indicate all dates of examination and treatment) for each alleged injury;

    d. the dates and length of time of any confinement to bed and/or home allegedly resulting from each alleged injury;

    e. if Plaintiff was confined to hospital or any other treatment facility, provide for each alleged injury the (i) names of each such hospital and/or facility and (ii) the approximate dates of admission and discharge;

    f. the dates and length of time of any incapacitation from activities of daily living allegedly resulting from each alleged injury; and

    g. whether each alleged injury identified is claimed to be permanent in nature, and if not permanent, when it resolved.

13.  If Plaintiff alleges that the alleged abuse activated, exacerbated or aggravated any preexisting injury, identify each physical, emotional, psychological and/or psychiatric injury which affected Plaintiff before the alleged abuse that Plaintiff alleges was activated, exacerbated or aggravated as an alleged result of the alleged abuse, including:

    a. when the alleged activation, exacerbation or aggravation first occurred or manifested;

    b. when, where and by whom (name and address) each (i) alleged injury was first diagnosed and (ii) activation, aggravation or exacerbation was first diagnosed;

Case 1:22-cv-00125-AMD-RML Document 1-3 Filed 01/07/22 Page 24 of 103 PageID #: 41

c. when, where, and by whom (name and address) treatment for (i) the preexisting injury was sought and (ii) the subsequent activation, aggravation or exacerbation was sought (indicate all dates of examination and treatment) for each alleged injury;

d. the dates and length of time of any confinement to bed and/or home allegedly resulting from each alleged preexisting injury and subsequent activation, aggravation or exacerbation;

e. if Plaintiff was confined to hospital or any other treatment facility allegedly resulting from each alleged preexisting injury and subsequent activation, aggravation or exacerbation, provide for each alleged injury the (i) names of each such hospital and/or facility and (ii) the approximate dates of admission and discharge;

f. the dates and length of time of any incapacitation from activities of daily living allegedly resulting from each alleged preexisting injury and subsequent activation, aggravation or exacerbation; and

g. whether each alleged injury identified is claimed to be permanent in nature, and if not permanent, when it resolved.

14. If Plaintiff has ever seen, consulted with, or received assistance of any sort from any federal, state, or local social welfare, vocational, rehabilitation or service agency, provide:

a. The name and address of each such agency;
b. The dates Plaintiff was seen by or was a client of the agency;
c. The person or persons who worked with Plaintiff; and
d. The nature of the services provided by that agency.

## V. Alleged Damages.

15. If Plaintiff claims to have been incapacitated from employment (or self-employment) or to have suffered impaired earnings capacity as an alleged result of the alleged abuse, identify:

a. the dates that Plaintiff was incapacitated or impaired from employment;
b. the name of Plaintiff's employer and supervisor(s) during each alleged period of incapacity or impairment;
c. Plaintiff's position/title during each period of alleged incapacity or impairment;
d. the reasons for leaving any position during a period of alleged incapacity or impairment;
e. Plaintiff's wages during each period of alleged incapacity or impairment and for the three years preceding and following each such period;
f. whether Plaintiff's loss of income was indemnified or compensated by any source(s) and, if so, the source and amount;
g. the amount and categories of lost earnings claimed;
h. each of Plaintiff's employers from three years before the first date of alleged abuse through the present, including the time period of each

employment and a description of Plaintiff's job title(s) and duties over time at each employer; and

    i.  if unemployment or loss of employment is alleged, the duration of unemployment, efforts to find other employment following the last day of employment, and any offers of employment since the last date of employment.

16.    If Plaintiff claims any *future* impairment of earnings capacity or loss of future earnings as an alleged result of the alleged abuse, provide the amount and categories of each such alleged impairment or loss.

17.    State the amount(s), if any, Plaintiff claims as special damages for:

    a.  physician's services;
    b.  mental health expenses;
    c.  psychiatric expenses;
    d.  psychological expenses;
    e.  social worker expenses;
    f.  therapy expenses;
    g.  medication;
    h.  medical supplies;
    i.  hospital expenses;
    j.  x-rays and all similar diagnostic tests;
    k.  nursing expenses; and
    l.  amount and nature of any other special damages claimed.

18.    If Plaintiff claims *future* special damages, identify the categories (enumerated in Demand No. 17) and amounts claimed.

19.    If the Complaint alleges loss of services, society, companionship and/or consortium, state for whom the claim for loss of services is made, that person's relationship to Plaintiff, and the nature, extent and duration of the alleged loss.

20.    If it is alleged in the Complaint that Article 16 of the CPLR does not apply to this action, state the basis for such claim and identify any alleged applicable exception.

21.    If Plaintiff claims punitive damages, describe the basis for such claim.

22.    Other than the alleged abuse, if Plaintiff has at any time (as a minor or as an adult) been a victim of any form of sexual abuse or assault, identify:

    a.  the individual(s) who caused and/or committed such acts;
    b.  when and where each act occurred;
    c.  each act of sexual abuse or assault;
    d.  to whom such act(s) were reported; and

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 26 of 103 PageID #: 43

e. any related claim, cause of action, lawsuit or proceeding filed by or on behalf of Plaintiff or in which Plaintiff participated as a witness, including criminal proceedings, and the outcome of each identified lawsuit or proceeding, to the extent known.

23. If Plaintiff has at any time (as a minor or as an adult) been a victim of any form of sexual abuse or assault other than the alleged abuse, identify each and every physical, emotional, psychological and psychiatric injury sustained as a result of such conduct, including:

a. when the alleged injury first occurred or manifested;
b. when, where and by whom (name and address) each alleged injury was first diagnosed;
c. when, where, and by whom (name and address) treatment was sought (indicate all dates of examination and treatment);
d. the dates and length of time of any confinement to bed and/or home allegedly resulting from the alleged injuries;
e. if Plaintiff was confined to hospital or any other treatment facility, provide the (i) names of each such hospital and/or facility and (ii) the approximate dates of admission and discharge;
f. the dates and length of time of any incapacitation from activities of daily living allegedly resulting from the alleged injuries; and
g. whether each alleged physical, emotional, psychological and/or psychiatric injury, disease, diagnosis, condition or syndrome identified is claimed to be permanent in nature, and if not permanent, when it resolved.

## VI. Demands Specific for Certain Institutional Defendants.

24. Complete the additional demands contained in the applicable appendix as appropriate for the named Defendants.

All parties retain their rights to object and/or to move with regard to the foregoing demands in accordance with the CPLR and existing case law. The fact that these demands are made a part of the Case Management Order does not in any way alter or waive a party's right to object and/or to move with regard to any of the demands herein.

**Appendix of Additional Demands for Particulars**
**Roman Catholic Institutions**

1.  With respect to the alleged abuse identified in Demand No. 3 identify:

    a.  the relationship of each person identified in response to Demand No. 3.a to each diocesan and/or archdiocesan and/or parish and/or parochial school Defendant;

    b.  whether the person(s) identified in response to Demand No. 3.a was a member of a religious order, religious institute, religious congregation, or religious society, the name of such order, institute, congregation, or society;

    c.  whether the person(s) identified in response to Demand No. 3.a was a lay employee or volunteer at a parish or school within the territorial confines of a diocese or archdiocese, and provide the name of such parish and/or school;

    d.  whether the person(s) identified in response to Demand No. 3.a was a lay employee or volunteer of a religious order, religious institute, religious congregation, or religious society, and provide the name of such religious order, institute, congregation, or society.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 28 of 103 PageID #: 45

**Appendix of Additional Demands for Particulars**
**City of New York and New York City Department of Education**

1.      If the City of New York is a named Defendant, identify the agency(ies) involved.

2.      If the Department of Education is a named Defendant, identify the school(s) Plaintiff attended at the time of the alleged sexual abuse.

3.      If Plaintiff claims that Plaintiff missed school as a result of the injuries sustained from the incident, state the approximate number of days lost from school.

4.      If Plaintiff alleges negligent supervision of Plaintiff, so state.

5.      If Plaintiff alleges negligent supervision of any other individual, agency, organization, or other entity, identify each such individual, agency, organization, or other entity who Plaintiff alleges the municipal Defendant negligently supervised.  If the action names more than one municipal Defendant, provide the requested information for each such Defendant.  If you cannot identify an individual by name, please provide the individual's title, role, or other information sufficient to reasonably identify that individual.

Case 1:22-cv-00125-AMD-RML Document 1-3 Filed 01/07/22 Page 29 of 103 PageID #: 46

## Appendix of Additional Demands for Particulars
## Private Educational Institutions

   1.  If Plaintiff claims that Plaintiff missed school as a result of the injuries sustained from the incident, state the number of days lost from school.

   2.  If Plaintiff alleges negligent supervision, the following items are additionally demanded:

  a. For every individual who allegedly failed to provide adequate supervision, state (i) the name of the individual; (ii) the address and phone number of the individual; (iii) the name of the entity who employs(ed) the individual; (iv) the title of the individual; and (v) when the individual allegedly failed to provide adequate supervision. If more than one individual allegedly failed to provide adequate supervision, please respond to this demand, including all subparts, as to each individual. If you are unable to provide any of the above information, please provide a description reasonably sufficient to identify each individual. This demand includes all individuals, even if employed by any of the parties.

  b. If it is alleged that an agency, organization, and/or other entity failed to provide adequate supervision, state (i) the name of the agency, organization, and/or other entity (ii) the address and phone number of the agency, organization, and/or other entity; (iii) the personnel within the agency(ies), organization(s) and/or other entity(ies) allegedly responsible for the supervision of the person(s), agency(ies), organization(s), and/or other entity(ies) identified in item 4(c), below; (iv) the title(s) of the personnel within the agency, organization and/or other entity allegedly responsible for the supervision of the person, agency, organization, and/or other entity identified in item 4(c), below; and (v) when the agency, organization, and/or other entity allegedly failed to provide adequate supervision. If more than one person, agency, organization, and/or other entity allegedly failed to provide adequate supervision, respond to this demand, including all subparts, as to each agency, organization and/or other entity. If you are unable to provide any of the above information, provide a description reasonably sufficient to identify each individual, agency, organization, and/or other entity. This demand includes all individuals, agencies, organizations, and/or other entities, even if employed by or an agency, related entity, or subdivision of any of the parties.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 30 of 103 PageID #: 47

    c.   Identify the name or names of the person(s), agency(ies), organization(s), and/or other entity(ies) it is alleged received inadequate supervision.

    d.   Identify what conduct, if undertaken, would have removed the risk of harm to Plaintiff.

3.      If Plaintiff allege negligent hiring or retention of an individual, the following items are also additionally demanded:

    a.   For every individual who allegedly was negligent as to the hiring or retention state (i) the name of the individual; (ii) the address and phone number of the individual; (iii) the name of the entity that employs(ed) the individual; and (iv) the title of the individual. If more than one person allegedly was negligent as to the hiring or retention, please respond to this demand, including all subparts, as to each individual. If you are unable to provide any of the above information, provide a description reasonably sufficient to identify each individual.  This demand includes all individuals, even if employed by any of the parties.

    b.   For every agency, organization, and/or other entity that  allegedly was negligent as to hiring or retention state (i) the name of the agency, organization, and/or other entity; (ii) the address and phone number of the agency, organization, and/or other entity; (iii) when the agency, organization, and/or other entity allegedly was negligent; and (iv) the personnel (including title(s)) within the agency(ies), organization(s) and/or other entity(ies) responsible for the allegedly negligent hiring or retention. If more than one person, agency, organization, and/or other entity allegedly was negligent as to hiring or retention, please respond to this demand, including all subparts, as to each agency, organization and/or other entity. If you are unable to provide any of the above information, please provide a description reasonably sufficient to identify each individual, agency, organization, and/or other entity.  This demand includes all agencies, organizations, and/or other entities, even if employed by an agency, related entity, or subdivision of any of the parties.

    c.   State what conduct, if undertaken, would have removed the risk of harm to Plaintiff.

    d.   State in what manner the individual(s) was(were) unfit for employment prior to being hired and what information would have been disclosed by reasonable inquiry or investigation that would have shown a propensity for the individual to engage in the conduct alleged in the Complaint.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
_____

In re:  CHILD VICTIMS ACT LITIGATION          EXHIBIT C to CASE MANAGEMENT
                                              ORDER No. 2, Sec. IX.C.3


_____

**STANDARD AUTOMATIC DISCLOSURES DIRECTED AT DEFENDANTS**


      Defendants' response to Automatic Disclosures:  Absent good cause shown and pursuant
to Section IX of Case Management Order No. 2, and any subsequent Case Management Order
issued by the Court, within 30 days of plaintiff's service of responses to the Standard Automatic
Disclosures Directed at Plaintiffs and the Common Demand for a Verified Bill of Particulars in a
CVA action, defendant shall serve upon plaintiff the following:

1.  All documents in the possession of the responding defendant prior to and up to
    one full year after the last date of abuse as alleged in the complaint and bill of
    particulars relating to any allegations of sexual abuse against the alleged
    perpetrator arising from conduct that occurred prior to and during the abuse
    alleged including, but not limited to, statements, written reports, audio recordings,
    video recordings, correspondence, emails, memoranda, and notes, and materials
    transmitted to any police department, any Office of the District Attorney, U.S.
    Attorney's Office, State Attorneys General or relevant public prosecutor.

2.  If it is alleged that a priest or clergy member abused plaintiff, please provide all
    personnel files of the alleged perpetrator maintained by the responding religious
    organization defendant.  To the extent not included in the personnel file of the
    alleged perpetrator, defendants shall also provide (i) all records pertaining to the
    assignment changes of the priest or clergy member between parishes and/or
    schools; (ii) a list of all parishes where the priest or clergy member was assigned
    inclusive of the start and end dates; and (iii) all alleged "confidential" or "secret"
    files.

3.  If it is alleged that a (i) physician or other medical professional, or (ii) teacher or
    other school employee, (iii) troop or group leader (iv) non-catholic religious
    leader or employee, or (v) other alleged perpetrator sexually abused plaintiff,
    defendants shall provide all personnel files of the alleged perpetrator. To the
    extent not included in the personnel file of the alleged perpetrator, defendants
    shall also provide (i) all records pertaining to the transfer of the alleged
    perpetrator between non-catholic religious entities, medical
    institutions/departments, schools, troops or other locations; (ii) a list of all non-
    catholic religious entities, medical institutions, schools, troops or other locations
    where the alleged perpetrator was assigned inclusive of the start and end dates;

and (iii) all alleged "confidential," "secret," "ineligible volunteer," "perversion," human resources or similar files.

4. If it is alleged that a foster parent or individual residing within the foster home or placement sexually abused plaintiff during the time period alleged in the complaint and bill of particulars, defendant shall provide, for a period of two years prior to and including the earliest date of sexual abuse as alleged in the complaint and bill of particulars, the alleged perpetrator's file and the file for each home or placement where plaintiff alleges such sexual abuse occurred, to the extent such files exist and are within the custody and control of the responding defendant.

5. If a background check(s) was(were) conducted of the alleged perpetrator:

   a. All records documenting the background check(s) including the background check results and date(s) the background check(s) were performed;
   b. The name of the person or entity that performed the background check(s);
   c. The name(s), address(es) and phone number(s) of any references that were allegedly checked.

6. All written statements, tape recordings, videotapes or any transcripts or notes thereof, made by or on behalf of plaintiff by any person, regarding the allegations set forth in the complaint and bill of particulars in accordance with CPLR 3101 (e).

7. With respect to allegations against a school, upon presentation of an executed authorization from plaintiff:

   a. complete copy of all school records pertaining to plaintiff;
   b. academic transcripts and report cards;
   c. medical records;
   d. counseling records, student health or mental health records; and
   e. disciplinary records.

8. With respect to allegations of sexual abuse by a foster parent or by an individual residing within the foster home or placement, or to allegations against a foster placement entity, upon presentation of an executed authorization from plaintiff, the responding defendant shall provide a complete copy of records pertaining to plaintiff's placement to the extent such records exist and are within the custody and control of the responding defendant.

9. All names and aliases used by the alleged perpetrator to the extent known by the responding defendant.

10. The names and/or last known addresses of witnesses who possess information of the claimed abuse against plaintiff as alleged in the complaint and bill of particulars.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 33 of 103 PageID #: 50

11. All documents in existence at the time of the alleged abuse setting forth any of the responding defendant's policies, procedures, protocols, guidelines, rules and/or regulations concerning the protection of minors from sexual abuse, the reporting of sexual abuse of children, and the protocols for receiving allegations of sexual abuse and investigating such complaints.

12. The complete and full insurance agreements, including all additional, concurrent, excess or umbrella coverage that may be applicable under which the insurers of the responding defendant may be liable to satisfy part or all of a judgement that may be entered in the above-entitled action to indemnify or reimburse payments made to satisfy a judgment in the above-entitled action, or to comply with their duty to defend.

   a. In the event the responding defendant is unable to locate a copy of any policies that have been identified as possibly providing coverage for the above-entitled action, the responding defendant shall state: (i) the name(s) and address(es) of the insurance carrier(s), (ii) the applicable policy limits of coverage, (iii) the policy number or numbers and coverage amounts, and (iv) the effective dates thereof.

Objections to discovery based on privilege, confidentiality, immunity, or other protection from disclosure shall state with some specificity that the documents in each category are entitled to protected status; expressly justify the privilege asserted for each category; and describe the nature of the documents to be protected in a manner that will enable the other parties to assess the claim without revealing the privileged information. No documents or information subject to a claim of privilege, confidentiality or immunity from disclosure shall be produced until the claim of privilege, confidentiality or immunity is resolved by the Court.

Nothing contained in these automatic disclosures shall be considered a waiver of any party's rights to pursue any further discovery including, but not limited to, discovery requested above, but for a different time frame.

These demands shall be deemed to continue during the pendency of the CVA action, including the trial thereof.

All parties retain their rights to object and/or to move with regard to the foregoing demands in accordance with the CPLR and existing case law. The fact that these demands are made a part of the Case Management Order does not in any way alter or waive a party's right to object and/or to move with regard to any of the demands herein.

Page Intentionally Left Blank

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND

---------------------------------------------------------- x
                              :
                              :
                              :
                              :     **CONFIDENTIALITY ORDER**
**In re: CHILD VICTIMS ACT LITIGATION** :
                              :     **CASE MANAGEMENT**
                              :     **ORDER ("CMO") No. 2**
                              :
                              :
---------------------------------------------------------- x

### CONFIDENTIALITY ORDER
### Pursuant to Sec. IX of CMO 2

      WHEREAS this court finds good cause exists for the issuance of this confidentiality order governing the pre-trial phase of actions litigated under the Child Victim's Act (L. 2019 c.11), including this action; and

      WHEREAS this confidentiality order shall remain in effect unless otherwise modified;

      IT IS HEREBY ORDERED that all persons and entities subject to this order – including without limitation the parties, their attorneys, representatives, agents, experts and consultants, all non-parties providing discovery in this action, and all other interested persons with actual or constructive notice of this order, including their counsel, shall adhere to the following terms:

**I.**    **Applicability.**

        1.    The terms and conditions of this order will be applicable to and govern all information, documents, and tangible items produced in this action, including, but not limited to, responses to requests for admission, deposition testimony, and deposition transcripts and/or videos, regardless of their medium or format ("Discovery Materials"). Discovery Materials that are designated as "Confidential Information," which includes Confidential Health Information, are referred to herein as Confidential Discovery Materials.

