## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (the "Agreement") is made and entered into this 25th day of March 2022 (the "Effective Date") by and among Jennifer Araoz ("Plaintiff") and The New Albany Company, LLC, The YLK Charitable Fund, The Wexner Family Charitable Fund, Leslie H. Wexner, Abigail S. Wexner, as former President & Director of The YLK Charitable Fund, and The Wexner Foundation (collectively, "Defendants"). The parties to this Agreement are collectively referred to herein as the "Parties" and individually as "Party."

WHEREAS, on or about August 14, 2021, Plaintiff filed a Summons with Notice in the Supreme Court of New York, County of Queens, Index No. 400298/2021.

WHEREAS, on or about December 9 and 13, 2021, Plaintiff filed Affidavits of Process Server purporting to have served Defendants with the Summons with Notice.

WHEREAS, on or about January 7, 2022, Defendants removed Plaintiff's claim to the United States District Court for the Eastern District of New York, Case No. 1:22-cv-00125 (the "Federal Action").

WHEREAS, Defendants believe there is no merit to Plaintiff's claims because, among other reasons, the subject property was not owned or controlled by any of the Defendants at the time of the challenged conduct; assert that Plaintiff is obligated to file a complaint with twenty days of the Defendants' notice of appearance; and contest the court's jurisdiction in the Federal Action over Defendants.

WHEREAS, Defendants are willing to provide documents to allow Plaintiff's counsel to investigate this matter before proceeding further in the Federal Action (the "Due Diligence"). The Magistrate Judge has deferred certain scheduling matters in the Federal Action to permit this Due Diligence to occur.

WHEREAS, Plaintiff's counsel shall review the materials and information produced by Defendants during the Due Diligence (the "Due Diligence Materials") pursuant to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the foregoing and of the mutual covenants, conditions and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, it is hereby agreed that:

1. Other than the limitations and restrictions imposed by this Agreement, no Party waives any rights, claims, or defenses by the execution of this Agreement. The existence of this Agreement shall not be referred to or used as evidence in any proceeding of any kind, other than as appropriate to respond to a waiver, estoppel, delay, laches, or other timing defense or argument.

2. The time period commencing with the Effective Date and continuing until the delivery of a Party's written notice terminating the Due Diligence constitutes the "Due Diligence

**EXHIBIT A**

Period." Any information or documents exchanged between or among the Parties during the Due Diligence Period shall be deemed Due Diligence Materials and shall be governed by the terms and conditions of this Agreement. Any Party may terminate the Due Diligence Period upon three business days' notice to the other Parties.

3. The attorneys for the Party receiving the Due Diligence Materials pursuant to this Agreement shall use such Due Diligence Materials solely for purposes of evaluating the claims advanced in the Federal Action. For purposes of this Agreement, a Party's attorney is limited to counsel of record in the Federal Action as of the Effective Date. Nothing in this Agreement, however, shall limit or prohibit a Party from independently seeking discovery of any Due Diligence Materials in any continued proceedings in the Federal Action.

4. The existence of this Agreement, its terms and conditions and the existence, delivery, and contents of the Due Diligence Materials shall be strictly confidential and not communicated or disclosed to any other person, except as incidental to the enforcement of this Agreement.

5. If a receiving Party is requested to disclose any Due Diligence Materials in connection with any legal or administrative proceeding or investigation, the Party will notify the other Parties as promptly as practicable of the existence, terms, and circumstances surrounding such request so that the other Parties may, in their sole discretion and at their sole expense, seek a protective order or other appropriate remedy and/or take steps to resist or narrow the scope of the disclosure sought by such request. A receiving Party agrees to provide assistance in seeking a protective order or other remedy, if requested by the other Parties. If a protective order or other remedy is not obtained and, in the written opinion of a receiving Party's counsel, disclosure is required, a receiving Party may make such disclosure without liability under this Agreement, provided that (a) a receiving Party furnish only that portion of the Due Diligence Information which is legally required to be disclosed, (b) to the extent possible, the receiving Party provides the other Parties notice of the information to be disclosed as far in advance of its disclosure as practicable, and (c) the receiving Party uses its best efforts to ensure that confidential treatment will be accorded to all such disclosed information. The provisions of this Agreement only apply to Due Diligence Materials produced subject to the terms of this Agreement. Documents exchanged in the ordinary course of discovery in the Federal Action shall be subject to such other limitations or protections agreed upon by the Parties or ordered by the Court.

6. Upon the termination of the Due Diligence Period, each Party shall assemble and return to the originating source all originals and unmarked copies of documents and things containing Due Diligence Materials and to destroy, should the originating source so request, all copies of Due Diligence Materials as well as excerpts, summaries and digests revealing Due Diligence Materials. Notwithstanding the return, deletion, or destruction of the Due Diligence Materials, the receiving Party will continue to be bound by its obligations of confidentiality and other obligations under this Agreement.

7. A Party's confidentiality obligation under this Agreement shall become effective as of the Effective Date and shall remain perpetually in effect.

8.  This Agreement constitutes the entire agreement and understanding of the Parties in respect of the subject matter hereof and supersedes all prior understandings, agreements or representations by or between the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

9.  No Party may assign either this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other Party, and any such assignment by a party without prior written approval of the other Parties will be deemed invalid and not binding on such other party.

10.  If a Party brings an action against another Party by reason of the breach or alleged violation of any covenant, term, or obligation hereof or for the enforcement of any provision or otherwise arising out of this Agreement, the prevailing party in such suit shall be entitled to its costs of suit and reasonable attorneys' fees.

11.  The undersigned counsel represent and warrant they are authorized to execute this Agreement on behalf of their respective clients.

_____
Robert J. Hantman
HANTMAN & ASSOCIATES
1120 6th Avenue
New York, NY 10036
Telephone: 212-684-3933
Facsimile: 646-380-3299
rhantman@hantmanlaw.com

*Attorneys for Plaintiff*

_____
Marion H. Little, Jr. (Ohio Bar # 0042679)
Matthew S. Zeiger (Ohio Bar #0075117)
ZEIGER, TIGGES & LITTLE LLP
41 S. High St., Suite 3500
Columbus, OH 43215-6110
Phone: (614) 365-9900
Fax: (614) 365-7900
Email: little@litohio.com
       zeigerm@litohio.com

*Attorneys for Defendants*

770-964:936401