UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JENNIFER D. ARAOZ,

                Plaintiff,                                MEMORANDUM
                                                              AND ORDER

     -against-

                                                                   22 CV 125 (AMD)(RML)

THE NEW ALBANY COMPANY, LLC, *et al.*,

                Defendants.
-------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Defendants The New Albany Company, LLC, The Wexner Family Charitable

Fund, The YLK Charitable Fund[1], Abigail S. Wexner, The Wexner Foundation, and Leslie H.

Wexner ("defendants") move for an order disqualifying plaintiff's counsel, Robert J. Hantman of

Hantman & Associates. By order dated September 7, 2022, the Honorable Ann M. Donnelly,

United States District Judge, referred defendants' motion to me. For the reasons stated below,

defendants' motion is denied.[2]

## BACKGROUND

        Plaintiff Jennifer D. Araoz ("plaintiff"), then pro se, commenced this case on

August 14, 2021 in New York Supreme Court, Queens County, by filing a summons with notice.

The case was removed to this court on January 7, 2022, and plaintiff filed her Verified

Complaint on June 29, 2022. (See Complaint, dated June 29, 2022 ("Compl."), Dkt. No. 22.)

---

[1] According to defendants, this entity no longer exists. (Notice of Removal, dated Jan. 7, 2022, Dkt. No. 1, ¶ 16.)

[2] By order dated September 7, 2022, Judge Donnelly deferred entering a briefing schedule on defendants' anticipated motion to dismiss until after this motion to disqualify is decided. Plaintiff is reminded of her obligation to submit a status report advising whether she wishes to proceed with this lawsuit or intends to amend the complaint. (See Minute Entry, dated Sept. 7, 2022.)

Plaintiff alleges that defendant Leslie Wexner ("Wexner") maintained a residence at 9 East 71st Street, New York, N.Y. 10021 (the "Property"), the townhouse where Wexner's "employee and tenant," Jeffrey Epstein, allegedly committed repeated acts of sexual abuse against plaintiff in 2001 and 2002, when she was a minor. (Compl. ¶¶ 18, 105.) She claims that Wexner held title to the Property through a closely-held New York company, Nine East 71st Street Corporation. (Id. ¶ 55.) Plaintiff brings claims against defendants under New York's Child Victims Act, N.Y. C.P.L.R. § 214-g, which went into effect on August 14, 2019 and gave past victims of child sexual abuse a one-year "look-back" window (later extended to August 14, 2021, the date plaintiff filed this lawsuit) to sue an alleged abuser and the individuals and institutions that allegedly aided them, regardless of when the crime occurred.

Defendants deny that any of them had any association with or ownership interest in the Property during the relevant time period. (Notice of Removal, dated Jan. 7, 2022, Dkt. No. 1, ¶¶ 7-12.) They state that Wexner sold his entire interest in the Property in 1998, several years before the relevant time period, and that the other defendants never had any relationship with the Property. (Defendants' Memorandum of Law in Support of Motion to Disqualify Plaintiff's Counsel, dated Aug. 24, 2022 ("Defs.' Mem."), Dkt. No. 28, at 4.)

In December 2021, before defendants removed plaintiff's case to this court, defendants' counsel informed plaintiff's counsel[3] that there were documents that would prove that no defendant owned the Property during the relevant time period. (See Letter of Marion H. Little, Esq., dated Dec. 27, 2021, Dkt. No. 28-4.) Defendants offered plaintiff pre-discovery inspection of these documents, conditioned upon plaintiff's entering into a Confidentiality

---

[3] On December 14, 2021, plaintiff notified defendants' counsel by email that she had retained Mr. Hantman. (See Declaration of Marion H. Little, Esq., dated Aug. 24, 2022, Dkt. No. 28-1, Ex. B.) Mr. Hantman entered an appearance in this case on February 15, 2022.

