**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JENNIFER D. ARAOZ,                                            :
                                                             :
                        Plaintiff,         :     No. 1:22-cv-00125 (AMD) (RML)
                                                             :
            v.                                     :
                                                             :
THE NEW ALBANY COMPANY, LLC, et al.,    :
                                                             :
                        Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. iv

I.     INTRODUCTION .................................................................................................1

II.    STATEMENT OF THE PROCEEDINGS .........................................................3

     A.    Plaintiff Sues Defendants Because, "Upon Information And Belief," They All Employed Jeffrey Epstein And "Owned And/Or Controlled" A Property That She Admits Was Actually Owned By A Non-Party ....................3

     B.    Plaintiff Files, Pursues, And Stipulates To Dismiss A State Court Action Against The Estate of Jeffrey Epstein And Others Alleging The Same Facts And Injuries At Issue Here. ....................................................3

     C.    Less Than A Year After Stipulating To Dismiss The State Court Action, Plaintiff Initiates The Instant Case. ............................................5

          1.    In Disregard For Documents Proving That Defendants Held No Interest In Or Control Over The Property At The Time Of Plaintiff's Injuries, Plaintiff Pursues Another Action Based On The Same Events Against Defendants. ..........................................5

          2.    Nearly A Year After Filing Her Summons With Notice, Plaintiff At Last Files Her Initial Verified Complaint. ..............................6

          3.    At Defendants' Request, The Court Holds A Pre-Motion Conference In Anticipation Of Defendants Filing A Motion To Dismiss – And Expresses Concern Over The Complaint's Significant Defects. ...................................................................7

          4.    Plaintiff Files The Operative First Amended Complaint Without Curing Any Of The Defects Identified By the Court At Its September 7, 2022 Conference. ............................................8

III.    LEGAL ARGUMENT ..........................................................................................9

     A.    Res Judicata Bars Plaintiff's First Amended Complaint In Its Entirety .................9

**Page**

1.  *First Element*: Plaintiff Litigated Her State Court Action To A Final Judgment On The Merits. ...............................................................10

2.  *Second Element*: Plaintiff Repeatedly Admits Defendants Here Are In Privity With Those In The State Court Action – In Fact, Her Claims Depend Upon It. ...................................................11

3.  *Third Element*:  Plaintiff Is Brazenly Attempting To Relitigate Issues That Could Have Been, And In Some Instances, Were, Litigated In The State Court Action..........................................13

B.  Plaintiff Lacks Standing To Assert A Claim Of Declaratory Relief ....................14

C.  Counts III Through VIII Must Be Dismissed For Impermissible Group Pleading..........................................................................16

D.  Plaintiff Fails To Plausibly State A Claim Of Any Kind Against The New Albany Company, LLC .................................................18

E.  Plaintiff's Conspiracy Claim Fails As A Matter Of Law For Multiple Reasons .............................................................................19

F.  Plaintiff's Fraudulent Conveyance Claim Is Incurably Defective. .......................20

1.  Plaintiff's Fraudulent Conveyance Claim is Untimely ............................20

2.  Further, Plaintiff Fails To Plausibly Allege A Claim For Fraudulent Transfer On The Merits ...........................................22

a.  Plaintiff Fails To State A Claim Under § 273–a...........................22

b.  Plaintiff Fails To State A Claim Under § 276..............................23

G.  Plaintiff Fails To State A Claim Against Defendants For Negligent Retention...........................................................................25

H.  Plaintiff's Complaint Must Be Dismissed For Want Of Personal Jurisdiction.........................................................................26

**Page**

1.   Plaintiff's Blanket, Conclusory Assertion That The Ohio-Based Defendants Are "Essentially At Home In New York" Are Insufficient To Establish General Jurisdiction Over Any Defendant As A Matter Of Law ................................................................... 27

   a.   Not A Single Entity Defendant Is "At Home" In New York ............................................................................................ 28

   b.   Neither Mr. Nor Mrs. Wexner Are "At Home" In New York ............................................................................................ 30

2.   Assuming That Plaintiff Even Attempted To Allege Specific Jurisdiction, She Fails To Do So Plausibly .................................. 32

IV.   CONCLUSION .......................................................................................... 34

CERTIFICATE OF SERVICE ...................................................................... 35

iii

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Acacia Invs., B.S.C.(C) v. W. End Equity I, Ltd.*, 66 Misc. 3d 1224(A)
(N.Y. Sup. Ct. 2020) ..................................................................................................23

*Allianz Ins. Co. v. Lerner*, 296 F. Supp. 2d 417 (E.D.N.Y. 2003) .........................................10, 11

*Amiron Dev. Corp. v. Sytner*, 2013 WL 1332725 (E.D.N.Y. Mar. 29, 2013) ............................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..................................................................................18, 25

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).................................................16

*Automated Transaction LLC v. New York Cmty. Bank*, 2013 WL 992423
(E.D.N.Y. Mar. 13, 2013)..............................................................................................16

*Bayer v. City of New York*, 115 A.D.3d 897, 983 N.Y.S.2d 61 (2d Dep't 2014) ........................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................24

*Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379 (S.D.N.Y. 2021) .............................................33

*Blanchard v. Katz*, 705 F. Supp. 1011 (S.D.N.Y. 1989)...............................................................19

*Borukhov v. Vartolo*, 2020 WL 5424595 (E.D.N.Y. Sept. 10, 2020) ..........................................19

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*,
137 S. Ct. 1773, (2017)..................................................................................................27

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) .................................................29

*Canon U.S.A., Inc. v. F & E Trading LLC*, 2017 WL 4357339
(E.D.N.Y. Sept. 29, 2017)..............................................................................................16

*Carlson v. American Int'l Group, Inc.*, 30 N.Y.3d 288 (N.Y. 2017) ............................................19

*Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343 (2d Cir. 1995) ..........................11, 13

*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020) ............................................27

*Cohen v. Bane*, 853 F. Supp. 620 (E.D.N.Y. 1994).....................................................................14

*Cordero v. Epstein*, 22 Misc. 3d 161 (N.Y. Sup. Ct. 2008)....................................................23, 24

**<u>Cases</u>**                                                                                                        **<u>Page(s)</u>**

<u>Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch</u>,
2015 WL 5091170 (S.D.N.Y. Aug. 28, 2015)...................................................................26

<u>Daimler AG v. Bauman</u>, 571 U.S. 117 (2014)...........................................................26, 27, 29, 32

<u>Davie v. New York City Transit Auth.</u>, 2003 WL 22998905 (E.D.N.Y. Dec. 17, 2003)..............34

<u>DeLorenzo v. Viceroy Hotel Grp., LLC</u>, 757 F. App'x 6, 8 (2d Cir. 2018) .................................30

<u>DeMarco v. City of New York</u>, 2011 WL 1104178 (E.D.N.Y. Mar. 23, 2011)............................11

<u>Doe v. Indyke</u>, 465 F. Supp. 3d 452 (S.D.N.Y. 2020)...............................................................25, 26

<u>Doe v. Nat'l Conf. of Bar Examiners</u>, 2017 WL 74715 (E.D.N.Y. Jan. 6, 2017)........................32

<u>Doe v. New York City Dep't of Educ.</u>, 2023 WL 2574741 (E.D.N.Y. Mar. 20, 2023)  .........15, 26

<u>Dolgas v. Wales</u>, 2023 WL 2795845 (N.Y. App. Div. Apr. 6, 2023) ...........................................21

<u>Edward Joy Co. v. Hudacs</u>, 199 A.D.2d 858, 606 N.Y.S.2d 74, 76 (1993)  .................................10

<u>Elavon, Inc. v. Ne. Advance Techs., Inc.</u>, 2017 WL 4876300
(S.D.N.Y. Oct. 27, 2017) ..............................................................................................24

<u>Fabius v. Gardere</u>, 2021 WL 6797293 (E.D.N.Y. Sept. 22, 2021)...............................................26

<u>Giannetta v. Johnson</u>, 2021 WL 2593305 (S.D.N.Y. June 24, 2021)...........................................32

<u>Good Health Dairy Prods. Corp. of Rochester v. Emery</u>, 275 N.Y. 14,
9 N.E.2d 758 (1937) ....................................................................................................10

<u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915 (2011) ..................................27

<u>Group One Ltd. v. GTE GmbH</u>, F. Supp.3d 323 (E.D.N.Y. 2021)  ..............................................33

<u>Guan v. Mayorkas</u>, 530 F. Supp. 3d 237 (E.D.N.Y. 2021)..........................................................15

<u>Hansen v. Miller</u>, 2020 WL 5802289 (E.D.N.Y. Sept. 29, 2020) .................................................15

<u>Hartline v. Gallo</u>, 546 F.3d 95 (2d Cir. 2008)..............................................................................20

<u>Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water</u>, Inc.,
665 F.Supp.2d 239 (S.D.N.Y.2009) .............................................................................19

**Cases**                                                                                                                          **Page(s)**

Houdet v. Brewer, 627 F. App'x 37 (2d Cir. 2016) ........................................................11

Houdet v. U.S.Tennis Ass'n, 2014 WL 6804109 (E.D.N.Y. Dec. 3, 2014) ...................................11

In re Eight-115 Assocs., LLC, 2023 WL 2669604 (Bankr. S.D.N.Y. Mar. 29, 2023) .................20

In re Extended Stay, Inc., 2020 WL 10762310 (Bankr. S.D.N.Y. Aug. 8, 2020) .........................24

In re Hunter, 4 N.Y.3d 260, 794 N.Y.S.2d 286, 827 N.E.2d 269 (2005) .....................................10

Integrity Elecs., Inc. v. Garden State Distributors, Inc., 2016 WL 3637004
(E.D.N.Y. June 30, 2016) ...........................................................................................................23

Jean-Louis v. Carrington Mortg. Servs., 2020 WL 1042644
(E.D.N.Y. Mar. 4, 2020) ............................................................................................................29

Jean-Louis v. Carrington Mortg. Servs., LLC, 849 F. App'x 296 (2d Cir. 2021).........................29

Jian Cheng Liu v. Kueng Chan, 2020 WL 978857 (E.D.N.Y. Feb. 28, 2020) .............................23

Jones v. Warren, 2013 WL 3439969 (E.D.N.Y. July 9, 2013) ...................................................28

Justiniano v. First Student Mgmt. LLC, 2017 WL 1592564
(E.D.N.Y. Apr. 26, 2017) ...........................................................................................................29

Kelly for Moudy v. Snap-on Inc., 2022 WL 2758308 (W.D.N.Y. July 14, 2022) ................18, 25

Kirch v. Liberty Media Corp., 449 F.3d 388 (2d Cir. 2006) .......................................................19

