UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

JENNIFER D. ARAOZ,

                *Plaintiff*,

        - against –

THE NEW ALBANY COMPANY LLC, et al.

                *Defendants*,

------------------------------------------------------------------- X

INDEX NO.: 1:22-CV-00125 (AMD) (RML)

STATE OF NEW YORK    )
                             )   SS.:
COUNTY OF NEW YORK  )

## **AFFIRMATION OF ROBERT J. HANTMAN IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

I, Robert J. Hantman, an attorney duly admitted to practice law in the State of New York, New Jersey, and Florida, affirms under penalty of perjury as follows:

1. I am the managing partner of Hantman & Associates, attorneys for plaintiff Jennifer Araoz ("Plaintiff" or "Ms. Araoz") in this action. I make the statements herein upon information provided by the Plaintiff, personal knowledge, and based upon documents and things available to the public as cited herein.

2. As set forth in Plaintiff's First Amended Verified Complaint (the "FAVC"), and her Affidavit in Opposition to Defendant's Motion to Dismiss, (annexed hereto as Exhibit 1), this action arises out of New York's Child Victims Act, CPLR § 214-g ("CVA"), and the Plaintiff's reasonable belief that the townhouse located at 9 East 71st Street, New York, NY 10021 (the "Property"), which was the scene of various acts of sexual abuse against

Plaintiff as a teenager was owned by defendant Leslie Wexner, ("Wexner") or one of his shell companies, at the time of these occurrences, or that employees and agents of Wexner and/or entities controlled or owned by Wexner, contributed to the acts.

3. While purporting to provide documents that explain the transfer of the Property from Wexner to Epstein, Defendants have failed to evidence definitive proof of the transfer that should be easy for them to provide, as explained bellow, and further in the Affirmation of Matthew J. Simon, Esq. (*See* the Affidavit of Mathew Simon Attached hereto as Exhibit 2).

4. It is no surprise that Wexner is doing everything he can to avoid discovery in this matter, or even answer the allegations of the FAVC, taking advantage of the web of corporations, trusts, and charities – shell companies – formed and dissolved – over the years for this exact purpose; to protect him and his wife personally from the consequences of their affiliation with the infamous pedophile Jeffery Epstein and the actions of their employees and agents.

5. This is especially true as the relationship between Wexner and Epstein and specifically Wexner's knowledge of and assistance in covering up Epstein's crimes have been the focus of several public news pieces, documentaries, and surfaced in other lawsuits, many of which were released only after Plaintiff's former state action against the Epstein estate. (*Jennifer Danielle Araoz v. The Estate of Jeffrey Edward Epstein, et al*., Supreme Court of the State of New York, County of New York, Index No. 950010/19)(the "State Action").

6. According to a June 8, 2021 interview with Vanity Fair, Wexner's close friend, insurance mogul Robert Meister, ("Meister"), introduced Wexner to Epstein sometime around 1986.

(FAVC¶57;[1] *See* Gabriel Sherman, "*The Mogul and the Monster: Inside Jeffrey Epstein's Decades-Long Relationship With His Biggest Client*", VANITY FAIR, June 8, 2021 https://www.vanityfair.com/news/2021/06/inside-jeffrey-epsteins-decades-long-relationship-with-his-biggest-client).

7. Soon after this introduction Meisner informed Wexner of Epstein's sexual proclivities stating, "Think of whatever the worst thing anyone could do is, and Epstein did them all." (Gabriel Sherman, "*The Mogul and the Monster: Inside Jeffrey Epstein's Decades-Long Relationship With His Biggest Client*", VANITY FAIR, June 8, 2021 https://www.vanityfair.com/news/2021/06/inside-jeffrey-epsteins-decades-long-relationship-with-his-biggest-client; FAVC¶¶58 and 59).

