**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JENNIFER D. ARAOZ,                              :

                    Plaintiff,               :

                          :       No. 1:22-cv-00125 (AMD) (RML)

        v.                        :

                          :

THE NEW ALBANY COMPANY, LLC, et al.,            :

                          :

              Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

I.    INTRODUCTION ................................................................................................... 1

II.   LEGAL ARGUMENT .............................................................................................. 2

    A.    *Res Judicata* Bars Plaintiff's Complaint In Its Entirety – Plaintiff's
    Last Ditch Appeal To Inapplicable Exceptions Do Not Save It ............................ 2

        1.   Both Cases Concerned The Same Transaction Or Series Of
        Transactions ................................................................................................ 2

        2.   Privity Indisputably Exists ........................................................................ 4

        3.   Neither *Res Judicata* Exception Applies ................................................. 5

            a.    Plaintiff's Assertion Of The Fraud Exception Fails ....................... 5

            b.    Had Plaintiff Engaged In Any Due Diligence
            Whatsoever, She Could Have Discovered Her
            Purported Claims Against Defendants Lack Merit ......................... 8

        4.   *Res Judicata* Bars All Of Plaintiff's Claims – Including The
        Un-Pleaded Claims She Improperly Asserts For the First Time
        In Response To Defendants' Motion To Dismiss ..................................... 10

    B.    Plaintiff Fails To State Claims For Violation of the TVPRA, RICO,
    Conspiracy, Fraudulent Conveyance And Negligent Retention ........................... 11

        1.   Plaintiff Is Not Entitled To Discovery To Develop Claims She
        Fails To Plausibly Allege In The First Instance ....................................... 11

        2.   Plaintiff's TVPRA Claims Fail As A Matter Of Law .............................. 12

            a.    Second Circuit Precedent Precludes Plaintiff From
            Applying The TVPRA Retroactively ............................................. 12

            b.    Plaintiff's TVPRA Claims Are Also Untimely ............................. 12

        3.   Plaintiff's RICO Claim Fails As A Matter Of Law ................................. 13

            a.    Plaintiff's RICO Claim is Untimely ............................................. 13

i

**Page**

        b.    Plaintiff Also Lacks RICO Standing.................................................14

    4.    Plaintiff Fails To Adequately Allege Conspiracy......................................14

    5.    Plaintiff's Fraudulent Conveyance Claim Under NYDCL § 276 Is Indeed Incurably Defective.....................................................................16

    6.    Plaintiff Fails To Plausibly Allege Negligent Retention ...........................18

   C.    Plaintiff Fails To Establish Personal Jurisdiction Over Any Defendant...............18

III.    CONCLUSION.........................................................................................................21

CERTIFICATE OF SERVICE ..............................................................................................22

## TABLE OF AUTHORITIES

**Cases**      **Page(s)**

7 W. 57th St. Realty Co., LLC v. Citigroup, Inc., 2015 WL 1514539
(S.D.N.Y. Mar. 31, 2015), aff'd, 771 F. App'x 498 (2d Cir. 2019)...................................9

Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143 (1987) ............................13

Aguirre v. Best Care Agency, Inc., 961 F. Supp. 2d 427 (E.D.N.Y. 2013)...................................12

Baird v. Kingsboro Psychiatric Ctr., 2013 WL 5774288 (E.D.N.Y. Oct. 24, 2013) ....................11

Barash v. N. Tr. Corp., 2009 WL 605182 (E.D.N.Y. Mar. 6, 2009) ...............................................7

Bey v. City of New York, 2015 WL 363903 (S.D.N.Y. Jan. 28, 2015).........................................9

Bridgewater v. Taylor, 745 F. Supp. 2d 355 (S.D.N.Y. 2010) ................................................11, 12

Briggs v. Chapman, 53 A.D.3d 900, 863 N.Y.S.2d 97 (App. Div. 2008) ......................................5

Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 255 (2017)...............................................19

Brown v. Tia, 149 A.D.3d 455 (N.Y. App. Div. 2017) ...................................................................4

Burdick v. Town of Schroeppel, 2017 WL 5509355 (N.D.N.Y. Jan. 31, 2017) ...........................9

Callen v. ILKB, LLC, 2022 WL 2079651 (E.D.N.Y. June 9, 2022)...........................................19

Campbell v. Bank of Am., Nat'l Ass'n, 2019 WL 4083078 (S.D.N.Y. Aug. 29, 2019) .................4

Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co., 586 F. App'x 768 (2d Cir. 2014).............21

DDR Const. Services, Inc. v. Siemens Indus., Inc., 770 F. Supp. 2d 627
(S.D.N.Y. 2011)..........................................................................................................................15

Del Med. Imaging Corp. v. CR Tech USA, Inc., 2010 WL 1487994
(S.D.N.Y. Apr. 13, 2010)...........................................................................................................20

Doe v. Indyke, 465 F. Supp. 3d 452 (S.D.N.Y. 2020) ..................................................................13

Dutton v. Young Men's Christian Ass'n of Buffalo Niagara, 207 A.D.3d 1038
(N.Y. App. Div. 2022) ................................................................................................................17

Edwards v. Barclays Servs. Corp., 2020 WL 3446870 (S.D.N.Y. June 24, 2020)........................6

iii

**Cases**                                                                                                           **Page(s)**

Everson v. New York City Transit Auth., 216 F. Supp. 2d 71 (E.D.N.Y. 2002) ..........................16

FL v. Hilton Cent. Sch. Dist., 2022 WL 1665160 (W.D.N.Y. May 25, 2022)...............................13

Geiss v. Weinstein Co. Holdings LLC, 383 F. Supp. 3d 156 (S.D.N.Y. 2019) ............................14

Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd., 2014 WL 4175914
(E.D.N.Y. Aug. 20, 2014)...........................................................................................................7

Gross v. Glick, 183 A.D.2d 748 (N.Y. App. Div. 1992) ............................................................11

Holland v. JPMorgan Chase Bank, N.A., 2019 WL 4054834
(S.D.N.Y. Aug. 28, 2019)...........................................................................................................7

In re Layo, 460 F.3d 289 (2d Cir. 2006) .....................................................................................5

In re Sharp Int'l Corp., 403 F.3d 43 (2d Cir. 2005) ...................................................................17

Jiang v. Am. Express Nat'l Bank, 2023 WL 144127 (E.D.N.Y. Jan. 10, 2023) .....................2, 3, 4

Johnson v. City of New York, 2019 WL 4468442 (E.D.N.Y. Sept. 18, 2019) ............................10

Johnson v. UBS AG, 791 F. App'x 240 (2d Cir. 2019) ...............................................................19

Jones v. Bay Shore Union Free Sch. Dist., 947 F. Supp. 2d 270 (E.D.N.Y. 2013)......................10

Kelly for Moudy v. Snap-on Inc., 2022 WL 2758308 (W.D.N.Y. July 14, 2022).......................18

Lacura, Inc. v. Masas U.S.A., Inc., 2016 WL 11481722 (E.D.N.Y. Feb. 9, 2016)........................7

Lerner v. Forster, 240 F. Supp. 2d 233 (E.D.N.Y. 2003) ...........................................................10

L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85 (2d Cir. 1999)................................10