        2.    Any person subject to this order who receives Confidential Discovery Materials ("Receiving Party") from another person ("Producing Party") shall not disclose such Confidential Discovery Materials, except as expressly permitted hereunder.

        3.    Discovery Materials that are designated by a non-party as "Confidential Information" will be treated as Confidential Discovery Materials under this

1

FILED: QUEENS COUNTY CLERK 08/31/2021 08:29 PM   INDEX NO. 400298/2021

NYSCEF DOC. NO. 4   Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 36 of 103 PageID #: 53   RECEIVED NYSCEF: 08/31/2021

order regardless of whether the non-party is or becomes bound by the terms of this order.

## II. Use and Disclosure of Confidential Discovery Materials.

1.  No Receiving Party may disseminate or cause the dissemination of any Confidential Discovery Materials to any person not reasonably involved in the prosecution, defense, or settlement of a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers, or a related enforcement of insurance coverage rights (including any insurance coverage litigation ("Coverage Litigation") with respect to such a claim. The fact that this order permits the disclosure of Confidential Discovery Materials in the Coverage Litigation shall not be construed or otherwise deemed as a finding that such Materials are relevant to or otherwise required to be produced in the Coverage Litigation. Whether any Confidential Discovery Materials are produced in the Coverage Litigation is to be determined by the parties to the Coverage Litigation or, in the event of a dispute, by the Court in the Coverage Litigation. In the event Confidential Discovery Materials are produced in the Coverage Litigation, they shall be subject to an appropriate confidentiality order entered in the Coverage Litigation.

2.  Nothing in this order will affect or restrict a Producing Party's maintenance, use, and/or disclosure of its own documents or information. Disclosures (other than public disclosures) by a Producing Party of its own documents or information will not affect any designation as Confidential Discovery Materials under this order. Nothing in this order will prevent or restrict counsel from rendering advice to their clients, and in the course thereof, relying on an examination of Confidential Discovery Materials.

3.  The court may issue additional orders concerning the use and disclosure of Discovery Materials and Confidential Discovery Materials, including in connection with depositions noticed in multiple actions concerning the same perpetrator.

## III. Confidential Designation.

1.  Any party may designate all or portions of Discovery Materials as "Confidential Information" to the extent that it believes, in good faith, such designated materials need protection from disclosure under federal, state, or local privacy law because such material contains:

    a.  "Confidential Information," which includes without limitation (i) non-publicly disclosed information, including data, summaries, and compilations derived therefrom, that contains scientifically, medically, financially, commercially sensitive information and/or private information as defined in NY Shield Act, N.Y. Gen. Bus.

2

Law § 899-aa ("PI") and (ii) Confidential Health Information, as defined below;

b.    "Confidential Health Information," includes "patient information," as defined in New York State Public Health Law § 18(1)(e), and "protected health information" and "individually identifiable health information," as defined in 45 C.F.R. § 160.103, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, as amended (collectively, "HIPAA"), and which is permitted to be disclosed in the context of judicial and administrative proceedings pursuant to 45 C.F.R. § 164.512(e)(1), subject to certain requirements contained therein. Confidential Health Information includes any information that a party believes, in good faith, needs protection from disclosure under federal, state, or local privacy law because it identifies an individual in any manner and is related to (1) the past, present, or future care, services, or supplies relating to the health or condition of such individual, (2) the provision of health care to such individual, or (3) the past, present, or future payment for the provision of health care to such individual. Confidential Health Information includes medical bills, claim forms, charge sheets, medical records, medical charts, test results, prescriptions, medical notes and dictation, medical invoices, itemized billing statements, remittance advice forms, explanations of benefits, checks in payment of medical services or supplies, medical notices and requests, social security numbers, and similar information. Confidential Health Information includes all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from Confidential Health Information but does not include such information when individual identifiers are not included and/or the information is de-identified in accordance with the HIPAA de-identification standard set forth in 45 C.F.R. § 164.514(a). Confidential Health Information also includes any materials subject to the confidentiality provisions of any applicable federal, state, or local law, including, but not limited to the New York Public Health Law, CPLR § 4505, the Americans with Disabilities Act, as amended, the Genetic Information Nondiscrimination Act of 2008 ("GINA"), the Mental Hygiene Law, and the Confidentiality of Alcohol and Drug Patient Records under 42 U.S.C. Sec. 290dd-2 and 42 C.F.R. Part 2, and other applicable privacy laws, or any applicable statutory or common law.

To the extent reasonably practicable, a Producing Party will limit its designation of Confidential Information to specific portions of material that qualify under this definition. Where it would not be cost effective or would be burdensome, however, the Producing

Party may designate an entire group of Discovery Materials as "CONFIDENTIAL INFORMATION."

2. <u>Depositions</u>.  When a deposition includes the disclosure of Confidential Information:

a. Portions of the deposition and deposition exhibits may be designated as "CONFIDENTIAL INFORMATION" as appropriate, subject to the provisions of this order either by (i) indicating on the record during the deposition that a question calls for Confidential Information, in which case the reporter will mark the pages of the transcript containing the designated testimony as "Confidential Information Governed by Protective Order," or (ii) notifying the reporter and all counsel of record, in writing, within ten (10) days of receiving the deponent's signature or the date the transcript is deemed signed pursuant to CPLR § 3116(a), of the portion that contains Confidential Information, and the Designating Person shall reproduce that portion with the appropriate designation.  During that 10-day period identified above, all parties will treat the entire deposition transcript, video or exhibit as if it had been designated as Confidential Information.  The parties may also agree to treat a deposition transcript as Confidential in its entirety until trial.

b. The Producing Party will have the right to exclude from the deposition, during such time as the Confidential Information is to be disclosed, any person other than the subject of the Confidential Information; the deponent (and his or her counsel); parties and counsel for all parties (including their staff and associates); the court reporter, and the persons identified in Section IV below.

3. <u>Documents</u>.  With respect to any Discovery Materials or portion thereof containing Confidential Information other than deposition transcripts and exhibits, the Producing Party or its counsel may designate such information contained in the Discovery Materials as Confidential Information by stamping or otherwise marking as "CONFIDENTIAL INFORMATION" the protected portion in a manner that will not interfere with legibility or audibility.

4. <u>Electronically Stored Information</u>.  Electronically stored information ("ESI") that a Producing Party wishes to designate as Confidential Information shall be marked as "CONFIDENTIAL INFORMATION."  If the ESI is transmitted through a file transfer protocol or other electronic transmission, it shall be encrypted with the password supplied in separate correspondence to the recipient or otherwise transmitted by secure means.

4

FILED: QUEENS COUNTY CLERK 08/31/2021 08:29 PM INDEX NO. 400298/2021

NYSCEF DOC. NO. 4
Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 39 of 103 PageID #: 56
RECEIVED NYSCEF: 08/31/2021

**IV.     Disclosure of Confidential Information.**

Confidential Information will not be disclosed by the Receiving Party except as permitted by this order.

1.     <u>Permissible Disclosures.</u>   A Receiving Party may disclose a Producing Party's Confidential Information only to the following persons:

a.     the parties  to a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers;

b.     such parties' counsel, which shall mean in-house counsel, outside counsel of record, and other attorneys, paralegals, secretaries, other support staff or vendors (such as litigation support, investigators, copy-service providers, scanning providers, and document-management consultants) employed or retained by counsel;

c.     the Receiving Party's expert witnesses, consultants (e.g., jury consultants and mock jurors), and their support staff, retained by counsel in connection with this action, who first sign an "Agreement To Be Bound by Stipulated Protective Order", in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

d.     the author, addressee, and/or other person indicated on a document as having received a copy of that document or that a party believes is referenced in a document;

e.     the insurers and reinsurers, including their counsel and consultants in the Coverage Litigation, upon the appropriate entry of a confidentiality order in the Coverage Litigation and the insurers, reinsurers, their counsel and consultants agreeing to be bound by that order's terms;

f.     a witness who a party's counsel in good faith believes may be called to testify at a deposition or trial, who first signs an "Agreement to be Bound by Stipulated Protective Order" in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

g.     any mediator, arbitrator, referee, or special master that the parties agree to or that this court appoints;

h.     this court, including any appellate court, its support and administrative personnel; and

5

    i.  any court reporter and associated support staff employed in this litigation.

2. <u>Authorized Disclosures.</u> A Receiving Party may disclose Confidential Information if:  (i) the Producing Party or the subject of the Confidential Information, as applicable and to the extent of their authority, consents to such disclosure; (ii) the court, after notice to the parties and the subject of the Confidential Information, as applicable, allows such disclosure; or (iii) the Receiving Party is required to disclose Confidential Information pursuant to a subpoena or other legal demand, by law, or to a regulatory entity or other government agency, provided that, to the extent permitted by law, the Receiving Party gives prompt notice to counsel for the Producing Party and to the subject of the Confidential Information, as applicable, so that the Producing Party can oppose, with the Receiving Party's reasonable cooperation, or minimize disclosure of such Confidential Information.

3. <u>Disclosures by Covered Entities and/or Health Care Providers and Business Associates.</u> Subject to a properly executed release, all "covered entities" and "business entities" (as defined by 45 C.F.R. § 160.103) and/or "health care providers" (as defined by New York Public Health Law § 18 (1)(b)) are hereby authorized to disclose Confidential Information, including Confidential Health Information, pertaining to this action to those persons designated in paragraph 1.a of this section.

4. <u>Challenges to Designation as Confidential Information</u>. A party who objects to any designation as Confidential Information may, at any time before the trial of this action, send to counsel for the Producing Party a written notice, specifying the documents or information that the challenging party contends should be differently designated and the grounds for the objection.  The challenging party and the Producing Party shall meet and confer about the objection within ten (10) court days of the Producing Party receiving such written notice unless otherwise agreed.  If the challenging party and the Producing Party cannot reach agreement, the Producing Party shall seek relief from the court in accordance with its rules and procedures within ten (10) court days of the meet and confer.  The Producing Party will have the burden of justifying the propriety of its designation, which will continue as originally designated, unless otherwise ordered by the court or unless the Producing Party or the subject of the Confidential Information, as applicable, withdraws its designation in writing.  In the event that the court rules that the challenged material's designation should be changed, the Producing Party shall reproduce copies of all materials with their designations removed or changed in accordance with the ruling ten (10) business days of the ruling or the schedule set by the court, whichever is later.  "Writing" and "written notice" shall include electronic communications.

6

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 41 of 103 PageID #: 58

**V.**      **Identities of Abuse Survivors.**

1.  Possible Abuse Survivors Who Are Plaintiffs and/or Who Are Otherwise Represented by Counsel.

    a.  Where a document contains the name of a Plaintiff who has filed suit under a pseudonym, the Producing Party shall redact the name and replace it with the pseudonym. The Producing Party shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by pseudonym and identify the attorneys representing each of them. Any such list is Confidential Information.

    b.  Where a document references the name of a Plaintiff who has filed suit in his or her own name, the Producing Party shall produce the document without redaction but shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by their name and identify the attorneys representing each of them. Any such list is Confidential Information.

    c.  Where a document references the name of a person who may be a survivor of child sex abuse, but the Producing Party is not aware that the person has filed suit, the Producing Party shall redact the person's name and replace it with a unique "Doe code" that allows the person to be tracked across documents. However, if the Producing Party is on notice that such a person may be represented by counsel, the Producing Party will simultaneously produce to the Receiving Party's counsel a list of these individuals by Doe code and identify the attorneys representing them. Any such list is Confidential Information.

    d.  No party or their counsel will contact a Plaintiff or a person identified by a "Doe code" who is represented by counsel unless permission to do so is given by that Plaintiff or person's counsel. Rather, any party or their counsel who believes in good faith that contacting a Plaintiff or person identified by a "Doe code" is important to the party's claim or defenses may do so only through contact with the attorney representing that Plaintiff or person identified by a "Doe code."

    e.  If permission to speak with the Plaintiff or person identified by a "Doe code" is denied or not responded to within a reasonable time, a party or their counsel may ask the court and/or other designated personnel appointed by the court for such communication.

2.  Possible Abuse Survivors Who Are Not Represented by Counsel.

7

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

a. If a Producing Party does not believe that a person identified by a "Doe code" is represented by counsel, the Producing Party will create a list of the "Doe codes" for such persons with a key that contains the true names and identifying information for these individuals (the "Unrepresented Survivors List"). Any such list is Confidential Information but shall not be shared with anyone other than the court and/or other designated personnel appointed by the court.

b. A party or their counsel may seek to contact an Unrepresented Survivor on the Unrepresented Survivors List through the following procedure:

i. The party or their counsel must submit an email or letter to the court and/or other designated personnel appointed by the court that sets forth their good faith belief that an Unrepresented Survivor may have discoverable information for the party's case. Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be copied on the email or letter to the court and/or other designated personnel appointed by the court.

ii. The court and/or other designated personnel appointed by the court, after conferring with Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel to understand if there are other parties who wish to speak to the same person, shall contact the Unrepresented Survivor, explain that information is being sought to assist with a party's claims or defenses, and inquire if the Unrepresented Survivor has any objection to being contacted.

iii. If the Unrepresented Survivor agrees to be contacted, the court and/or other designated personnel appointed by the court shall so advise the requesting party or their counsel by email or letter, and copy Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. The court and/or other designated personnel appointed by the court shall also advise the requesting party or their counsel of the Unrepresented Survivor's preferred means of being contacted.

iv. If an Unrepresented Survivor advises the court and/or other designated personnel appointed by the court that he or she does <u>not</u> want to be contacted, the court and/or other designated personnel appointed by the court shall advise the party or their counsel who made the request, by email or letter, with a copy to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Thereafter, the court and/or

8

other designated personnel appointed by the court shall provide the full name and last known address of the Unrepresented Survivor to the party or their counsel who made the request and to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Upon being provided with the identity of the Unrepresented Survivor, the parties in the action in which the relief is sought, Plaintiffs' Liaison Counsel, and Defendants' Liaison Counsel will coordinate the issuance and service of a subpoena on the Unrepresented Survivor in order to avoid duplicative subpoenas and to lessen any burden or hardship that such subpoena may cause to an Unrepresented Survivor. Other than service of the subpoena, no party or their counsel, or anybody acting on their behalf, may contact the Unrepresented Survivor prior to the deposition pursuant to the subpoena.

v. Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be charged with coordinating, to the extent practicable, all motions, subpoenas, and depositions concerning Unrepresented Survivors in order to avoid duplicative motions and to lessen any burden or hardship that such motions or subpoenas may cause to an Unrepresented Survivor.

vi. Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be given at least 20 days' notice by email of any deposition that may be noticed of an Unrepresented Survivor for the purpose of coordinating attendance at the deposition by other parties who have claims or defenses where information possessed by the Unrepresented Survivor may be discoverable and minimizing, to the extent practicable, any burden on the Unrepresented Survivor.

vii. The court and/or other designated personnel appointed by the court shall maintain a copy of deposition transcripts of Unrepresented Survivors so the transcripts may be used by other parties with claims or defenses where the transcript may contain discoverable information.

c. Nothing contained herein shall prevent a party or their counsel from contacting a person where the identity of the person was learned through sources other than documents produced pursuant to this Section.

9

## VI.  Procedures for Filing Confidential Discovery Materials with the Court.

1. If a party wants to file materials containing Confidential Information ("Moving Party"), such filing shall be initially submitted directly to the court via electronic mail with simultaneous transmission to all other parties to the action. The Confidential Information shall not be filed in the public record until the court rules on whether the Confidential Information should be redacted or sealed as outlined below.

2. Within five (5) court days of any such submission to the court, counsel for the Moving Party and the Producing Party shall meet and confer in good faith in an attempt to reach agreement as to appropriate redactions and/or sealing of any Confidential Information contained in the submission. If Counsel for those parties cannot reach agreement, any remaining dispute shall be submitted via a joint letter by those parties to the court, not to exceed five pages, within ten (10) business days of the meet and confer. Any party may use its portion of any such joint letter to request full briefing of the dispute. The Moving Party shall be responsible for submitting the joint letter to the court.

3. Within five (5) court days of the court issuing its ruling on whether the Confidential Information should be redacted or sealed, the Moving Party shall file the material consistent with the court's ruling. If the court rules that the Producing Party has met its burden of showing that Confidential Information should be redacted or sealed, the Moving Party shall redact the Confidential Information or file the Confidential Information under seal in accordance with the rules of the court and the court's order.

4. Any party shall be permitted to file under seal Confidential Health Information without seeking leave of court.

## VII.  Inadvertent Disclosure.

a. Confidential Information. If a party inadvertently produces any materials without a confidentiality designation, the Producing Party may provide written notice to the Receiving Party that the materials are Confidential Discovery Materials under this order and promptly reproduce the materials with an appropriate designation. The Receiving Party will treat the materials as Confidential Discovery Materials upon receipt of such notice and, within five (5) business days, take all reasonable steps to retrieve such materials from persons to whom the Receiving Party has disclosed such materials without a confidentiality designation or to confirm such persons have destroyed such materials.

b. Privileged Materials. If a Producing Party inadvertently discloses information subject to a claim of attorney-client privilege, attorney

10

work product doctrine, patient privacy protections, and/or other protections from disclosure ("Inadvertently Disclosed Information"), such disclosure, in and of itself, will not constitute or be deemed a waiver or forfeiture of any claim of privilege and/or other protection from disclosure with respect to the Inadvertently Disclosed Information.

i.  Within five (5) business days after a Producing Party provides written notice of such inadvertent disclosure, the Receiving Party will return, sequester, or destroy all such Inadvertently Disclosed Information in its possession and provide to the Producing party a written certification that (a) this has been done, or (b) this has not been done because the Receiving Party has a good faith belief that the information was not inadvertently disclosed or that the information is not the proper subject of any claim of attorney-client privilege, attorney work product doctrine, patient privacy protections, and/or other protections from disclosure.  In addition, if the Receiving Party has disclosed such information to others before receiving notice, the Receiving Party will (a) take reasonable steps to retrieve the information or ensure it has been destroyed, or (b) provide to the Producing Party with the names and contact information to whom this information was disclosed.

ii.  Within thirty (30) days from the date of the certification referenced in (i), the Producing Party will (a) produce a privilege log for the Inadvertently Disclosed Information, and (b) if the Inadvertently Disclosed Information appears only in portions of documents, produce redacted copies of those documents.

iii.  If a Receiving Party thereafter moves the court for an order compelling production of the Inadvertently Disclosed Information, the Producing Party bears the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information.  Such motion practice shall be governed by the process described in Section 6. Nothing in this order shall limit the right of any party to request that the court conduct an *in camera* review of the Inadvertently Disclosed Information.

c.  Consistent with New York Rule of Professional Responsibility 4.4(b) and any other applicable rules, if a Receiving Party reasonably believes that a document produced by a Producing Party is subject to attorney-client privilege and/or other protection from disclosure, the Receiving Party shall promptly notify the Producing

11

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 46 of 103 PageID #: 63

Party.  Within ten (10) days from a request by the Producing Party, the Receiving Party will return or destroy all copies of the document and certify in writing that this has been done. In any event, the Receiving Party will immediately cease all use of the materials at issue, will not read any unread portion of the documents, and will not refer to the privileged content during the course of this matter.