Agreement.  (Defs.' Mem. at 5-6.)  Plaintiff accepted the offer to review the documents, and on

March 25, 2022, the parties entered into a Confidentiality Agreement.  (See Declaration of

Marion H. Little, Esq., dated Aug. 24, 2022 ("Little Decl."), Dkt. No. 28-1, Ex. A).  The

Confidentiality Agreement contains a strict confidentiality obligation:

> The existence of this Agreement, its terms and conditions and the
> existence, delivery, and contents of the Due Diligence Materials
> shall be strictly confidential and not communicated or disclosed to
> any other person, except as incidental to the enforcement of this
> Agreement.

(Id., Ex. A, ¶ 4.)  These confidentiality obligations never lapse: "A Party's confidentiality

obligation under this Agreement shall become effective as of the Effective Date and shall remain

perpetually in effect."  (Id., Ex. A § 7.)  Pursuant to the Confidentiality Agreement, defendants

produced materials for plaintiff's counsel's review.

In a telephone conference before me on February 16, 2022, Mr. Hantman referred

to the fact that defendants had disclosed information to plaintiff regarding the Property.

Defendants claim that they viewed this as a violation of the express confidentiality provisions of

the Confidentiality Agreement (which was entered into weeks later, on March 25, 2022), and on

May 17, 2022, defendants gave notice under the Confidentiality Agreement to terminate its

provisions, except for the continued confidentiality obligations, and demanded the return of the

"Due Diligence Materials."  (Little Decl., Ex. G; see also Defs.' Mem. at 8.)  At a conference on

May 19, 2022, Mr. Hantman again reported to the court that the parties continued to engage in

"informal discovery."  Defendants contend that this was untrue.  (Reply in Support of

Defendants' Motion to Disqualify Plaintiff's Counsel, dated Sept. 23, 2022 ("Defs.' Reply"),

Dkt. No. 31, at 2.)  Mr. Hantman then stated in a letter to the court that the parties "continued to

engage in their settlement discussions and informal discovery on the topic of ownership of the

subject property[.]" (See Letter of Robert J. Hantman, Esq., dated June 6, 2022, Dkt. No. 19.)

Defendants claim that this was a misrepresentation and that "Defendants have never had any

settlement discussions with the Plaintiff or her counsel and have affirmatively stated they never

will." (Defs.' Reply at 2.) Finally, when plaintiff filed her complaint on June 29, 2022, she

included allegations that "informal discovery" had been exchanged regarding ownership of the

Property and described the contents of some of those documents. (See Compl. ¶¶ 1, 47, 48(c),

281.) Again, defendants viewed this as a misrepresentation and a violation of the Confidentiality

Agreement. It is these references to defendants' disclosure of confidential documents that form

the basis of defendants' motion to disqualify plaintiff's counsel. (Defs.' Mem. at 8-11.)

**DISCUSSION**

A court's authority to disqualify an attorney is derived from its inherent authority

to preserve the integrity of the adversarial process. Hempstead Video, Inc. v. Inc. Vill. of Valley

Stream, 409 F.3d 127, 132 (2d Cir. 2005); Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994).

Because disqualification may imperil a party's right to the counsel of his or her choosing, it

should be imposed only when there is a significant risk of "trial taint." Glueck v. Jonathan

Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981). Since motions to disqualify are viewed with

disfavor, the party seeking disqualification must meet a high standard of proof. Evans v. Artek

Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983); see also Felix v. Balkin, 49 F. Supp. 2d 260, 267

(S.D.N.Y. 1999) ("Motions to disqualify are generally not favored," and because they are "often

tactically motivated" and "tend to derail the efficient progress of litigation," parties moving for

disqualification "carry a heavy burden and must satisfy a high standard of proof.") (quotation

marks and citation omitted). The party seeking disqualification "bears the burden of

demonstrating specifically how and as to what issues in the case the prejudice may occur."

Sadigh v. Educ. Credit Mgmt. Corp., No. 22 CV 298, 2022 WL 3228260, at *3 (E.D.N.Y. Aug. 10, 2022) (quotation marks and citation omitted).