Lancaster v. Colonial Motor Freight Line, Inc., 581 N.Y.S.2d 283 (1st Dep't 1992).................28

Langer v. Paysafe Partners LP, 2020 WL 7684885 (E.D.N.Y. May 22, 2020)............................32

Lebron v. Encarnacion, 253 F. Supp. 3d 513 (E.D.N.Y. 2017) ...................................................31

Lippe v. Bairnco Corp., 229 B.R. 598 (S.D.N.Y. 1999).............................................................22

Luke v. Sunwing Travel Grp., 2022 WL 595133 (E.D.N.Y. Feb. 28, 2022) ...............................26

Maharaj v. Bankamerica Corp., 128 F.3d 94 (2d Cir. 1997) .......................................................10

Maurizi v. Callaghan, 2022 WL 1446500 (W.D.N.Y. Feb. 25, 2022) ..........................................21

Medtech Prod. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778 (S.D.N.Y. 2008) ..................................20

**Cases**                                                                                           **Page(s)**

Mitchell v. Garrison Protective Servs., Inc., 579 F. App'x. 18 (2d Cir. 2014) .............................23

Mohamad v. Rajoub, 2018 WL 1737219 (S.D.N.Y. Mar. 12, 2018) .............................................13

New York v. Mountain Tobacco Co., 55 F. Supp. 3d 301 (E.D.N.Y. 2014) ...............................18

Odom v. Syracuse City Sch. Dist., 2020 WL 1689879 (N.D.N.Y. Apr. 7, 2020).........................14

Pinckney v. Carroll, 2019 WL 6619484 (S.D.N.Y. Dec. 4, 2019) ..........................................15, 16

Pinto-Thomaz v. Cusi, 2015 WL 7571833 (S.D.N.Y. Nov. 24, 2015).....................................28, 32

Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Coop. Educ. Servs.,
2021 WL 4295418 (W.D.N.Y. Sept. 21, 2021) ..................................................................11, 12, 14

Rapp v. Fowler, 2022 WL 1997176 (S.D.N.Y. June 6, 2022) ....................................................21

Reich v. Lopez, 858 F.3d 55 (2d Cir. 2017) ........................................................................31, 32

Rich v. Fox News Network, LLC, 939 F.3d 112 (2d Cir. 2019) ..................................................26

Rini v. Zwirn, 886 F.Supp. 270 (E.D.N.Y.1995) .........................................................................20

Romano v. Triborough Energy Corp., 2023 WL 35155 (S.D.N.Y. Jan. 3, 2023) ........................25

Rosenshine v. A. Meshi Cosmetics Industries Ltd., 2021 WL 5508069
(E.D.N.Y Jan. 25, 2021) ...............................................................................................................33

Shi v. Le, 2022 WL 896963 (E.D.N.Y. Mar. 28, 2022) ................................................................34

Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221 (2d Cir. 2014)...........................31

Star Funding, Inc. v. Vault Mins., LLC, 2016 WL 10952230
(S.D.N.Y. Sept. 2, 2016)...............................................................................................................20

Stroud v. Tyson Foods, Inc., 91 F. Supp. 3d 381 (E.D.N.Y. 2015)..............................................28

Targum v. Citrin Cooperman & Co., LLP, 2013 WL 6087400
(S.D.N.Y. Nov. 19, 2013) ............................................................................................................17

Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc., 757 F. Supp. 2d 218
(E.D.N.Y. 2010)............................................................................................................................10

**Cases**                                                                                   **Page(s)**

United States ex rel. Takemoto v. Nationwide Mut. Ins. Co., 674 F. App'x 92
(2d Cir. 2017) ..................................................................................................16

United States ex rel. Takemoto v. The Hartford Fin. Servs. Grp., Inc.,
157 F. Supp. 3d 273 (W.D.N.Y. 2016) ..........................................................16

Williams v. Preeminent Protective Servs., Inc., 81 F. Supp. 3d 265
(E.D.N.Y. 2015) ..............................................................................................27

Wolo Mfg. Corp. v. ABC Corp., 349 F. Supp. 3d 176 (E.D.N.Y. 2018) .........................25, 33, 34

Zalewski v. T.P. Builders, Inc., 2011 WL 3328549 (N.D.N.Y. Aug. 2, 2011) ..............................18

Zimmerman v. Poly Prep Country Day Sch., 888 F. Supp. 2d 317 (E.D.N.Y. 2012) .................12

**Statutes**                                                                                **Page(s)**

Fed. R. Civ. P. 12(b)(1)......................................................................................15

Fed. R. Civ. P. 12(b)(6)......................................................................................2, 9

**Other Authorities**                                                                       **Page(s)**

New York Debtor Creditor Laws § 214(g) ....................................................5, 21

New York Debtor Creditor Laws § 273–a .....................................................22, 23

New York Debtor Creditor Laws §§ 273–a & 276............................................22

New York Debtor Creditor Laws § 276............................................................23

New York Debtor Creditor Laws § 301............................................................28, 32

New York Debtor Creditor Laws § 302............................................................32

New York Debtor Creditor Laws § 302(a)(1)...................................................32, 33

New York Debtor Creditor Law § 3012(b)........................................................6

## I.                              **<u>INTRODUCTION</u>**

Plaintiff asserted, and resolved, her claims against Jeffrey Epstein's estate nearly three years ago in New York state court.  Within a year of dismissing that action, however, Plaintiff initiated the instant case premised on the same underlying facts against Defendants the New Albany Company, LLC, the Wexner Family Charitable Fund ("WFCF"), the Wexner Foundation, Mr. Leslie Wexner, Mrs. Abigail Wexner and the YLK Charitable Fund.  Relying predominantly "upon information and belief," she alleges – often in language that was obviously copied-and-pasted directly from her pleadings in that Action – that Defendants are liable for her injuries because they all "owned and/or controlled" the property where she was injured and all employed Epstein and others who Plaintiff contends "materially aided" his crimes.

Explaining that her claims are utterly devoid of merit, Defendants produced documents to Plaintiff demonstrating that Mr. Wexner had sold his interest in the non-party entity that held title to the property and resigned from his role in that organization in 1998, years before she was allegedly harmed there.  When Defendants sought a pre-motion conference in preparation for moving to dismiss, this Court, after noting the Complaint's significant defects, cautioned Plaintiff's counsel to "consider whether or not this is an action you want to continue with."  [R. 37-1 PgID 417.]  Ignoring both the documents that disprove her claims and the Court's concerns, Plaintiff filed a First Amended Complaint replete with the same defects as the original.

Her Complaint must be dismissed for three reasons:

*<u>First</u>*, Plaintiff's Complaint is unavoidably barred by *res judicata*.  Plaintiff litigated the State Court Action to a final judgment in the form of a "Stipulation of Discontinuance."  She concedes that Defendants here are in privity with those she named as defendants in the State Court Action by virtue of their alleged employment relationship. And, having used her state

court pleadings as the source material for her First Amended Complaint, her claims are necessarily based on the same underlying facts and injuries at issue in the prior Action.

*Second*, although the Complaint is riddled with falsehoods that Defendants strenuously dispute, even accepting Plaintiff's allegations as true for purposes of Rule 12(b)(6), her Complaint wholly fails to state a claim upon which relief can be granted.  In the bulk of her claims, Plaintiff impermissibly "lumps" "Defendants" together without giving fair notice of which Defendant did what.  She fails to allege any conduct whatsoever by New Albany Company, and asserts a freestanding conspiracy claim unconnected to underlying torts.  Her claim for fraudulent conveyance is both untimely and insufficiently pled, and her assertion that all "Defendants" are liable because, "upon information and belief," they employed every wrongdoer on the Property insufficient to render her claims even remotely plausible.

*Third*, despite having two chances to do so, Plaintiff still fails to allege any non-conclusory facts sufficient to warrant the exercise of personal jurisdiction over any Defendant.  Her conclusory assertion that *each and every* Defendant is "essentially at home in New York" is undermined by her own allegations that Defendants are in fact, all domiciled elsewhere and wholly rebutted by Defendants' affidavits.  Nor has she plausibly alleged any contacts with New York giving rise to claims as necessary to establish specific jurisdiction over any Defendant.

Plaintiff has had two chances to plausibly allege any viable claim against Defendants or even any connection that justifies hailing them before this Court.  Because her First Amended Complaint remains woefully insufficient, the Court should dismiss it with prejudice.

## II.     STATEMENT OF THE PROCEEDINGS

**A.     Plaintiff Sues Defendants Because, "Upon Information And Belief," They All Employed Jeffrey Epstein And "Owned And/Or Controlled" A Property That She Admits Was Actually Owned By A Non-Party.**

Plaintiff alleges she was abused by Jeffrey Epstein as a minor at a property located at 9 East 71st Street in New York (the "Property"), more than twenty years ago.  [Compl. at ¶¶ 11, 53.][1]  She seeks to hold Defendants the New Albany Company, LLC, the Wexner Family Charitable Fund ("WFCF"), the Wexner Foundation, Mr. Leslie Wexner, Mrs. Abigail Wexner, and the YLK Charitable Fund liable for her claimed injuries because – "***upon information and belief***" – "Defendants," apparently all of them, employed Epstein and other "employees and agents" at the Property who Plaintiff contends contributed to her injuries.  [Id. at ¶¶ Intro, 33, 53-54, 162.]

Plaintiff also insists that Defendants pay her damages because "all or some" of them "owned and/or controlled" the Property.  [Id. at ¶ 53.]  Except, as she admits later in the Complaint, they didn't.  Non-party Nine East 71st Street Corporation did, and was the sole owner for twenty-two years, including the period of Plaintiff's alleged abuse. [Id. at ¶¶ 63, 180.]

**B.     Plaintiff Files, Pursues, And Stipulates To Dismiss A State Court Action Against The Estate of Jeffrey Epstein And Others Alleging The Same Facts And Injuries At Issue Here.**

Four years ago, however, Plaintiff claimed another group of defendants owned or controlled the Property and that they bore responsibility for her harms – a theory she pursued in state court in the action Jennifer Danielle Araoz v. The Estate of Jeffrey Edward Epstein, et al., Supreme Court of the State of New York, County of New York, Index No. 950010/19 (the "State Court Action").  [See Exh. 1, Certified Amended State Court Amended Compl.]

---

[1]     Citations to "Compl." refer to Plaintiff's Frist Amended Complaint filed January 6, 2023.