8. In or around 1987 Epstein became Wexner's financial manager. (FAVC¶61; Landon Thomas Jr., "*Jeffrey Epstein: International Moneyman of Mystery*", NEW YORK MAGAZINE, October 28, 2002, https://nymag.com/nymetro/news/people/n_7912/)

9. In July of 1991, Wexner granted Epstein power of attorney, despite knowing or should have knowing Epstein's proclivities, apparently however this power of attorney was not recorded until July 29, 1999. (FAVC¶64; A true and correct copy of said Power of Attorney is annexed hereto as Exhibit 3).

10. Wexner also installed Epstein as a trustee of the Defendant the Wexner Foundation, (Les Wexner, "*Letter from Les*", The Wexner Foundation, August 8, 2019, https://www.wexnerfoundation.org/letter-from-les/), as well as trustee of a series of ambiguously named entities such as Health and Science Interests, Health and Science

---

[1] References to paragraphs preceded by "FAVC" are to Plaintiff's First Amended Verified Complaint in this action. Doc. No. 36.

Interests II, International Charitable Interests (and made him trustee of the trusts for his children where Epstein was given voting power over millions of dollars' worth of Limited shares. (FAVC¶¶67-68; Emily Steel, Steve Eder, Sapna Maheshwari and Matthew Goldstein, "*How Jeffrey Epstein Used the Billionaire Behind Victoria's Secret for Wealth and Women*", THE NEW YORK TIMES, July 25, 2019, https://www.nytimes.com/2019/07/25/business/jeffrey-epstein-wexner-victorias-secret.html).

11. In 1992 Wexner acquired the Property through a shell company, Nine East 71st Street Corporation, of which he was 100% owner. (Affidavit of Leslie Wexner Doc. No. 40-11 ¶¶5 and 6).

12. In the spring of 1993 Victoria's Secret catalog president Cynthia Fedus-Fields, having previously rebuffed multiple inappropriate propositions by Epstein – one of which included a weekend date to Wexner's house in Aspen – received a disturbing report by employees that Epstein was running around New York presenting himself as a Victoria's Secret & Co. scout, then one of Wexner's major companies. (FAVC¶69; Gabriel Sherman, "*The Mogul and the Monster: Inside Jeffrey Epstein's Decades-Long Relationship With His Biggest Client*", VANITY FAIR, June 8, 2021 https://www.vanityfair.com/news/2021/06/inside-jeffrey-epsteins-decades-long-relationship-with-his-biggest-client).

13. When this was reported to Wexner in spring of 1993 he said he would stop it. *Id.*

14. Instead of "taking care of it" as he promised to do, per his own admission, following non-descript "extensive renovations" to the Property, sometime in 1994 Wexner began renting the Property to Epstein. (Affidavit of Leslie Wexner Doc. No. 40-11 ¶11).

15. Despite the "extensive renovations" constructed between approximately 1987 and 1992, (Affidavit of Leslie Wexner Doc. No. 40-11 ¶¶5,7), Les Wexner and his wife Abigail Wexner only allegedly resided in the Property for one year following the renovations. (Affidavit of Leslie Wexner Doc. No. 40-11 ¶9),

16. Also, in the mid 1990's, two executives at L Brands, Wexner's 'umbrella' corporation that owned Victoria's Secret & Co. until 2020, told the New York Times that they learned that Epstein was improperly trying to involve himself in the recruitment of lingerie models for the Victoria's Secret catalog, a coveted assignment for young models and aspiring actresses. (Emily Steel, Steve Eder, Sapna Maheshwari and Matthew Goldstein, "*How Jeffrey Epstein Used the Billionaire Behind Victoria's Secret for Wealth and Women*", THE NEW YORK TIMES, July 25, 2019, https://www.nytimes.com/2019/07/25/business/jeffrey-epstein-wexner-victorias-secret.html).

17. Wexner knew about and ignored all of these reports as to Epstein's improper behaviors, while Epstein was renting the Property, and according to an affidavit filed by Maria Farmer, a former employee at the Property, Wexner and his security were complicit with Epstein's sex crimes. (FAVC¶¶74-87; *See Giuffre v. Dershowitz*, Case No.: 19-cv-03377-LAP Dkt. No. 1-12, a true and correct copy of this affidavit is annexed hereto as Exhibit 4).