M.C. v. State, 74 Misc. 3d 682 (N.Y. Ct. Cl. 2022) ..................................................................17

MacDermid, Inc. v. Deiter, 702 F.3d 725 (2d Cir. 2012)...........................................................20

Martinez v. JRL Food Corp., 194 A.D.3d 488 (N.Y. App. Div. 2021) ........................................3

McLeod v. Jewish Guild for the Blind, 864 F.3d 154 (2d Cir. 2017)..........................................10

Monbo v. Nathan, 623 F. Supp. 3d 56 (E.D.N.Y. 2022) ............................................................19

iv

**Cases**                                                                                                              **Page(s)**

Morales v. New York City Transit Auth., 2008 WL 11433211
(E.D.N.Y. Mar. 10, 2008) ............................................................................................16

Nimham-El-Dey v. Childrens Aid Soc'y, 2022 WL 4109781 (S.D.N.Y. Sept. 8, 2022)..............13

Ningbo Prod. Imp. & Exp. Co. v. Eliau, 2011 WL 5142756 (S.D.N.Y. Oct. 31, 2011) ................5

Odom v. Syracuse City Sch. Dist., 2020 WL 1689879 (N.D.N.Y. Apr. 7, 2020)..........................3

PB-36 Doe v. Niagara Falls City Sch. Dist., 72 Misc. 3d 1052 (N.Y. Sup. Ct. 2021),
aff'd, 213 A.D.3d 82 (N.Y. App. Div. 2023) ...............................................................17

Pelt v. City of New York, 2013 WL 4647500 (E.D.N.Y. Aug. 28, 2013) ...............................7, 10

Rafter v. Liddle, 704 F. Supp. 370 (S.D.N.Y. 2010) ..................................................................5, 6

Rapp v. Fowler, 2022 WL 1997176 (S.D.N.Y. June 6, 2022)........................................................17

Reiter v. Sonotone Corp., 442 U.S. 330 (1979)............................................................................14

Rolin v. Spartan Mullen Et Cie, S.A., 2011 WL 5920931 (S.D.N.Y. Nov. 23, 2011) .................15

Rosen v. Brown & Williamson Tobacco Corp., 11 A.D.3d 524
(N.Y. App. Div. 2d Dept. 2004) .................................................................................15

Sackman v. Liggett Group, Inc., 965 F. Supp. 391 (E.D.N.Y. 1997) .........................................14

Sahebdin v. Khelawan, 2022 WL 4451005 (E.D.N.Y. Sept. 24, 2022) ......................................12

Saud v. Bank of New York, 929 F.2d 916 (2d Cir. 1991) ..............................................................9

Selvam v. United States, 570 F. Supp. 3d 29 (E.D.N.Y. 2021), aff'd, 2022 WL
6589550 (2d Cir. Oct. 11, 2022)................................................................................11

Simmons v. Trans Express Inc., 37 N.Y.3d 107 (2021) ...............................................................10

Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221 (2d Cir. 2014)...........................19

Stutts v. De Dietrich Group, 2006 WL 1867060 (E.D.N.Y. June 30, 2006) ...............................15

Thackurdeen v. Duke Univ., 660 F. App'x 43, 46 (2d Cir. 2016).................................................19

Thompson v. Glob. Contact Servs., 2021 WL 3425378 (E.D.N.Y. Aug. 4, 2021) ........................5

**Cases**                                                                                          **Page(s)**

Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc., 757 F. Supp. 2d 218
(E.D.N.Y. 2010) ........................................................................................................4

Velez v. Sanchez, 693 F.3d 308 (2d Cir. 2012) ....................................................12

Williams v. Yamaha Motor Co., 851 F.3d 1015 (9th Cir. 2017) ...........................18

World Wrestling Ent., Inc. v. Jakks Pac., Inc., 425 F. Supp. 2d 484 (S.D.N.Y. 2006),
aff'd, 328 F. App'x 695 (2d Cir. 2009) .................................................................8

Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan., 263 F.3d 196 (2d Cir. 2001) ...............11

Zimmerman v. Poly Prep Country Day School, 888 F. Supp. 2d 317 (E.D.N.Y. 2012) ...............14

Zirvi v. Flatley, 838 F. App'x 582 (2d Cir. 2020) ..................................................13

**Statutes**                                                                                       **Page(s)**

18 U.S.C. § 1964(c) ................................................................................................14

28 U.S.C. § 1927 ......................................................................................................1

Fed.R.Civ.P. 9(b) .................................................................................................6, 17

Fed.R.Civ.P. 12(b)(2) ...............................................................................................1

Fed.R.Civ.P. 12(b)(6) ............................................................................................1, 7

**Other Authorities**                                                                              **Page(s)**

NYDCL § 276 ..........................................................................................................16

NYCPLR § 214-g ................................................................................................13, 16

NYCPLR § 302(a)(1) ..............................................................................................19

## I.                                          **INTRODUCTION**

Plaintiff is unreasonably and vexatiously multiplying and delaying these proceedings.  28 U.S.C. § 1927.  Unable to defend the eight claims she actually alleged in her already-amended Complaint, Plaintiff invents four new causes of action, each of which is untimely and meritless. Just as she did in drafting her pleadings, she piggybacks off the efforts of other counsel, representing other plaintiffs, in other cases pending against other defendants, who put in the work to allege viable causes of action, without any meaningful discussion as to how those cases support her claims beyond the fact that they also involve Jeffrey Epstein.  She supports her memorandum in opposition with roughly five-hundred (500) pages of attachments – none of which can be considered the Rule 12(b)(6) setting – and still demands discovery "***for the purpose of filing a sufficient complaint*.**"  A task Plaintiff could not complete despite the plethora of public information she gathered from various media outlets and court filings involving claims not asserted against any Defendant here.

Plaintiff ignores a significant portion of Defendants' Motion.[1]  Where she addresses their arguments on substance, she does no better.  Realizing that she cannot evade *res judicata*, she appeals to exceptions to that doctrine that are neither alleged in the Complaint nor viable at law. She attempts to salvage her conspiracy, fraudulent conveyance and negligent retention claims by stretching, and in some instances misrepresenting, her Complaint's allegations.  She takes similar liberties in misconstruing the affidavits Defendants submitted for the limited purpose of disputing jurisdiction under Rule 12(b)(2).  And in maintaining that this Court has both general and specific jurisdiction over Defendants, Plaintiff merely transfers her conclusory allegations

---

[1]     Plaintiff makes no response to Defendants' arguments that: (1) she lacks standing to pursue her claim for declaratory relief; (2) Counts III to VIII should be dismissed for impermissible group pleading; (3) she fails to plausibly allege any actionable wrongdoing by the New Albany Company, LLC; and (4) her fraudulent conveyance claim under NYDCLR § 273-a fails as a matter of law. These claims, therefore, may be summarily dismissed.

1

from the Complaint into her memorandum and disregards the case law that dictates dismissal of her action.

Plaintiff has had fifteen (15) months to assert any plausible claim against Defendants – after adjudicating the same claims in a different court against different defendants and with the benefit of this Court's considerable discretionary grace and guidance.  She has produced nothing.  Her Complaint must be dismissed with prejudice.