## VIII.   Additional Provisions

1.   <u>Prior Bad Acts, Subsequent Bad Acts and Corrective Measures</u>. Generally, consistent with the substance of this order, records of: 1) prior bad acts, not limited to previous accusations of sexual abuse, against an alleged sexual abuse perpetrator; or 2) subsequent bad acts, not limited to consequent accusations of sexual abuse, by an alleged sexual abuse perpetrator and corrective measures by an institution, are discoverable, and will be disclosed upon request.

2.   <u>Treatment of Discovery Materials Upon Termination of Action</u>.  Within sixty (60) days of the later of the expiration of the applicable statute(s) of limitations regarding professional malpractice concerning the action or final termination of this action, including any appeals, each party to the action and its counsel must delete, destroy, or return to the Producing Party all Confidential Discovery Materials, including any copies, excerpts, and summaries of Confidential Discovery Materials contained therein. However, counsel to a party to other civil claims related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers is not obligated to delete, destroy, or return Discovery Materials until  sixty (60) days after all such claims are terminated, including any appeals.  Notwithstanding the foregoing, counsel shall be entitled to retain client communications, attorney work product and, for archival purposes, paper and electronic copies of pleadings, court submissions, including exhibits, correspondence, transcripts and accompanying exhibits, and memoranda that contain, attach or refer to Confidential Discovery Materials, including a complete record of any proceedings before the court, and will continue to be bound by this order with respect to all such information that is kept after the conclusion of this action.  Nothing herein shall require a party or its counsel to delete Confidential Discovery Materials of another party that may reside on its respective electronic archives or disaster recovery systems, except that such materials will not be retrieved or used for any purpose after the conclusion of this action.

3.   <u>No Waiver</u>.  Nothing in this order shall be construed as an abrogation, waiver or limitation of any kind by a party or non-party of:  (a) its right to object to any discovery request on any ground; (b) any applicable privilege or protection; or (c) its right to object to the admissibility at trial of any document, testimony or other evidence.  In addition, nothing in this order

12

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

shall be construed as limiting any waiver of physician-patient privilege by Plaintiff by reason of bringing this action and asserting claims for damages. This order shall not prevent a party from applying to the court for further or additional protective orders.

4. <u>Non-Applicability of Order</u>. The restrictions and obligations set forth in this order will not apply to any information that is publicly available, unless the information has become public in violation of this order. No party will be responsible to another party for disclosure of information that would otherwise be confidential under this order if such information is not labeled or otherwise identified in accordance with this order, except that readily recognizable "Confidential Health Information" cannot be disclosed by any party, even if inadvertently produced without a "CONFIDENTIAL INFORMATION" designation.

5. <u>Notices</u>. Transmission by electronic mail is acceptable for all notification purposes under this order.

6. <u>Modification</u>. This order may be modified by written agreement of the Parties, subject to approval by the court, or by application to the court. The court reserves the right to modify this order for any reason that the court deems appropriate.

7. <u>Duration</u>. This order only applies to pre-trial matters because the court acknowledges the standard for redacting or sealing information may be different for trial.

8. <u>Survival</u>. After termination of this action, the provisions of this order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This court retains continuing jurisdiction over all persons subject to this order for enforcement of the provisions of this order or to impose sanctions for any contempt thereof.

Dated: September 18, 2020

_____
**GEORGE J. SILVER, J.S.C.**

13

**Exhibit A**

## AGREEMENT TO BE BOUND BY CONFIDENTIALITY ORDER

I, _____, have read the foregoing confidentiality order ("order") in this action and have received a copy of the order.  I agree that I will not disclose any Confidential Discovery Materials, as defined in the order, other than as expressly permitted.  I will destroy or return all Confidential Discovery Materials to the attorney who provided it to me, upon request of that attorney, and I shall not retain any copies of said Confidential Discovery Materials or any information contained within those Confidential Discovery Materials designated as Confidential after the termination of this litigation, including all appeals.

By acknowledging these obligations, I understand that I am submitting myself to the jurisdiction of the Supreme Court of the State of New York, [               ] concerning any issue or dispute arising hereunder and that my disclosure of Confidential Information in any manner contrary to the terms of the order may subject me to sanctions for contempt of court.

Dated:_____          Signature: _____
                                 Printed Name: _____

14

Page Intentionally Left Blank

**SUPREME COURT OF THE STATE OF NEW YORK COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND**

|  |  |
|---|---|
| | : |
| | : |
| | : **DECISION AND ORDER RE:** |
| | : |
| **In re: CHILD VICTIMS ACT LITIGATION** | : **CONFIDENTIALITY ORDER** |
| | : |
| | : **CASE MANAGEMENT** |
| | : **ORDER ("CMO") No. 2** |

The following motions are decided in accordance with the attached decision and order of the Court:

| | |
|---|---|
| Index 950000/2020 | Seq. 001 (Motion & Cross-Motion) |
| Index 950000/2020 | Seq. 002 |
| Index 950000/2020 | Seq. 003 |
| Index 950000/2020 | Seq. 004 |
| Index 950000/2020 | Seq. 005 |
| Index 950000/2020 | Seq. 006 |
| Index 950000/2020 | Seq. 007 |
| Index 950000/2020 | Seq. 009 |
| Index 950000/2020 | Seq. 001 |
| Index 999999/2020 | Seq. 002 |
| Index 999999/2020 | Seq. 003 |
| Index 999999/2020 | Seq. 004 |
| Index 999999/2020 | Seq. 005 |
| Index 999999/2020 | Seq. 006 |
| Index 999999/2020 | Seq. 001 |
| Index 70061/2020E | Seq. 001 |
| Index 950137/2019 | Seq. 003 |
| Index 512321/2020 | Seq. 005 |
| Index 502720/2020 | Seq. 001 |
| Index 400044/2020 | Seq. 001 |

The Court further directs that a copy of this decision and order be uploaded to all existing, and future, cases being litigated under the Child Victims Act (L. 2019 c.11) ("CVA") in the Supreme Court of the state of New York in the counties of Bronx, Kings, New York, Queens, and Richmond.

**Dated:** March 30, 2021                     **Hon.** _George J. Silver_

                                              **GEORGE J. SILVER, J.S.C.**

1. CHECK ONE.................................................... ☐ CASE DISPOSED IN ITS ENTIRETY  ■ CASE STILL ACTIVE

2. MOTION IS.................................................... ☐ GRANTED   ☐ DENIED   ■ GRANTED IN PART   ☐ OTHER

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
-------------------------------------------------------- x
                                                       :
                                                       :
                                                       :     **DECISION AND ORDER RE:**
**In re: CHILD VICTIMS ACT LITIGATION** :
                                                       :     **CONFIDENTIALITY ORDER**
                                                       :
                                                       :     **CASE MANAGEMENT**
                                                       :     **ORDER ("CMO") No. 2**
-------------------------------------------------------- x

With the instant application, defendants in cases filed under the Child Victims Act (L. 2019 c.11) ("CVA") in New York City move to vacate and/or modify this court's Confidentiality Order issued in conjunction with the litigation. In opposition, plaintiffs prosecuting cases under the CVA in New York City argue that this court's Confidentiality Order should stand without major modification.

## BACKGROUND

In 2019, New York State enacted the CVA which, *inter alia*, (1) extended the statute of limitations on criminal cases involving certain sex offenses against children under 18 (*see* CPL §30.10 [f] ); (2) extended the time which civil actions based upon such criminal conduct may be brought until the child victim reaches 55 years old (*see* CPLR §208[b]); and (3) opened a one-year window reviving civil actions for which the statute of limitations has already run (even in cases that were litigated and dismissed on limitations grounds), commencing six months after the effective date of the measure, i.e. August 14, 2019 (*see* CPLR §214-g).[1]

When enacting the CVA, New York's Legislature did not create a comprehensive set of procedural rules and discovery standards for how cases would be litigated under the statute. Recognizing this, shortly after the revival period opened, the court appointed a CVA Steering

---

[1] Due to the COVID-19 public health emergency, on May 8, 2010, New York Governor Andrew Cuomo ("Governor Cuomo") issued an executive order extending the look back window for victims to file claims under the Child Victims Act until January 14, 2021. On August 3, 2020, Governor Cuomo signed into law an additional extension of the special filing period by a full year. Claims under the statute can now be filed until August 14, 2021.

1

Committee, consisting of defense attorneys representing institutional CVA defendants ("DLC") and plaintiffs' attorneys representing numerous CVA plaintiffs ("PLC") in actions in the Supreme Court for Bronx, Kings, New York, Queens, and Richmond Counties, to liaise between the court and all CVA counsel. Thereafter, on February 24, 2020, the court issued Case Management Order No. 1 ("CMO 1"), which "applies to all actions filed or hereafter filed in the Supreme Court in and for the counties of Bronx, Kings, New York, Queens, and Richmond pursuant to the [CVA]." Then, on June 18, 2020, the court issued Case Management Order No. 2 ("CMO 2"), annexing to it as Exhibit C, the "Standard Automatic Disclosures Directed at Defendants," which set forth broad categories of documents to be produced by CVA defendants subject to objection. Section IX(A)(1) of CMO 2 directed the DLC and PLC to either jointly submit a proposed Confidentiality Order or to submit alternate proposals to the court by June 22, 2020 and stayed CVA defendants' disclosure obligations pending entry of a Confidentiality Order.

On June 22, 2020, the DLC and PLC each submitted their proposals with accompanying letter briefs. The court then held two conferences regarding the parties' submissions and entertained oral argument by the respective liaison committees. Following the second conference held on September 10, 2020, the DLC submitted a second letter brief on September 11, 2020. On September 18, 2020, the court issued the Confidentiality Order.

## ARGUMENTS

With the instant application the DLC, and additional defendants, seek to vacate or modify the Confidentiality Order by arguing that it improperly abrogates defendants' statutory, common law, and federal and state constitutional rights in excess of the authority of this court.

### I.    Section VIII(1)

Most prominently, defendants contend that Section VIII(1) of the Confidentiality Order improperly and prematurely ruled that records concerning (i) prior and subsequent undefined "bad acts" by "an alleged sexual abuse perpetrator" and (ii) subsequent "corrective measures" taken by an institutional defendant "are discoverable, and will be disclosed upon request." More specifically, the DLC challenges Section VIII(1) of the Confidentiality Order by arguing that it "goes out of its way to direct disclosure of records regarding subsequent corrective measures that are not permitted under New York State law and the disclosure of which would constitute an improper invasion and intrusion of religious institutional CVA [d]efendants' First Amendment rights." In addition, the DLC contends that Section VIII(1) lacks specificity with respect to what constitutes a "bad act," and whether that term broadly applies to conduct unrelated to allegations of child sex abuse. Because Section VIII(1) directs disclosure without affording parties the right to object, and move for a protective order, the DLC states that it runs athwart of defendants' rights to due process and liberty.

In opposition, the PLC contends that the Confidentiality Order's requirement that defendants produce records of an alleged abuser's other "bad acts" is entirely consistent with the CVA and CPLR §3101(a)'s liberal discovery standard. Citing authorities in both the First and Second Department, the PLC avers that where there is any possibility that requested information may be used as evidence-in-chief, in cross-examination, or on rebuttal, it is deemed material for

Case 1:22-cv-00125-AMD-RML Document 1-3 Filed 01/07/22 Page 53 of 103 PageID #: 70

discovery purposes, and therefore should be disclosed (*see e.g., First Equity Realty v. Harmony Group, II*, 129 NYS3d 777, 777 [1st Dept 2020]; *Matter of Metro-North Train Accident of Feb. 3, 2015*, 178 AD3d 931, 933 [2d Dept 2019]).  The PLC further emphasizes that courts have long recognized the distinct standards that govern the discoverability and admissibility of evidence – and, critically, that "[p]retrial disclosure extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof" (*Fell v. Presbyterian Hosp. in N.Y. at Columbia-Presbyterian Med. Ctr.*, 98 AD2d 624, 625 [1st Dept 1983]).

In accordance with liberal disclosure rules, the PLC emphasizes that courts have repeatedly held that documents and information about prior and subsequent incidents, as well as remedial efforts taken, may be discoverable under CPLR §3101's liberal standard – even if ultimately inadmissible at trial (*see, e.g. Bigman v. Dime Sav. Bank, FSB*, 153 AD2d 912, 914 [2d Dept 1989]).  The PLC underscores that "it is inconceivable that records of an abuser's 'prior bad acts' and 'subsequent bad acts' would not be useful in the context of…negligent retention, negligent hiring, or negligent supervision claims."  Where, as here, the concern at issue is one of discoverability, rather than admissibility, the PLC contends that plaintiffs should be entitled to the disclosure of the records deemed discoverable by this court in its Confidentiality Order.

Even so, the DLC retorts by emphasizing that discovery of "bad acts" should be specifically defined by this court, and should encompass only prior incidents of child sexual abuse rather than broadly defined prior "misconduct" that may be wholly irrelevant to the claims at issue in a particular lawsuit.  Moreover, defendant Diocese of Brooklyn, and other religious entities, contend that the Confidentiality Order's requirement of the disclosure of subsequent corrective measures impinges upon canon law, and the decision-making process of religious groups that may find themselves tasked with the responsibility of having to fire one of their ministers.[2]

Furthermore, certain defendants within the sphere of education seek to shield the production of records of "bad acts" and "corrective measures" by invoking the Family Educational Rights and Privacy Act of 1974 ("FERPA," or the "Buckley Amendment"), a federal statute which protects student "education records" from disclosure without their knowledge and/or consent.

In response, the PLC highlights that the Appellate Division, Second Department, has expressly held that disciplinary records, including a perpetrator's other instances of "violent and assaultive behavior," are relevant and thus discoverable as to whether an educational institution failed to adequately supervise that perpetrator (*see, e.g., Graham v. West Babylon Union Free Sch. Dist.*, 262 AD2d 605, 606 [2d Dept 1999] ["records of any past instances of violent and assaultive behavior on the part of the defendant Marc Maggio clearly would be relevant to the plaintiff's claim that the defendant West Babylon Union Free School District failed to adequately supervise Maggio"]).

The PLC also posits that the Appellate Division, Second Department, has elaborated that complaints or records of prior incidents are not even considered "education records" that warrant protection under FERPA (*Culbert v. City of New York*, 254 AD2d 385, 387 [2d Dept 1998]).  To

---

[2] Defendant Diocese of Brooklyn elaborated on their arguments concerning the nuanced church-state issues of First Amendment jurisprudence at oral argument on December 16, 2020 through arguments proffered by Mark E. Chopko, Esq.

3

Case 1:22-cv-00125-AMD-RML Document 1-3 Filed 01/07/22 Page 54 of 103 PageID #: 71

be sure, courts have interpreted FERPA's definition of "education records" (i.e., "information directly related to a student") to include only "records relating to an individual student's performance," and not records compiled to "maintain the physical security and safety of the agency or institution" (*see Culbert*, 254 AD2d at 387). As such, plaintiffs maintain that FERPA does not apply to the disclosure of reported complaints of abuse within an educational setting.

Even assuming that FERPA does apply, the PLC argues that disclosure of educational records is still warranted where a court has expressly ordered the production of such records (*see e.g., Staten v. City of New York*, 90 AD3d 893, 895 [2d Dept 2011]). Where privacy concerns of students are weighed against the requesting parties' need for information, the PLC contends that the requesting parties' need for information should prevail, without question, since the information requested is relevant to the issue of an institution or employer's knowledge of an abuser's propensity for sexual misconduct – a necessary element of negligent retention, hiring, and supervision claims.

Beyond the observations above, City defendants contend that the necessity to disclose prior and subsequent incidents of alleged sexual abuse would necessarily require them to violate Section 50-b of the Civil Rights Law, which protects the identities of victims of sex crimes, thereby placing the City defendants at risk for additional civil liability. Specifically, under Section 50-b, "the identity of any victim of a sex offense" shall be confidential, including that no public officers or employees shall disclose any document "which tends to identify such a victim" unless an exception applies (Civil Rights Law §50-b[1]). City defendants argue that this court's Confidentiality Order defies the mandates of Section 50-b, and imposes upon them a disclosure requirement at odds with existing law.

In opposition, the PLC argues that City defendants' generalized reference to Section 50-b is overbroad as many of the requested documents plaintiffs are seeking do not actually identify a victim of a sex crime, and therefore fall outside the ambit of the statute. In addition, to the extent that any requested documents do, in fact, identify a sex crime victim, the PLC avers that plaintiffs may still be entitled to disclosure under Section 50-b(2)(b), upon a showing of good cause for discovery and upon notice to the identified victim and public officer charged with prosecuting the offense.

City defendants and foster care defendants also cite a variety of disparate, mutually-exclusive laws and court rules that address the protection of certain records, such as foster records. However, in opposition the PLC emphasizes that such laws must yield to court orders requiring the disclosure of such records. Where, as here, the court has provided that a category of records, including foster care records, should be disclosed, the PLC argues that defendants must comply with the court's directives or raise a particularized objection.

Finally, defendant Rockefeller University, an institution that houses a large volume of medical records, argues that requiring it to disclose prior bad acts and subsequent corrective measures would violate the Health Insurance Portability and Accountability Act ("HIPAA"), the New York State Mental Hygiene Law, or any other medical privileges by requiring the production of protected health information. In opposition, the PLC argues that the Confidentiality Order protects the privacy and other interests of third parties by requiring each defendant to redact the

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 55 of 103 PageID #: 72

names of likely abuse survivors who have not filed a lawsuit of their own and who are not represented by counsel. Moreover, the PLC contends that where privileged health information is found to be "material and necessary," it may be disclosed if "circumstances warrant overcoming the privilege" (*Cole v. Panos* (128 AD3d 880 [2d Dept 2015]). In the case of defendant Rockefeller University, the PLC also underscores the fact that most of the information sought by a plaintiff may not be health information at all, such as complaints or concerns that a health care provider was sexually abusing patients. In the PLC's view, such complaints or concerns may not be health information in the first instance because they are not about the person's health care, were not made for their care or treatment, and were not intended to be confidential or to remain confidential.

## II.     Sections II(1), III(1)(a), and IV(1)(a)

Next, defendants argue that Sections II(1) and IV(1)(a) of the Confidentiality Order improperly entitle a plaintiff in one CVA action to confidential discovery produced in another CVA action merely because they are suing the same party regardless of whether different alleged abusers, locations, and years of alleged abuse are involved. Since the CVA actions at issue are usually not consolidated class actions or coordinated mass torts, defendants aver that the sharing of wholly irrelevant, immaterial, and unnecessary records among disparate and diverse CVA actions confuses the record by becoming the subject of needless deposition testimony and impertinent expert opinion. Accordingly, the DLC asks for this court to vacate Sections II(1) and IV(1)(a) to prevent the sharing of discovery beyond the litigation in which it is exchanged.