Courts in this district have generally recognized three grounds for attorney disqualification: "(1) where an attorney's conflict of interests undermines the court's confidence in the vigor of the attorney's representation of his [or her] client; (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation thus giving his [or her] client an unfair advantage; or (3) where an attorney is in a position to use confidential information obtained from a potential client." Spagnuoli v. Louie's Seafood Rest., LLC, 20 F. Supp. 3d 348, 355 (E.D.N.Y 2014) (quoting Miness v. Ahuja, 762 F. Supp. 2d 465, 478-79 (E.D.N.Y. 2010)). Defendants' motion does not implicate any of these categories: defendants have not raised a conflict of interest that would call Mr. Hantman's ability to represent his client into question, and this case does not involve the use of confidential information gained through joint or successive representation of adverse clients.

Defendants' motion relies on one case, U.S. ex rel. Holmes v. Northrop Grumman Corp., No. 13 CV 85, 2015 WL 3504525 (S.D. Miss. June 3, 2015), aff'd, 642 F. App'x 373 (5th Cir. 2016). In that unpublished, non-binding decision, an attorney was found to have violated the terms of a confidentiality agreement his client had entered into in the course of a private foreign arbitration, as well as a related protective order, and then to have used the information obtained to pursue a *qui tam* action against a third party under the False Claims Act. Id. at *2. Explaining that the attorney violated his duty of loyalty by taking a position in the *qui tam* suit that was contrary to the interests of his client in the underlying arbitration, and that the attorney violated his duty of candor to the court by making misrepresentations concerning the protective

order, the court disqualified him from serving as the relator in the *qui tam* action and dismissed the action.  Id. at *3-5 & n.8.  Defendants argue that the instant case is analogous because Mr. Hantman publicly used information obtained under the Confidentiality Agreement to support plaintiff's claims, and then made "false and misleading representations" to the court that information used in the complaint was obtained via "informal discovery."  (Defs.' Mem. at 14.)  Defendants also contend that Mr. Hantman "created a conflict of interest between himself and his client by exposing [plaintiff] to legal liability" for violating the provisions of the Confidentiality Agreement.  (Id. at 15.)  Lastly, defendants argue that Mr. Hantman "could reasonably be found to have violated Defendants' legal rights by purporting that he would comply with the Confidentiality Agreement in order to obtain documents he otherwise had no legal right to receive, but then . . . us[ing] the documents 'for his own purposes' in filing a lawsuit for which he expects to receive legal fees."  (Id. at 15-16.)

Plaintiff responds that neither she nor her counsel intentionally violated the Confidentiality Agreement or gained any benefit or strategic advantage from allegedly doing so.  (Plaintiff's Memorandum of Law, dated Sept. 21, 2022, Dkt. No. 30, at 1.)  Plaintiff states that she "has endeavored to maintain the privacy of all parties," and argues that "there has been no prejudice to Defendants alleged let alone proven."  (Id.)  Finally, she points out that "no documents were attached to the Plaintiff's pleadings, and anything referenced was in Plaintiff's prior possession or discoverable in this action."  (Id.; see also Declaration of Robert Hantman, Esq., dated Sept. 21, 2022, Dkt. No. 30-1, ¶¶ 6, 8.)

Without deciding whether Mr. Hantman breached the terms of the Confidentiality Agreement (which would require a hearing and factual findings), I note that defendants' accusations do not come close to alleging the serious ethical and professional violations at issue

in <u>Holmes</u>.  Thus, even accepting defendants' allegations as true for purposes of this motion,

they do not support a finding of potential trial taint or meet the high standard of proof required to

justify the disqualification of plaintiffs' counsel.  Accordingly, defendants' motion is denied.

        SO ORDERED.

                                                /s/

                                    ROBERT M. LEVY
                                    United States Magistrate Judge

Dated:  Brooklyn, New York
        November 21, 2022