In language similar (and in some instances identical) to her allegations here, Plaintiff claimed in her October 10, 2019 Amended State Court Complaint that an unnamed recruiter lured her to the Property where she was abused by Jeffrey Epstein.  [Id. at ¶¶ 2-8, 94-186, 220-281.] Defendants in the State Court Action included Epstein's estate and a number of individuals and entities—***including non-party Nine East 71st Street Corporation*** – all of whom Plaintiff alleged were under Epstein's control either directly, or through an Epstein-owned entity:

- Nine East 71st Street Corporation, "which owned the title to, and was responsible for operating the property at 9 East 71st Street . . . At all times relevant herein, Nine East ***was controlled by Jeffrey Epstein***, who served as its President & CEO." [Id. at ¶ 22.]

- NES, LLC, "a New York limited liability, conducting business" at the Property "which ***was controlled and/or owned by Epstein***, who was employed as its President and CEO, and which was the ***management company for the property owned by Nine East at 9 East 71st Street, New York***, NY 10021 . . . At all times relevant herein, NES had a staff on payroll of approximately forty (40) people for all of Epstein's properties."  [Id. at ¶ 23.]

- Ghislaine Maxwell, who Plaintiff named as an ***employee of Epstein's non-profit organizations***, the "COUQ Foundation and JEVI Foundation, working at and operating these businesses with Jeffrey Epstein at" the Property.  [Id. at ¶ 18.]

- Lesley Groff, "an ***assistant of Jeffrey Epstein and employed at NES***, working at" the Property, "and was one of the people in charge of scheduling for all Epstein's owned and/or controlled companies, foundations and trusts."  [Id. at ¶ 19.]

- "Rosalyn S. Fontanilla A.K.A. Lynn Fontanilla . . . referred to . . . as the 'Maid,'" "an adult female working" at the Property and was "employed as the housekeeper and property manager by corporate defendants, NES and Nine East, and directly facilitated the sexual offenses [of] Epstein[.]"  [Id. at ¶ 17.]

- The "Recruiter," "who upon information and belief, ***worked for NES, one of the other Epstein controlled entities, and/or for Epstein directly***, and conspired with Epstein, Ms. Maxwell, Ms. Groff, Ms. Espinosa, and Ms. Fontanilla, and the Corporate Defendants and/or Institutional Defendants, to make possible and otherwise facilitate the sexual offenses committed against" Plaintiff. [¶ at 21.]

On the employment front, Plaintiff further alleged that Epstein "displayed his enormous wealth, power, and influence to ***his employees***; to ***the employees*** of the corporate entities, private

foundations, and trusts, ***who worked at his direction***; to the victims procured for sexual purposes; and to the public, in order to advance and carry out and conceal his crimes and torts." [Id. at ¶¶ 61, 69, 77, 82-83, 253.]  She also sued Epstein's employer, Financial Trust Company, Inc., for negligently retaining Epstein.  [Id. at ¶ 232, ("Financial Trust, had a duty to exercise reasonable care to refrain from retaining in its employ a person with known dangerous propensities in a position that would present a foreseeable risk of harm to others.")]  As for who owned or controlled the Property itself, Plaintiff identified only one actor: Epstein and the various entities she alleged that he alone controlled.  [Id. at ¶¶ 22-23, 65.]

Roughly a year after she filed her amended state court complaint, Plaintiff agreed to dismiss the State Court Action "with prejudice," by way of a stipulation of discontinuance entered November 13, 2020.  [Exh. 2, Stipulation of Discontinuance.]

### C. Less Than A Year After Stipulating To Dismiss The State Court Action, Plaintiff Initiates The Instant Case.

#### 1. In Disregard For Documents Proving That Defendants Held No Interest In Or Control Over The Property At The Time Of Plaintiff's Injuries, Plaintiff Pursues Another Action Based On The Same Events Against Defendants.

On August 14, 2021, only ten months after dismissing the amended complaint in her State Court Action, and on the last possible day available under NY CPLR § 214-g to file claims that would be otherwise be time-barred, Plaintiff filed a summons with notice against Defendants in Supreme Court of the State of New York, County of Queens, under Index No. 400298/2021. [See Summons with Notice, R.1-2.]  Defendants removed the action to federal court on January 7, 2022.  As explained in their notice of removal, Defendants noted that during the period of alleged abuse, 2001 to 2002, "none of the Defendants had any association with or ownership interest in" the Property.  [R.1, PgID 2.]

Pursuant to NY CPLR § 3012(b), Plaintiff was required to file her complaint by January 27, 2022.  But she did not.  Rather, after Defendants informed Plaintiff's counsel that her anticipated claims were without merit, Plaintiff's counsel expressed a willingness to "avoid litigation."  Taking that representation in good faith, Defendants entered into a confidentiality agreement with Plaintiff whereby Defendants agreed to produce certain documents to Plaintiff's counsel which definitively proved that neither Mr. Wexner, nor any of the Defendants held any interest in or control over the Property between 2001 and 2002.  The Court deferred entry of a case management order to permit Plaintiff's counsel to review the documents Defendants produced. [See Dkt., Minute Entry 2/16/22.]  Such documents included: (1) Mr. Wexner's 1998 sale of his interest in the Nine East 71st Street Corporation; (2) The 1998 settlement statement reflecting the transaction and the apportionment of the real estate taxes; (3) the consideration paid to Mr. Wexner for the sale; and (4) Mr. Wexner's 1998 resignation of any officer status or association with Nine East 71st Street Corporation.  [R. 28, PgID 264-65; R. 28-5, PgID 285-86.]

Documentary proof notwithstanding, it became clear after several weeks that no amount of information would suffice to convince Plaintiff's counsel to dismiss these baseless claims. Accordingly, on May 17, 2022, Defendants requested that the Magistrate Judge compel Plaintiff to file her complaint. [R. 18.]  The Magistrate Judge ultimately did so, directing Plaintiff to file her complaint by June 8, 2022.  [Dkt., Minute Entry 5/19/22.]

### 2.   Nearly A Year After Filing Her Summons With Notice, Plaintiff At Last Files Her Initial Verified Complaint.

After requesting, and receiving, an additional three-week extension, Plaintiff at last filed her initial verified compliant on June 29, 2022, ***almost a full year*** after she filed this lawsuit.  [R. 22.]  Still, for all the time she had to draft the initial complaint, not much of it was new.  If anything, it was largely a cut-and-paste job.

6

Of the 301 paragraphs in the initial verified complaint, as many as 189 paragraphs – *__roughly two thirds of the complaint__* – appear to be copied in whole or in part from Plaintiff's Amended State Court Complaint.   [Exh. 3, Verified Complaint with Highlights.]   Nor did Plaintiff limit herself to just copying the factual allegations.   The claims she asserted against Defendants also echoed those alleged in the State Court Action:

- *__Negligence on the theories of premises liability, negligent retention, and breach of the duty of voluntary assumption of care__*: Plaintiff alleged all three claims in the State Court Action against various State Court defendants – Epstein's estate, NES, Nine East 71st Street Corporation, Leslie Groff and  Epstein employer Financial Trust Company – and now asserts the same claims in the federal action.

- *__Conspiracy and Aiding and Abetting__*: both claims that appeared in the Amended State Court Complaint which are also alleged in the present action.

- *__Even fraudulent transfer__*: Plaintiff had asserted that two Epstein-controlled entities had fraudulently transferred interest in the Property, but now claims that same fraudulent transfer was committed by Mr. and Mrs. Wexner among several entity Defendants.[2]

Only one change is of note: whereas Plaintiff previously claimed that Epstein owned and controlled the Property through various employees, entities, and agents she now alleged "upon information and belief" that Mr. Wexner owned and controlled the Property through his employees, entities and agents.

### 3.     At Defendants' Request, The Court Holds A Pre-Motion Conference In Anticipation Of Defendants Filing A Motion To Dismiss – And Expresses Concern Over The Complaint's Significant Defects.

On July 5, 2022, within a week of Plaintiff's filing of her initial verified complaint, Defendants requested a pre-motion conference ahead of filing a motion to dismiss.  Defendants cited Plaintiff's impermissible group pleading, the various ways in which her claims failed to plausibly state a claim upon which relief could be granted, and her attempt to establish both

---

[2]       While this list of claims is taken from Plaintiff's initial verified complaint, Plaintiff restated these same claims against the same Defendants in the First Amended Complaint.

jurisdiction and liability upon "information and belief" alone – not to mention the total absence of any alleged facts tying the Ohio-based Defendants to the state of New York. [R. 23.]

The Court held an in-person conference on September 7, 2022. [See Tr. of 9/7/22 Hearing, R. 37-1.] There, it echoed Defendants' concerns about over Plaintiff's complaint, and added a number of its own. In particular, the Court stated:

- "[T]here's . . . not a lot of clarity about what the individual defendant did versus what the organizational defendants did. One of them is not in existence anymore. . . . [T]he complaint just kind of randomly throws in that defendants as a group, employed people and there are other references to  - - that claims are made on information and belief and just . . . you know, group pleading is a problem here because it's hard to tell who you're claiming did what." [Id. at PgID 396, 403.]

- "You've got a fraudulent conveyance claim. I don't think that the New York statute extended the statute of limitations on fraudulent conveyance claims." [Id. at PgID 392.]

- "And then look at this conspiracy – sort of free-floating conspiracy claim. I'm not sure that's a valid claim . . ." [Id. at PgID 417.]

- "But you've got five Ohio-based defendants. And there has to be a basis for the exercise of personal jurisdiction over those defendants and I just want to understand what it is." [Id. at PgID 405.]

Even the *res judicata* problem, which Defendants brought to the Court's and to Plaintiff's counsel's attention at hearing, struck the Court as a "pretty good argument." [Id. at. PgID 402.] Closing the hearing, the Court remarked to Plaintiff's counsel, "these are all things you should consider, and consider whether or not this is an action you want to continue with." [Id. at 417.]

### 4. Plaintiff Files The Operative First Amended Complaint Without Curing Any Of The Defects Identified By the Court At Its September 7, 2022 Conference.

Plaintiff filed the First Amended Complaint on January 6, 2023 – though evidently without much "consideration" for the Court's recommendations. She asserted the same seven claims against the same six, Ohio-based, non-New York Defendants. [Compl. at ¶¶ 11-24, 175-

255.] This time, she added an eighth claim for intentional infliction of emotional distress – not unlike the one she had alleged against various defendants in her State Court Action against Epstein's estate and others. [Id. at ¶¶ 256-264.] Roughly half of the Complaint – 119 paragraphs of 264 paragraphs – is still copied and pasted from the Amended State Court Complaint. [Exh. 4, First Amended Complaint with Highlights.]  And all the employer-employee relationships upon which her claims are based are still premised "upon information and belief."  [Compl. at ¶¶ 22, 32, 43, 45, 51, 101, 194, 216, 247.]

While Plaintiff made a facile attempt to establish personal jurisdiction, she did so in only the most conclusory fashion, repeating that ***every single Defendant***, despite judicially admitting the other Defendants were residents of other states, "was essentially at home in New York."  [Id. at ¶¶ at 39-49.]