18. Maria Farmer was hired to monitor and oversee the front door at the Property and keep records of people who came to the premises, where she witnessed a number of school age girls coming to the home, some wearing their school uniforms, being escorted upstairs. (FAVC¶¶74-76; Exhibit 4 ¶¶2-3).

19. Farmer testified that during the summer of 1996, she was working on an art project for Epstein in Wexner's Ohio mansion where Epstein and associate Ghislaine Maxwell sexually assaulted her without her consent. (FAVC¶¶78-79; Exhibit 4 ¶7).

20. When she fled the room, she pleaded with Wexner's security staff, who refused to let her leave for 12 hours holding her against her will even after she pleaded with them and told them about her assault. Later, she was only allowed to leave when her father drove from Kentucky to Ohio to get Maria away from Epstein and Maxwell. (FAVC¶¶80-82; Exhibit 4 ¶7).

21. Farmer told the Washington Post that the Ohio property was monitored by Wexner's wife, Abigail, and the Wexner security team. (FAVC¶83; Sarah Ellison and Jonathan O'Connell, "Epstein accuser holds Victoria's Secret billionaire responsible, as he keeps his distance", THE WASHINGTON POST, October 5, 2019, https://www.washingtonpost.com/business/economy/epstein-accuser-holds-victorias-secret-billionaire-responsible-as-he-keeps-his-distance/2019/10/05/1b6baf6c-d0d3-11e9-b29b-a528dc82154a_story.html).

22. In an exclusive 2022 interview with *Dailymail.com*, Farmer explained that Epstein bragged to her about obtaining the Property from Wexner for only $1, that he told her "Leslie Wexner funded [his] entire operation," and that "'Ghislaine and Epstein said: "We work for Les Wexner,"' she added referring to Epstein's right-hand woman Ghislaine Maxwell." (Christopher White, "*EXCLUSIVE: 'Wexner will do anything for me!' Jeffrey Epstein victim tells how he winked when he boasted of his closeness with billionaire Victoria's Secret boss who sold him Manhattan's biggest townhouse for just $1*", DAILYMAIL.COM, July 21, 2022 https://www.dailymail.co.uk/news/article-

11029425/Jeffrey-Epstein-boasted-lingerie-mogul-Les-Wexner-gave-Manhattan-townhouse-1.html)[2].

23. Likewise, according to Defendants' submissions in support of the instant motion to dismiss, the Property was monitored and staffed by Wexner's security team while Epstein was living there. (Affidavit of Craig White Doc. No. 40-8 ¶¶6-8).

24. "In September 1997, Wexner celebrated his 60th birthday with a dinner at his Ohio estate. Meister[, Wexner's close friend, and insurance mogul,] says he used the occasion to, once again, tell Wexner how untrustworthy Epstein was. 'My wife and I told him and Abigail hundreds of times to stay away from Epstein,' Meister said. In front of guests including former senator Joe Lieberman and real estate developer Marshall Rose, Meister said he begged Wexner to sever ties with Epstein." (Gabriel Sherman, *"The Mogul and the Monster: Inside Jeffrey Epstein's Decades-Long Relationship With His Biggest Client"*, VANITY FAIR, June 8, 2021 https://www.vanityfair.com/news/2021/06/inside-jeffrey-epsteins-decades-long-relationship-with-his-biggest-client).

25. Epstein and Wexner's relationship has also been revealed in the course of the recent civil actions and criminal trials involving Ghislaine Maxwell. (*Giuffre v. Maxwell*, S.D.N.Y. Case #: 1:15-cv-07433-LAP; *United States v. Ghislaine Maxwell*, S.D.N.Y. 20 Cr. 330 (AJN) (which recently ended in a conviction).