II.           **LEGAL ARGUMENT**

A.     ***Res Judicata*** **Bars Plaintiff's Complaint In Its Entirety – Plaintiff's Last Ditch Appeal To Inapplicable Exceptions Do Not Save It.**

"In New York, 'res judicata bars successive litigation of all claims based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was.'" Jiang v. Am. Express Nat'l Bank, 2023 WL 144127, at *6 (E.D.N.Y. Jan. 10, 2023) (Donnelly, J.).  Plaintiff does not dispute that a judgment on the merits was entered.  Still, she contends that this case concerns "entirely different facts than those in the State Action," and apparently disputes privity, as "[n]one of the Defendants here were parties to the State Action."  [R. 42, PgID 687-689.]  Her arguments fail.

1.     **Both Cases Concerned The Same Transaction Or Series Of Transactions.**

Plaintiff's claim that this action arises from "entirely different facts" than the State Action is facetious at best and an outright misrepresentation at worst.  The State Action was based on injuries Plaintiff alleges that Epstein caused her at the Property owned by Nine East 71st Street Corporation between 2001 and 2002, and the subsequent transfer of interest in that property.  [See State Action Complaint, Exh. 1 to Defs' Mtn. at ¶¶ 2-8, 61-186, 205-281.]

2

Likewise, the instant case is also based on injuries Plaintiff alleges that Epstein caused her at the Property owned by Nine East 71st Street Corporation between 2001 and 2002, and the subsequent transfer of interest in that property. [Compl. at ¶¶ 52-174.] Plaintiff even parroted the same causes of action she alleged against the defendants in the State Action against Defendants here. [See R. 40-1, PgID 440.] To reiterate: "Plaintiff appears to have copied the facts alleged in her State-court Amended Complaint into this Complaint. All of her causes of action arise from those facts. She cannot, therefore, avoid *res judicata* by shifting to a different set of legal theories based on the same set of facts." Odom v. Syracuse City Sch. Dist., 2020 WL 1689879, at *6 (N.D.N.Y. Apr. 7, 2020).

That Defendants' purported "negligence . . . and . . . failure to supervise [their] companies, properties, and employees" was not at issue in the State Action is irrelevant. That Defendants' liability was not "indispensable to the State Action" is also irrelevant. [R. 42, PgID at 687.][2] All of her instant claims arise out of the "same transaction or series of connected transactions." "Where material factual allegations overlap, 'the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that the facts essential to the second were already present in the first.'" Jiang, 2023 WL 144127, at *9 (quotation omitted). In this instance, they were. "A plaintiff cannot avoid the effects of res judicata by 'splitting' [her] claim into various suits, based on different legal theories []with different evidence 'necessary' to each suit." Id. (quotation omitted)

---

[2]      Plaintiff's appeal to Martinez v. JRL Food Corp., 194 A.D.3d 488 (N.Y. App. Div. 2021), is also irrelevant. There, the issues in the prior case "concern[ed] different factual predicates" precisely because plaintiff's counsel "had misunderstood where the [plaintiff's] accident occurred," which led counsel to sue the wrong property owners. Id. at 489. Plaintiff here made no mistake. She knew exactly where she was injured and, as she admits in the Complaint, she knew exactly who owned the Property – Nine East 71st Street Corp. – an entity she successfully sued in the State Action. Martinez instructs that "the most natural understanding of the language 'with prejudice' in the stipulations discontinuing the prior actions is that litigation concerning an accident that occurred at the incorrect premises would be discontinued." Id. Following that logic, the most natural understanding of Plaintiff's stipulation to discontinue her State Acton "with prejudice" "is that litigation concerning an [injury] that occurred at the []correct premises" – *i.e.*, the Property – "would be discontinued."

## 2. __Privity Indisputably Exists.__

Plaintiff emphasizes that "Defendants in the Instant Action were _not_ defendants in the earlier" State Action.  [R. 42, PgID 689.]  Implicit in her argument is the assumption that there must be a complete identity between the parties to trigger _res judicata_.  Her assumption is wrong. _First_, as this Court explained only months ago, where "the plaintiff is the party against whom res judicata is being asserted," "it is irrelevant whether defendants were named parties to the prior proceeding."  Jiang, 2023 WL 144127 at *8; see also Campbell v. Bank of Am., Nat'l Ass'n, 2019 WL 4083078, at *5 (S.D.N.Y. Aug. 29, 2019) (New York's _res judicata_ doctrine precluded subsequent action where "plaintiff was a party to the previous action").

_Second_, Plaintiff does not dispute that the employer-employee or agent-principal relationship she repeatedly alleged in the Complaint establishes privity between the State Action defendants and Defendants here. Nor could she.  See Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc., 757 F. Supp. 2d 218, 225 (E.D.N.Y. 2010) ("Plaintiff concedes that Carlson is the agent of Travelers ... Carlson is in privity with Travelers, and it does not matter that Carlson was not a defendant in plaintiff's action against Travelers."); Brown v. Tia, 149 A.D.3d 455, 456 (N.Y. App. Div. 2017) ("That plaintiff's original suit . . . named only municipal defendants, and not those defendants' employees is of no matter, as the claims against those individuals could have been brought ... and the employees are in privity with the prior defendants.").

_Third_, Plaintiff's assertion that the claims here "do not _only_ arise from Epstein's status as an employee" [R. 42, PgID 687], is betrayed by her own Complaint.  As explained in Defendants' Motion, Plaintiff alleges that all "Defendants" employed both Epstein and other "employees and agents" at the Property who Plaintiff contends caused her injuries.  [Compl., ¶¶ Intro, 22, 32-33, 43, 45, 51, 101, 162, 194, 216, 247.]  Even if she were correct in arguing that

4

her claims do not "only" depend on the alleged employment relationship (and she is not), Plaintiff also alleges at least two other relationships sufficient to establish privity: (1) successive ownership of the same Property, see Thompson v. Glob. Contact Servs., 2021 WL 3425378, at *10 (E.D.N.Y. Aug. 4, 2021) ("[u]nder New York law, privity extends to parties who are successors to a property interest"); and (2) Mr. Wexner's alleged ownership and control over the actual Property owner and State Action defendant Nine East 71st Street Corporation.[3] See id. at *10 (collecting cases and noting "[a]lthough the Individual Defendants were not defendants in the State Court Class Action, they were in privity with GCS as executives of GCS who "exercised operational control over GCS"); see also Briggs v. Chapman, 53 A.D.3d 900, 863 N.Y.S.2d 97, 99 (App. Div. 2008) (finding privity between the corporate defendant and parties who are "officers, shareholders and/or owners of defendant corporation" (cleaned up)).  Privity is established here, and res judicata applies.

### 3.      Neither *Res Judicata* Exception Applies.

Plaintiff next contends that her claims depend on "new evidence" not available to her in the State Action.  "As a general rule, newly discovered evidence does not preclude application of res judicata."  In re Layo, 460 F.3d 289, 292 (2d Cir. 2006).  While exceptions may apply where "the evidence was either fraudulently concealed or when it could not have been discovered with due diligence," neither scenario applies here.  Id. at 292.