In addition, the DLC submits that Section III(1)(a) of the Confidentiality Order should include information of a personal nature as being encompassed within the meaning of "Confidential Information." The DLC contends that the absence of information of a personal nature, which would cover the likes of occupational and educational records, when defining "Confidential Information" opens the door for the disclosure of a deluge of categories of information in several CVA lawsuits from disparate parties and non-parties. To protect against that, defendants submit that Section III(1)(a) should be modified to include information of a personal nature so that categories of information such as occupational and educational records are not automatically subject to disclosure while only the most sensitive information, for which a confidential designation is appropriate, is protected from disclosure.

In opposition, the PLC contends that "[w]here it is widely known these horrific acts were committed by serial abusers and systematically concealed by these institutions, the substantial overlap of common records and testimony calls out for parties to share information in specified instances, thereby avoiding a tremendous waste of time and resources." To be sure, the PLC contends that information sharing "would level the information disparity between victims and these large institutions." The PLC highlights that in Section 10 of the CVA, the legislature specifically directed the chief administrator of the courts to "promulgate rules for the timely adjudication of revived actions brought pursuant to section two hundred fourteen-g of the civil practice law and rules" (N.Y. Judiciary Law § 219-d). In the PLC's view, "[t]here is no question that a prohibition on discovery-sharing, as urged by defendants, would needlessly frustrate this statutory goal, thereby resulting in protracted and costly litigation."

5

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 56 of 103 PageID #: 73

Second, the PLC contends that discovery-sharing supports the CVA's goal of case coordination. For instance, the PLC states that where a coordinated deposition of a defendant representative is requested, discovery-sharing could promote efficiency by allowing all plaintiffs who have filed claims against that same defendant to participate in the deposition. Third, the PLC emphasizes that discovery-sharing also better ensures consistency in discovery responses for all plaintiffs suing common defendants by guaranteeing matching disclosures across the board. Finally, the PLC highlights that discovery sharing has been endorsed in clergy cases litigated in the states of California and Washington. In addressing defendants' concerns about unfettered disclosure, the PLC underscores that the Confidentiality Order explicitly directs all persons receiving confidential information to maintain that confidentiality.

## III.    Section IV(4)

Next, the DLC argues that Section IV(4) of the Confidentiality Order improperly imposes an obligation on defendants to justify confidentiality and privilege designations. The DLC avers that the general practice in New York regarding challenges to confidentiality and privilege designations permits the receiving party to seek relief by motion to de-designate challenged information. By contrast, the DLC posits that the Confidentiality Order improperly sets up a system by which the producing party is required to seek judicial relief each time a receiving party disagrees with a designation, almost certainly guaranteeing motion practice will follow. Were the court to modify its Confidentiality Order to require the receiving party to incur the litigation costs of moving to lift a confidentiality designation, the DLC argues that motion practice would be decreased. The DLC notes that several institutional defendants are required to designate third-party information, such as records covered by a patient-physician privilege, as confidential. Were a plaintiff to arbitrarily disagree that such records are confidential, the DLC argues that it would be placed in the unenviable situation of having to move for relief that otherwise would seem self-evident.

In opposition, the PLC argues that the Appellate Division, First Department, has made it clear that CPLR §3101(a)'s liberal standard for discovery is intended to facilitate public access to court proceedings and records (*see e.g.*, *MSCI Inc. v. Jacob*, 120 AD3d 1072, 1075 [1st Dept 2014] ["New York strongly encourages open and full disclosure as a matter of policy"]).Given this presumption of openness and full disclosure, the PLC emphasizes that it naturally follows that an individual or entity seeking a protective order bears the initial burden to establish that any specified information should be protected from discovery (*see e.g.*, *Liberty Petroleum Realty, LLC v. Gulf Oil, L.P.*, 164 AD3d 401, 403-404 [1st Dept 2018][affirming that a party seeking a protective order "bears the initial burden to show that the information sought is irrelevant or that the process will not lead to legitimate discovery and, only then does the burden shift to the subpoenaing party to demonstrate that the information sought is material and necessary" and noting that the inverse rule of "plac[ing] the initial burden on the party seeking disclosure" would be inconsistent with New York law]). The PLC contends that Section IV(4) is consistent with that principle insofar as the Confidentiality Order provides that a producing party designating certain information as confidential, "will have the burden of justifying the propriety of its designation" in the face of any challenge (*see* Confidentiality Order, §IV[4]).

6

The PLC argues that defendants' attempt to reverse this presumption "is entirely unsupported by law or logic." First, the PLC underscores that courts have expressly held that parties who label information as "confidential" bear the burden of justifying those designations Next, the PLC emphasizes that if the inverted rule urged by defendants were adopted, nothing would prevent defendants from designating each and every document as confidential, thereby forcing plaintiffs to undertake to unseal the entirety of its production. This, in the PLC's estimation, is "the exact opposite of openness and accessibility." Finally, the PLC avers that defendants' potential to designate discoverable documents as confidential may well thwart the aims at efficiency contemplated by the Confidentiality Order, including a process to avoid numerous, duplicative motions for a protective order or to compel.

## IV.    Section V

The DLC next contends that Section V of the Confidentiality Order imposes broad unconstitutional duties on defendants that are contrary to the CPLR and vitiates defendants' rights, privileges, and protections under the CPLR, including their work product privilege. To be sure, the DLC argues that defendants are subject to disparate and varying laws and regulations that prohibit them from disclosing the identities of non-parties contained in produced records absent a specific authorization. The DLC contends that Section V of the Confidentiality Order improperly attempts to circumvent these protections, many of which are inviolable and others of which require the requesting party to establish individualized prerequisites before such information can be disclosed.

Notably, Section (V)(1)(a) of the Confidentiality Order directs defendants to redact the name of any person who has filed a CVA action under pseudonym, and replace it with a "doe code" in the documents produced in discovery and then to supply to each plaintiff a list of the counsel for each de-identified plaintiff. Pursuant to Section (V)(1)(b), where a document references the name of a plaintiff who has filed suit in his or her own name, the Confidentiality Order directs defendants to "produce the document without redaction" and "simultaneously produce to the [r]eceiving [p]arty's counsel a list of these [p]laintiffs by their name and identify the attorneys representing each of them." In addition, pursuant to Section V(1)(c), defendants are required to maintain a centralized database of "Doe Codes" to track persons "who may be a survivor of child sex abuse," but have not filed a lawsuit.

The DLC argues that these provisions, and in particular Section V(1)(c), require defendants' counsel to offer opinions and impressions about who may be a survivor of abuse, indisputably impinging upon and violating defendants' privileged conversations with their counsel to elicit judicial admissions based on client confidences and secrets. The DLC further avers that this portion of the Confidentiality Order further impinges upon defendants' rights by requiring then to further create a key that contains the true names and identifying information for these individuals" which is to be shared with the court and unidentified persons chosen by the court to have the privilege of viewing this database.

At its core, the DLC contends that Section V allows the court to assume the role of investigator for the parties, thereby coopting, interfering with, and invading work product privileges and protection of parties and their counsel. The DLC further contends that the court's

Case 1:22-cv-00125-AMD-RML Document 1-3 Filed 01/07/22 Page 58 of 103 PageID #: 75

requirement that counsel seek its approval before conducting a non-party investigation or contacting non-parties has the potential to suffocate factfinding attempts within CVA lawsuits. In sum, to the extent that Section V of the Confidentiality Order imposes duties and obligations that do not exist under law, the DLC argues that it should be modified or vacated in its entirety.

In opposition, the PLC argues that Section V of Confidentiality Order sets forth procedures for the exchange of discoverable, non-privileged information. The PLC also states that defendants' request to shield discoverable facts under the guise of attorney-client and work-product privileges is vague and unfounded. The PLC also challenges defendants' assertions that the framework contemplated by this court forces defendants to assume the role of investigator. To be sure, the PLC posits that ascertaining whether someone is an abuse survivor rests on objective factual realities. Those factual realities, the PLC further states, "include publicly-filed lawsuits under the CVA, as well as direct complaints from abuse survivors identifying themselves as such (or letters from individuals identifying themselves as abuse survivors or identifying others as potential abuse survivors)." Consequently, the PLC surmises that the Confidentiality Order does not compel defendants to produce privileged documents or to divulge confidential communications with counsel. Finally, the PLC posits that while attorneys may ultimately analyze documents and facts, and devise a legal strategy based on those facts, it is their legal advice to their clients that is privileged, not the underlying facts involved. Accordingly, the PLC posits that Section V of the Confidentiality Order does not run athwart of defendants' rights under existing New York law.

## DISCUSSION

Disclosure in civil actions is generally governed by CPLR §3101(a), which directs: "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof." Courts have consistently held that "[t]he words, 'material and necessary', are ... to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" (*Allen v. Crowell–Collier Publ. Co.*, 21 NY2d 403, 406 [1968*]; see also Andon v. 302–304 Mott St. Assoc.*, 94 NY2d 740, 746 [2000] ). A party seeking discovery must satisfy the threshold requirement that the request is reasonably calculated to yield information that is "material and necessary"—i.e., relevant—regardless of whether discovery is sought from another party (*see* CPLR §3101[a][1] ) or a nonparty (CPLR §3101[a][4]; *see e.g. Matter of Kapon v. Koch*, 23 NY3d 32 [2014] ). The "statute embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility for ambush and unfair surprise" (*Spectrum Sys. Intl. Corp. v. Chemical Bank*, 78 NY2d 371, 376 [1991]).

Nevertheless, the right to disclosure, although broad, is not unlimited. CPLR §3101 itself "establishes three categories of protected matter, also supported by policy considerations: privileged matter, absolutely immune from discovery (CPLR §3101[b]); attorney's work product, also absolutely immune (CPLR §3101[c]); and trial preparation materials, which are subject to disclosure only on a showing of substantial need and undue hardship" (*Spectrum*, 78 NY2d at 376–377, *supra*). The burden of establishing a right to protection under these provisions is with the party asserting it—"the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity" (*id*. at 377).

8

In addition, "'[p]retrial disclosure extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof,' including material which might be used in cross-examination" (*Polygram Holding, Inc. v Cafaro*, 42 AD3d 339, 341 [1st Dept 2007] *quoting Fell v Presbyterian Hosp. in City of N.Y. at Columbia-Presbyt. Med. Ctr.*, 98 AD2d 624, 625 [1983]).

Finally, New York's Uniform Rules for Trial Courts Section 202.69 (*see* 22 NYCRR 202.69) allows a coordinating justice of a particular litigation to manage discovery and "issue case management orders after consultation with counsel."

Here, following the enactment of the CVA, plaintiffs and defendants litigating cases under the statute within New York City expressed a desire to establish uniform rules that would streamline the discovery process and fulfill the statute's goal of timely and expeditiously resolving such matters. To that end, I appointed a representative CVA Steering Committee consisting of the aforementioned DLC and PLC following the initial commencement of CVA actions within New York City. In the ensuing weeks, I met with the DLC and PLC to discuss issues within the litigation and solicited opinions regarding how best to coordinate discovery in CVA cases. Those meetings coalesced into the formation of CMO 1, which was the product of negotiation and consultation between the DLC and PLC. CMO 1 was issued on February 24, 2020. Thereafter, following additional negotiation and consultation between the DLC and PLC, CMO 2 was constructed, and subsequently issued on June 18, 2020. Relevantly, CMO 2 contained "Standard Automatic Disclosures Directed at Defendants," which set forth broad categories of documents to be produced by CVA defendants subject to objection. Section IX(A)(1) of CMO 2 directed the DLC and PLC to either jointly submit a proposed Confidentiality Order or to submit alternate proposals to the court by June 22, 2020, and stayed CVA defendants' disclosure obligations pending entry of a Confidentiality Order.

On June 22, 2020, the DLC and PLC each submitted their proposals with accompanying letter briefs. The court then held two conferences regarding the parties' submissions and entertained oral argument by the respective liaison committees. Following the second conference held on September 10, 2020, the DLC submitted a second letter brief on September 11, 2020. On September 18, 2020, I issued the Confidentiality Order.

The ultimate objective when this court fashioned CMO 1, CMO 2, and the Confidentiality Order, the provisions of which are consistent with the CPLR, was to allow the parties to obtain reasonably necessary documents and information without imposing undue burdens in order to permit the parties to evaluate the cases, reach early settlements, and prepare unsettled cases for trial. Discovery in CVA cases is likely to be complex, time-consuming, and expensive, and this court strives to minimize costs by ensuring that streamlined discovery is conducted. In doing so, this court has broadly interpreted the discovery obligations of both plaintiffs and defendants alike with the hope that CVA cases can be resolved without prompting expensive and drawn out disclosure periods. This approach has been consistently approved by the Appellate Division, First Department, as evidenced by its holdings in connection with challenges to case management orders drafted in connection with the New York City Asbestos Litigation (*see Matter of New York City Asbestos Litig.,* 130 AD3d 489 [1st Dept. 2015][ Coordinating justice has the authority to "issue

9

FILED: QUEENS COUNTY CLERK 08/31/2021 09:43 PM                    INDEX NO. 400298/2021

NYSCEF DOC. NO. 5    Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 60 of 103 PageID #: 77    RECEIVED NYSCEF: 08/31/2021

case management orders after consultation with counsel"]; *Matter of New York City Asbestos Litig.*, 159 AD3d 576 [1st Dept 2018][Finding that procedural protocols in new CMO, as well as other provisions challenged by defendants that were either present in preceding CMOs or appear for the first time in new CMO, do not deprive defendants of their due process or other constitutional rights, even where they do not strictly conform to the CPLR, and that the Coordinating Justice had the authority to issue these provisions absent defendants' consent]; *see also In re New York City Asbestos Litig. (Georgia-Pacific)*, 109 AD3d 7 [1st Dept 2013]; *In re NYC Asbestos Litigation (Ames v Kentile Floors)*, Index No. 107574/08, at *2 [Sup. Ct. NY. Co. June 17, 2009, Heitler, J.], *aff'd* 66 AD3d 600 [1st Dept 2009]).

Prior to this court's issuance of CMO 1, CMO 2, and the Confidentiality Order, defendants and plaintiffs litigating cases under the CVA had an opportunity to be heard. Defendants' present disagreement with the court's Confidentiality Order is not enough to warrant its vacatur where defendants were afforded ample opportunity to present arguments and proposals concerning the items raised therein. To be sure, as has been observed in other contexts, the Confidentiality Order need not be disturbed merely because some of its provisions are said to be at odds with the CPLR (*see Matter of New York City Asbestos Litig.*, 159 AD3d 576, *supra*). Rather, because this court properly solicited the input of the DLC and PLC before issuing the Confidentiality Order, it has plenary authority to implement the disclosure objectives set forth within it (*id.*). As such, defendants' challenges to the viability of this court's Confidentiality Order are unfounded.

Nevertheless, insofar as this court's Confidentiality Order contemplates by its very terms that it shall be subject to revision, the court will weigh and rule upon the issues presented by the parties in the hopes of issuing an Amended Confidentiality Order that is broadly accepted by both the DLC and PLC.

## I.    Section VIII(1)

With respect to Section VIII(1) of the Confidentiality Order, the court has considered the parties respective arguments, and finds that the provision can remain subject to slight modification and clarification (*see* annexed Amended Confidentiality Order).

As previously articulated, courts have consistently held that CPLR 3101(a)'s allowance for "full disclosure of all matter material and necessary in the prosecution or defense of an action" should be "'interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy'" in order to focus the issues in advance of trial (*see, e.g., Matter of Metro- North Train Accident of Feb. 3, 2015*, 178 AD3d 931, 933 [2d Dept 2019]). Where there is the possibility that the requested information may be used as evidence-in-chief, in cross-examination, or on rebuttal, it is deemed material for discovery purposes (*Metro-North Train Accident*, 178 AD3d at 933-934). Critically, the right to pretrial disclosure "extends not only to admissible proof but also to testimony or documents which may lead to the disclosure of admissible proof" (*Fell v. Presbyterian Hosp. in N.Y. at Columbia-Presbyterian Med. Ctr.*, 98 AD2d 624, 625 [1st Dept 1983]). Here, even if evidence of an alleged abuser's "prior bad acts" may not be deemed admissible at trial, it is unquestionable that the disclosure of such acts would be "material and necessary" within the context of CVA actions where negligent retention, negligent hiring, or negligent supervision claims are pleaded. As defendants recognize, a "necessary element" of

10

negligent retention, hiring, and supervision claims is whether an institution or employer, such as a church, "knew or should have known of the employee's propensity for the conduct which caused the injury" (*Kenneth R. v. Roman Catholic Diocese*, 229 AD2d 159, 161, 164 [2d Dept 1997] [plaintiffs stated causes of action for negligent retention and negligent supervision where their bill of particulars alleged the Catholic church had actual or constructive notice of a priest's "propensity to sexually abuse children" based on statements made by infant plaintiffs and by the priest himself to other priests]). To be sure, jurisprudence within the Appellate Division, Second Department, supports the inference that information about an alleged abuser's "prior bad acts" is necessary and relevant to a determination of whether an institution or employer was aware of an alleged abuser's propensity to sexually abuse children (*see Nevaeh T. v. City of New York*, 132 AD3d 840, 842 [2d Dept 2015]).

Contrary to defendants' assertions, the question of discoverability with respect to the disclosure of an alleged abuser's "prior bad acts" is separate and distinct from that of whether such evidence will, ultimately, be deemed admissible at trial. To be sure, one cannot conflate the CPLR's broad discovery rules by invoking standards for the admissibility of evidence of other "bad acts" at trial. Nevertheless, it is also worth noting that evidence of an alleged abuser's other "bad acts" may well be deemed admissible as evidence of actual or constructive knowledge or for non-propensity reasons, such as one's motive or intent (*see DeJesus v. Moshiashvili*, 176 AD3d 649, 650 [1st Dept 2019]).

Moreover, although some defendants posit that disclosure of an alleged abuser's prior bad acts would lead to the dissemination of protected educational, health, and agency records in contravention of multiple laws, such assertions are without merit. First, the Confidentiality Order allows for the dissemination of records of "prior bad acts" housed by an institution subject to redaction. Second, defendants are not without recourse if they believe that certain records should not be disclosed. To be sure, the PLC would consent to meet and confer with the DLC and even submit a subset of documents deemed protected to the court for *in camera* review. Third, the City defendants' generalized opposition to disclosure of records of "prior bad acts" by citing Section 50-b of the Civil Rights Law is overbroad as many of the requested documents plaintiffs are seeking do not actually identify a victim of a sex crime, and therefore fall outside the ambit of the statute. Likewise, the City defendants' opposition to the dissemination of agency records, like foster care records, must accede to the directives of this court's order in the absence of a particularized objection. Finally, the Confidentiality Order does not run afoul of HIPAA since most of the information sought by plaintiffs is not health information. To be sure, complaints or concerns that a health care provider was sexually abusing patients are not health information in the strictest sense as such complaints and concerns would not have been raised for the purpose of care or treatment, and were not intended to be confidential. As such, the court will not disturb Section VIII(1) of the Confidentiality Order as it relates to defendants need to disclose an alleged abuser's "prior bad act." The court does, however, see a need to expand on the meaning of "prior bad acts" by giving the term a definition that the parties can in turn use to inform their disclosure obligations (*see* annexed Amended Confidentiality Order).