**III.**          **LEGAL ARGUMENT**

**A.**          **Res Judicata Bars Plaintiff's First Amended Complaint In Its Entirety.**

Plaintiff already litigated, and already dismissed *with prejudice*, a series of claims arising from the same alleged events in state court against persons who she contends had an employment or agency relationship with "all or some of the Defendants" named here.  [Compl. at ¶¶ 39, 43, 45, 48, 50-51, 53, 101, 117, 194.] Res judicata therefore indisputably bars her claims.[3]

Because Plaintiff stipulated to dismissal of her past claims in a New York state court, this Court "must consider the law of the State of New York when determining the preclusive effect of

---

[3]          "A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014).  Court records from Plaintiff's State Court Action "are a matter of public record of which this Court [may] take[] judicial notice." Magi XXI, Inc. v. Stato Della Cit%22a Del Vaticano, 22 F. Supp. 3d 195, 201 (E.D.N.Y. 2014).  Further, although this Court lacks personal jurisdiction over Defendants, it may assume hypothetical jurisdiction for purposes of granting dismissal "because it is clear that [the] underlying claim[s] [are] meritless." Tibbetts v. Levin, 288 F. App'x 743, 745 (2d Cir. 2008) (assuming hypothetical jurisdiction to affirm the trial court's application of res judicata); Applestein v. Kleinhendler, 2022 WL 4451215, at *2 (E.D.N.Y. Sept. 23, 2022).

the prior proceeding." Allianz Ins. Co. v. Lerner, 296 F. Supp. 2d 417, 421 (E.D.N.Y. 2003), aff'd, 416 F.3d 109 (2d Cir. 2005).  Federal case law is instructive, however, because "New York and federal res judicata doctrines are 'virtually identical.'" Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc., 757 F. Supp. 2d 218, 223, n.2 (E.D.N.Y. 2010) (citation omitted).

"Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that '[1] final judgment on the merits of an action [2] precludes the parties or their privies [3] from relitigating issues that were or could have been raised in that action.'" Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997) (citation omitted).  New York adopts a "transactional analysis approach" to res judicata, meaning that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." In re Hunter, 4 N.Y.3d 260, 794 N.Y.S.2d 286, 827 N.E.2d 269, 274 (2005).

Moreover, a non-party to the original action may rely on res judicata to defeat the plaintiff's claim in the second action if "***the liability of the defendant is altogether dependent upon the culpability of one exonerated in a prior suit, upon the same facts, when sued by the same plaintiff***." Good Health Dairy Prods. Corp. of Rochester v. Emery, 275 N.Y. 14, 9 N.E.2d 758, 759 (1937) (emphasis added); accord: Edward Joy Co. v. Hudacs, 199 A.D.2d 858, 606 N.Y.S.2d 74, 76 (1993) ("A person is not a party to a prior action, but only derivatively or vicariously liable for the conduct of another, may invoke the res judicata effect of a prior judgment on the merits in that action in favor of the one primarily liable.").

### 1. *First Element*: Plaintiff Litigated Her State Court Action To A Final Judgment On The Merits.

Here, the first element is satisfied because "a stipulation of discontinuance with prejudice," which Plaintiff entered in the State Action, "has the same effect as a final judgment

on the merits." <u>DeMarco v. City of New York</u>, 2011 WL 1104178, at *6 (E.D.N.Y. Mar. 23, 2011) (applying New York law); <u>Allianz</u>, 296 F. Supp. 2d at 421.

> ### 2. *Second Element*: Plaintiff Repeatedly Admits Defendants Here Are In Privity With Those In The State Court Action – In Fact, Her Claims Depend Upon It.

The second *res judicata* element is satisfied because "[a]n employer-employee or agent-principle relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued." <u>Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Coop. Educ. Servs.</u>, 2021 WL 4295418, at *5 (W.D.N.Y. Sept. 21, 2021); <u>see</u> <u>also</u> <u>Bayer v. City of New York</u>, 115 A.D.3d 897, 897–99, 983 N.Y.S.2d 61 (2d Dep't 2014) (employees not named in prior suit against their employer were "entitled to rely upon the beneficial disposition" of that action because they were "employees of the Department whose conduct formed the basis of the plaintiff's allegations in the [earlier] action"); <u>Houdet v. U.S.Tennis Ass'n</u>, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014), aff'd sub nom. <u>Houdet v. Brewer</u>, 627 F. App'x 37 (2d Cir. 2016) ("Since the new defendants are employees of the USTA, and their alleged wrongful acts were all undertaken in the course of their employment, the Court concludes that the new defendants have a sufficiently close relationship to justify application of res judicata."). Both New York and federal courts have shunned a "formalistic approach" to privity, considering instead whether the new defendants share an interest with those named in the first action. <u>Chase Manhattan Bank, N.A. v. Celotex Corp.</u>, 56 F.3d 343, 346 (2d Cir. 1995). And in the case of an employer-employee connection, the "new defendants have a sufficiently close relationship to justify application of res judicata." <u>Houdet</u>, 2014 WL 6804109, at *4.

In the present action, Plaintiff alleges that the Defendants were the employers of defendants in the State Action; a relationship that readily satisfies the privity element regardless

of "which party [she] sued [first]."  *Quattrone*, 2021 WL 4295418, at *5; e.g., Zimmerman v. Poly Prep Country Day Sch., 888 F. Supp. 2d 317, 335-336 (E.D.N.Y. 2012) (res judicata barred state law claims against private school and its employees and agents, alleging negligent retention or supervision and breach of fiduciary duty, in relation to alleged sexual abuse by school's football coach, based on dismissal of plaintiff's prior state court suit).  Indeed, Plaintiff's entire theory of liability turns on her allegations that Epstein and other "Defendants" "employed" Epstein, and are therefore liable for his behavior:

- "Additional individuals who worked at Wexner's Property where Epstein committed sexual violations . . . as well as others who assisted Epstein . . . ***were employed through, or worked for, numerous other corporate entities, private foundations and trusts owned or controlled by Wexner and the other Defendants herein***, whose negligence/intentional tortious conduct . . . caused harm to Plaintiff." [Compl. at ¶ 33.]

- "Upon information and belief, ***New Albany also employed Epstein and the Employees*** that materially aided Epstein in his crimes and cover ups." [Id. at ¶ 43.]

- "Upon information and belief The YLK Charitable Fund also ***employed Epstein and the Employees*** that materially aided Epstein in his crimes and cover ups." [Id. at ¶ 45.]

- "The Wexner Family Charitable Fund ***also employed Epstein and the Employees*** that materially aided Epstein in his crimes and cover ups." [Id. at ¶ 48.]

- "Upon information and belief The Wexner Foundation also employed Employees that materially aided Epstein in his crimes and cover ups." [Id. at ¶ 51.]

- "Upon information and belief, the Recruiter was an employee of Wexner and the Corporate Defendants, [defined to include ***literally every*** entity Defendant] hired to procure underage girls, and oversaw the process that led to the recruitment and grooming of" Plaintiff.  [Id. at ¶ 101.]

- "Upon information and belief, the Maid, Ms. Fontanilla, and Ms. Leslie Groff ***were employees of the Defendants***."  [Id. at ¶ 117.]

- "Plaintiff was paid $300 cash before being escorted out of the property, ***all with assistance from Defendants employees***; [sic]"  [Id. at ¶ 134.]

- "This illegal conduct was perpetrated on the Property under the supervision and with the material assistance of the Corporate Defendants and ***Defendants' employees***." [Id. at ¶ 154.]

- "***Defendants and their employees*** provided Epstein the financial and physical means to carry out his act [sic] . . . indeed, but for the employees . . . [Plaintiff] would not have been pulled into Epstein's heinous scheme." [Id. at ¶ 155.]

[See also Exh. 5, Summary of Agency Allegations.]  Simply put, Plaintiff makes clear her belief that she can hold Defendants liable "[d]ue to the ownership or control over the Property and the actions of persons believed to be employees of Defendants[.]" [Id. at ¶ 54.][4]

### 3. ***Third Element*: Plaintiff Is Brazenly Attempting To Relitigate Issues That Could Have Been, And In Some Instances, Were, Litigated In The State Court Action.**

Finally, the third element is satisfied because the claims alleged here are identical to what Plaintiff asserted against the defendants in the State Action.  They are based on the same underlying facts and concern the same alleged injuries that purportedly sustained at the same Property.  See e.g., Mohamad v. Rajoub, 2018 WL 1737219, at *10 (S.D.N.Y. Mar. 12, 2018), aff'd, 767 F. App'x 91 (2d Cir. 2019) ("[I]n considering whether Plaintiff's claims asserted in a subsequent suit were, or could have been, raised in a prior proceeding, the Court considers 'whether the underlying facts are 'related in time, space, origin, or motivation;' whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectations.").

Plaintiff had months to revise her pleading after Defendants pointed out the significant overlap between the initial verified complaint and Plaintiff's allegations in State Court Action.  Yet ***nearly half the allegations in her First Amended Complaint*** still look to be copied from

---

[4]     Further, Plaintiff also ties the instant Defendants to the State Action defendants as successive owners of the same New York property.  Yet, in looking to attach jurisdiction or liability through allegedly shared or successive property ownership, all Plaintiff does is further prove that res judicata precludes the federal action – since, under New York law, privity also extends to "those who are successors to a property interest."  Hansen v. Miller, 2020 WL 5802289, at *15 (E.D.N.Y. Sept. 29, 2020); Chase Manhattan Bank, 56 F.3d at 346.

Plaintiff's State Court Amended Complaint.  Necessarily then, these allegations detail the same underlying incidents and injuries: that Plaintiff was recruited by an unnamed individual to the Property between 2001 and 2002 where Epstein abused her. [Compare Compl. at ¶¶ 1-7, 99-153, 184-214, 217-231, & 237-245 with Exh. 1 at ¶¶ 2-8, 94-186, 220-281.]  Plainly, "[t]he issues addressed in Plaintiff's state-court action were the same issues she attempts to raise here, and those issues have already been resolved."  See Odom v. Syracuse City Sch. Dist., 2020 WL 1689879, at *8 (N.D.N.Y. Apr. 7, 2020) (dismissing on res judicata grounds with prejudice where plaintiff copied allegations from state court action, and *__issuing Rule 11 sanctions__* against plaintiff's counsel).  Her "attempt to get a second bite of the apple . . . is strictly forbidden." Cohen v. Bane, 853 F. Supp. 620, 626 (E.D.N.Y. 1994).