26. In a 2016 Ghislaine Maxwell deposition transcript, unsealed only on July 23, 2020, lawyers for plaintiff Virginia Giuffre probed the relationship between Wexner, Epstein,

---

[2] ("'Epstein told me in New York,' Farmer, 52, claimed. 'He said: "Maria, I got all this for one dollar." 'He held out his arms, spanning the room, and said, "Look at all of this." 'And there are decorators from France coming and going, and you've got all this fabulous food, and maids, and everything, it's just so unbelievable. 'And I said, "Why? How did you get it for one dollar?" And he looked at me with the biggest smile, and said, "Wexner will do anything for me, Maria." "And I mean anything." Then he winked.'). *Id.*

7

and the Property. (*Giuffre v. Maxwell*, S.D.N.Y. Case #: 1:15-cv-07433-LAP, Dkt. # 1137-13 – Transcript of Videotaped deposition of Ghislaine Maxwell dated April 22, 2016, a true and correct copy of which is attached hereto as Exhibit 5).

27. Although the transcript is redacted, it is clear that one such redacted name, mentioned 10 times refers to Wexner. (Kate Taylor, "*Unsealed Ghislaine Maxwell Deposition Appears to Show Attorneys Questioning Jeffrey Epstein's Mysterious Relationship With Victoria's Secret Founder Les Wexner*", INSIDER, Oct 23, 2020 https://www.businessinsider.com/ghislaine-maxwell-deposition-hints-at-jeffrey-epstein-les-wexner-link-2020-10)[3].

28. During this matter, Marion Little appeared on behalf of a "Doe 183", who is believed to be Les Wexner, in order to argue on behalf of sealing of documents regarding said Doe non-party. (*See* Oral Argument to Seal in *Giuffre v. Maxwell*, S.D.N.Y. 1:15-cv-07433-LAP Dkt # 1283, a true and correct copy of the transcript of the oral argument to seal is annexed hereto as Exhibit 6).

29. Wexner's was also implicated in the 2019 lawsuit filed by Virginia L. Giuffre against Alan Dershowitz, as an interested party. (*Giuffre v. Dershowitz*, S.D.N.Y. Case #: 19-cv-03377-LAP).

30. In *Giuffre v. Dershowitz*, S.D.N.Y. Case #: 19-cv-03377-LAP (the "Dershowitz Case") Dkt. #355, the plaintiff moved for a protective order preventing defendant Alan

---

[3] ("Do you know why [redacted] sold the New York house or gave the New York house to Jeffrey, if you know?" an attorney asked Maxwell at one point in the deposition."; "While the name of the person who sold or gave the "New York home" to Epstein is redacted, the deposition's glossary provides further evidence that the lawyer was likely referring to Wexner. The alphabetically ordered glossary places the redacted term between "weve" and "whats."; "[A]n attorney asked Maxwell about the business relationship between Epstein and the person. "I believe in the '90s when I was there they had a business relationship.") Kate Taylor, Unsealed Ghislaine Maxwell deposition appears to show attorneys questioning Jeffrey Epstein's mysterious relationship with Victoria's Secret founder Les Wexner, INSIDER, Oct 23, 2020 https://www.businessinsider.com/ghislaine-maxwell-deposition-hints-at-jeffrey-epstein-les-wexner-link-2020-10

8

Dershowitz from pursuing discovery into her accusations of sexual misconduct by individuals associated with Jeffrey Epstein other than Mr. Dershowitz, however the court granted the defendants motion to overcome Ms. Giuffre's protective order requiring non-party Leslie Wexner to submit to a deposition. (*Giuffre v Dershowitz,* 2021 US Dist LEXIS 218528 [SDNY Nov. 10, 2021).

31. However, this deposition transcript was never published to the docket or to our knowledge otherwise released publicly.