### a.      Plaintiff's Assertion Of The Fraud Exception Fails.

*First*, "[a] plaintiff seeking to apply the fraud exception to *res judicata* must 'allege with particularly' what the defendant 'did to conceal any material information' and why it 'was unable to discover' defendant's actions."  Ningbo Prod. Imp. & Exp. Co. v. Eliau, 2011 WL 5142756, *9 (S.D.N.Y. Oct. 31, 2011) (quoting Rafter v. Liddle, 704 F. Supp. 370, 377–78

---

[3]        [See Compl. at ¶¶ 63, 156-157, 179-181, 232, 234.]

(S.D.N.Y. 2010)).  Specifically, she must plead fraud sufficient to satisfy the requirements of Fed.R.Civ.P. 9(b).  Rafter, 704 F. Supp. at 377.  Plaintiff here did not.  Her Complaint includes no allegations whatsoever concerning any evidence that any Defendant concealed concerning Epstein, the Property, or any discovery Plaintiff admittedly conducted during the State Action.[4] To the contrary, in drafting the instant Complaint (and her State Action Complaint) Plaintiff correctly identified non-party Nine East 71st Street Corp. as the Property owner.  Plainly, she was also able to investigate the owners of Nine East 71st Street Corp. because, as she alleges here and in the State Action, Jeffrey Epstein was one of them.

Even accepting Plaintiff's conclusory assertion that she could not have brought the instant claims against Defendants without the benefit of "evidence released ... only _after_ the State Action," Defendants put Plaintiff's counsel on notice that Plaintiff's claims were wholly precluded by _res judicata_ at the Court's September 7, 2022 conference, after which he had until January 6, 2023 – _yet another four months_ – to draft a revised, amended complaint.  None of the new "evidence" that Plaintiff now contends was necessary for her to know the full extent of her potential claims post-dates the operative Complaint she filed on January 6, 2023.[5]  If Plaintiff intended to take advantage of the _res judicata_ fraud exception, she could ***at least*** have pleaded its elements with the requisite Rule 9(b) particularity in amending her complaint.  She failed to do even that.  "Plaintiff has both failed to explain what specific fraud [any] Defendant committed on the [state] Court, as well as what new evidence has been discovered to support h[er] fraud claim."  Edwards v. Barclays Servs. Corp., 2020 WL 3446870, at *4 (S.D.N.Y. June 24, 2020).

---

[4]      [See R. 42, PgID 688-689, n.10 & n.11 (noting that during the State Action, Plaintiff filed a petition for "pre-action disclosure pursuant to N.Y. C.P.L.R. § 3102(c)" even before she filed her State Action complaint).]

[5]      Plaintiff's "new evidence" consists of a Vanity Fair article published on June 8 2021, the transcript of Ghislaine Maxwell's deposition taken in another action, "documentaries and other news articles," and "recent civil actions and criminal trials." [R. 42, PgID 689.]

*Second*, "[w]holly conclusory allegations of fraudulent concealment ... are insufficient to avoid res judicata."  Barash v. N. Tr. Corp., 2009 WL 605182, at *9 (E.D.N.Y. Mar. 6, 2009).  Yet this is all Plaintiff can offer.  None of the affidavits attached to Plaintiff's memorandum in opposition, nor any of their attachments, can be considered in applying *res judicata*.[6]  E.g., Pelt v. City of New York, 2013 WL 4647500, *1 (E.D.N.Y. Aug. 28, 2013) ("Because the Redacted Notes and Plaintiff's Declaration are not attached to, incorporated by reference into, or integral to the Second Amended Complaint and are not within the purview of judicial notice, the court declines to consider these two exhibits in ruling on Defendants' motions [to dismiss].").  Even setting aside their procedural impropriety, the affidavit signed by Plaintiff's counsel Hantman is particularly troublesome because Hantman ***is not even competent*** to testify as to what Plaintiff could or could not have discovered while litigating the State Action.  Hantman did not represent Plaintiff in that case.  Other counsel did—none of whom offer an affidavit.[7]

Without the affidavits, all Plaintiff does is vaguely accuse Defendants of "utilizing deceit, covert and overt threats, and coercion to keep their victims silent."  [R. 42, PgID 689.]  Not only does she fail to allege any facts to that effect in the Complaint, the only example of "coercion" she offers in her memorandum concerns a *different* alleged victim, who claims to have been associated with Epstein during a *different time period*, during which she purportedly witnessed

---

[6]      "In this Circuit, it is 'clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss.'"  Holland v. JPMorgan Chase Bank, N.A., 2019 WL 4054834, at *10 (S.D.N.Y. Aug. 28, 2019).  As a result, this Court has consistently refused to consider affidavits or other attachments to memoranda in opposition to a Rule 12(b)(6) motion seeking dismissal on res judicata grounds.  See Lacura, Inc. v. Masas U.S.A., Inc., 2016 WL 11481722, at *6 (E.D.N.Y. Feb. 9, 2016), R&R adopted, 2016 WL 843291 (E.D.N.Y. Mar. 1, 2016) (declining to consider affidavits when analyzing res judicata in the context of a Rule 12(b)(6) motion); Gorfinkel v. Ralf Vayntrub, Invar Consulting Ltd., 2014 WL 4175914, at *4 (E.D.N.Y. Aug. 20, 2014) ("Plaintiff's reliance on the extraneous materials is procedurally improper. Plaintiff did not refer to any affidavits nor incorporate them into her amended complaint. Only in opposition to Defendants' motion did Plaintiff, for the first time, include these documents. The Court, therefore, declines to consider the material contained in Plaintiff's affidavits[.]").  Each of Plaintiff's affidavits post-date the Complaint and are therefore not incorporated by reference or integral to it.  The Court should disregard them.
[7]      [See Exh. 1 to Mtn., State Action Complaint, R. 40-3, PgID 527; Exh. 2 to Mtn., Stipulation of Discontinuance, R. 40-4, PgID 531 (both including signatures from Plaintiff's counsel in the State Action).]

*different victims* being harmed by *different defendants*.   [Id. at 690.]   Plaintiff also flatly contradicts her claims of "deceit" and "coercion" by admitting that the new evidence she purportedly needed is "public information."   [Id. at 686.]   How exactly Defendants kept Plaintiff from discovering public information is a mystery she opts not to explain.   Plaintiff has not plausibly alleged fraud upon the New York state court and this exception does not apply.

> **b.     Had Plaintiff Engaged In Any Due Diligence Whatsoever, She Could Have Discovered Her Purported Claims Against Defendants Lack Merit.**

Equally unavailing is Plaintiff's suggestion that she could not, in the exercise of due diligence, have discovered information sufficient for her to assert the instant claims in the State Action.   Once again:   Plaintiff at least had information sufficient to assert the same claims against the State Action defendants that she now alleges against Defendants here based on the same predicate facts.   Further, she indisputably knew that Nine East 71st Street Corp. owned the Property, and the identity of at least one of that corporation's owners – Epstein.   Plaintiff herself alleges that "[p]ublic records indicate Mr. Wexner[] and Mr. Epstein were officers of Nine East 71st Street Corporation, which was dissolved in 2015."   [Compl. at ¶ 157.]   Her after-the-fact pleas that she "did not have any knowledge" of Mr. Wexner or the other Defendants should be dismissed out of hand.   See World Wrestling Ent., Inc. v. Jakks Pac., Inc., 425 F. Supp. 2d 484, 509–10 (S.D.N.Y. 2006), aff'd, 328 F. App'x 695 (2d Cir. 2009) ("Thus, even if WWE did not know the full extent of the facts supporting a RICO claim, WWE knew enough to plead a RICO violation in Connecticut state court.").   "Even if [Plaintiff] did not know the full extent of" her alleged claims "at the time the [State] Action was commenced, [her] pleadings in that suit

demonstrated that [s]he had sufficient information to create a duty of further investigation."