In addition, upon review, the court finds that there is a need to remove the portion of Section VIII(1) of the Confidentiality Order that calls for the disclosure of "subsequent corrective measures." Reflecting on the arguments advanced by numerous defendants, the court finds that

11

Case 1:22-cv-00125-AMD-RML Document 1-3 Filed 01/07/22 Page 62 of 103 PageID #: 79

such a provision cannot be broadly applied to all defendants without irrevocably infringing upon the rights of some. Specifically, the court observes the arguments raised by the Diocese of Brooklyn and others relating to canon law. As highlighted by the Diocese of Brooklyn, the United States Supreme Court has held that church authorities have the freedom to organize and govern themselves according to their own law and policy, including the right to select and discipline ministers, free from state interference (*Kedroff v. Saint Nicholas Cathedral*, 344 U.S. 94, 116 [1952]). That bar against interference includes attempts to award damages to litigants whose claims implicate a church's selection and discipline of its ministers (*Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171, 194 [2012]).

Were the court to countenance the disclosure of "subsequent corrective measures," it would be interfering with the province of ecclesiastical decision-making. Such a move would run counter to the United States Supreme Court's instruction to other secular courts not to subject religious institutions to having to defend their beliefs and practices in a court of law. Inviting questions into whether a church took any "corrective measures" by altering a priest's sacramental status, and the degree to which it adhered to canon law, presents the type of situation that would impermissibly require a religious institution to defend its beliefs and practices. Therefore, discovery and examination in that regard is barred. Nevertheless, plaintiffs could individually seek, and potentially receive, from defendants disclosure of information regarding the assignment to ministry without offending constitutional constraints, as such assignments – removed from inquiry into corrective conduct – carry with them the responsibility of supervision and oversight that is at issue in many CVA cases. Consequently, the court refuses to invite broad disclosure in all CVA cases of undefined "subsequent corrective measures" that may well implicate issues surrounding church defendants' internal governance, including church decisions regarding the ecclesiastical statuses of their priests and the church's own sacramental policies. Therefore, Section VIII(1) is amended to exclude the broad disclosure of "subsequent corrective measures."

## II. Sections II(1), III(1)(a), and IV(1)(a)

As drafted, this court's Confidentiality Order allows a recipient of defendants' discovery to share that information with "the parties to a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers" (*see* Confidentiality Order, Section IV[1][a]). In addition, the Confidentiality Order prohibits recipients of discovery from disseminating the information "to any person not reasonably involved in the prosecution, defense, or settlement of a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers, or a related enforcement of insurance coverage rights (including any insurance coverage litigation ("Coverage Litigation") with respect to such a claim" (*see* Confidentiality Order, §II[1]).

At their core, the sharing provisions contained within the Confidentiality Order simply allow an individual attorney representing one victim to request discovery information from another victim's attorney, so long as the cases involve a common party or abuser, to avoid the time and expense of duplicative discovery requests and motions in each separate action. This coordinated approach is aligned with the CVA's central objective of adjudicating cases filed under the statute within a timely manner. Several institutional parties have been repeatedly named in CVA lawsuits. Where plaintiffs have filed lawsuits against the same alleged abusers and institutions, it is incontestable that a substantial overlap exists with respect to common records and files. The

necessity for this court to efficiently and expeditiously adjudicate all CVA matters before it calls out for parties to share information in specified instances, thereby avoiding a tremendous waste of time and resources.  Indeed, in Section 10 of the CVA, the legislature specifically directed the chief administrator of the courts to "promulgate rules for the timely adjudication of revived actions brought pursuant to section two hundred fourteen-g of the civil practice law and rules" (N.Y. Judiciary Law § 219-d).  Defendants request for this court to  prohibit discovery-sharing would frustrate this statutory goal, and result in protracted and costly litigation.

As highlighted in the PLC's briefs, defendant Rockefeller University has been named in several CVA lawsuits based on alleged acts of sexual assault committed by Dr. Reginald Archibald.  It would be highly inefficient, as the PLC underscores, for "each plaintiff to individually request, and for [defendant] Rockefeller [University] to separately produce, the exact same information regarding the grand jury investigation of Dr. Archibald and Rockefeller University during 1960-1961."  The need for efficiency presupposes that discovery sharing occur in such cases.  Other cases filed with this court under the CVA demand the same common-sense approach that would apply to a defendant like Rockefeller University.

In addition, discovery-sharing supports the CVA's goal of case coordination. Specifically, the legislature established dedicated parts within the New York State Supreme Court to adjudicate claims under the CVA, required special training of judges, and provided trial preference for older abuse victims (22 NYCRR § 202.72).  In furtherance of that objective, this court, along with the DLC and PLC, has already  worked to create CMO 1 and CMO 2, and has implemented standard disclosures as well as coordinated motion practice. As the litigation progresses, collaboration with respect to deposition-taking will be necessary.  Such collaboration will require discovery-sharing with to all plaintiffs who  have filed claims against the same defendant.  Discovery-sharing will help facilitate such collaboration.  Indeed, discovery-sharing has been ordered by courts across the country adjudicating claims of child sex abuse (*see Clergy Cases II Ord*er, No. JCCP4297 [CA Super. Ct. June 7, 2006][discovery-sharing ordered in California child sex abuse cases]; *see A.G. v. Corp. of the Catholic Archbishop of Seattle*, 162 Wn. App. 16 [Wash. Ct. App. 2011][ Washington Court of Appeals authorized discovery-sharing in multiple child sex abuse cases against the Archdiocese of Seattle]).

Contrary to defendants' position, this court's decision to allow plaintiffs' attorneys to share specific information about a common abuser is squarely within its broad discretion to settle matters relating to disclosure in  accordance with CPLR §§ 3101(a) and 104.  Notably, CPLR §104 specifically provides that "[t]he civil practice law and rules shall be liberally construed to secure the just, speedy, and inexpensive determination of every civil judicial proceeding."  Once again, discovery-sharing satisfies that objective. Even so, defendants submit that at the very least Section III(1)(a) should be modified to include information of a personal nature so that categories of information such as occupational and educational records are not automatically subject to disclosure. In response, plaintiffs appear to concede that there are instances where personnel files may be irrelevant if claims of negligent retention, hiring, or supervision, are not advanced.  But where such claims are advanced, and a necessary element of the proof required involves an institution or employer's knowledge of whether an abuser had a propensity to commit the subject misdeeds, there can be no question that complaints or records in an alleged abuser's files are

13

Case 1:22-cv-00125-AMD-RML  Document 1-3  Filed 01/07/22  Page 64 of 103 PageID #: 81

directly relevant to defendants' knowledge of his or her propensity to commit the acts alleged. As such, disclosure of personnel files is warranted in such instances. At this juncture, Insofar as the Confidentiality Order already contemplates that all persons receiving confidential information are required to maintain that confidentiality, the court does not see a need to adopt the proposed amendment to Section III(1)(a) sought by defendants.

In sum, the court sees no need to disturb the discovery-sharing provisions set forth in Sections II(1), III(1)(a), and IV(1)(a) of the Confidentiality Order.

## III.    Section IV(4)

Next, defendants argue that Section IV(4) of the Confidentiality Order improperly imposes an obligation on defendants to justify confidentiality and privilege designations. The court disagrees with that assessment. As highlighted by the PLC, an individual or entity seeking a protective order bears the initial burden to establish that any specified information should be protected from discovery (*see Liberty Petroleum*, 164 AD3d 401, *supra*). In line with that philosophy, defendants seeking to designate certain information as confidential, "will have the burden of justifying the propriety of [that] designation" in the face of any challenge (*see* Confidentiality Order, Section IV[4]). If the court reversed this rule, as urged by defendants, nothing would prevent defendants from designating each and every document as confidential. Faced with that scenario, plaintiffs would then be forced to make myriad applications seeking to unseal records. Such an outcome would run counter to openness and accessibility that this court's Confidentiality Order seeks to achieve. Moreover, the DLC's suggestion that the burden be shifted to plaintiffs would likely frustrate the aims at efficiency contemplated by the Confidentiality Order, including a process to avoid numerous, duplicative motions for a protective order or to compel. The cases cited by defendants in their moving papers do not require a different result, as none squarely address the initial burden one must overcome when designating a document as confidential. Even so, defendants' concerns must be balanced against the overwhelming need to expeditiously process and resolve CVA lawsuits.

As such, the court preserves Section IV(4) in its current form.

## V.    Section V

Finally, defendants seek removal of Section V of the Confidentiality Order on account of its direction that defendants disclose the identities of non-parties contained in produced records absent specific authorizations. Defendants contend that such a practice could place them in unenviable position of having to violate varying and regulations that prohibit them from disclosing the identities of non-parties (e.g. the Buckley Amendment, the Americans with Disabilities Act). Defendants also question Section V's direction that CVA defendants redact the name of any person who has filed a CVA action under pseudonym, and replace it with a "doe code" in documents produced in discovery and then to supply to each plaintiff a list of counsel. In addition, defendants oppose Section V's requirement that they maintain a centralized database of "doe codes" to track persons "who may be a survivor of child sex abuse." Such a provision, defendants posit, would require defendants' counsel to offer opinions and impressions about who may be a survivor of child sex abuse, a practice likely to infringe upon privileged conversations with their clients.

14

Contrary to defendants' assertions, the determination of whether someone is an abuse survivor largely rests on indiscriminate facts such as publicly filed documents, as well as direct complaints from abuse survivors identifying themselves as such. Likewise, while attorneys may ultimately analyze those facts and devise a legal strategy, the facts alone are not privileged. Indeed, the attorney-client privilege "applies only to confidential communications with counsel" and "does not immunize the underlying faction information…from disclosure to an adversary" (*Niesig v. Team I*, 76 NY2d 363, 372 [1990]).

Here, Section V of the Confidentiality Order compels defendants to identify potential abuse survivors based on discoverable facts rather than attorneys' interpretation and analysis of those facts. As such, the disclosure of underlying facts surrounding potential abuse survivors does not violate the attorney-client privilege. Likewise, the work product doctrine does not immunize underlying facts from disclosure, and the party asserting this privilege bears the burden of showing that materials were prepared exclusively for litigation purposes (*Cioffi v. S.M. Foods, Inc.*, 142 AD3d 520, 522 [2d Dept 2016]).

Nevertheless, defendants voice legitimate concerns with respect to the practical application of Section V of the Confidentiality Order. For instance, the court's requirement that counsel seek its approval before conducting a non-party investigation or contacting non-parties has the potential to disturb defendants' factfinding attempts. Likewise, the requirement that defendants maintain a "key that contains the true names and identifying information for [identified] individuals" to be shared with the court and presently unidentified personnel chosen by the court could be unduly burdensome in the aggregate. Indeed, creation and maintenance of databases, as contemplated by the court, may well upset the aims at efficiency contemplated by this court.

As such, even though the court does not consider Section V of the Confidentiality Order as offensive to existing legal precedent, its vacatur is warranted in light of the court's concerns with respect to its implementation. Accordingly, the court strikes the language contained within Section V of the Confidentiality Order in its entirety.

### DIRECTIVES

The court reserves its right to issue directives subsequent to the issuance of this decision and order where necessary. The changes to the Confidentiality Order adopted by this court are reflected in the annexed Amended Confidentiality Order, which in turn replaces the Confidentiality Order issued by this court on September 18, 2020. As such, it is hereby

ORDERED that Section VIII(1) of the Confidentiality Order is amended in accordance with the annexed Amended Confidentiality Order; and it is further

ORDERED that Sections II(1), III(1)(a), and IV(1)(a) of the Confidentiality Order shall remain in place as reflected in this court's Confidentiality Order dated September 18, 2020; and it is further

ORDERED that Section IV(4) of the Confidentiality Order shall remain in place as reflected in this court's Confidentiality Order dated September 18, 2020; and it is further

15

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 66 of 103 PageID #: 83

ORDERED that Section V of the Confidentiality Order is rescinded in accordance with the annexed Amended Confidentiality Order.

This constitutes the decision and order of the court.

**Dated**: March 30, 2021

_____

**GEORGE J. SILVER, J.S.C.**

16

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 67 of 103 PageID #: 84

# AMENDED CONFIDENTIALITY ORDER

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
------------------------------------------------------------ x
                                     :
                                     :
                                     :      **AMENDED**
**In re: CHILD VICTIMS ACT LITIGATION** :      **CONFIDENTIALITY ORDER**
                                     :
                                     :      **CASE MANAGEMENT**
                                     :      **ORDER ("CMO") No. 2**
                                     :

------------------------------------------------------------ x

**CONFIDENTIALITY ORDER**
**Pursuant to Sec. IX of CMO 2**

      WHEREAS this court finds good cause exists for the issuance of this confidentiality order governing the pre-trial phase of actions litigated under the Child Victim's Act (L. 2019 c.11), including this action; and

      WHEREAS this confidentiality order shall remain in effect unless otherwise modified;

      IT IS HEREBY ORDERED that all persons and entities subject to this order – including without limitation the parties, their attorneys, representatives, agents, experts and consultants, all non-parties providing discovery in this action, and all other interested persons with actual or constructive notice of this order, including their counsel, shall adhere to the following terms:

**I.      Applicability.**

           1.      The terms and conditions of this order will be applicable to and govern all information, documents, and tangible items produced in this action, including, but not limited to, responses to requests for admission, deposition testimony, and deposition transcripts and/or videos, regardless of their medium or format ("Discovery Materials"). Discovery Materials that are designated as "Confidential Information," which includes Confidential Health Information, are referred to herein as Confidential Discovery Materials.

           2.      Any person subject to this order who receives Confidential Discovery Materials ("Receiving Party") from another person ("Producing Party") shall not disclose such Confidential Discovery Materials, except as expressly permitted hereunder.

1

    3.    Discovery Materials that are designated by a non-party as "Confidential Information" will be treated as Confidential Discovery Materials under this order regardless of whether the non-party is or becomes bound by the terms of this order.

## II.    Use and Disclosure of Confidential Discovery Materials.

    1.    No Receiving Party may disseminate or cause the dissemination of any Confidential Discovery Materials to any person not reasonably involved in the prosecution, defense, or settlement of a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers, or a related enforcement of insurance coverage rights (including any insurance coverage litigation ("Coverage Litigation") with respect to such a claim. The fact that this order permits the disclosure of Confidential Discovery Materials in the Coverage Litigation shall not be construed or otherwise deemed as a finding that such Materials are relevant to or otherwise required to be produced in the Coverage Litigation. Whether any Confidential Discovery Materials are produced in the Coverage Litigation is to be determined by the parties to the Coverage Litigation or, in the event of a dispute, by the Court in the Coverage Litigation. In the event Confidential Discovery Materials are produced in the Coverage Litigation, they shall be subject to an appropriate confidentiality order entered in the Coverage Litigation.

    2.    Nothing in this order will affect or restrict a Producing Party's maintenance, use, and/or disclosure of its own documents or information. Disclosures (other than public disclosures) by a Producing Party of its own documents or information will not affect any designation as Confidential Discovery Materials under this order. Nothing in this order will prevent or restrict counsel from rendering advice to their clients, and in the course thereof, relying on an examination of Confidential Discovery Materials.

    3.    The court may issue additional orders concerning the use and disclosure of Discovery Materials and Confidential Discovery Materials, including in connection with depositions noticed in multiple actions concerning the same perpetrator.

## III.    Confidential Designation.

    1.    Any party may designate all or portions of Discovery Materials as "Confidential Information" to the extent that it believes, in good faith, such designated materials need protection from disclosure under federal, state, or local privacy law because such material contains:

        a.    "Confidential Information," which includes without limitation (i) non-publicly disclosed information, including data, summaries, and compilations derived therefrom, that contains scientifically,

2

medically, financially, commercially sensitive information and/or private information as defined in NY Shield Act, N.Y. Gen. Bus. Law § 899-aa ("PI") and (ii) Confidential Health Information, as defined below;

b. "Confidential Health Information," includes "patient information," as defined in New York State Public Health Law § 18(1)(e), and "protected health information" and "individually identifiable health information," as defined in 45 C.F.R. § 160.103, promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, as amended (collectively, "HIPAA"), and which is permitted to be disclosed in the context of judicial and administrative proceedings pursuant to 45 C.F.R. § 164.512(e)(1), subject to certain requirements contained therein. Confidential Health Information includes any information that a party believes, in good faith, needs protection from disclosure under federal, state, or local privacy law because it identifies an individual in any manner and is related to (1) the past, present, or future care, services, or supplies relating to the health or condition of such individual, (2) the provision of health care to such individual, or (3) the past, present, or future payment for the provision of health care to such individual. Confidential Health Information includes medical bills, claim forms, charge sheets, medical records, medical charts, test results, prescriptions, medical notes and dictation, medical invoices, itemized billing statements, remittance advice forms, explanations of benefits, checks in payment of medical services or supplies, medical notices and requests, social security numbers, and similar information. Confidential Health Information includes all notes, summaries, compilations, extracts, abstracts, or oral communications that contain, are based on, or are derived from Confidential Health Information but does not include such information when individual identifiers are not included and/or the information is de-identified in accordance with the HIPAA de-identification standard set forth in 45 C.F.R. § 164.514(a). Confidential Health Information also includes any materials subject to the confidentiality provisions of any applicable federal, state, or local law, including, but not limited to the New York Public Health Law, CPLR § 4505, the Americans with Disabilities Act, as amended, the Genetic Information Nondiscrimination Act of 2008 ("GINA"), the Mental Hygiene Law, and the Confidentiality of Alcohol and Drug Patient Records under 42 U.S.C. Sec. 290dd-2 and 42 C.F.R. Part 2, and other applicable privacy laws, or any applicable statutory or common law.

To the extent reasonably practicable, a Producing Party will limit its designation of Confidential Information to specific portions of material that qualify under this definition. Where it would not be

3

cost effective or would be burdensome, however, the Producing Party may designate an entire group of Discovery Materials as "CONFIDENTIAL INFORMATION."

2.  <u>Depositions</u>.  When a deposition includes the disclosure of Confidential Information:

   a.  Portions of the deposition and deposition exhibits may be designated as "CONFIDENTIAL INFORMATION" as appropriate, subject to the provisions of this order either by (i) indicating on the record during the deposition that a question calls for Confidential Information, in which case the reporter will mark the pages of the transcript containing the designated testimony as "Confidential Information Governed by Protective Order," or (ii) notifying the reporter and all counsel of record, in writing, within ten (10) days of receiving the deponent's signature or the date the transcript is deemed signed pursuant to CPLR § 3116(a), of the portion that contains Confidential Information, and the Designating Person shall reproduce that portion with the appropriate designation.  During that 10-day period identified above, all parties will treat the entire deposition transcript, video or exhibit as if it had been designated as Confidential Information.  The parties may also agree to treat a deposition transcript as Confidential in its entirety until trial.

   b.  The Producing Party will have the right to exclude from the deposition, during such time as the Confidential Information is to be disclosed, any person other than the subject of the Confidential Information; the deponent (and his or her counsel); parties and counsel for all parties (including their staff and associates); the court reporter, and the persons identified in Section IV below.