So little has been changed from the State Court Action pleadings that Plaintiff repackaged a number of the same claims she asserted there against the Defendants – even down to the fraudulent transfer claim.  But to the extent Plaintiff has attempted to add any new or different theories, she gets no further. "[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata."  Quattrone, 2021 WL 4295418, at *5.  Plaintiff is not entitled to "a second chance at litigating the same issues under different guises."  Cohen, 853 F. Supp. at 626; Odom, 2020 WL 1689879 at *6.

*Res judicata* bars Plaintiff's Complaint entirely and the Court should dismiss it.

**B.     Plaintiff Lacks Standing To Assert A Claim Of Declaratory Relief.**

In Count I of the First Amended Complaint, Plaintiff "seeks declaratory judgment from this court that Leslie Wexner, or companies or organizations he owned or controlled" –

apparently, without regard to whether Plaintiff even named them as defendants – owned the Property at all relevant times." [Compl. at ¶ 177.] Plaintiff has no standing to assert this claim.[5]

"To establish standing to obtain prospective relief like declaratory judgment, a plaintiff must show a likelihood that he will be injured in the future." Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021). This is so because "[t]he purpose of declaratory relief is to address ongoing or prospective harm when the legal relations between parties are uncertain," not to remedy past wrongs. Pinckney v. Carroll, 2019 WL 6619484, at *2 n.3 (S.D.N.Y. Dec. 4, 2019). A claim for declaratory judgment based on only alleged past wrongs, ***including those based on alleged abuse suffered as a minor***, cannot survive a motion to dismiss. See Doe v. New York City Dep't of Educ., 2023 WL 2574741, at *6 (E.D.N.Y. Mar. 20, 2023) (dismissing declaratory relief claim by plaintiff abused by defendant's employees as a minor because "[P]ast exposure to illegal conduct is insufficient to satisfy the injury-in-fact requirement.").

Plaintiff cannot make the requisite showing. She seeks a ruling that Mr. Wexner "or companies or organizations he owned or controlled" owned the Property some twenty years ago. She does not request prospective relief or allege risk of being harmed by the late Epstein on the Property (or anywhere) in the future. See Pinckney, 2019 WL 6619484 at *2 n.3 (dismissing claim where "Plaintiff's claim for declaratory relief is based on alleged past wrongs against her now-deceased mother"); Guan, 530 F. Supp. 3d at 255 (no standing where "Plaintiffs neither request prospective relief nor establish that they have standing for such a request" and "seek only a declaration that Defendants' past conduct was unlawful"). Because "Plaintiff fails to show 'a

---

[5]      "Rule 12(b)(1) provides for the dismissal of a claim over which the Court lacks subject matter jurisdiction," including on account of a plaintiff's lack of standing. Guan v. Mayorkas, 530 F. Supp. 3d 237, 252 (E.D.N.Y. 2021) (citing Fed.R.Civ. P. 12(b)(1)). "To survive a motion to dismiss for lack of Article III standing, a plaintiff must allege facts that, when accepted as true, 'affirmatively and plausibly suggest that [she] has standing to sue.'" Id.

sufficient likelihood that she will again be wronged in a similar way,'" her claim must be dismissed. Pinckney, 2019 WL 6619484 at *2 n.3; Doe, 2023 WL 2574741 at *6.

### C. Counts III Through VIII Must Be Dismissed For Impermissible Group Pleading.

"It is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes." Canon U.S.A., Inc. v. F & E Trading LLC, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017). As this Court cautioned at the pre-motion conference, a complaint that "just kind of randomly throws in that defendants as a group, employed people . . . on information and belief" is problematic at best "because it's hard to tell who you're claiming did what." [R. 37-1 at PgID 403.] The same problem persists in the First Amended Complaint.

"Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." Automated Transaction LLC v. New York Cmty. Bank, 2013 WL 992423, at *4 (E.D.N.Y. Mar. 13, 2013). A plaintiff fails to meet this standard when she "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001); United States ex rel. Takemoto v. The Hartford Fin. Servs. Grp., Inc., 157 F. Supp. 3d 273, 281 (W.D.N.Y. 2016), aff'd sub nom. United States ex rel. Takemoto v. Nationwide Mut. Ins. Co., 674 F. App'x 92 (2d Cir. 2017) ("The Amended Complaint groups related corporations together without differentiating as to the involvement of each . . . Such grouping violates Rule 8(a)."). That is precisely what Plaintiff does in Counts III through VIII:

- ***Count III, negligence against all Defendants:*** "At all times herein, upon information and belief, one of or multiple of the Defendants employed Jeffrey Epstein. ('Defendant-Employers.') . . . Upon information and belief and even though such Defendant-Employers knew of Jeffrey Epstein's propensity . . . such Defendant-Employers retained Jeffrey Epstein and failed to properly supervise him. . . . Such Defendant-Employers negligence was a proximate cause of the sexual offenses committed against Plaintiff[.]" [Compl. at ¶¶ 194-213.]

- ***Count IV, negligence against WFCF, the Wexner Foundation, Mr. Wexner, and New Albany:*** "Upon information and belief" Maxwell, Groff, Fontanilla and Espinosa "were employees of the Defendants in this action." "In breaching its duty [sic] Defendants and their Employees launched a force or instrument of harm directed toward Plaintiff . . . Defendants' and their Employees' negligence was a proximate cause of the sexual offenses committed against Plaintiff[.]" [Id. at ¶¶ 216-228.]

- ***Count V, fraudulent conveyance against Mr. Wexner, Mrs. Wexner, YLK, WFCF, and the Wexner Foundation:*** "Defendants were engaged in a business transaction . . . Defendants, by these fraudulent transfers, intended to hinder, delay or defraud, both present and future creditors including Plaintiff . . . Defendants have violated each of the following sections of New York Debtor Creditor law[.]" [Id. at ¶¶ 230-244.]

Even when she names Defendants individually, Plaintiff does not specify who did what to whom. Counts VI, VII & VIII for instance, for aiding and abetting, conspiracy, and intentional infliction of emotional distress respectively, are alleged against WFCF, the Wexner Foundation, Mr. Wexner and New Albany. And according to Plaintiff, every one of them – "upon information and belief" – committed every element of those causes of action. Referring to the factual allegations is of no help either; all they do is reiterate that every Defendant employed every individual at the Property. [Id. at ¶¶ 20, 22, 43, 44, 45, 48, 49, 51, 101.]

Plaintiff inconsistently refers to certain of the entity Defendants as the "Corporate Defendants" and others as the "Institutional Defendants" – which only exacerbates, rather than solves, the group pleading problem. See Targum v. Citrin Cooperman & Co., LLP, 2013 WL 6087400, at *6 (S.D.N.Y. Nov. 19, 2013) ("[T]he SAC confusingly treats Weber and Citrin as a unit—referring at various times to 'Citrin and Weber,' 'Citrin and/or Weber,' and 'Citrin/Weber.' This sort of "group pleading" fails to put Citrin on notice of the specific allegations against it."). Not only do the "Institutional Defendants" and the "Corporate Defendants" have overlapping members, Plaintiff also asserts six of her eight claims against some combination of Defendants from both groups. More to the point, Plaintiff's claim that "all" Defendants employed all persons at the Property renders any group distinction meaningless

17

in any event.  See Takemoto, 157 F. Supp. 3d at 281 ("The Amended Complaint groups related corporations together without differentiating as to the involvement of each").

This Court should "not accept conclusory allegations, conjecture, or vague group pleading to serve as a basis for liability."  Zalewski v. T.P. Builders, Inc., 2011 WL 3328549, at *5 (N.D.N.Y. Aug. 2, 2011).  For this reason alone, in addition to being barred by *res judicata*, Counts III through VIII should be dismissed for failure to state a claim upon which relief can be granted.

**D.    Plaintiff Fails To Plausibly State A Claim Of Any Kind Against The New Albany Company, LLC.**

Plaintiff has not alleged any wrongdoing by New Albany, whatsoever.  Aside from introducing it in the parties and jurisdiction sections, Plaintiff next mentions "New Albany" in the substantive Counts of her Complaint, lumped together with the other Defendants.  [Compl. at ¶¶ 13, 21-22, 42-43, 215.]  That's it.

At most, Plaintiff contends that "[u]pon information and belief, New Albany . . . employed Epstein and the Employees that materially aided in his crimes and cover ups."  [Id. at ¶ 43.]  This is hardly non-conclusory factual matter sufficient to "nudge[] [her] claims . . . from conceivable to plausible."  Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009); see also Kelly for Moudy v. Snap-on Inc., 2022 WL 2758308, at *5 (W.D.N.Y. July 14, 2022) (dismissing negligent retention and *respondeat superior* claims as "plaintiffs offer nothing more than legal conclusions about any employer-employee relationship between Prohaska and any Snap-on entity").

Plaintiff's failure to allege "a single fact connecting" New Albany to any purported wrongdoing requires dismissal all claims against it.  See New York v. Mountain Tobacco Co., 55 F. Supp. 3d 301, 315 (E.D.N.Y. 2014) ("[T]he Court pauses to note that the amended complaint does not allege a single fact connecting Wheeler to the alleged sale of unstamped cigarettes in

18

New York, but rather asserts only conclusions about 'defendants.' 'This type of group pleading is inadequate to state a claim.'"); Amiron Dev. Corp. v. Sytner, 2013 WL 1332725, at *5 (E.D.N.Y. Mar. 29, 2013) ("Defendants . . . argue that the claims against them must be dismissed because they are not specifically mentioned in the factual section of the Complaint or in the over 140 pages of exhibits attached thereto. The Court agrees.").

### E.   Plaintiff's Conspiracy Claim Fails As A Matter Of Law For Multiple Reasons.

*__First__*, "New York does not recognize a freestanding claim for conspiracy." Carlson v. American Int'l Group, Inc., 30 N.Y.3d 288, 310 (N.Y. 2017); Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (same).  Thus, among the defects the Court asked Plaintiff to "consider" revising at the September 7, 2022 conference was her assertion of a "freestanding conspiracy claim" that may not "survive a motion to dismiss."  [R. 37-1, PgID 393.]  In the initial verified complaint, Plaintiff did not tie her conspiracy claim to an underlying tort, but instead premised it on an "agreement to participate in perpetrating" injuries plaintiff suffered "as a result of conduct perpetrated . . . by Jeffrey Epstein in violation of" various New York criminal statutes. [R. 22, PgID 244, ¶¶ 297-298.]  She re-alleges the same "freestanding" conspiracy claim in Count VII of the First Amended Complaint, unchanged. [Compl. at ¶¶ 251-252.][6]  For this reason alone, Count VII should be dismissed.  See Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc., 665 F.Supp.2d 239, 256 (S.D.N.Y.2009) (claim for "Conspiracy to Violate the Law" was properly dismissed for failure to state an underlying claim).