32. In an interview about the matter, when asked about Wexner, Dershowitz replied: "Les Wexner will be a major witness. And we will prove that [Giuffre's attorneys,] Sigrid McCawley and David Boies[,] went to Les Wexner's lawyers and said that Les Wexner had sex with Virginia Giuffre between five and 10 times and that Les Wexner insisted that she wear Victoria's Secret-type lingerie. And I can't imagine any reason for having that conversation unless it was part of an effort to obtain money. So we will call Les Wexner as a witness, we will call Sigrid McCawley as a witness, we will call David Boies, we will call Les Wexner's lawyer." (Kate Briquelet, "*Dershowitz: Epstein Victim Accused Billionaire Les Wexner of Sex Abuse 'to Obtain Money'*", THE DAILY BEAST, Sep. 24, 2019, https://www.thedailybeast.com/dershowitz-epstein-victim-accused-billionaire-les-wexner-of-sex-abuse-to-obtain-money).

33. During the Dershowitz Case, Wexner's counsel there and here, Marion Little, in a letter to the Court represented that no extortion attempt was made of his client by the plaintiff in that action opposing Dershowitz's suggestion there may have been. (*Giuffre v. Dershowitz*, Southern District of New York Case #: 19-cv-03377-LAP Dkt. #159 at 3).

34. Also in the Dershowitz Case, Stanley Pottinger, Esq., one of Virginia Giuffre's counsel, testified that in the fall of 2014, he informed David Boies that "in the course of investigating facts related to Mr. Epstein's sex trafficking, Mr. Wexner had been identified as a close business associate and personal friend of Mr. Epstein. I told Mr. Boies that there were assertions that Mr. Wexner had permitted Mr. Epstein to use, and entertain on, Mr. Wexner's [y]acht, and that Mr. Wexner was alleged to have had sex with one or more of Mr. Epstein's girls, including Ms. Giuffre." (*See* Affidavit of Stanley Pottinger in *Giuffre v. Dershowitz*, Case No.:19-cv-03377-LAP Dkt. No. 36-7 ¶9, a true and correct copy of which is annexed hereto as Exhibit 7)

35. On November 22, 2017, attorney Stephen Zack testified, "In December 2014, at the request of Mr. Boies, I sent a letter to Leslie Wexner regarding possible claims against him." Further, Zack testified that on January 6, 2015, and March 25, 2015, he and attorney David Boies had a telephonic conference with Mr. Wexner's counsel. And that on July 8, 2015, he, Mr. Boies and attorney Sigrid McCawley had an in-person meeting with Mr. Wexner's counsel in New York. (*See* Affidavit of Stephen Zack *Giuffre v. Dershowitz*, Case No.:19-cv-03377-LAP Dkt. No 36, 16 a true and correct copy of which is attached hereto as Exhibit 8).

36. These communications not only afford support to Plaintiffs allegations herein that Wexner was aware of and complicit in Epstein's crimes, but also make clear that Wexner was well aware of the allegations regarding his involvement and has availed himself to the jurisdiction of New York courts on matters surrounding Epstein, the Property, and the sex trafficking ring.

37. Wexner's affiliation and that Maxwell perpetrated her crimes and assistance of Epstein at the Property has also been the subject of many documentaries and articles. (*See* Discovery+ series "*Chasing Ghislaine*", episode 105 entitled "*Who Is: Leslie Wexner -* Retail magnate Leslie Wexner's link to a young Jeffrey Epstein changed both of their lives." https://www.amazon.com/Chasing-Ghislaine-Season-1/dp/B09MML6JGL; *and see* STARZ series "Who is Ghislaine Maxwell?"; *and see* Shannon Carlin, *The Troubling Story Behind Hulu's New Documentary Victoria's Secret: Angels and Demons*, TIME, July 19, 2022 (https://time.com/6197975/victorias-secret-angels-and-demons-hulu-true-story/).

38. One such three-part documentary series that focused specifically on the nefarious relationship between Epstein and Wexner was recently released on major streaming platform Hulu. (Matt Tyrnauer, "*Victoria's Secret: Angels and Demons*", HULU, July 14, 2022, (https://press.hulu.com/shows/victorias-secret-angels-and-demons/videos/)[4].