Saud v. Bank of New York, 929 F.2d 916, 921 (2d Cir. 1991).[8]

Moreover, Plaintiff concedes she had access to, and even pursued discovery in the State Action.  Between the filing of her October 10, 2019 State Action complaint and the November 12, 2020 stipulation to discontinue, she had at least a year to conduct discovery.  She identifies no conduct by any Defendant whatsoever that hindered her in that process.  See Burdick v. Town of Schroeppel, 2017 WL 5509355, at *34 (N.D.N.Y. Jan. 31, 2017), R&R adopted, 2017 WL 1284864 (N.D.N.Y. Apr. 6, 2017), aff'd, 717 F. App'x 92 (2d Cir. 2018) ("Plaintiff's addition of new defendants to these causes of action does not prevent the application of *res judicata* to the totality of her curfew-related claims. Plaintiff was under a duty to further investigate the full scope of her curfew claims when she brought them in *Cabral I and II*.").  The very fact that much of this "public information" came to light in other court actions only goes to show that it was available for a litigant to discover.  E.g., Bey v. City of New York, 2015 WL 363903, at *4 (S.D.N.Y. Jan. 28, 2015) ("The evidence Plaintiff now points to came out in the course of a separate trial, and there is no indication that Defendants actively concealed the information or

---

[8]    Even if this Court looked to the Hantman affidavit, it undercuts, rather than supports, Plaintiff's suggestion that she could not have discovered any purported connection between Mr. Wexner and Epstein at the time she was litigating the State Action.  Hantman cites multiple sources predating Plaintiff's October 10, 2019 complaint in the State Action that would have given her notice.  He points to: (1) A 2002 New York Magazine Article in support of Plaintiff's claim that Epstein became Mr. Wexner's financial manager in 1987; (2) a document wherein Mr. Wexner appointed Epstein as his power of attorney in a record that has been publicly available since 1999; (3) an August 8, 2019 letter published by Mr. Wexner [see https://www.wexnerfoundation.org/letter-from-les/], detailing Mr. Wexner's shock and disgust at the claims against Epstein and acknowledging that Epstein had "misappropriated vast sums of money from [Mr. Wexner] and [his] family"; (4) a July 25, 2019 article from the New York Times entitled, "How Jeffrey Epstein Used the Billionaire Behind Victoria's Secret For Wealth and Women"; (5) an October 5, 2019 article from the Washington Post titled, "Epstein Accuser Holds Victoria's Secret Billionaire Responsible, As He Keeps His Distance"; and (6) two unspecified "NYC permits" from 2002, which according to Hantman, identify Mr. Wexner as the owner of the Property. [Hantman Aff. at ¶¶ 8-10, 16, 21, 32, 45, 53(e).]  Such information was more than sufficient to warn Plaintiff of her obligation to investigate whether she may have claims against other parties.  See 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc., 2015 WL 1514539, at *29 (S.D.N.Y. Mar. 31, 2015), aff'd, 771 F. App'x 498 (2d Cir. 2019) ("Even accepting Plaintiff's allegation that Solow did not know that the media reports ... were true, these news reports put Solow on inquiry notice. With the exercise of due diligence, he could have learned the details of the LIBOR manipulation and asserted his claims accordingly.").

that it would not have been brought to light through Plaintiff's due diligence, including discovery upon his original complaints.").

Plaintiff falls utterly short in demonstrating that any Defendant "actively concealed" evidence from her and that she could not have timely discovered her present claims with due diligence.  For these reasons, res judicata mandates dismissal.  L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999) (per curiam).

### 4.   *Res Judicata* **Bars All Of Plaintiff's Claims – Including The Un-Pleaded Claims She Improperly Asserts For the First Time In Response To Defendants' Motion To Dismiss.**

"[O]nce a claim is brought to a final conclusion, *all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.*"   Simmons v. Trans Express Inc., 37 N.Y.3d 107, 111 (2021) (emphasis in original).  This includes, of course, the new un-pleaded claims that Plaintiff asserts for the first time in her memorandum in opposition:  three claims for alleged violations of the Trafficking Victims Protection Reauthorization Act (TVPRA) and a fourth under the Racketeering Influenced and Corrupt Organizations Act (RICO).   "It is well established that plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss."  Pelt, 2013 WL 4647500, at *8; see also Lerner v. Forster, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003) ("New claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss.").[9]

---

[9]        Plaintiff's reference to McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 156 (2d Cir. 2017), a case concerning the obligation to "liberally construe pleadings and briefs submitted *by pro se litigants*" does not suggest otherwise.  (Emphasis added.)  Unlike in McLeod, Plaintiff "is not *pro se*, and therefore not entitled to a liberal reading of the Complaint."  Jones v. Bay Shore Union Free Sch. Dist., 947 F. Supp. 2d 270, 278 (E.D.N.Y. 2013); see also Johnson v. City of New York, 2019 WL 4468442, at *6 (E.D.N.Y. Sept. 18, 2019) ("Because Plaintiff is represented by counsel ... the Court is not obligated to liberally construe his TAC to allege a hostile work environment claim" or consider a new claim "assert[ed] for the first time" in response to a motion to dismiss).

Yet even if Plaintiff could so amend, *res judicata* would still preclude her claims.  "[A] variation in the facts alleged, legal theories asserted, or relief sought in the new pleading generally will not affect the result, because separately stated causes of action 'may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought.'"  Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan., 263 F.3d 196, 201 (2d Cir.2001) (citing Gross v. Glick, 183 A.D.2d 748, 750 (N.Y. App. Div. 1992)).  Plaintiff's claims – whether or not actually alleged in the Complaint – are barred by *res judicata* and her Complaint should be dismissed.

### B.   Plaintiff Fails To State Claims For Violation of the TVPRA, RICO, Conspiracy, Fraudulent Conveyance And Negligent Retention.

#### 1.   Plaintiff Is Not Entitled To Discovery To Develop Claims She Fails To Plausibly Allege In The First Instance.

Before defending her implausible claims, Plaintiff demands that the Court allow her discovery "***for the purpose of filing a sufficient complaint***" as per the procedural rules in New York state courts.  [R. 42, PgID at 692 (emphasis added.)]  Regardless of what state courts permit, Plaintiff is not entitled to "discovery in order to state h[er] claims" in this Court. Bridgewater v. Taylor, 745 F. Supp. 2d 355, 358 (S.D.N.Y. 2010); see also Baird v. Kingsboro Psychiatric Ctr., 2013 WL 5774288, at *5 (E.D.N.Y. Oct. 24, 2013) ("The court notes that a party is not entitled to discovery as of right; a plaintiff must first state a claim upon which relief may be granted."). "[D]iscovery is authorized solely for the parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim." Selvam v. United States, 570 F. Supp. 3d 29, 52 (E.D.N.Y. 2021), aff'd, 2022 WL 6589550 (2d Cir. Oct. 11, 2022).  Plaintiff is not entitled to undertake a "fishing expedition for evidence in search of a theory that has yet to be asserted."