3.  <u>Documents</u>.  With respect to any Discovery Materials or portion thereof containing Confidential Information other than deposition transcripts and exhibits, the Producing Party or its counsel may designate such information contained in the Discovery Materials as Confidential Information by stamping or otherwise marking as "CONFIDENTIAL INFORMATION" the protected portion in a manner that will not interfere with legibility or audibility.

4.  <u>Electronically Stored Information</u>.  Electronically stored information ("ESI") that a Producing Party wishes to designate as Confidential Information shall be marked as "CONFIDENTIAL INFORMATION."  If the ESI is transmitted through a file transfer protocol or other electronic transmission, it shall be encrypted with the password supplied in separate correspondence to the recipient or otherwise transmitted by secure means.

4

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## IV.   Disclosure of Confidential Information.

Confidential Information will not be disclosed by the Receiving Party except as permitted by this order.

1.   Permissible Disclosures.   A Receiving Party may disclose a Producing Party's Confidential Information only to the following persons:

   a.   the parties to a civil claim related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers;

   b.   such parties' counsel, which shall mean in-house counsel, outside counsel of record, and other attorneys, paralegals, secretaries, other support staff or vendors (such as litigation support, investigators, copy-service providers, scanning providers, and document-management consultants) employed or retained by counsel;

   c.   the Receiving Party's expert witnesses, consultants (e.g., jury consultants and mock jurors), and their support staff, retained by counsel in connection with this action, who first sign an "Agreement To Be Bound by Stipulated Protective Order", in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

   d.   the author, addressee, and/or other person indicated on a document as having received a copy of that document or that a party believes is referenced in a document;

   e.   the insurers and reinsurers, including their counsel and consultants in the Coverage Litigation, upon the appropriate entry of a confidentiality order in the Coverage Litigation and the insurers, reinsurers, their counsel and consultants agreeing to be bound by that order's terms;

   f.   a witness who a party's counsel in good faith believes may be called to testify at a deposition or trial, who first signs an "Agreement to be Bound by Stipulated Protective Order" in the form attached hereto as Exhibit A, which counsel for the Receiving Party shall retain;

   g.   any mediator, arbitrator, referee, or special master that the parties agree to or that this court appoints;

   h.   this court, including any appellate court, its support and administrative personnel; and

5

i.    any court reporter and associated support staff employed in this litigation.

2.    <u>Authorized Disclosures.</u>  A Receiving Party may disclose Confidential Information if:  (i) the Producing Party or the subject of the Confidential Information, as applicable and to the extent of their authority, consents to such disclosure; (ii) the court, after notice to the parties and the subject of the Confidential Information, as applicable, allows such disclosure; or (iii) the Receiving Party is required to disclose Confidential Information pursuant to a subpoena or other legal demand, by law, or to a regulatory entity or other government agency, provided that, to the extent permitted by law, the Receiving Party gives prompt notice to counsel for the Producing Party and to the subject of the Confidential Information, as applicable, so that the Producing Party can oppose, with the Receiving Party's reasonable cooperation, or minimize disclosure of such Confidential Information.

3.    <u>Disclosures by Covered Entities and/or Health Care Providers and Business Associates.</u>  Subject to a properly executed release, all "covered entities" and "business entities" (as defined by 45 C.F.R. § 160.103) and/or "health care providers" (as defined by New York Public Health Law § 18 (1)(b)) are hereby authorized to disclose Confidential Information, including Confidential Health Information, pertaining to this action to those persons designated in paragraph 1.a of this section.

4.    <u>Challenges to Designation as Confidential Information</u>.  A party who objects to any designation as Confidential Information may, at any time before the trial of this action, send to counsel for the Producing Party a written notice, specifying the documents or information that the challenging party contends should be differently designated and the grounds for the objection.  The challenging party and the Producing Party shall meet and confer about the objection within ten (10) court days of the Producing Party receiving such written notice unless otherwise agreed.  If the challenging party and the Producing Party cannot reach agreement, the Producing Party shall seek relief from the court in accordance with its rules and procedures within ten (10) court days of the meet and confer.  The Producing Party will have the burden of justifying the propriety of its designation, which will continue as originally designated, unless otherwise ordered by the court or unless the Producing Party or the subject of the Confidential Information, as applicable, withdraws its designation in writing.  In the event that the court rules that the challenged material's designation should be changed, the Producing Party shall reproduce copies of all materials with their designations removed or changed in accordance with the ruling ten (10) business days of the ruling or the schedule set by the court, whichever is later.  "Writing" and "written notice" shall include electronic communications.

6

FILED: QUEENS COUNTY CLERK 08/31/2021 09:43 PM                    INDEX NO. 400298/2021

NYSCEF DOC. NO. 5    Case 1:22-cv-00125-AMD-RML    Document 1-3    Filed 01/07/22    Page 74 of 103 PageID #: 91    RECEIVED NYSCEF: 08/31/2021

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

V.    ~~Identities of Abuse Survivors~~. **[RESCINDED]**

    1.    ~~Possible Abuse Survivors Who Are Plaintiffs and/or Who Are Otherwise Represented by Counsel.~~

        a.    ~~Where a document contains the name of a Plaintiff who has filed suit under a pseudonym, the Producing Party shall redact the name and replace it with the pseudonym. The Producing Party shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by pseudonym and identify the attorneys representing each of them. Any such list is Confidential Information.~~

        b.    ~~Where a document references the name of a Plaintiff who has filed suit in his or her own name, the Producing Party shall produce the document without redaction but shall simultaneously produce to the Receiving Party's counsel a list of these Plaintiffs by their name and identify the attorneys representing each of them. Any such list is Confidential Information.~~

        c.    ~~Where a document references the name of a person who may be a survivor of child sex abuse, but the Producing Party is not aware that the person has filed suit, the Producing Party shall redact the person's name and replace it with a unique "Doe code" that allows the person to be tracked across documents. However, if the Producing Party is on notice that such a person may be represented by counsel, the Producing Party will simultaneously produce to the Receiving Party's counsel a list of these individuals by Doe code and identify the attorneys representing them. Any such list is Confidential Information.~~

        d.    ~~No party or their counsel will contact a Plaintiff or a person identified by a "Doe code" who is represented by counsel unless permission to do so is given by that Plaintiff or person's counsel. Rather, any party or their counsel who believes in good faith that contacting a Plaintiff or person identified by a "Doe code" is important to the party's claim or defenses may do so only through contact with the attorney representing that Plaintiff or person identified by a "Doe code."~~

        e.    ~~If permission to speak with the Plaintiff or person identified by a "Doe code" is denied or not responded to within a reasonable time, a party or their counsel may ask the court and/or other designated personnel appointed by the court for such communication.~~

    2.    ~~Possible Abuse Survivors Who Are Not Represented by Counsel~~.

7

FILED: QUEENS COUNTY CLERK 08/31/2021 09:43 PM    INDEX NO. 400298/2021

NYSCEF DOC. NO. 5    Case 1:22-cv-00125-AMD-RML    Document 1-3    Filed 01/07/22    Page 75 of 103 PageID #: 92    RECEIVED NYSCEF: 08/31/2021

**CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2**

a. If a Producing Party does not believe that a person identified by a "Doe code" is represented by counsel, the Producing Party will create a list of the "Doe codes" for such persons with a key that contains the true names and identifying information for these individuals (the "Unrepresented Survivors List"). Any such list is Confidential Information but shall not be shared with anyone other than the court and/or other designated personnel appointed by the court.

b. A party or their counsel may seek to contact an Unrepresented Survivor on the Unrepresented Survivors List through the following procedure:

    i. The party or their counsel must submit an email or letter to the court and/or other designated personnel appointed by the court that sets forth their good faith belief that an Unrepresented Survivor may have discoverable information for the party's case. Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be copied on the email or letter to the court and/or other designated personnel appointed by the court.

    ii. The court and/or other designated personnel appointed by the court, after conferring with Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel to understand if there are other parties who wish to speak to the same person, shall contact the Unrepresented Survivor, explain that information is being sought to assist with a party's claims or defenses, and inquire if the Unrepresented Survivor has any objection to being contacted.

    iii. If the Unrepresented Survivor agrees to be contacted, the court and/or other designated personnel appointed by the court shall so advise the requesting party or their counsel by email or letter, and copy Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. The court and/or other designated personnel appointed by the court shall also advise the requesting party or their counsel of the Unrepresented Survivor's preferred means of being contacted.

    iv. If an Unrepresented Survivor advises the court and/or other designated personnel appointed by the court that he or she does not want to be contacted, the court and/or other designated personnel appointed by the court shall advise the party or their counsel who made the request, by email or letter, with a copy to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Thereafter, the court and/or

8

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

other designated personnel appointed by the court shall provide the full name and last known address of the Unrepresented Survivor to the party or their counsel who made the request and to Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel. Upon being provided with the identity of the Unrepresented Survivor, the parties in the action in which the relief is sought, Plaintiffs' Liaison Counsel, and Defendants' Liaison Counsel will coordinate the issuance and service of a subpoena on the Unrepresented Survivor in order to avoid duplicative subpoenas and to lessen any burden or hardship that such subpoena may cause to an Unrepresented Survivor.  Other than service of the subpoena, no party or their counsel, or anybody acting on their behalf, may contact the Unrepresented Survivor prior to the deposition pursuant to the subpoena.

v.    Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be charged with coordinating, to the extent practicable, all motions, subpoenas, and depositions concerning Unrepresented Survivors in order to avoid duplicative motions and to lessen any burden or hardship that such motions or subpoenas may cause to an Unrepresented Survivor.

vi.    Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel shall be given at least 20 days' notice by email of any deposition that may be noticed of an Unrepresented Survivor for the purpose of coordinating attendance at the deposition by other parties who have claims or defenses where information possessed by the Unrepresented Survivor may be discoverable and minimizing, to the extent practicable, any burden on the Unrepresented Survivor.

vii.    The court and/or other designated personnel appointed by the court shall maintain a copy of deposition transcripts of Unrepresented Survivors so the transcripts may be used by other parties with claims or defenses where the transcript may contain discoverable information.

c.    Nothing contained herein shall prevent a party or their counsel from contacting a person where the identity of the person was learned through sources other than documents produced pursuant to this Section.

9

## VI.   Procedures for Filing Confidential Discovery Materials with the Court.

1.   If a party wants to file materials containing Confidential Information ("Moving Party"), such filing shall be initially submitted directly to the court via electronic mail with simultaneous transmission to all other parties to the action. The Confidential Information shall not be filed in the public record until the court rules on whether the Confidential Information should be redacted or sealed as outlined below.

2.   Within five (5) court days of any such submission to the court, counsel for the Moving Party and the Producing Party shall meet and confer in good faith in an attempt to reach agreement as to appropriate redactions and/or sealing of any Confidential Information contained in the submission. If Counsel for those parties cannot reach agreement, any remaining dispute shall be submitted via a joint letter by those parties to the court, not to exceed five pages, within ten (10) business days of the meet and confer. Any party may use its portion of any such joint letter to request full briefing of the dispute. The Moving Party shall be responsible for submitting the joint letter to the court.

3.   Within five (5) court days of the court issuing its ruling on whether the Confidential Information should be redacted or sealed, the Moving Party shall file the material consistent with the court's ruling. If the court rules that the Producing Party has met its burden of showing that Confidential Information should be redacted or sealed, the Moving Party shall redact the Confidential Information or file the Confidential Information under seal in accordance with the rules of the court and the court's order.

4.   Any party shall be permitted to file under seal Confidential Health Information without seeking leave of court.

## VII.   Inadvertent Disclosure.

a.   Confidential Information. If a party inadvertently produces any materials without a confidentiality designation, the Producing Party may provide written notice to the Receiving Party that the materials are Confidential Discovery Materials under this order and promptly reproduce the materials with an appropriate designation. The Receiving Party will treat the materials as Confidential Discovery Materials upon receipt of such notice and, within five (5) business days, take all reasonable steps to retrieve such materials from persons to whom the Receiving Party has disclosed such materials without a confidentiality designation or to confirm such persons have destroyed such materials.

b.   Privileged Materials. If a Producing Party inadvertently discloses information subject to a claim of attorney-client privilege, attorney

10

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 78 of 103 PageID #: 95

work product doctrine, patient privacy protections, and/or other protections from disclosure ("Inadvertently Disclosed Information"), such disclosure, in and of itself, will not constitute or be deemed a waiver or forfeiture of any claim of privilege and/or other protection from disclosure with respect to the Inadvertently Disclosed Information.

i.    Within five (5) business days after a Producing Party provides written notice of such inadvertent disclosure, the Receiving Party will return, sequester, or destroy all such Inadvertently Disclosed Information in its possession and provide to the Producing party a written certification that (a) this has been done, or (b) this has not been done because the Receiving Party has a good faith belief that the information was not inadvertently disclosed or that the information is not the proper subject of any claim of attorney-client privilege, attorney work product doctrine, patient privacy protections, and/or other protections from disclosure. In addition, if the Receiving Party has disclosed such information to others before receiving notice, the Receiving Party will (a) take reasonable steps to retrieve the information or ensure it has been destroyed, or (b) provide to the Producing Party with the names and contact information to whom this information was disclosed.

ii.   Within thirty (30) days from the date of the certification referenced in (i), the Producing Party will (a) produce a privilege log for the Inadvertently Disclosed Information, and (b) if the Inadvertently Disclosed Information appears only in portions of documents, produce redacted copies of those documents.

iii.  If a Receiving Party thereafter moves the court for an order compelling production of the Inadvertently Disclosed Information, the Producing Party bears the burden of establishing the privileged or protected nature of any Inadvertently Disclosed Information. Such motion practice shall be governed by the process described in Section 6. Nothing in this order shall limit the right of any party to request that the court conduct an *in camera* review of the Inadvertently Disclosed Information.

c.    Consistent with New York Rule of Professional Responsibility 4.4(b) and any other applicable rules, if a Receiving Party reasonably believes that a document produced by a Producing Party is subject to attorney-client privilege and/or other protection from disclosure, the Receiving Party shall promptly notify the Producing

11

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

Party.  Within ten (10) days from a request by the Producing Party, the Receiving Party will return or destroy all copies of the document and certify in writing that this has been done. In any event, the Receiving Party will immediately cease all use of the materials at issue, will not read any unread portion of the documents, and will not refer to the privileged content during the course of this matter.

## VIII.  Additional Provisions

1.  <u>Prior Bad Acts, Subsequent Bad Acts and Corrective Measures</u>. Generally, consistent with the substance of this order, records of: 1) prior bad acts,[1] not limited to including previous accusations of sexual abuse, against an alleged sexual abuse perpetrator; or 2) subsequent bad acts, not limited to consequent accusations of sexual abuse, by an alleged sexual abuse perpetrator and corrective measures by an institution, are discoverable, and will be disclosed upon request.

2.  <u>Treatment of Discovery Materials Upon Termination of Action.</u>  Within sixty (60) days of the later of the expiration of the applicable statute(s) of limitations regarding professional malpractice concerning the action or final termination of this action, including any appeals, each party to the action and its counsel must delete, destroy, or return to the Producing Party all Confidential Discovery Materials, including any copies, excerpts, and summaries of Confidential Discovery Materials contained therein. However, counsel to a party to other civil claims related to allegations of child sexual abuse involving one or more of the same parties or one or more of the same alleged abusers is not obligated to delete, destroy, or return Discovery Materials until  sixty (60) days after all such claims are terminated, including any appeals.  Notwithstanding the foregoing, counsel shall be entitled to retain client communications, attorney work product and, for archival purposes, paper and electronic copies of pleadings, court submissions, including exhibits, correspondence, transcripts and accompanying exhibits, and memoranda that contain, attach or refer to Confidential Discovery Materials, including a complete record of any proceedings before the court, and will continue to be bound by this order with respect to all such information that is kept after the conclusion of this action.  Nothing herein shall require a party or its counsel to delete Confidential Discovery Materials of another party that may reside on its respective electronic archives or disaster recovery systems, except that such materials will not be retrieved or used for any purpose after the conclusion of this action.

---

[1] For purposes of Section VIII(1), "Prior Bad Acts" are broadly defined to include documents,  reports, complaints, notations within personnel files, and elsewhere, of previous accusations of abuse against an alleged sexual abuse perpetrator.

12

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

3.    No Waiver.   Nothing in this order shall be construed as an abrogation, waiver or limitation of any kind by a party or non-party of:  (a) its right to object to any discovery request on any ground; (b) any applicable privilege or protection; or (c) its right to object to the admissibility at trial of any document, testimony or other evidence.  In addition, nothing in this order shall be construed as limiting any waiver of physician-patient privilege by Plaintiff by reason of bringing this action and asserting claims for damages. This order shall not prevent a party from applying to the court for further or additional protective orders.

4.    Non-Applicability of Order.  The restrictions and obligations set forth in this order will not apply to any information that is publicly available, unless the information has become public in violation of this order.  No party will be responsible to another party for disclosure of information that would otherwise be confidential under this order if such information is not labeled or otherwise identified in accordance with this order, except that readily recognizable "Confidential Health Information" cannot be disclosed by any party, even if inadvertently produced without a "CONFIDENTIAL INFORMATION" designation.

5.    Notices.   Transmission by electronic mail is acceptable for all notification purposes under this order.

6.    Modification.  This order may be modified by written agreement of the Parties, subject to approval by the court, or by application to the court.  The court reserves the right to modify this order for any reason that the court deems appropriate.

7.    Duration.  This order only applies to pre-trial matters because the court acknowledges the standard for redacting or sealing information may be different for trial.

8.    Survival.  After termination of this action, the provisions of this order shall continue to be binding, except with respect to those documents and information that become a matter of public record.  This court retains continuing jurisdiction over all persons subject to this order for enforcement of the provisions of this order or to impose sanctions for any contempt thereof.

**Dated**: March 30, 2021

_____
**GEORGE J. SILVER, J.S.C.**

13

CONFIDENTIALITY ORDER Pursuant to Sec. IX of CMO 2

## AGREEMENT TO BE BOUND BY CONFIDENTIALITY ORDER

I, _____, have read the foregoing confidentiality order ("order") in this action and have received a copy of the order. I agree that I will not disclose any Confidential Discovery Materials, as defined in the order, other than as expressly permitted. I will destroy or return all Confidential Discovery Materials to the attorney who provided it to me, upon request of that attorney, and I shall not retain any copies of said Confidential Discovery Materials or any information contained within those Confidential Discovery Materials designated as Confidential after the termination of this litigation, including all appeals.

By acknowledging these obligations, I understand that I am submitting myself to the jurisdiction of the Supreme Court of the State of New York, [                ] concerning any issue or dispute arising hereunder and that my disclosure of Confidential Information in any manner contrary to the terms of the order may subject me to sanctions for contempt of court.