---

[6]     Nor is the Court bound to construe the First Amended Complaint in a manner that corrects this repeated error.  Plaintiff pleaded three counts of conspiracy in the State Court Action, specifically tied to underlying torts. [Exh. 1, at ¶¶ 205-213.]  In this Court, "[P]laintiff[] ha[s] already had an opportunity to amend the complaint with notice of its deficiencies," but she did not do so. Blanchard v. Katz, 705 F. Supp. 1011, 1013–14 (S.D.N.Y. 1989). Not even a *pro se* litigant would be entitled to the benefit of the doubt under these circumstances. E.g., Borukhov v. Vartolo, 2020 WL 5424595, at *4 (E.D.N.Y. Sept. 10, 2020) (*pro se* plaintiff denied leave to re-plead where his claims were barred by *res judicata* and "he already had an opportunity to file an amended pleading in response to the very same arguments addressed in these motions and did not cure any of the deficiencies identified").

**Second**, "claims made solely on information and belief are insufficient to sustain a conspiracy theory." Star Funding, Inc. v. Vault Mins., LLC, 2016 WL 10952230, at *4 (S.D.N.Y. Sept. 2, 2016); Medtech Prod. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 795 (S.D.N.Y. 2008) (claim "upon information and belief" that an agreement existed did not plausibly allege conspiracy). But that is all Plaintiff alleges: "Upon information and belief the Wexner Family Charitable Fund" and other Defendants "along with Jeffrey Epstein established an agreement to participate in . . . the above referenced harms." [Id. at ¶ 252.]

**Third**, Plaintiff's conspiracy claim is barred under the intra-corporate conspiracy doctrine. Plaintiff alleges that Mr. Wexner – who she concedes held leadership positions and/or ownership interest in the WFCF, the Wexner Foundation, and the New Albany Company – "along with Jeffrey Epstein," who, according to Plaintiff, was also employed by *__all such entity Defendants__*, conspired against her. Given that "officers, agents and employees of a single corporate entity are legally incapable of conspiring together," this claim fails for this reason as well. Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008); see also Rini v. Zwirn, 886 F.Supp. 270, 291 (E.D.N.Y.1995) ("a corporation generally cannot conspire with its employees or agents as all are considered a single entity").

**F.    Plaintiff's Fraudulent Conveyance Claim Is Incurably Defective.**

**1.    Plaintiff's Fraudulent Conveyance Claim is Untimely.**

At the time the purportedly fraudulent transfers occurred – between 2007 and 2010 – the applicable limitations period to recover for such a claim was six years. In re Eight-115 Assocs., LLC, 2023 WL 2669604, at *6 n.4 (Bankr. S.D.N.Y. Mar. 29, 2023).[7] Plaintiff asserted her fraudulent conveyance claim in August 2021, well outside the relevant limitations period.

---

[7]    See In re Eight-115 Assocs., 2023 WL 2669604 at *6 n.4 (explaining that the current 4-year limitations period for fraudulent conveyance claims did not go into effect until April 4, 2020).

CPLR § 214-g does not save Plaintiff's years-too-late action for fraudulent conveyance. Section 214-g expressly "limits the types of causes of action – i.e., claims involving child sexual abuse – that are revived and then given a new limitations period." Dolgas v. Wales, 2023 WL 2795845, at *3 (N.Y. App. Div. Apr. 6, 2023). By its plain language "[t]he Child Victims Act . . . revived only civil claims and causes of action "alleging intentional or negligent acts or omissions by a person for ... injury or condition suffered as a result of conduct *which would constitute a sexual offense as defined in article one hundred thirty of the penal law . . . , incest as defined in section 255.27, 255.26 or 255.25 of the penal law . . . , or the use of a child in a sexual performance as defined in section 263.05 of the penal law*[.]" Rapp v. Fowler, 2022 WL 1997176, at *3 (S.D.N.Y. June 6, 2022) (emphasis in original). Claims not falling within these specifically enumerated categories are not revived by the statute. See id. ("As common law assault is not a sexual offense, incest or the use of a child in a sexual performance, all as defined in the Penal Law, the Child Victims Act did not revive such claims. The first cause of action therefore is barred by the statute of limitations."). This is so even if such claims may have some indirect factual relation to the alleged abuse. See Maurizi v. Callaghan, 2022 WL 1446500, at *16 (W.D.N.Y. Feb. 25, 2022), R&R adopted 2022 WL 1444182 (W.D.N.Y. May 5, 2022) (claim for intentional infliction of emotional distress based on "alleged deficient investigations" and acts "intended to cover up child sexual abuse" was untimely because "Plaintiff's IIED claim, however, is not based on the conduct of either PSA or USFS constituting a sexual offense.").

Plaintiff's fraudulent transfer claim is not based on conduct by any Defendant "constituting a sexual offense," *id.* or any offense identified in CPLR § 214-g, and is therefore time-barred.

21

2.      **Further, Plaintiff Fails To Plausibly Allege A Claim For Fraudulent**
        **Transfer On The Merits.**

Plaintiff cites to two statutes which, at the time the alleged transfers occurred, permitted

causes of action for fraudulent conveyance; New York Debtor Creditor Laws §§ 273–a & 276.

Plaintiff fails to plausibly allege a viable claim under either provision.

a.      **Plaintiff Fails To State A Claim Under § 273–a.**

Under DCL § 273–a,

[e]very conveyance made without fair consideration when the person making it is
a defendant in an action for money damages or a judgment in such an action has
been docketed against him, is fraudulent as to the plaintiff in that action without
regard to the actual intent of the defendant if, after final judgment for the plaintiff,
the defendant fails to satisfy the judgment.

To start, Plaintiff is not even the right party to assert this claim.  Under the statute, a

transfer by a defendant may be fraudulent only "as to the plaintiff" in an action against the

defendant for damages or judgment.  Plaintiff does not allege she was ever "the plaintiff" in any

action against Mr. Wexner or the entity Defendants against whom she asserts this claim.  Rather,

as she tells it, the purported transfer was made between late 2007 and early 2008 when she

alleges that Mr. Wexner and non-party Nine East 71st Street Corp. were named as defendants in

an action by a different person – Ava Cordero.  [Compl. at ¶¶ 159, 232.]  By its plain terms,

"§ 273–a expressly voids a transfer 'as to the plaintiff,' not as to creditors generally."  Lippe v.

Bairnco Corp., 229 B.R. 598, 606 (S.D.N.Y. 1999), aff'd, 99 F. App'x 274 (2d Cir. 2004).  Thus

Plaintiff cannot step into the shoes of some other claimant in order to assert a fraudulent

conveyance claim against Defendants.  See id. at 605 ("[T]he existence of a § 273–a creditor does

not give plaintiffs standing to assert other fraudulent conveyance claims under the NYDCL.").

Nor can Plaintiff can establish the requisite elements of a fraudulent conveyance claim.

"[T]o prevail on a claim under DCL § 273-a, plaintiff must establish that (1) the conveyance was

22

made without fair consideration; (2) the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) the defendant has failed to satisfy the judgment."  Integrity Elecs., Inc. v. Garden State Distributors, Inc., 2016 WL 3637004, at *8 (E.D.N.Y. June 30, 2016) (citing Mitchell v. Garrison Protective Servs., Inc., 579 F. App'x. 18 (2d Cir. 2014)).

Even ignoring that Plaintiff herself alleges that "fair consideration" was, in fact, paid for the purportedly fraudulent transfer,[8] Plaintiff has not and indisputably *cannot* allege that any Defendant named in the Cordero action "failed to satisfy [any] judgment" against it.  Mitchell, 579 F. App'x at 21.  Though she tucks the information in a footnote, Plaintiff admits that a court "dismissed" Cordero's action against Defendants, without a judgment.  [Compl. at ¶ 159 n.12.] And case law confirms as much.  See Cordero v. Epstein, 22 Misc. 3d 161, 170 (N.Y. Sup. Ct. 2008) (granting dismissal of all claims). Plaintiff's claim under DCL § 273–a fails as a matter of law and must be dismissed.

### b.  Plaintiff Fails To State A Claim Under § 276.

Plaintiff also alleges a violation of the then in effect provision DCL § 276, which stated:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

"To state a claim for fraudulent conveyance under NY Debtor & Creditor Law § 276, a plaintiff must allege that (1) a transfer was made (2) with the actual intent to hinder, delay or defraud either present or future creditors."  Acacia Invs., B.S.C.(C) v. W. End Equity I, Ltd., 66

---

[8]     "A constructive fraudulent conveyance action cannot be sustained absent adequate allegations that the transaction in question lacked 'fair consideration." Jian Cheng Liu v. Kueng Chan, 2020 WL 978857, at *11 (E.D.N.Y. Feb. 28, 2020).  Instead of alleging a lack of "fair consideration," Plaintiff claims that Mr. Wexner "fraudulently transferred his interest in" Nine East 71st Street Corporation "to Epstein," after which Epstein's charitable organization "assigned interests valued at $13,425,914 (almost the exact same amount Wexner paid for the [Property] in 1991) to YLK Charitable fund" – another entity she alleges was Wexner controlled.  [Compl. at ¶¶ 164-169.]  Plaintiff cannot reasonably allege lack of fair consideration on the one hand while alleging that Epstein made a donation to YLK in "almost the exact same amount" that was to purchase the Property on the other.

Misc. 3d 1224(A) (N.Y. Sup. Ct. 2020).   Further, Plaintiff's "allegations must satisfy the heightened pleading standards of Rule 9(b)."  In re Extended Stay, Inc., 2020 WL 10762310, at *64 (Bankr. S.D.N.Y. Aug. 8, 2020).

Here, "Plaintiff has not alleged even one particular example" of a fraudulent conveyance. Elavon, Inc. v. Ne. Advance Techs., Inc., 2017 WL 4876300, at *13 (S.D.N.Y. Oct. 27, 2017). She describes a transfer, not of the Property itself, but of interest held in Nine East 71st Street Corporation between one defendant in the Cordero action to another defendant in the Cordero action – with no explanation whatsoever as to how that conveyance could have "hinder[ed] delay[ed], or defraud[ed]" Cordero or any future creditor from collecting on a judgment, or even suggesting that the transfer left any relevant party insolvent.   And as explained, no purported creditor was "hinder[ed] delay[ed], or defraud[ed]" by the transfer because the New York state courts dismissed Cordero's claim.  Cordero, 22 Misc. 3d 161, supra.