39. Despite all of this evidence toward Epstein's egregious illicit activities and his use of Wexner's brands and assets to carry them out, Wexner still allowed Epstein to rent the Property, according to Defendants, from 1994 to 1998. (Affidavit of Leslie Wexner Doc. No. 40-11 ¶11).

40. According to the Wexner, in 1998, he began the process of divesting the Property to Epstein. (*Id*).

---

[4] ("Investigated with journalistic rigor by director Matt Tyrnauer, this documentary tells the searing and provocative story of the Victoria's Secret brand and its longtime CEO, the larger-than-life, enigmatic billionaire Les Wexner. The underworld of fashion, the billionaire class, and Jeffrey Epstein are all revealed to be inextricably intertwined with the fall of this legendary brand in Victoria's Secret: Angels and Demons.") Matt Tyrnauer, "Victoria's Secret: Angels and Demons", HULU, July 14, 2022, (https://press.hulu.com/shows/victorias-secret-angels-and-demons/videos/).

41. This transfer was effectuated not by a cash, seller financing, or other typical method of deed transfer, but by a transfer of interest in the corporation that held the Property over many years. (*Id.*; *see also* Doc. No. 40-12 [closing statement and proof of payment]).

42. The Defendants claim that the transfer valued at twenty million dollars ($20,000,000.00) was effectuated, in part, by ten million dollars ($10,000,000.00) in cast "at closing", and in part by a ten million dollar ($10,000,000.00) promissory note from Epstein to Wexner that was not paid off until March 3, 2000, three months after it was allegedly due. (Doc. No. 40-12 pg.3).

43. However, the Defendants have failed to provide evidence that any of these alleged payments were actually made.

44. Such allegations are also contrary to what Epstein disclosed to Maria Farmer, that Epstein obtained the Property from Wexner for $1. (Christopher White, "*EXCLUSIVE: 'Wexner will do anything for me!' Jeffrey Epstein victim tells how he winked when he boasted of his closeness with billionaire Victoria's Secret boss who sold him Manhattan's biggest townhouse for just $1*", DAILYMAIL.COM, July 21, 2022 https://www.dailymail.co.uk/news/article-11029425/Jeffrey-Epstein-boasted-lingerie-mogul-Les-Wexner-gave-Manhattan-townhouse-1.html).

45. Wexner was virtually Epstein's only client, and over the years of his association with Wexner, Epstein obtained the Property, a private plane, and a luxury estate in Ohio — today valued at roughly $100 million all together — but all previously owned by Wexner or his companies. (Emily Steel, Steve Eder, Sapna Maheshwari and Matthew Goldstein, "*How Jeffrey Epstein Used the Billionaire Behind Victoria's Secret for Wealth and Women*", THE NEW YORK TIMES, July 25, 2019,

https://www.nytimes.com/2019/07/25/business/jeffrey-epstein-wexner-victorias-secret.html).

46. In another action involving the crimes committed at the Property, *Doe v. Trump*, S.D.N.Y. 1:16-cv-04642, a Jane Doe sued Epstein and Donald Trump alleging multiple brutal assaults at the Property.

47. During this *Doe v. Trump* action another woman utilizing the Tiffany Doe pseudonym submitted a declaration in support of the Jane Doe's request for a protective order. (*Doe v. Trump*, 1:16-cv-04642, S.D.N.Y. Doc. No. 1-2). In this Declaration Tiffany Doe states that she was hired to solicit adolescent women to attend parties thrown by Epstein between 1991-2000,[5] "most of which were held at what is known as the Wexner Mansion located at 9 E. 71st St. in New York City." (*Doe v. Trump*, 1:16-cv-04642, S.D.N.Y. Doc. No. 1-2 at ¶4) During these parties Tiffany Doe alleges she "personally witnessed the Plaintiff being forced to perform various sexual acts with Donald J. Trump and Mr. Epstein. Both Mr. Trump and Mr. Epstein were advised that she was 13 years old." (*Id.* at ¶7).