Bridgewater, 745 F. Supp. 2d at 358. Her request for discovery should be dismissed along with her Complaint.

### 2.     Plaintiff's TVPRA Claims Fail As A Matter Of Law.

#### a.     Second Circuit Precedent Precludes Plaintiff From Applying The TVPRA Retroactively.

Allowing Plaintiff to move forward on her unalleged TVPRA claims would require retroactive application of the statute's civil enforcement provision – an avenue the Second Circuit foreclosed in Velez v. Sanchez, 693 F.3d 308 (2d Cir. 2012). "The Trafficking Victims Protection Act ... was enacted in 2000, and the amendment creating its civil cause of action (part of the TVPRA), codified at 18 U.S.C. § 1595, was enacted only in December of 2003 and amended in December of 2008." Sahebdin v. Khelawan, 2022 WL 4451005, at *4 (E.D.N.Y. Sept. 24, 2022). "The Second Circuit has held [in Velez] that 'the civil cause of action [of the TVPRA] does not apply retroactively' to conduct occurring before December 19, 2003." Aguirre v. Best Care Agency, Inc., 961 F. Supp. 2d 427, 443 n.11 (E.D.N.Y. 2013) (quoting Velez, 693 F.3d at 325). "Therefore, Plaintiff cannot recover on her TVPRA claims for any action that occurred prior to December 19, 2003." Id.

Plaintiff alleges she was abused between 2001 and 2002, at least a year before the private right of action became law.   Because Velez precludes her from applying the TVPRA retroactively to conduct that occurred before its enactment, Plaintiff's never-pleaded TVPRA claims uniformly fail. See Velez, 693 F.3d at 324-325 (plaintiff could not recover for alleged trafficking and forced labor that ended in November 2003).

#### b.     Plaintiff's TVPRA Claims Are Also Untimely.

"Section 1595[c] of Title 18, which provides for civil TVPA suits, requires that such claims be brought 'not later than the later of (1) 10 years after the cause of action arose; or (2) 10

years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense." Doe v. Indyke, 465 F. Supp. 3d 452, 462 (S.D.N.Y. 2020). Plaintiff alleges that her injury occurred between 2001 and 2002, when she was fourteen-years-old. She would have reached the age of majority no later 2006, meaning she would have had until 2016 to file her TVPRA claim. She did not and thus her newly-asserted TVPRA claims are also untimely.

Plaintiff's reliance on the Child Victims Act to revive these claims also fail. "The CVA does not extend the statute of limitations for ... federal claims, even those that borrow their statute of limitations from state law." Nimham-El-Dey v. Childrens Aid Soc'y, 2022 WL 4109781, at *2 (S.D.N.Y. Sept. 8, 2022). NYCPLR § 214-g "merely changes the applicable statute of limitations for *state* laws relating to sexual abuse and assault." Id. at *2 n.2; see e.g., FL v. Hilton Cent. Sch. Dist., 2022 WL 1665160, at *3 (W.D.N.Y. May 25, 2022) ("Every district court in this Circuit" has declined to apply the CVA to revive outdated claims under the three-year limitations period applicable to 42 U.S.C. § 1983 claims).

### 3.   Plaintiff's RICO Claim Fails As A Matter Of Law.

#### a.   Plaintiff's RICO Claim is Untimely.

Civil RICO claims are subject to a four-year statute of limitations period. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987). In the Second Circuit, a RICO claim accrues "from the date a plaintiff 'discovered or should have discovered' plaintiff's injury." Zirvi v. Flatley, 838 F. App'x 582, 585 (2d Cir. 2020). According to the Complaint, Plaintiff was aware of her injury as soon as it happened – between 2001 and 2002 when she was fourteen-years-old. Plaintiff would have reached the age of majority in 2006, and thus had until 2010 to assert any plausible RICO claim. She did not do so. Further, the CVA does not revive this *federal* claim. Plaintiff's untimely RICO claim should be dismissed.

### b.    Plaintiff Also Lacks RICO Standing.

By its plain terms, RICO permits recovery only for persons injured in their "business or property" by a RICO violation. Geiss v. Weinstein Co. Holdings LLC, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019); 18 U.S.C. § 1964(c) "The phrase 'business or property' ... exclude[s] personal injuries suffered." Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979). "The overwhelming weight of authority interprets Reiter to exclude the economic consequences of personal injuries." See Zimmerman v. Poly Prep Country Day School, 888 F. Supp. 2d 317 (E.D.N.Y. 2012) (former students' diminished career opportunities and lost earning potential flowing from personal injuries caused by former coach's sexual abuse were not compensable RICO injuries).

Plaintiff has alleged only physical and psychological injury. [Compl. at ¶¶ 191-192, 214, 228, 246, 249, 251, 255, 263-264.]  Thus, even accepting her claims that her injuries negatively impacted her future career prospects [see id. at ¶¶ 143-144] she lacks standing to recover for such an injury under RICO.  E.g., Zimmerman, 888 F. Supp. 2d at 329-330 (plaintiffs claiming "diminished educational [and vocational] opportunities" and "diminished wages and salaries" as a result of abuse did not allege "injur[y] to business or property" and lacked RICO standing); see also Geiss, 383 F. Supp. 3d at 171 (plaintiffs abused by Harvey Weinstein "blacklist[ed]" in the entertainment industry alleged only "personal injuries or economic injuries flowing from those personal injuries" and "d[id] not have standing to pursue civil RICO claims").

### 4.    Plaintiff Fails To Adequately Allege Conspiracy.

First, in another effort to amend her Complaint after the fact, Plaintiff argues that the tort underlying her free-floating conspiracy claim is Defendants' "own torts of negligence."  [R. 42, PgID 694.]  Negligence – an unintentional tort – necessarily cannot serve as grounds for an intentional conspiracy claim.  See Sackman v. Liggett Group, Inc., 965 F. Supp. 391, 395

(E.D.N.Y. 1997) ("[B]ecause a claim of conspiracy requires a showing of intentional conduct, 'there can hardly be conspiracy to commit negligence.'"); Rosen v. Brown & Williamson Tobacco Corp., 11 A.D.3d 524, 525 (N.Y. App. Div. 2d Dept. 2004).