Dated:_____          Signature: _____
                                  Printed Name: _____

14

Page Intentionally Left Blank

SUPREME COURT OF THE STATE OF NEW YORK
COUNTIES OF BRONX, KINGS, NEW YORK, QUEENS AND RICHMOND
_____

In re:  CHILD VICTIMS ACT LITIGATION        EXHIBIT D to CASE MANAGEMENT
                                            ORDER No. 2, Sec. IX.C.4


_____


## STANDARD COMBINED DEMANDS
## DIRECTED AT PLAINTIFFS


**PLEASE TAKE NOTICE**, that each Defendant, pursuant to Articles 21, 31, and 45 of the Civil Practice Law and Rules and Case Management Order No. 2 ("CMO"), hereby make the following discovery demands upon Plaintiffs.  The following demands are returnable separately by each individual Plaintiff to the offices of the said attorneys within the time period specified by the CMO.


## DEMAND TO PRODUCE NAMES AND ADDRESSES
## OF ALL WITNESSES AND EYEWITNESSES

PLEASE TAKE NOTICE, that pursuant to Article 31 of the Civil Practice Law and Rules, to the extent not previously provided and other than those identified in response to the Automatic Disclosures by Plaintiff, each Plaintiff is required to serve upon and deliver to the undersigned, the following:

1.      The name and address of each witness to the following:

    (a)      Any allegations in the Complaint or Bill of Particulars;

    (b)      Any acts, omissions or conditions alleged by Plaintiff(s) to have caused or contributed to the incident(s) alleged in the Complaint or Bill of Particulars; and

    (c)      Any injuries alleged to have resulted from the incident(s) alleged in the Complaint or Bill of Particulars.

2.      The name and last known address of the persons who resided with Plaintiff from Plaintiff's birth through Plaintiff's 21st birthday, including at the time of the alleged abuse, and persons who reside with Plaintiff presently, and the relationship of each identified person to Plaintiff.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 84 of 103 PageID #: 101

3.    The name(s) and last known address(es) of any person(s) who provided an oral or written statement about the incident(s) alleged in the Complaint or Bill of Particulars;

4.    If you are unable to provide any of the above information, please provide a description reasonably sufficient to identify each person Plaintiff believes may have been a witness, including all individuals, even if employed by any of the named Defendants.

## DEMAND FOR DISCOVERY AND INSPECTION OF INCIDENT REPORTS & STATEMENTS

PLEASE TAKE NOTICE, that pursuant to Article 31 of the Civil Procedure Law and Rules, each Plaintiff is required to produce and permit discovery of the following documents, statements and things for inspection:

1.    Copies of all transcripts of oral statements and/or written statements provided by the individuals identified in response to paragraph 3 of the preceding Demand for Witnesses in the possession, custody, or control of each Plaintiff;

2.    All writings and/or documents, whether electronic or paper or otherwise, including, but not limited to incident reports, correspondence, diary or journal entries, notes, blog entries/posts, status updates, and demands and responses to demands made pursuant to 5 U.S.C. § 552 and/or NYS Public Officers Law § 84 et seq., made by or on behalf of Plaintiff or received by Plaintiff and in Plaintiff's possession, custody, or control that relate to the alleged abuser, any of the named Defendants, and/or claims and damages alleged in the Complaint and Bill of Particulars, or which constitute statements against interest or party statements;

3.    With respect to any statements made by each Defendant, its agents, servants or employees, which were not reduced to writing, state the names and addresses of each individual who spoke, discussed or otherwise communicated with Defendant, its agents, servants or employees, together with any notes or memoranda made by such individuals with respect to each such conversation, discussion or review.  If no such statements are in the possession, custody, or control of Plaintiff or anyone acting on Plaintiff's behalf, so state in reply to this demand; and

4.    Copies of all transcripts of testimony concerning the alleged abuse and/or alleged acts or omissions of each Defendant including, but not limited to, any examinations under oath, departmental hearings, administrative and/or judicial hearings and proceedings, and criminal proceedings.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 85 of 103 PageID #: 102

## DEMAND FOR DISCOVERY AND INSPECTION OF
## EMPLOYMENT RECORDS

PLEASE TAKE NOTICE, that pursuant to Article 31 of the Civil Procedure Law and Rules, and to the extent not previously provided, each Plaintiff is required to provide the following:

1.    Copies of all of Plaintiff's employment records, including but not limited to pre- and post-employment psychological evaluations and/or examinations, personnel files, human resources files, performance and/or evaluation files, earnings files, benefits files, disciplinary files related to Plaintiff's entire employment history, in Plaintiff's possession, custody, or control.

2.    For all employers (including Plaintiff's current employers) since the date of alleged abuse, fully executed authorizations allowing Defendants to obtain Plaintiff's employment records, including without limitation file(s), personnel file(s), human resources file(s), performance file(s), benefits file(s), and disciplinary file(s). Defendants will make best efforts not to disclose the caption of the subject litigation or the fact that plaintiff is a party to litigation in the authorization for records and the initial request for such records based on that authorization. However, if such authorizations are insufficient to obtain the records sought in this and any subsequent demands, defendants reserve their rights and will not be precluded from issuing subpoenas or filing motions for the production of documents from third-parties pursuant to the CPLR and existing case law.

## DEMAND FOR DISCOVERY AND INSPECTION OF
## TAX INFORMATION

PLEASE TAKE NOTICE, that pursuant to Article 31 of the Civil Procedure Law and Rules, in the event that Plaintiff is claiming past and/or future loss of earnings or loss or impairment of earnings potential or capacity, Plaintiff is required to provide on behalf of each Plaintiff the following:

1.    To the extent Plaintiff is self-employed, copies of the local, state and federal income tax returns filed by Plaintiff and all corresponding wage and tax statements and other earnings statements (including but not limited to W-2, 1099-MISC, 1099-DIV, 1099-G, 1099-R, 1099-C, et seq.) for each year wherein Plaintiff claims (a) a loss of earnings and/or (b) a loss or impairment of earnings potential or capacity, to the present and five years prior to the first year in which such loss is claimed in response to section V of the Common Demand for a Verified Bill of Particulars.

2.    To the extent Plaintiff is self-employed, duly executed written authorizations, containing all information necessary to process such authorizations, directed to the New York State Department of Taxation and Finance (or equivalent agency for any State where Plaintiff has resided) and the Internal Revenue Service, to obtain

complete copies of Plaintiff's annual state and federal personal income tax returns for each year for which Plaintiff claims (a) a loss of earnings and/or (b) a loss or impairment of earnings potential or capacity, to the present and five years prior to the first year in which such loss is claimed in response to section V of the Common Demand for a Verified Bill of Particulars.

## DEMAND TO PRODUCE PHOTOGRAPHS
## FILM/VIDEO/DIGITAL MEDIA, AND AUDIOTAPES

PLEASE TAKE NOTICE, that pursuant to Article 31 of the Civil Procedure Law and Rules, demand is hereby made upon each Plaintiff to produce, the following:

1.   All photographs, film/video/digital media, audiotapes, or any other type of recordable media, including transcripts or memoranda thereof, in the possession, custody, or control of each Plaintiff or their representatives recording or reflecting:

   a.   any of the injuries alleged in the Complaint or Bill of Particulars;

   b.   the location(s) where it is claimed the sexual abuse as alleged in the Complaint or Bill of Particulars occurred;

   c.   the alleged acts or omissions of each named Defendant;

   d.   the alleged abuse;

   e.   the alleged perpetrator(s) of the alleged abuse as identified by Plaintiff in the Complaint or Bill of Particulars.

2.   The (a) name(s) and address(es) of the person(s) who took the photographs and/or film/video/digital media and/or audiotapes and/or any other type of recordable media and (b) the date each such photographs and/or film/video/digital media and/or audiotapes and/or any other type of recordable media was/were taken or made.

PLEASE TAKE FURTHER NOTICE that all photographs and/or film/video/digital media and/or audiotapes and/or any other type of recordable media must be preserved.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 87 of 103 PageID #: 104

## DEMAND FOR MEDICAL INFORMATION

ALL MEDICAL AUTHORIZATIONS PROVIDED IN RESPONSE TO THIS DEMAND MUST BE HIPAA COMPLIANT, AND MUST PERMIT *COUNSEL FOR DEFENDANT(S) AND/OR ITS(THEIR) AGENTS, SERVANTS OR EMPLOYEES* TO DISCUSS OR COMMUNICATE ABOUT EACH PLAINTIFF'S MEDICAL CONDITION WITH ALL HEALTHCARE PROVIDERS IN ACCORDANCE WITH <u>ARONS v. JUTKOWITZ</u>, 9 N.Y.3d 393, 850 N.Y.S.2d 345 (2007). IF THE AUTHORIZATION RESTRICTS THAT ENTITLEMENT, DEFENDANT(S) WILL REJECT THE AUTHORIZATION.

ALL AUTHORIZATIONS PROVIDED IN RESPONSE TO THIS DEMAND MUST HAVE SECTIONS 9(A) AND 9(B) OF OCA OFFICIAL FORM NO. 960, AND ANY COMMENSURATE SECTIONS OF INSTITUTIONAL SPECIFIC AUTHORIZATIONS, COMPLETED IN ORDER TO PERMIT RELEASE OF RECORDS TO THE UNDERSIGNED ATTORNEYS.

ALL AUTHORIZATIONS PROVIDED IN RESPONSE TO THIS DEMAND MUST INCLUDE THE FULL NAME, ADDRESS, PATIENT NUMBER, DATE OF BIRTH, SOCIAL SECURITY NUMBER, MEDICARE BENEFICIARY IDENTIFIER, AND MEDICARE BENEFICIARY NUMBER, AND OTHER PROVIDER IDENTIFICATION INFORMATION, IN ORDER TO PERMIT RELEASE OF RECORDS TO THE UNDERSIGNED ATTORNEYS.

PLEASE TAKE NOTICE that pursuant to Article 31 of the Civil Procedure Law and Rules and 22 NYCRR 202.17 of the Uniform Civil Rules for the Supreme Court, and to the extent not previously provided, each Plaintiff is required to produce the following:

1. Copies of all medical reports, memoranda, documents, communications, assessments, and/or analyses, including expert reports, in Plaintiff's possession, custody, or control, received from healthcare providers, including mental health providers, identified in response to Items 1, 2, and 3 of the Plaintiffs' Automatic Disclosures and in response to section IV of the Common Demand for a Verified Bill of Particulars. The medical reports of these healthcare providers shall be in the form described in 22 NYCRR 202.17.

2. Duly executed and acknowledged HIPAA-compliant written authorizations to allow each Defendant to obtain complete pharmacy or drug store records with respect to any drugs prescribed for Plaintiff starting five years prior to the alleged incident(s) described in the Complaint or Bill of Particulars to the present date.

3. Duly executed and acknowledged HIPAA-compliant written authorizations to allow each Defendant to obtain complete medical records pertaining to any medical treatment rendered to Plaintiff, including psychological treatment, starting five yearsprior to the alleged incident(s) described in the Complaint or Bill of particulars to the present date.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 88 of 103 PageID #: 105

4.    Identify and produce any documents, including questionnaires, reports or evaluations submitted or completed concerning Plaintiff's mental health or fitness for any purpose, including licensure qualification, membership, or benefit of any kind.

PLEASE TAKE FURTHER NOTICE, that with respect to all authorizations for medical/hospital/healthcare/psychological records, the authorizations must be HIPAA-compliant.

## DEMAND FOR EXPERT WITNESS DISCLOSURE

PLEASE TAKE NOTICE, that pursuant to Article 31 of the Civil Practice Law and Rules, demand is hereby made upon each Plaintiff to set forth the following:

1.    The name and address of each and every person Plaintiff expects to call as an expert witness at the trial of this action.

2.    In detail, the subject matter on which each expert is expected to testify.

3.    The substance of the facts and opinions on which each expert is expected to testify.

4.    The qualifications of each expert witness, including a curriculum vitae.

5.    A summary of the grounds for each expert's opinion.

## DEMAND FOR COLLATERAL SOURCE PAYMENTS
## & PUBLIC PROGRAM PARTICIPATION INFORMATION

PLEASE TAKE NOTICE, that pursuant to Articles 31 and 45 of the Civil Practice Law and Rules, and to the extent not previously provided, demand is hereby made upon each Plaintiff to produce the following:

1.    Where reimbursement was or is or will be received by Plaintiff and/or Plaintiff's spouse, domestic partner, or parent/guardian pursuant to either a private insurance policy or a federal, state, or local government program for the cost of medical care, mental health care, custodial care, rehabilitation services, loss of earnings or other economic loss, and any other costs related to the allegations contained in the Complaint or Bill of Particulars, identify:

a.    the name and address of the policy and/or program holder,
b.    the name and address of the policy and/or program issuer,
c.    the policy and/or program number,
d.    the policy and/or program term,

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 89 of 103 PageID #: 106

e.   the claim number and/or personal identification number assigned by the insurer and/or issuer to Plaintiff and/or Plaintiff's spouse, domestic partner, or parent/guardian's claim for reimbursement,

f.   the date Plaintiff and/or Plaintiff's spouse, domestic partner, or parent/guardian filed a claim with the policy and/or program holder and/or issuer,

g.   the date of any payment or reimbursement was or is expected to be issued,

h.   the name and address of the payor (if different from the policy and/or program holder or issuer), and

i.   the amount of any payment or reimbursement that has been received by Plaintiff and/or Plaintiff's spouse, domestic partner, or parent/guardian.

2.   For each payor of any payments identified in response to paragraph 1 of this section, duly executed and acknowledged HIPAA-compliant written authorizations to allow each Defendant to obtain complete records from the following: health insurance providers, automobile insurance providers, Social Security disability benefits providers, private disability insurance benefits providers, workers' compensation benefits providers, Medicare, and Medicaid, and any other person, firm or organization that has paid or reimbursed Plaintiff and/or Plaintiff's spouse, domestic partner, or parent/guardian for the cost of Plaintiff's medical care, mental health care, custodial care, or rehabilitation services.

3.   Copies of each of the insurance policies or programs, records, and/or claim documents, including but not limited to, related applications and eligibility documents and correspondence with the provider, identified in response to paragraph 1 of this section in Plaintiff's possession, custody, or control.

PLEASE TAKE FURTHER NOTICE, authorizations for any private insurance or government program documents and policy(ies) provided in response to the demand herein shall be for the complete documents and policy(ies) including but not limited to declaration sheets, riders, limitations, endorsements amendments, cancellations, face sheets and/or binders, etc.

## DEMAND FOR DISCLOSURE OF
## MEDICARE BENEFITS & ELIGIBILITY

PLEASE TAKE NOTICE, that pursuant to 42 U.S.C. §1395y(b)(8)(A) and Article 31 of the Civil Practice Law and Rules, demand is hereby made upon each Plaintiff to produce for discovery, reproduction, and inspection the following items:

1.   If Plaintiff has or is currently receiving Medicare benefits, please provide the following:

a.   The full name under which Plaintiff was/is receiving Medicare benefits;

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 90 of 103 PageID #: 107

b.   Plaintiff's full address, including city, state and zip code;

c.   Plaintiff's date of birth;

d.   Plaintiff's Social Security Number;

e.   Plaintiff's gender;

f.   Plaintiff's Medicare Beneficiary Identifier (MBI); and

g.   Plaintiff's Medicare beneficiary number (HICN).

2.   If Plaintiff has not received Medicare benefits in the past or is not receiving Medicare benefits now, state whether Plaintiff is eligible to receive Medicare benefits.

3.   If Plaintiff is pursuing claims on behalf of a decedent, please provide the following:

a.   Relationship of Plaintiff to the decedent;

b.   Copies of all papers permitting Plaintiff to bring claims on behalf of the decedent, including but not limited to letters testamentary and/or letters of administration; and

c.   Name and address of the administrator or executor of the decedent's estate.

4.   Copies of all Medicare records, including but not limited to eligibility notices, payments, and lien notices.

## DEMAND FOR DISCOVERY AND INSPECTION
## OF PERSONAL INJURY CLAIMS

PLEASE TAKE NOTICE, that pursuant to Article 31 of the Civil Practice Law and Rules, and to the extent not previously provided, demand is hereby made upon each Plaintiff to set forth and provide the following:

1.   Identify each and every personal injury lawsuit, claim, or demand ever filed by Plaintiff, including any and all claims lodged with any insurance provider, program, or agency by Plaintiff alleging any or all of the same injuries claimed herein or alleging any and all of the same causes of action asserted herein.

2.   For each personal injury lawsuit, demand, or claim and/or personal injury claim identified in response to paragraph 1 of this section, provide a duly executed authorization permitting each Defendant to inspect and copy the non-privileged records and files maintained by Plaintiff's representative in each matter.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 91 of 103 PageID #: 108

3.      Copies of all documents and records related to each personal injury lawsuit, demand, or claim and/or personal injury claim identified in response to paragraph 1 of this section in Plaintiff's possession, custody, or control.

## DEMAND FOR OR SET-OFFS

PLEASE TAKE NOTICE that pursuant to Article 31of the Civil Practice Law and Rules and § 15-108 of the General Obligations Law, demand is hereby made upon each Plaintiff to produce for discovery, reproduction, and inspection the following items:

1.      If any sum has been paid or promised to Plaintiff by any Defendant or other person claimed to be liable (within the meaning of § 15-108, General Obligations Law) for any of the injuries (or damages) allegedly arising out of the alleged abuse or alleged acts or omissions of any Defendant, set forth: (a) the name(s) and address(es) of the person(s), corporation(s), insurance company(s), or other entity(s) making such payment or promise; and (b) state the amount(s) which have been, or will be, with reasonable certainty received by Plaintiff.

2.      Copies of all documents and records in Plaintiff's possession, custody, or control related to any such payments or promises identified in response to paragraph 1 of this section.

## DEMAND FOR DISCOVERY AND INSPECTION OF
## SOCIAL MEDIA & ELECTRONIC MEDIA

PLEASE TAKE NOTICE that pursuant to Article 31of the Civil Practice Law and Rules and Forman v Henkin, 30 N.Y.3d 656 (2018), demand is hereby made upon each Plaintiff to produce for discovery, reproduction, and inspection the following items:

1.      Identify each social media site including but not limited to Facebook, Twitter, MySpace, Instagram, Snapchat, LinkedIn, YouTube, etc., blog postings and websites with Plaintiff's username and/or screen name to which Plaintiff posted comments at any time regarding the allegations set forth in the Complaint or Bill of Particulars;

2.      Duly executed original authorizations to obtain full access to and copies of all comments and posts identified in response to paragraph 1 of this section on Plaintiff's current and historical social networking accounts and profiles, including but not limited to Facebook, MySpace, Instagram, Snapchat, Twitter, LinkedIn, YouTube,TikTok, etc., and all related metadata;

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 92 of 103 PageID #: 109

a.  Said authorizations shall permit the release of full and complete copies of the identified comments and posts including but not limited to: all records, information, photographs, videos, comments, messages and postings on the aforementioned social networking accounts currently existing and deleted, and all related metadata;

b.  Said authorizations shall include the name, username, screen name and e-mail account used in creating each and every social networking account used to make the identified comments and posts;

3.  Copies of all information published at any time on any website or mobile application including, but not limited to, wall postings, blog entries or posts, tweets and status updates or other postings or entries on the social media websites identified in paragraph 1;

PLEASE TAKE FURTHER NOTICE that all requested social media information and photographs and videos should be preserved in their original native format with all relevant metadata, including but not limited to any author, creation date and time, modified date and time, native file path, native file name and file type.