She further alleges that Epstein's 501(c)(3) organization, the COUQ foundation, made a number of charitable donations to YLK, which in turn gave funds to charity, and upon its dissolution nearly three years later, conveyed its remaining funds to WFCF.   Charitable donations are "entirely consistent with legal conduct" and cannot as a matter of law, support an inference of wrongdoing.   Elavon, 2017 WL 4876300 at *13. To hold otherwise would require the Court to infer illegality from conduct that is "just as much in line with a wide swath" of perfectly legal behavior.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554 (2007).  Beyond that, her remaining fraudulent transfer allegations are conclusory and nonsensical.[9]

---

[9]      Plaintiff claims, for instance, that "it appears that there was a fraudulent conveyance of these funds to the Wexner foundation since in 2011, for $10, the deed for Nine East 71st Street was transferred from Nine East 71st Street Corporation to Jeffrey Epstien's corporations in the Virgin Island[s], Maple, Inc.," without specifying what "these funds" are or how they relate in any way to the Property.  [Compl. at ¶ 174.]

Plaintiff's conclusory "gibberish" does not provide "particulars" concerning the alleged fraudulent conveyance, much less adequately allege it, and this claim must be dismissed. Romano v. Triborough Energy Corp., 2023 WL 35155, at *3 (S.D.N.Y. Jan. 3, 2023).

### G.    Plaintiff Fails To State A Claim Against Defendants For Negligent Retention.

To prevail on a negligent retention claim, in addition to the traditional elements of negligence, a plaintiff must show "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Doe v. Indyke, 465 F. Supp. 3d 452, 468 (S.D.N.Y. 2020).

Plaintiff's claim never gets past the first element.  In lieu of plausibly alleging an employment relationship between Defendants and Epstein or any of the other actors (*i.e.*, the maid, Groff, or the Recruiter), Plaintiff repeats the same refrain with respect to each entity Defendant: "Upon information and belief, New Albany [and WFCF, the Wexner Foundation, as well as YLK] also employed Epstein and the Employees that materially aided Epstein in his crimes and cover ups." [Compl. at ¶¶ 43, 45, 48, 51.]  Such conclusory assertions devoid of any "factual enhancement" are insufficient to demonstrate an employment relationship.  Iqbal, 556 U.S. at 678; see also Kelly for Moudy, 2022 WL 2758308 at *5 ("plaintiffs offer nothing more than legal conclusions about any employer-employee relationship" and thus fail to state claims for negligent retention and *respondeat superior*).  Plaintiff, after all, "cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." Wolo Mfg. Corp. v. ABC Corp., 349 F. Supp. 3d 176, 200 (E.D.N.Y. 2018).

With respect to Epstein in particular, Plaintiff pleads herself out of a plausible claim by repeatedly alleging that he committed his crimes "during the course and scope [sic] of his

employment." [Compl. at ¶¶ 199, 201, 204 & 207.] Employers cannot be liable for negligent retention for an employee's conduct taken within the scope of his employment. Rich v. Fox News Network, LLC, 939 F.3d 112, 129–30 (2d Cir. 2019); see also Indyke, 465 F. Supp. 3d at 468–69 (rejecting plaintiff's negligent retention claim where, like Plaintiff here, her conclusory assertions "suggest that Epstein and other FTC employees' actions were undertaken in the scope of their employment with FTC and therefore do not support a negligent supervision theory").[10]

This claim fails as a matter of law and it too must be dismissed.

### H.   Plaintiff's Complaint Must Be Dismissed For Want Of Personal Jurisdiction.

Finally, Plaintiff fails to plausibly allege personal jurisdiction over any Defendant. To survive Defendants' motion to dismiss, "plaintiff must make a prima facie showing that jurisdiction exists." Luke v. Sunwing Travel Grp., 2022 WL 595133, at *2 (E.D.N.Y. Feb. 28, 2022). "In determining whether a plaintiff has met this burden, courts will not draw argumentative inferences in the plaintiff's favor, nor accept as true a legal conclusion couched as a factual allegation." Id. (cleaned up). Nor should the Court accept as true "allegations controverted by the defendant's affidavits." Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015). "Conclusory allegations showing the presence of jurisdiction, 'particularly those stated only upon 'information and belief,' are insufficient to establish that the court has personal jurisdiction over the defendant." Fabius v. Gardere, 2021 WL 6797293, at *1 (E.D.N.Y. Sept. 22, 2021).

Personal jurisdiction may be either general or specific. Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). A court may exercise "general jurisdiction" over a defendant when the defendant's "affiliations with the [forum] State are so 'continuous and systematic' as to render

---

[10]   Insofar as Plaintiff intended to allege a claim for *respondeat superior* liability, her claim would still fail. "No decision in New York has been cited to date in which the doctrine of *respondeat superior* was held to apply to sexual assault." Doe v. New York City Dep't of Educ., 2023 WL 2574741, at *5 (E.D.N.Y. Mar. 20, 2023).

[it] essentially at home" there.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  General jurisdiction permits a court to hear any and all claims against a defendant, "even if all the incidents underlying the claim occurred in a different State."  Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017).  "Specific jurisdiction, on the other hand, depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  Goodyear, 564 U.S. at 919 (cleaned up). Unlike general jurisdiction, "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  Id.

1.      **Plaintiff's Blanket, Conclusory Assertion That The Ohio-Based Defendants Are "Essentially At Home In New York" Are Insufficient To Establish General Jurisdiction Over Any Defendant As A Matter Of Law.**

"In New York, N.Y. C.P.L.R. § 301 allows courts to invoke general jurisdiction where corporations have engaged in 'such a continuous and systematic course of 'doing business' in the state that a finding of their 'presence' there is warranted."  Williams v. Preeminent Protective Servs., Inc., 81 F. Supp. 3d 265, 270 (E.D.N.Y. 2015) (cleaned up).

Courts can exercise general jurisdiction over out-of-state corporations only "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  Daimler, 571 U.S. at 127.  Corporations are generally "at home" only in their states of incorporation and where they maintain a principal place of business.  Id. at 137. Only in the most "exceptional case[s]" will a corporation be subject to general jurisdiction anywhere else.  Id. at 139 n.19; Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 498 (2d Cir. 2020) ("[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business.").  As a result,

27

"it is '_**incredibly difficult to establish general jurisdiction in a forum other than the place of**_ _**incorporation or principal place of business**_.'" <u>Stroud v. Tyson Foods, Inc.</u>, 91 F. Supp. 3d 381, 387 (E.D.N.Y. 2015).  No such exception applies here.

### a.     <u>Not A Single Entity Defendant Is "At Home" In New York.</u>

_**YLK Charitable Fund.**_  At the outset, Plaintiff admits that YLK dissolved in 2010 [Compl. at ¶ 14], and Mrs. Wexner's affidavit confirms the point.  [Exh. 8, A. Wexner Aff. at ¶ 10.]  This alone is reason enough to reject general jurisdiction.  <u>See</u> <u>Pinto-Thomaz v. Cusi</u>, 2015 WL 7571833, at *4-5 (S.D.N.Y. Nov. 24, 2015) (efforts to demonstrate general jurisdiction pursuant to that CPLR § 301 on grounds that defendant was "doing business" in the state failed because the defendant was not "shown to have been 'doing business' at the time when the action was commenced" (quoting <u>Lancaster  v. Colonial Motor Freight Line, Inc.</u>, 581 N.Y.S.2d 283, 286 (1st Dep't 1992)); <u>Jones v. Warren</u>, 2013 WL 3439969, at *4 (E.D.N.Y. July 9, 2013) ("The Westfield conspiracy was discovered, and its members prosecuted, in 1999. There can be no serious claim that it continued 'doing business' when Jones filed his complaint in 2012.").

Furthermore, when it was in existence, YLK was incorporated in Delaware and maintained its principal place of business in Ohio – facts Plaintiff admits.  [Exh. 8 at ¶¶ 5-6; Compl., ¶ 14.]  Her unsupported legal conclusion that YLK is "essentially at home" in New York is also wholly contradicted by Mrs. Wexner's affidavit, which explains:

> YLK never owned any real property in the state of New York.  In particular, YLK never had any interest, either direct or indirect, in the premises generally known as 9 East 71st Street, New York, NY  10021.

> [Mrs. Wexner] conducted [her] work as YLK President exclusively in Ohio.

> YLK never leased or maintain an office in the state of New York.

> YLK never contracted or supplied goods or services in the state of New York.

YLK never transacted any business within the state of New York.

YLK never has had any agents or employees who reside in the state of New York.

YLK never derived substantial revenue from goods used or consumer services rendered in the state of New York.

[Exh. 8 at ¶¶ 11-17.]

Moreover, proving general jurisdiction requires Plaintiff to show that YLK's presence in New York is such that it is "at home" in the state, ***when compared to its contacts and business elsewhere throughout the country and the world***.  See e.g., Justiniano v. First Student Mgmt. LLC, 2017 WL 1592564, at *6 (E.D.N.Y. Apr. 26, 2017) (even though defendant maintained 40 bus yards in the state, "the Plaintiffs have not shown that the Defendants, who retain principal places of business in Ohio; are incorporated under the laws of Delaware; and do business in at least 42 different states should be subject to general jurisdiction in New York State."); Brown v. Lockheed Martin Corp., 814 F.3d 619, 629 (2d Cir. 2016) (general jurisdiction lacking in Connecticut where defendant was neither incorporated or headquartered, despite its 30-year plus continuous physical presence in the state, its employment of 70 workers there, and income of $160 million in revenue from the state). Plaintiff makes no attempt to draw such a comparison in her First Amended Complaint.  For these reasons, the Court lacks general jurisdiction over YLK.

***New Albany Company, LLC.***  Plaintiff repeats the same errors here: she admits that New Albany is a Delaware limited liability company with its principal place of business in Ohio – which, it is.[11] [Compl. at ¶ 13; Exh. 11, W.G. Ebbing Aff. at ¶ 1.]  Her conclusory assertion that New Albany is "at home" in New York is not only unsupported by any alleged facts, but also

---

[11]     Although for diversity purposes, a limited liability company's citizenship is determined by the domicile of its members, this Court has held that for *general jurisdiction purposes*, Daimler's at-home test based on state of organization and principal place of business is equally applicable to LLCs.  See Jean-Louis v. Carrington Mortg. Servs., 2020 WL 1042644, at *3, *3n.6 (E.D.N.Y. Mar. 4, 2020), aff'd sub nom. Jean-Louis v. Carrington Mortg. Servs., LLC, 849 F. App'x 296 (2d Cir. 2021).

contradicted by the affidavit of New Albany President & CEO William Ebbing.  Just like YLK, New Albany "has never owned any property, conducted or transacted business, or supplied any goods or services in the State of New York"; "never had any interest whatsoever in" the Property; and "never leased or maintained an office in the state of New York and does not have any employees residing in the State of New York."  [Exh. 11 at ¶¶ 4-6.]

 **_WFCF & The Wexner Foundation._**  The same analysis applies with respect to WFCF and the Wexner Foundation. WFCF is a Delaware non-profit with its principal place in Ohio, and the Wexner Foundation is an Ohio non-profit with its principal place of business in Ohio. [Compl. at ¶¶ 14-15.]  The Wexner Foundation has "never had any interest, either direct or indirect," in the Property, "does not own or lease real property" in New York, or maintain an office there, nor does "derive substantial revenue from goods used or consumer services rendered in the state of New York."  [Exh. 9, R. E. Abrahamson Aff. at ¶¶ 4-7.]  The same goes for WFCF.  [Exh. 10, P. Ugland Aff. at ¶¶ 4-9.]

 Even without this contrary evidence, moreover, Plaintiff's unsupported claim "upon information and belief" that WFCF and the Wexner Foundation "employed" Epstein or one or more of the other individuals who Plaintiff alleges "materially aided" Epstein's crimes is insufficient to establish general jurisdiction.  See DeLorenzo v. Viceroy Hotel Grp., LLC, 757 F. App'x 6, 8 (2d Cir. 2018) ("Conclusory non-fact-specific jurisdictional allegations or legal conclusions . . . will not establish a prima facie showing of jurisdiction." (Cleaned up.)).

   **b.** **Neither Mr. Nor Mrs. Wexner Are "At Home" In New York.**

 **_First_**, Plaintiff admits Mrs. Wexner is domiciled in Ohio.  [Compl. at ¶ 12; Exh. 8 at ¶¶ 1-3.]  While she avoids making the same concession as to Mr. Wexner, her assertion that all

"[c]omplete diversity exists," along with Mr. Wexner's affidavit, proves that he too is domiciled in Ohio. [Id. at ¶ 35; Exh. 7, L. Wexner Aff. at ¶¶ 2-4.]

General jurisdiction as to individuals turns on "whether the defendant may fairly be regarded as 'at home' in the forum state—a location which, according to the Second Circuit, is generally limited to that individual's domicile."  Lebron v. Encarnacion, 253 F. Supp. 3d 513, 519 (E.D.N.Y. 2017) (citing Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014)).  "In fact, an individual's domicile in New York has become something of a *sine qua non* for exercising all-purpose jurisdiction here." Id. (collecting cases). Perhaps in an "exceptional case" an individual's "contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere, . . . ***but the Second Circuit has yet to find such a case***."  Reich v. Lopez, 858 F.3d 55, 63 (2d Cir. 2017) (emphasis added).

Plaintiff's claim that Mr. Wexner previously "maintained a residence" in New York – owned not by him, but by a now defunct, non-party corporation – does not change his status as an Ohio citizen.  "One may have more than one residence in different parts of this country or the world, but a person may have only one domicile." Reich, 858 F.3d at 63.  Plaintiff has alleged no facts to suggest that Mr. Wexner's domicile is any place other than Ohio; thus general jurisdiction over him is also lacking.  Accord:  Lebron, 253 F. Supp. 3d at 520 (New York was not baseball player's "'home' in any real sense" based on his "occasional trips to the state for regularly-scheduled baseball games and his association with a New York-based union and sports management agency").  The Wexners live, pay taxes in, and reside in Ohio. [Exh. 7 at ¶¶ 1-4; Exh. 8 at ¶¶ 1-3.]  New York is not their "home."

***Second***, even if they included the requisite specificity, none of Plaintiff's conclusory, allegations about the entity Defendants – or some other non-party business (*i.e.*, Victoria's Secret

31

or L Brands) – having "conducted [unspecified] business" in New York can be imputed to Mr. or Mrs. Wexner in order to obtain jurisdiction. A corporation's state contacts cannot be imputed to an individual officer or owner to establish general jurisdiction under NY CPLR § 301.[12]

**_Third_**, whatever non-business-related contacts Mr. and Mrs. Wexner may have to New York, they are judged not in a vacuum, but as against the Wexners' travels "in their entirety, nationwide and worldwide." Daimler, 571 U.S. at 139 n.20; see Reich, 858 F.3d at 63 (no jurisdiction over non-citizen who owned a New York apartment and had relationships with New York banks and law firms, but who "spent fewer than 5% of nights in New York during a 31-month period the district court examined"). Plaintiff makes absolutely no attempt allege that the Wexners' personal contacts with New York are so substantial when compared to their contacts elsewhere as to render them "at home" in the state.

## 2.     Assuming That Plaintiff Even Attempted To Allege Specific Jurisdiction, She Fails To Do So Plausibly.

Notably, Plaintiff explicitly invoked the language of general jurisdiction, claiming all Defendants were "essentially at home in New York," she does not invoke any language from the statute relevant to specific jurisdiction, N.Y. C.P.L.R. § 302. Still, even under the generous transacts-any-business standard in § 302(a)(1), her allegations are insufficient to plausibly demonstrate specific jurisdiction over any Defendant.

**_Entity Defendants_**. Again, Plaintiff's only allegation about the entity Defendants is that "Upon information and belief," all of them "employed Epstein and the Employees that materially aided Epstein in his crimes and cover ups." [Compl. at ¶¶ 43, 45, 48, 51.] She also asserts (albeit

---

[12]     Case law puts this question beyond dispute. See e.g., Langer v. Paysafe Partners LP, 2020 WL 7684885, at *4 (E.D.N.Y. May 22, 2020), R&R adopted, 2020 WL 7041085 (E.D.N.Y. Nov. 30, 2020) ("Paysafe does not allege that Green transacts business in New York on his own behalf; rather, it alleges that Green does so on behalf of MPG [as its CFO]. Such allegations are insufficient to confer general personal jurisdiction over Green."); Doe v. Nat'l Conf. of Bar Examiners, 2017 WL 74715, at *7 n.13 (E.D.N.Y. Jan. 6, 2017) ("an individual acting on a corporation's behalf is not subject to general personal jurisdiction under CPLR § 301"); Giannetta v. Johnson, 2021 WL 2593305, at *7 (S.D.N.Y. June 24, 2021); Pinto-Thomaz, 2015 WL 7571833 at *5.

in a manner insufficient to state a claim) that YLK, WFCF, and the Wexner Foundation played some unclear role in an alleged fraudulent conveyance. These allegations are insufficient to demonstrate specific jurisdiction as a matter of law.  See Berdeaux v. OneCoin Ltd., 561 F. Supp. 3d 379, 400 (S.D.N.Y. 2021) ("The Court plainly may not exercise personal jurisdiction over [defendant] under Section 302(a)(1). Plaintiffs' complaint is devoid of a single [non-conclusory] factual allegation that [defendant] transacted *any* business in New York." (Emphasis in original.)).

*__Individual Defendants.__* Finally, Plaintiff cannot impute to the entity Defendants' contacts (or any other organization's contacts) to the Wexners individually for purposes of specific jurisdiction. In New York, the owners of a company are "generally not subject to personal jurisdiction as a result of the company's activities unless (1) the corporate veil can be 'pierced' or (2) the corporation acted as an agent for the owner." Wolo Mfg., 349 F.Supp.3d at 195. Plaintiff does not allege any facts sufficient to pierce the corporate veil. Under the theory that the Defendant entities acted as their agents, "plaintiffs must show that the officer was a 'primary actor' and not just an employee who played no part in the wrongdoing alleged." Rosenshine v. A. Meshi Cosmetics Industries Ltd., 2021 WL 5508069, at *3 (E.D.N.Y Jan. 25, 2021). The fundamental question is whether plaintiff has made a "showing that the officer engaged in *personal* conduct that is related to the transaction that underlies the claim." Group One Ltd. v. GTE GmbH, F. Supp.3d 323, 336 (E.D.N.Y. 2021) (emphasis in original).  It is not enough to make "a general allegation that an officer is in control of a corporation."  Id. Nor is it sufficient to merely point to fact that the defendant was a corporate officer. See id. (claims that defendant "is the CEO, sole employee, and sole [o]wner of" corporate defendant "is insufficient to establish that he had personal involvement with the alleged illegal acts"). Conclusory allegations that Mr.

Wexner employed Epstein, or anyone else present at the Property, as his agent are insufficient for the same reasons. <u>Wolo Mfg.</u>, 349 F.Supp.3d at 195-198 ("[T]he Court is not required to assume the truth of its conclusory allegations that Feldman 'did personally participate in the torts,'" or conclusory allegations of agency, "since the amended complaint is bereft of any facts tending to support those allegations.").

The same is true for Mrs. Wexner.    in this circuit have consistently found that '[j]urisdiction over a corporation or charity's board member, officer or employee, who is sued in his individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his official capacity." <u>Shi v. Le</u>, 2022 WL 896963, at *2 (E.D.N.Y. Mar. 28, 2022) (citation omitted.)

Plaintiff makes no allegations whatsoever concerning Mr. and Mrs. Wexners' personal contacts with the state.  And indeed, their affidavits show that such contacts are few, and ***<u>wholly unrelated to</u>*** Plaintiff's alleged injuries.  The Wexners vacated the Property in 1994 and ***<u>never returned to it</u>***.  [Exh. 7 at ¶¶ 9-11; Exh. 6, C. White Aff. at ¶¶ 6, 9.]  Mr. Wexner transferred his interest in non-party Nine East 71st Street Corporation to Epstein in 1998, years before Plaintiff ever went to the Property.  [Exh. 7 at ¶¶ 9-11.]  Now retired, Mr. Wexner travels to a number of locales across the country, though New York is seldom among them.  [<u>Id.</u> at ¶ 22.]

Plaintiff has not plausibly alleged that Defendants transacted any business in New York related to her claimed injuries. Specific jurisdiction is therefore lacking.

## IV.                                  <u>CONCLUSION</u>

For these many reasons, and because Plaintiff has already had the opportunity to amend, Plaintiff's First Amended Complaint should be dismissed in its entirety with prejudice.  <u>Davie v. New York City Transit Auth.</u>, 2003 WL 22998905, at *2 (E.D.N.Y. Dec. 17, 2003).

Dated:  April 17, 2023

Respectfully submitted,

/s/ Marion H. Little, Jr.

Marion H. Little, Jr. (Ohio Bar # 0042679)
*Admitted pro hac vice*
Matthew S. Zeiger (Ohio Bar #0075117)
*Admitted pro hac vice*
ZEIGER, TIGGES & LITTLE LLP
41 S. High St., Suite 3500
Columbus, OH 43215-6110
Phone: (614) 365-9900
Fax: (614) 365-7900
Email: little@litohio.com

*Counsel for Defendants The New Albany Company, LLC, The Wexner Family Charitable Fund, The YLK Charitable Fund, Abigail S. Wexner, The Wexner Foundation, and Leslie H. Wexner*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 17, 2023, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Marion H. Little, Jr.

Marion H. Little, Jr. (Ohio Bar # 0042679)