48. While Defendants claim that there exist no issues of fact that preclude this motion to dismiss, their submissions in support of their Motion to Dismiss only serve to raise further issues of fact, on top of those that existed already.

49. For example, the Affidavit of Craig White ("Mr. White") alleges that he has been "Director of Security - Wexner Family" for over 30 years and that when Les and Abigail Wexner (the "Wexners") allegedly moved out of the Property in 1994 they asked him to reside there. (Affidavit of Craig White Doc. No. 40-8 ¶¶1,2,6). Mr. White also alleges that he

---

[5] These dates mean that this Tiffany Doe could very likely have been the unknown woman who solicited and recruited the plaintiff herein.

13

was there when Plaintiff's sexual abuser Jeffery Epstein was residing and renting the Property. (Affidavit of Craig White Doc. No. 40-8 ¶¶6-8). However, Mr. White fails to say when he moved out, or if there were other Wexner security personal or employees at the Property and, if so, when.

50. Further, the utility bills submitted by the Defendants further implicate Abigale Wexner. They show that some bills for the Property were sent to her while Epstein was living there, and that Epstein paid some utilities but for which the Wexners later reimbursed him. (Doc. No. 40-10 P.5 - *see* handwritten notes thereon). These bills show, at least for the dates provided, that the Wexners maintained control over the Property after Epstein had begun to live in it.

51. Although Mr. White and Wexner allege that Wexner never went back to the Property, (Affidavit of Craig White Doc. No. 40-8 ¶9; Wexner Affidavit Doc. No. 40-11 ¶10), that is not dispositive to whether Wexner knew or assisted in Epstein's crimes, given this admission that his head of security resided at the Property, and in the face of public allegations that Wexner knew of Epstein's use of his properties and companies, employees, and other assets to carry out his crimes.

52. While Plaintiff has been able to amass the evidence submitted thus far, she has done so only through public channels, and only after the resolution of her State Action, and as such Defendants motion is premature as Plaintiff has not been afforded any discovery whatsoever.

53. Specifically, discovery needed to support the claims in this action include but are not limited to;

14

a. the depositions of Defendants Leslie Wexner and Abigail Wexner, Craig White - Director of Security for the Wexner Family and resident of the Property during the time Epstein lived there, Ghislaine Maxwell – Epstein's known accomplice, Lesley Groff, and Ms. Espinosa, (the "Named Employees"), Maria Farmer, Tiffany Doe of the *Doe v. Trump* S.D.N.Y. 1:16-cv-04642 action, and other potential witnesses who worked at the Property, attended events and "parties" there, or otherwise were aware of or facilitated the sex trafficking ring;

b. Contact information and employment records for the Named Employees;

c. the Stock Purchase Agreement that sets forth the terms and conditions of an alleged sale of shares of stock from Mr. Wexner to Mr. Epstein on November 11, 1998, relating to the alleged transfer of the Property and all closing documents executed on such transfer date;

d. a copy of the New York State and New York City Transfer Tax Forms and other ancillary documents along with a copy of the check (indicated as paid by Mr. Wexner's bank) indicating that such New York State and New York City transfer taxes were duly paid as of the date of the alleged sale; and

e. explanation as to why Mr. Wexner is listed as Owner of the Property on two NYC permits dated 1/8/2002 and 6/4/2002.

WHEREFORE, it is respectfully requested that the Court: (i) deny Defendant's motion to dismiss this action; (ii) grant such other and further relief as the Court deems just and proper.

The above facts are true to the best of my knowledge and belief, and I am subject to penalties of perjury if willfully false.

Dated: May 31, 2023

By: /s/ Robert J. Hantman

Robert J. Hantman, Esq.
Hantman & Associates
www.hantmanlaw.com
1120 Avenue of the Americas, 4th Floor
New York, NY 10036
Tel: (212) 684-3933
rhantman@hantmanlaw.com
*Counsel for Plaintiff*