Second, Plaintiff also points to "multiple primary torts in Epstein's acts." Yet these acts cannot serve as the requisite underlying torts because Plaintiff has not alleged any agreement between Epstein and any Defendant to cause such harm to Plaintiff. "Conspiracy claims premised upon 'conclusory, vague or general' allegations will not withstand a motion to dismiss." Stutts v. De Dietrich Group, 2006 WL 1867060, at *14 (E.D.N.Y. June 30, 2006). Courts in this Circuit have rejected as implausible the very same language Plaintiff employs here: "Thus allegations such as: 'Defendants conspired to commit the wrongful acts detailed above' are wholly conclusory, and cannot serve as a basis for invoking the doctrine of civil conspiracy under New York law.'" DDR Const. Services, Inc. v. Siemens Indus., Inc., 770 F. Supp. 2d 627, 659 (S.D.N.Y. 2011) (cleaned up). Furthermore, allegations about purported "agreements" relating to transfers of interest in Nine East 71st Street Corp. do not encompass any agreement to engage in Epstein's sexual offenses.[10]

Third, even if Plaintiff could have alleged that Defendants acted with a personal motive, and thereby take advantage of the personal-interest exception of the intra-corporate conspiracy doctrine, the fact is she did not. Plaintiff instead expressly alleged the opposite; that, "[u]pon information and belief," the "Defendant-Employers" – consisting of each and every Defendant – "operated in part to further Jeffrey Epstein's goal to obtain, recruit, and procure young females

---

[10]     Nor can an agreement to violate any law be inferred from Plaintiff's allegations.  "Apparently, [Plaintiff] want[s] the Court (and ultimately the jury) to infer the existence of a conspiracy from the fact that [Mr. Wexner] and [Epstein] were officers of [New Albany Company.]"  Rolin v. Spartan Mullen Et Cie, S.A., 2011 WL 5920931, at *6 (S.D.N.Y. Nov. 23, 2011).  "However, as every jury in a conspiracy case is told, a person's mere association with someone who is committing a crime is insufficient to give rise to an inference of conspiracy between them."  Id. Plaintiff's fraudulent conveyance claim is not a viable underlying tort either as Plaintiff fails to plausibly allege it.

for the purposes of providing sexually explicit massages to Jeffrey Epstein." [Compl. at ¶ 198.][11] In fact, as Plaintiff tells it, facilitating Epstein's abuse was a "corporate objective" – not a personal one. [See id. at ¶ 199 ("Upon information and belief, during the course and scope of Jeffrey Epstein's employment for such Defendant-Employers, ***he fulfilled the corporate objective of receiving sexual massages procured for him by employees of such Defendant-Employers***." (Emphasis added.)); at ¶ 207 ("Upon information and belief Jeffrey Epstein engaged in this type of sexually abusive behavior daily to the extent that engaging in sexual massages ***became the most regular activity that he engaged in while in the course and scope of his employment***." (Emphasis added.)); at ¶¶ 201, 204, 211.] Plaintiff's claim for negligence in Count IV is likewise alleges that Defendants employed other wrongdoers present at the Property for the specific purpose of assisting in Epstein's misconduct. [See id. at ¶ 218-219 ("Upon information and belief, the Employees were compensated ... exclusively, [to] procure or maintain each young female message therapist, or to assist ... in the concealment of any misconduct").]

The "limited" personal interest exception to the intra-corporate conspiracy doctrine that Plaintiff invokes "applies only where 'a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose.'" Morales v. New York City Transit Auth., 2008 WL 11433211, at *5 (E.D.N.Y. Mar. 10, 2008). Plaintiff did not assert any such allegations. Thus her conspiracy claim cannot withstand Defendants' Motion to Dismiss. Everson v. New York City Transit Auth., 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002).

> ### 5. Plaintiff's Fraudulent Conveyance Claim Under NYDCL § 276 Is Indeed Incurably Defective.

Plaintiff next argues that NYCPLR § 214-g revives her claim for fraudulent conveyance under NYDCL § 276, but a fraudulent conveyance *is not* a cause of action for injury "suffered as

---

[11]     [See also id. at ¶¶ 42, 47, 50, 101.]

a result of conduct which would constitute a sexual offense," "incest" or "the use of a child in a sexual performance." Rapp v. Fowler, 2022 WL 1997176, at *3 (S.D.N.Y. June 6, 2022); see also In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir. 2005) ("Fraudulent conveyance law is ... concerned with transfers that 'hinder, delay or defraud' creditors; it is not ordinarily concerned with how such debts are created."). None of the cases she cites lends support to her argument.[12]

Plaintiff does not dispute that she failed to allege fraudulent conveyance with the particularity requisite under Rule 9(b) – a requirement that applies even in the case of a claim for actual fraud under § 276. See In re Sharp, 403 F.3d at 56 ("As 'actual intent to hinder, delay, or defraud' constitutes fraud ... it must be pled with specificity, as required by Fed.R.Civ.P. 9(b)." (Cleaned up.)). To remedy this defect, Plaintiff argues that she adequately alleged intent to hinder or delay creditors by identifying certain "badges of fraud." Yet many of the purported "badges" she cites *appear nowhere in the Complaint*. For example:

- Her claim that Mr. Wexner "had just spent years renovating" the Property before transferring it is derived not from the Complaint but from Plaintiff's intentional misreading of Mr. Wexner's affidavit, wherein he states that renovations were completed ***in 1992*** – years before even Plaintiff claims he transferred it.

- Her claim that consideration for one or more transfers consisted of only $1, which she admits is drawn from a tabloid article. This claim is not only absent from the Complaint, but contradicted by it, as Plaintiff intimates that an alleged $13 million transfer from Epstein's charitable organization to YLK was meant to compensate for the transfer, being in "almost the exact amount" that Mr. Wexner "paid for the [Property] in 1991." [Compl. at ¶ 169.]

---

[12]       E.g., Dutton v. Young Men's Christian Ass'n of Buffalo Niagara, 207 A.D.3d 1038, 1039 (N.Y. App. Div. 2022) (defendant could be liable as successor in interest to entity that employed the individual who abused plaintiff); PB-36 Doe v. Niagara Falls City Sch. Dist., 72 Misc. 3d 1052, 1056 (N.Y. Sup. Ct. 2021), aff'd, 213 A.D.3d 82 (N.Y. App. Div. 2023) (regarding the effect of § 214-g on plaintiff's statutory claim for failure to report abuse); M.C. v. State, 74 Misc. 3d 682, 696 (N.Y. Ct. Cl. 2022) (addressing claims for negligent hiring, retention and supervision, for "negligent, reckless and willful misconduct," and breach of fiduciary duty; dismissing claims for "negligent infliction of emotional distress, premises liability, and for alleged violations of non-delegable and statutory duties, and in loco parentis"). Plaintiff also cites to LG 40 Doe v. Eberhardt, Erie County Supreme Court Index No. 805762/2020, without identifying a particular court order from that case. However, according to court public court records, the summons and complaint in that action did not contain a claim for fraudulent conveyance.

- Her claim "that apparently the transfer was conducted through a transfer of shares in a nonprofit with a value allegedly line of a $20,000,000 purchase price, or through a promissory note yet unprovided by the Defendants." [R. 42, PgID 699.]

- Her claim that Mr. Wexner stationed of his head of security at the Property, which she uses to bolster her unsupported and conclusory Complaint allegation that Mr. Wexner maintained control over the Property after transferring his interest in Nine East 71st Street Corp. Again, this detail is based on Plaintiff's misrepresentation of Defendants' affidavits,[13] not anything alleged in the Complaint.

Plaintiff's enduring habit of "amending" her insufficient claims by way of misleading *post-hoc* briefing should not be tolerated.  She has not plausibly alleged fraudulent conveyance.

### 6.    Plaintiff Fails To Plausibly Allege Negligent Retention.

Defendants moved to dismiss Plaintiff's negligent retention claim because her Complaint contains "nothing more than legal conclusions about any employer-employee relationship." Kelly for Moudy v. Snap-on Inc., 2022 WL 2758308, at *4-5 (W.D.N.Y. July 14, 2022) (dismissing negligence claim where plaintiff alleged "[u]pon information and belief" that "Prohaska was an agent, servant and/or employee of the defendant, SNAP-ON, and was acting within the scope of that agency"); see also Williams v. Yamaha Motor Co., 851 F.3d 1015, 1025 n.5 (9th Cir. 2017) (allegations that the defendants "were the agents or employees of each other and were acting at all times within the course and scope of such agency and employment" were "conclusory legal statement[s] unsupported by any factual assertion[s]").  Plaintiff makes no argument to the contrary.  This claim fails and should be dismissed.

### C.    Plaintiff Fails To Establish Personal Jurisdiction Over Any Defendant.

***General jurisdiction is lacking*.**  Plaintiff stands by her claim that this Court has general jurisdiction over every Defendant – even though every Defendant is domiciled elsewhere, and even though she makes no attempt to explain how the instant dispute is among the rare, highly

---

[13]    Contrary to Plaintiff's assertion, Mr. and Mrs. Wexner requested that head of security Craig White stay at the Property after they vacated it in 1994, not after Mr. Wexner divested himself of all shares in Nine East 71st Street Corp. in 1998 or after Epstein began living there.  [See White Aff., R. 40-8, PgID 629, ¶¶ 6-8.]

"exceptional" cases wherein every single Defendant is somehow "at home" in a foreign jurisdiction.[14]  Plaintiff's "conclusory statements without any supporting facts" will not do. Callen v. ILKB, LLC, 2022 WL 2079651, at *3 (E.D.N.Y. June 9, 2022).  In no universe is the exercise of general jurisdiction over Defendants proper.

 ***Specific jurisdiction is lacking.***  Finally, Plaintiff contends that this Court has specific jurisdiction over Defendants pursuant to NYCPLR § 302(a)(1).[15]  In pressing this argument, Plaintiff impermissibly combines Defendants' alleged "general" contacts with New York (*e.g.*, purported connections to the state through Mr. Wexner's past role in other businesses) together with their alleged "specific" contacts with the state (a number of which she misrepresents).  The Supreme Court rejected this strategy in Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 255 (2017).  As explained in Johnson v. UBS AG, 791 F. App'x 240 (2d Cir. 2019):

> The Trustees attempt to meet the minimum contacts standard through a simple equation: ***a case arising out of UBS's "contacts within the U.S.," plus UBS's continuing presence in New York through its branch offices, equals specific jurisdiction. But these components do not add up.***  The Trustees' method of establishing jurisdiction is similar to a "sliding scale approach," in which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims"— an approach the Supreme Court has rejected as "a loose and spurious form of general jurisdiction[]" [in] Bristol-Myers Squibb ... "For specific jurisdiction, a defendant's general connections with the forum are not enough." Id.

> [Id. at 242 (emphasis added.)]

---

[14] See Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014) ("The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home."); Monbo v. Nathan, 623 F. Supp. 3d 56, 136–37 (E.D.N.Y. 2022) ("[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business" and "when a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how 'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'").

[15] Plaintiff also appears to invoke § 302(a)(3) as to Mr. Wexner, claiming he "committed a tortious act" in New York.  Her argument fails because she has not alleged or established that Mr. Wexner was physically present in the state at the time Plaintiff was injured.  See Thackurdeen v. Duke Univ., 660 F. App'x 43, 46 (2d Cir. 2016) ("[A] defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2).").

Apart from side-stepping Supreme Court precedent, Plaintiff's specific jurisdiction argument also fails because she simply misrepresents the facts to the Court.[16]  Regarding Mr. Wexner, she alleges that he "maintained a residence at the Property *during the time* in which Epstein was grooming the Plaintiff or at least rented the Property out to Epstein *during this time*." [R. 42, PgID 704 (emphasis added).]  Not so.  Mr. Wexner attested that he never returned to the Property after 1994, and sold all shares in the corporation that Plaintiff admits actually owned the Property in 1998 – years before the 2001 to 2002 period when Plaintiff claims she was injured.  [R. 40-11, PgID 645.]  Regarding Mrs. Wexner, Plaintiff alleges she "coordinated ... Epstein's rental of the Property and the transfer of utilities to him."  Also wrong.  Craig White, the Wexner's security director, attested that he transferred utilities to Epstein between 1994 and 1995 and confirmed that the Wexners never returned to the Property after 1994.  [R. 40-8, PgID 629.]

Plaintiff claims that YLK "at one point owned the Property."  This is untrue.  Mrs. Wexner attested that YLK "never had any interest, direct or indirect," in the Property.  [R. 40-15, PgID 660.]  Plaintiff also argues that YLK "received $47 million form Epstein ... shortly before" he was sentenced for the crimes he pleaded guilty to in Florida, $42 million of which Epstein misappropriated from the Wexners.  [R. 42, PgID 705-06.]  Neither of these claims appear anywhere in the Complaint.  Misstating the timeline to her advantage a second time, Plaintiff contends that security director White lived at the property "during the time of the damages complained hereof."  [Id.]   This too is false.  White attested that after the Wexners vacated the

---

[16]     Plaintiff's jurisdictional allegations need only be accepted as true to the extent they are non-conclusory, factually supported, and "*to the extent they are uncontroverted by the defendant's affidavits*."  MacDermid, Inc. v. Deiter, 702 F.3d 725, 727 (2d Cir. 2012) (Emphasis added.); Del Med. Imaging Corp. v. CR Tech USA, Inc., 2010 WL 1487994, at *8 (S.D.N.Y. Apr. 13, 2010) ("Although the record must be construed in favor of Plaintiff, the clear statements contained in affidavits ... cannot simply be ignored absent some reason to doubt their veracity.").

Property, he resided there "until their belongings were removed ... in late 1994," at least seven years before Plaintiff alleges she was harmed.  [R. 40-8, PgID 629.]

For the remainder of her jurisdictional arguments, Plaintiff simply transfers the conclusory allegations from her Complaint into her memorandum – in some instances taking the "upon information and belief" language with it.  But this Court is not obligated to accept as true parroted legal conclusions with no factual support.  Plaintiff "must make allegations establishing jurisdiction with some 'factual specificity' and cannot establish jurisdiction through conclusory assertions alone."  Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co., 586 F. App'x 768, 769 (2d Cir. 2014).  Because this is all Plaintiff offers, the Complaint should be dismissed.

## <u>CONCLUSION</u>

For these reasons, Defendants respectfully request that the Court dismiss Plaintiff's First Amended Complaint with prejudice.

Dated:  June 16, 2023                              Respectfully submitted,

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (Ohio Bar # 0042679)
*Admitted pro hac vice*
Matthew S. Zeiger (Ohio Bar #0075117)
*Admitted pro hac vice*
ZEIGER, TIGGES & LITTLE LLP
41 S. High St., Suite 3500
Columbus, OH 43215-6110
Phone: (614) 365-9900
Fax: (614) 365-7900
Email: little@litohio.com

*Counsel for Defendants The New Albany Company, LLC, The Wexner Family Charitable Fund, The YLK Charitable Fund, Abigail S. Wexner, The Wexner Foundation, and Leslie H. Wexner*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 16, 2023, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (Ohio Bar # 0042679)

991729

22