## RESPONSES TO DEMANDS

PLEASE TAKE FURTHER NOTICE that this is to be considered a continuing demand and if any additional or different information or documents responsive to any of the above demands are located after the return date of these demands, pursuant to § 3101(h) of the Civil Practice Law and Rules each Plaintiff is required to inform the undersigned of this information and to supplement Plaintiff's responses up to and until the trial of this action.

PLEASE TAKE FURTHER NOTICE that each Plaintiff shall make every good faith effort to provide the full names and addresses of the above-named physicians, providers, and institutions, and any other identifying information and supporting documents necessary for Defendants to retrieve the documents and records sought by these Combined Demands.

PLEASE TAKE FURTHER NOTICE that upon Plaintiff's failure to produce documents responsive to the above demands Defendant(s) may object at the trial of this action to the receipt in evidence of any documents or records or information not made available pursuant to these Combined Demands.

PLEASE TAKE FURTHER NOTICE that Plaintiff's failure to supply all of the foregoing documents, items and things pursuant to the above demands may serve as the basis for a motion for the appropriate relief, including costs, pursuant to the Civil Practice Law and Rules, the Uniform Rules of The Supreme Court, and any applicable individual rules or Court Orders.

PLEASE TAKE FURTHER NOTICE objections to discovery based on privilege, confidentiality, immunity, or other protection from disclosure shall state with some specificity that the documents in each category are entitled to protected status; expressly justify the privilege asserted for each category; and describe the nature of the documents to be protected in a manner that will enable the other parties to assess the claim without revealing the privileged information. No documents or information subject to a claim of privilege, confidentiality or immunity from disclosure shall be produced until the claim of privilege, confidentiality or immunity is resolved by the Court.

PLEASE TAKE FURTHER NOTICE nothing contained in these Combined Demands shall be considered a waiver of any party's rights to pursue any further discovery including, but not limited to, discovery requested above, but for a different time frame.

PLEASE TAKE FURTHER NOTICE all parties retain their rights to object and/or to move with regard to the foregoing demands in accordance with the CPLR and existing case law. The fact that these demands are made a part of the Case Management Order does not in any way alter or waive a party's right to object and/or to move with regard to any of the demands herein.

Page Intentionally Left Blank

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF _____
-------------------------------------------------------------------X
[PLAINTIFF(S)],                                          Index No.:

                          Plaintiff(s),              **PLAINTIFF'S**
                                            **COMMON COMBINED**
-against-                                                **DISCOVERY DEMANDS**


[DEFENDANT(S)],

                          Defendant(s).
-------------------------------------------------------------------X


**COUNSELORS**:

      **PLEASE TAKE NOTICE**, that pursuant to Articles 21, 31, and 45 of the Civil Practice Law and Rules, plaintiff _____ (hereinafter "Plaintiff"), by and through plaintiff's attorneys,_____hereby makes the following discovery demands upon each Defendant.

      **PLEASE TAKE FURTHER NOTICE**, that this is to be considered a continuing demand and you are required to inform the undersigned of this information as it may hereinafter be obtained.

### DEMAND TO PRODUCE NAMES AND ADDRESSES
### OF ALL WITNESSES AND EYEWITNESSES

      PLEASE TAKE NOTICE, that pursuant to Article 31 of the Civil Practice Law and Rules, to the extent not previously provided and other than those identified in response to the Automatic Disclosure by Defendant, each Defendant is required to serve upon and deliver to the undersigned, the following:

      1.    The name and address of all persons claimed to be a witness to any of the acts, omissions and/or injuries as alleged in the Complaint and/or Bill of Particulars;

      2.    The name and last known address of any person(s) who at any time received actual notice prior to or during the date(s) alleged in the Complaint and Bill of Particulars of child sexual abuse by the alleged abuser(s), inappropriate conduct involving minors by the alleged abuser(s), or the propensity of the alleged abuser(s) to commit the abuse of the type alleged in the Complaint;

      3.    The name and last known address of any person(s) who at any time received constructive notice prior to or during the date(s) alleged in the Complaint and Bill

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 96 of 103 PageID #: 113

of Particulars of child sexual abuse by the alleged abuser(s), inappropriate conduct involving minors by the alleged abuser(s), or the propensity of the alleged abuser(s) to commit the abuse of the type alleged in the Complaint;

4.    The name(s) and last known address(es) of any person(s) claiming to have been sexually abused by the alleged abuser(s) prior to or during the date(s) alleged in the Complaint and Bill of Particulars;

5.    If you are unable to provide any of the above information, please provide a description reasonably sufficient to identify each person, including individuals, you believe may have been a witness to any of the acts, omissions, and/or injuries alleged by Plaintiff in the Complaint and/or Bill of Particulars.

## DEMAND FOR DISCOVERY AND INSPECTION OF
## INCIDENT REPORTS

PLEASE TAKE NOTICE, that pursuant to Civil Procedure Law and Rules Article 31 generally and §3101(g), in particular, it is demanded that each Defendant produce and permit discovery of the following, to the extent not previously provided:

All incident or similar reports prior to or contemporaneous to the date(s) of the alleged abuse claimed in the Complaint and Bill of Particulars ("the alleged abuse"), concerning any allegations of sexual abuse of a minor and/or inappropriate conduct with minors by the alleged abuser(s).

## DEMAND TO PRODUCE PHOTOGRAPHS
## FILM/VIDEO/DIGITAL MEDIA, AND AUDIOTAPES

PLEASE TAKE NOTICE that, pursuant to Article 31 of the Civil Practice Law and Rules, demand is hereby made upon each Defendant to produce the following:

1.    All photographs, film/video/digital media, audiotapes, or any other type of recordable media, including transcripts or memoranda thereof, in the possession, custody and/or control of Defendant or its representatives recording or otherwise memorializing:

a.    any of the injuries which are alleged in the Complaint;

b.    the location(s) identified by Plaintiff in the Complaint or Bill of Particulars where it is claimed the sexual abuse as alleged in the Complaint occurred as such location existed at the time of the alleged abuse;

c.    the alleged abuse; and/or,

d.    the alleged abuser(s) at the time of the alleged abuse.

INDEX NO. 400298/2021
RECEIVED NYSCEF: 08/31/2021

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 97 of 103 PageID #: 114

2.      If known, the (a) name(s) and address(es) of the person(s) who took the photographs and/or film/video/digital media and/or audiotapes and/or any other type of recordable media and (b) the date each such photographs and/or film/video/digital media and/or audiotapes and/or any other type of recordable media was/were taken or made.

PLEASE TAKE FURTHER NOTICE that all photographs and/or film/video/digital media and/or audiotapes and/or any other type of recordable media subject to the above demands should be preserved.

## DEMAND FOR EXPERT WITNESS DISCLOSURE

PLEASE TAKE NOTICE, that pursuant to §3101(d) of the Civil Practice Law and Rules, demand is hereby made upon each Defendant to set forth the following:

1.      The name and address of each and every person you expect to call as an expert witness at the trial of this action;

2.      Disclose in reasonable detail the subject matter on which each expert is expected to testify;

3.      Disclose in reasonable detail the substance of the facts and opinions on which each expert is expected to testify;

4.      Set forth the qualifications of each expert witness, including a curriculum vitae; and

5.      A summary of the grounds for each expert's opinion.

## DEMAND FOR DISCOVERY AND INSPECTION
## OF HANDBOOKS AND MANUALS

PLEASE TAKE NOTICE, that pursuant to § 3120 of the Civil Practice Law and Rules, demand is hereby made upon each Defendant to produce for discovery, reproduction, and inspection the following items:

1.      Any handbook, contract, agreement, manual, or similar document that governed the relationship between any Defendant(s), any other Defendant(s), and/or any third party that any Defendant asserts or alleges is responsible for any of the alleged abuse;

2.      Any handbook, contract, agreement, manual, or similar document that governed the relationship between the alleged abuser and any Defendant and/or any third party that any Defendant asserts or alleges is responsible for any of the alleged abuse;

3

3.      Any handbook, contract, agreement, manual, or similar document that described the service(s) that any Defendant provided to Plaintiff or purported to provide to Plaintiff;

4.      Any handbook, contract, agreement, manual, or similar document that described the service(s) that the alleged abuser(s) provided to any Defendant(s) or purported to provide to any Defendant(s).

## DEMAND FOR DISCOVERY AND INSPECTION OF RECORDS OF THE ALLEGED ABUSER

PLEASE TAKE NOTICE, that pursuant to § 3120 of the Civil Practice Law and Rules, and to the extent not previously provided, demand is hereby made upon each Defendant to produce for discovery, reproduction, and inspection the following items:

1.      The complete personnel file, employment file, volunteer file, ineligible volunteer file, human resources file, investigatory file, probation file, disciplinary file, confidential file, "secret" file, "perversion" file, or similar file regarding the alleged abuser(s) referenced in the Complaint;

2.      The alleged abuser's application or similar proposal or request to work for or serve any Defendant(s) or to provide work or service on any Defendant's behalf;

3.      The alleged abuser's resume, references, qualifications, or similar information;

4.      Any salary, stipend, and/or living expenses provided to the alleged abuser(s) prior to, during and after the periods of alleged abuse; and

5.      Any operating agreement, staffing agreement, employment agreement, or similar document that governed the work or services that the alleged abuser(s) provided to any Defendant(s) and/or any third party that any Defendant asserts or alleges is responsible for any of the sexual abuse alleged by Plaintiff in the Complaint.

## DEMAND FOR DISCOVERY AND INSPECTION OF RECORDS REGARDING THE DANGER OF CHILD SEXUAL ABUSE

PLEASE TAKE NOTICE, that pursuant to § 3120 of the Civil Practice Law and Rules, demand is hereby made upon each Defendant to produce for discovery, reproduction, and inspection the following items, to the extent not previously provided:

1.      All documents in the possession of the responding defendant prior to or during the time of the alleged abuse relating to any allegations of sexual abuse of a minor or

inappropriate conduct with a minor against the alleged abuser(s) including, but not limited to, statements, written reports, audio recordings, video recordings, correspondence, emails, memoranda, and notes, and materials transmitted to any police department, any Office of the District Attorney, U.S. Attorney's Office, law enforcement office, State Attorney General or relevant public prosecutor;

2. Copies of all documents related to each complaint, concern, or allegation that any Defendant received prior to or during the period of alleged abuse regarding inappropriate conduct with a minor, including alleged sexual abuse of a minor, by the alleged abuser(s), including any document(s) that reflect the following information for each complaint, concern, or allegation:

    a. the date,

    b. the substance of the complaint, concern, or allegation,

    c. who expressed the concern or who made the complaint or allegation,

    d. who received the complaint, concern, or allegation, and/or

    e. what any Defendant did in response to the complaint, concern, or allegation;

3. Copies of all documents exchanged between any Defendants prior to and during the period of alleged abuse concerning the alleged abuser(s) and alleged sexual abuse of minor(s), inappropriate conduct with minor(s), work history, performance review(s)/evaluation(s), and any interactions with minor(s) regarding the alleged abuser(s);

4. Copies of all documents related to each personal injury lawsuit, demand or claim ever filed against any Defendant and/or any personal injury claim brought against any person, individual or corporation lodged with any insurance provider or agency relating to sexual abuse of a minor by the alleged abuser(s), commenced prior to August 14, 2019, including but not limited to:

    a. Any diocesan or religious order Independent Reconciliation and Compensation Program or similar program; and,

    b. Any civil lawsuit(s).

5. Copies of all documents that reflect:

    a. Any limitations that were imposed on the duties of the alleged abuser(s), including, but not limited to, being transferred to another assignment or work site or being restricted in any way from interacting with minors;

    b.  Copies of all documents regarding any probation, transfer, suspension, or

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 100 of 103 PageID #: 117

removal of the alleged abuser(s);

c.   Copies of all documents related to any investigation or analysis that any Defendant requested or conducted related to a claim or complaint that the alleged abuser(s) may have sexually abused a child;

d.   Defendant's policies, procedures, rules, or law regarding sexual abuse, including the protection of minors from the danger of being sexually abused.

## NOTICE FOR DISCOVERY AND INSPECTION OF DIRECTORIES AND CORPORATE RECORDS

PLEASE TAKE NOTICE, that pursuant to § 3120 of the Civil Practice Law and Rules, demand is hereby made upon each Defendant to produce for discovery, reproduction, and inspection the following items:

1.   Copies of all rosters, employee lists, yearbooks, directories, bulletins and similar documents that reflect the name of each person who, at any time along with the alleged abuser(s), worked at, volunteered at, or was employed by any Defendant;

2.   Copies of all articles of incorporation, bylaws, operating agreements, and similar documents regarding any current or prior corporation or other legal entity that owned any Defendant;

3.   Copies of all agendas and meeting minutes regarding the alleged abuser(s);

4.   Copies of all documents sufficient to establish (a) the ownership of the property where the alleged abuse occurred at the time of the alleged abuse, and (b) the party responsible for the management or operation of the property where the alleged abuse occurred at the time of the alleged abuse;

5.   Set forth the full name and address of all persons, entities and/or employers not a party to this action who Defendant(s) claim or will claim may be liable for the damages herein;

6.   Copies of any documents regarding the death of the alleged abuser(s).

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 101 of 103 PageID #: 118

## DEMAND FOR DISCOVERY AND INSPECTION
## OF RECORDS OF PLAINTIFF

PLEASE TAKE NOTICE, that pursuant to § 3120 of the Civil Practice Law and Rules, demand is hereby made upon each Defendant to produce for discovery, reproduction, and inspection the following items, to the extent not previously provided and upon the presentation of fully executed authorizations from Plaintiff for the release of these records:

1. Copies of all documents related to Plaintiff, including

   a. Any file(s) any Defendant maintained on Plaintiff; and/or,

   b. Any handbook, contract, agreement, manual, or similar document that governed the relationship between Plaintiff and any Defendant(s) and/or any third party that any Defendant asserts or alleges is responsible for any of the sexual abuse alleged by Plaintiff in the Complaint;

2. Copies of all documents related to Plaintiff's biological family, foster family and/or adopted family including:

   a. Any file(s) on Plaintiff's biological family, foster family and/or adopted family;

   b. Any handbook, contract, agreement, manual, or similar document that governed the relationship between any Defendant and Plaintiff's biological family, foster family or adopted family; and/or,

   c. Any handbook, contract, agreement, manual, or similar document that described the service(s) that any Defendant provided to Plaintiff's family or purported to provide to Plaintiff's biological family, foster family and/or adopted family.

## DEMAND FOR DISCOVERY AND INSPECTION OF
## RELEASES AND/OR SET-OFFS

PLEASE TAKE NOTICE that pursuant to Article 31 of the Civil Practice Law and Rules and § 15-108 of the General Obligations Law, demand is hereby made upon each Defendant to produce for discovery, reproduction, and inspection the following items:

If any sum has been paid or promised to any plaintiff by any other Defendant or other person or entity claimed to be liable (within the meaning of § 15-108, General Obligations Law) for any of the injuries (or damages) alleged arising out of the alleged abuse or alleged acts or omissions of any Defendant, set forth: (a) the name(s) and address(es) of the person(s), corporation(s), insurance company(s), or other entity(s) making such payment or promise; and (b) state the amount(s) which have been, or will be, with reasonable certainty received by any Defendant.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 102 of 103 PageID #: 119

## SURVEILLANCE MATERIALS CPLR 3101(i)

PLEASE TAKE NOTICE, that pursuant to § 3101(i) of the Civil Practice Law and Rules, demand is hereby made upon each Defendant to produce for discovery, reproduction, and inspection the following items, to the extent not previously provided:

(i)     Any and all photographs, moving pictures and audio tapes, including transcripts or memoranda thereof, in the possession of the defendants, taken of the plaintiff, including but not limited to surveillance films and photographs;

(ii)    Full disclosure of all portions of such material, including out-takes, rather than only those portions a party intends to use;

(iii)   The time sheets of the investigators denoting hours spent conducting surveillance and editing the video surveillance video tapes, films or DVDs, billing invoices and proof of payment;

(iv)    All correspondence, investigators' field notes, computer log sheets and phone records denoting the times and places that surveillance was conducted;

(v)     The names and addresses of all investigators who worked on the surveillance of the plaintiff;

Your failure to provide plaintiff with the aforementioned and advise plaintiff as to the existence of any surveillance materials prior to examinations before trial of plaintiff will result in preclusion (see CPLR 3101[i]).

## RESPONSES TO DEMANDS

PLEASE TAKE FURTHER NOTICE that this is to be considered a continuing demand and if any items or documents responsive to any of the above demands are located after the return date of these demands, pursuant to § 3101(h) of the Civil Practice Law and Rules upon discovery of same, you are required to inform the undersigned of this information and to supplement your responses up to and until the trial of this action.

PLEASE TAKE FURTHER NOTICE that upon your failure to produce documents responsive to the above demands Plaintiff(s) will object at the trial of this action to the receipt in evidence of any documents or records or information not made available pursuant to the above demands.

PLEASE TAKE FURTHER NOTICE that your failure to supply all of the foregoing documents, items and things pursuant to the above demands will serve as the basis for a motion for appropriate relief, including costs, pursuant to the Civil Practice Law and Rules.

Case 1:22-cv-00125-AMD-RML   Document 1-3   Filed 01/07/22   Page 103 of 103 PageID #: 120

       PLEASE TAKE FURTHER NOTICE that objections to discovery based on privilege, confidentiality, immunity, or other protection from disclosure shall state with some specificity that the documents in each category are entitled to protected status; expressly justify the privilege asserted for each category; and describe the nature of the documents to be protected in a manner that will enable the other parties to assess the claim without revealing the privileged information. No documents or information subject to a claim of privilege, confidentiality or immunity from disclosure shall be produced until the claim of privilege, confidentiality or immunity is resolved by the Court.

       PLEASE TAKE FURTHER NOTICE nothing contained in these Combined Demands shall be considered a waiver of any party's rights to pursue any further discovery including, but not limited to, discovery requested above, but for a different time frame.

       PLEASE TAKE FURTHER NOTICE all parties retain their rights to object and/or to move with regard to the foregoing demands in accordance with the CPLR and existing case law. The fact that these demands are made a part of the Case Management Order does not in any way alter or waive a party's right to object and/or to move with regard to any of the demands herein.

Dated: _____, New York
     _____ _____, 2021

                               Yours, etc.,

                               LAW FIRM, P.C.

                     By:_____
                         *Attorneys for Plaintiff*

                               Phone:
                               Email:

TO: