## ZEIGER, TIGGES & LITTLE LLP

TELEPHONE: (614) 365-9900
FACSIMILE: (614) 365-7900

ATTORNEYS AT LAW

3500 HUNTINGTON CENTER

41 SOUTH HIGH STREET

COLUMBUS, OHIO 43215

WRITER'S DIRECT NUMBER:
(614) 365-4113
little@litohio.com

October 20, 2023

**SUBMITTED VIA ECF**

Honorable Ann M. Donnelly
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 4GN
Brooklyn, NY 11201

> Re: Jennifer D. Araoz vs. The New Albany Company LLC, et al.
> Case No. 1:22-cv-00125

Dear Judge Donnelly:

We are writing to provide notice of supplemental authority from the Second Circuit in further support as to the personal jurisdiction issues raised in Defendants' Motion to Dismiss, which was filed on April 17, 2023. [Doc. No. 40] On April 17, 2023, the Second Circuit issued its decision in Edwardo v. Roman Catholic Bishop of Providence, 66 F.4th 69 (2d. Cir. 2023).

Please do not hesitate to contact the parties should the Court have any questions.

Very truly yours,

Marion H. Little, Jr

Enclosure

cc: Robert J. Hantman, Esq. (via email)
Nyall J. Cook, Esq. (via email)

770-964:1012922

66 F.4th 69
United States Court of Appeals, Second
Circuit.

Philip **EDWARDO**,
Plaintiff-Appellant,
v.
The ROMAN **CATHOLIC** BISHOP
OF PROVIDENCE, St. Anthony's
Church Corporation North
Providence, and Louis E. Gelineau,
Defendants-Appellees.

No. 22-0278
|
August Term 2022
|
Argued: March 17, 2023
|
Decided: April 17, 2023

**Synopsis**
**Background:** Parishioner brought action in New York state court against Roman **Catholic** bishop, church corporation, and retired bishop, alleging that when he was between 12 and 17 years old, he was sexually abused and exploited by priest, and that defendants enabled abuse. After removal, parishioner filed amended complaint asserting claims, pursuant to the New York Child Victims Act, for negligence, negligent training and supervision, negligent retention, breach of fiduciary duty, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendants, all of whom were domiciled in Rhode Island, moved to dismiss for lack of personal

jurisdiction. The United States District Court for the Southern District of New York, Katherine Polk Failla, J., 579 F.Supp.3d 456, granted motion. Parishioner appealed.

**Holdings:** The Court of Appeals held that:

[1] priest was not acting for defendants' benefit and thus was not acting as their agent, for purposes of establishing personal jurisdiction under New York's long-arm statute;

[2] priest was not acting with defendants' knowledge or consent and thus was not acting as their agent, for purposes of establishing personal jurisdiction under New York's long-arm statute;

[3] district court lacked personal jurisdiction to extent parishioner sought recovery for defendants' allegedly tortious conduct; and

[4] parishioner's claims did not "arise from" defendants' business activity, for purposes of establishing personal jurisdiction under New York's long-arm statute.

Affirmed.

West Headnotes (13)

**[1]** **Federal Courts**⬥Personal jurisdiction

An appellate court reviews de novo a district court's decision to grant a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

**[2] Federal Courts**⚬Weight and sufficiency

In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists. Fed. R. Civ. P. 12(b)(2).

**[3] Constitutional Law**⚬Non-residents in general
**Federal Courts**⚬Actions by or Against Nonresidents; "Long-Arm" Jurisdiction
**Federal Courts**⚬Personal jurisdiction

To determine whether personal jurisdiction exists over a non-domiciliary, a court first considers whether the state's long-arm statute provides a statutory basis for jurisdiction and, if so, whether exercising personal jurisdiction would comport with due process. U.S. Const. Amend. 14.

2 Cases that cite this headnote

**[4] Courts**⚬Agents, Representatives, and Other Third Parties, Contacts and Activities of as Basis for Jurisdiction

To be considered an agent under New York's long-arm statute, an alleged agent must have acted for the benefit of and with the knowledge and consent of the non-resident principal and the non-resident principal must have exercised some control over the alleged agent. N.Y. CPLR § 302(a).

1 Case that cites this headnote

**[5] Federal Courts**⚬Particular Entities, Contexts, and Causes of Action
**Federal Courts**⚬Non-profit corporations and organizations

Roman **Catholic** priest was not acting for benefit of bishops or church corporation, and thus was not acting as agent for bishops or corporation, when he allegedly sexually assaulted minor parishioner, who was accompanying priest on trip to New York, for purposes of establishing personal jurisdiction

over bishops and corporation, all of whom were domiciled in Rhode Island, under New York's long-arm statute, in parishioner's action for negligence, negligent training and supervision, negligent retention, breach of fiduciary duty, intentional infliction of emotional distress, and negligent infliction of emotional distress. N.Y. CPLR § 302(a)(2).

**[6]** **Labor and Employment**⬥Departures in general

Under New York law, although an employee's tortious acts are imputable to the employer if done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions, an employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business.

1 Case that cites this headnote

**[7]** **Federal Courts**⬥Particular Entities, Contexts, and Causes of Action **Federal Courts**⬥Non-profit corporations and organizations

Roman **Catholic** priest was not acting with knowledge or consent of bishops or church corporation, and thus was not acting as agent for bishops or corporation, when he allegedly sexually assaulted minor parishioner, who was accompanying priest on trip to New York, for purposes of establishing personal jurisdiction over bishops and corporation, all of whom were domiciled in Rhode Island, under New York's long-arm statute, in parishioner's action for negligence, negligent training and supervision, negligent retention, breach of fiduciary duty, intentional infliction of emotional distress, and negligent infliction of emotional distress; bishops and corporation only had knowledge of and consented to trip. N.Y. CPLR § 302(a)(2).

**[8]** **Courts**⬥Agents, Representatives, and Other Third Parties, Contacts and Activities of as Basis for Jurisdiction

To establish agency under New York's long-arm statute, the non-resident principal must request not just the alleged agent's general presence in New York but also the activities giving rise to suit. N.Y. CPLR § 302(a).

1 Case that cites this headnote

**[9]** **Federal Courts**◆Particular Entities, Contexts, and Causes of Action
**Federal Courts**◆Non-profit corporations and organizations

To extent parishioner, who alleged that he was sexually assaulted by Roman **Catholic** priest during trip to New York, sought recovery for allegedly tortious conduct of bishops and church corporation, all of whom were domiciled in Rhode Island, district court lacked personal jurisdiction over bishops and corporation under provision of New York's long-arm statute permitting exercise of personal jurisdiction over non-domiciliary who committed tortious act through agent, in parishioner's action for negligence, negligent training and supervision, negligent retention, breach of fiduciary duty, and emotional distress; even if bishops' and corporation's own negligence or failure to intervene caused parishioner's injury in New York, their conduct or lack thereof occurred entirely in Rhode Island. N.Y. CPLR § 302(a)(2).

**[10]** **Federal Courts**◆Torts in general

Parishioner's claims against Roman **Catholic** bishops and church corporation for negligence, negligent training and supervision, negligent retention, breach of fiduciary duty, intentional infliction of emotional distress, and negligent infliction of emotional distress, based on priest's alleged sexual abuse of parishioner during trip to New York to meet with third party, did not "arise from" defendants' business activity, for purposes of establishing personal jurisdiction over defendants, all of whom were domiciled in Rhode Island, under New York's long-arm statute; only alleged business activity was priest's meeting and dinner with third party, and parishioner's claims were unrelated to meeting or dinner, as alleged abuse took place at separate location and at separate time. N.Y. CPLR § 302(a)(1).

**[11]** **Courts**◆Business contacts and activities; transacting or doing business

A claim "arises from" a particular transaction, for purposes of New York's long-arm statute, when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is

a substantial relationship between the transaction and the claim asserted. N.Y. CPLR § 302(a)(1).

**[12]  Courts⇐Business contacts and activities; transacting or doing business**

Although the inquiry under the provision of the New York long-arm statute permitting a court to exercise personal jurisdiction over a non-domiciliary who "transacts any business within the state[,]" if the claim asserted arises from that business activity, is relatively permissive, and causation is not required, not every conceivable connection to a New York transaction is substantial enough to confer jurisdiction. N.Y. CPLR § 302(a)(1).

2 Cases that cite this headnote

**[13]  Courts⇐Business contacts and activities; transacting or doing business**

A chain of causation involving physical presence in New York does not, by itself, create a nexus between an otherwise unrelated tort claim and a business transaction, for purposes of the provision of the New York long-arm statute permitting a court to exercise personal jurisdiction over a non-domiciliary who "transacts any business within the state" if the claim asserted arises from that business activity; rather, the claim asserted must arise from the business activity so that there is a direct relation between the cause of action and the in-state business conduct. N.Y. CPLR § 302(a)(1).

1 Case that cites this headnote

**\*71** On Appeal from the United States District Court for the Southern District of New York

**Attorneys and Law Firms**

Steven J. Phillips, Phillips & Paolicelli, LLP, New York, NY, for Plaintiff-Appellant.

Howard A. Merten, Partridge Snow & Hahn, LLP, Providence, RI (Eugene G. Bernardo II, Partridge Snow & Hahn, LLP, Providence, RI; William E. Vita, Shook, Hardy & Bacon, LLP, New York, NY on the brief), for Defendants-Appellees.

Before: Park and Lee, Circuit Judges, and Stein, District Judge.*

**Opinion**

Per Curiam:

Plaintiff Philip **Edwardo** alleges that he was sexually abused and exploited from approximately 1978 to 1984, when he was between 12 and 17 years old, by Father Philip Magaldi, a now-deceased Rhode Island priest. **Edwardo** sued the Roman **Catholic** Bishop of Providence ("RCB"), St. Anthony's Church Corporation North Providence ("St. Anthony's"), and retired Bishop Louis E. Gelineau (together, "Defendants") for various torts based on Defendants' alleged role in enabling the abuse. The United States District Court for the Southern District of New York (Failla, *J.*) dismissed for lack of personal jurisdiction, finding that New York's long-arm statute did not permit the court to *72 exercise personal jurisdiction over Defendants.

We conclude that the district court correctly dismissed the case for lack of personal jurisdiction. First, Magaldi did not commit the alleged sexual abuse in New York as an agent of Defendants. Second, the alleged conduct is unrelated to Defendants' business activities in New York. We thus affirm.

# I. BACKGROUND

## A. Factual Background

St. Anthony's is a parish of the Roman **Catholic** Church in Providence, Rhode Island.[1] At all relevant times, St. Anthony's was operated, managed, and maintained by Gelineau—the Bishop of Providence at the time—and RCB. Father Philip Magaldi was a priest at St. Anthony's.

**Edwardo** alleges that he was sexually abused by Magaldi for approximately six years—from 1977 or 1978 to 1984—when **Edwardo** was between 12 and 17 years old and was an altar boy, employee, and parishioner at St. Anthony's. Among other things, Magaldi would force **Edwardo** to drink alcohol and then threaten to report the drinking to **Edwardo's** family if **Edwardo** attempted to stop the abuse.

Most of the alleged abuse occurred in Rhode Island, but some took place during trips out of state. One such trip was in 1983, when Magaldi traveled to New York City to meet with Claus von Bülow, a Danish-born socialite who had been convicted of attempting to murder his wife. Von Bülow was seeking a new trial based on the affidavit of a witness whom Magaldi had previously counseled in his capacity as a priest. Magaldi agreed to meet with von Bülow to discuss this information as well as a potential donation to the Church by von Bülow that von Bülow said would be between $500,000 and $1,000,000. **Edwardo's** job responsibilities at the time included driving Magaldi to the train station and accompanying Magaldi to New York City.

**Edwardo** alleges that Defendants paid for **Edwardo** and Magaldi to stay in a two-bedroom suite at the Waldorf Astoria Hotel. After they arrived, Magaldi met with von Bülow in von Bülow's apartment and had dinner with von Bülow and several

others. Magaldi then returned to the hotel and had a telephone call with Gelineau about the meeting with von Bülow and von Bülow's potential donation. At approximately dawn, Magaldi sexually assaulted **Edwardo**, who had been sleeping in his hotel room. Magaldi assaulted **Edwardo** in the hotel again later that day.

## B. Procedural History

**Edwardo** first sued Defendants and several others in Rhode Island state court on September 30, 2019. The operative complaint in that case ("R.I. Complaint") contained allegations about Magaldi's sexual abuse of **Edwardo** in both Rhode Island and New York. The R.I. Complaint included claims under Rhode Island law for breach of fiduciary duty, negligent infliction of emotional distress, and negligent hiring, supervision, and retention, as well as a claim under the New York Child Victim's Act.

The defendants in the Rhode Island action moved to dismiss. On September 29, 2020—the night before oral argument on the motion to dismiss the R.I. Complaint—**Edwardo** *73 brought the current lawsuit in New York state court. On October 16, 2020, the Rhode Island court dismissed the R.I. Complaint, finding the claims time-barred under Rhode Island law. **Edwardo** timely appealed to the Rhode Island Supreme Court, and that appeal remains pending.

On February 19, 2021, Defendants removed this case to federal court. The following month, **Edwardo** filed the operative Second Amended Complaint, bringing claims for negligence, negligent training and supervision, negligent retention, breach of fiduciary duty, intentional infliction of emotional distress, and negligent infliction of emotional distress. **Edwardo** principally alleges that Defendants knew or should have known that Magaldi was a danger to children and that Defendants failed to intervene, warn, or meaningfully protect **Edwardo**. Although **Edwardo** does not allege facts demonstrating that Defendants had knowledge of Magaldi's sexual abuse, **Edwardo** does allege that Gelineau was aware of the sexual abuse of minors by other Diocese of Providence priests at the time.

**Edwardo** alleges that he brought this action "pursuant to the New York Child Victims Act." *See* App'x at 15. The New York Child Victims Act created an approximately two-year window when plaintiffs could bring claims related to certain sexual offenses that would otherwise be barred by the statute of limitations, if the sexual offense at issue occurred when the plaintiff was under eighteen years old. *See* C.P.L.R. § 214-g.

The district court held that it lacked a statutory basis for exercising personal jurisdiction over Defendants based on New York's long-arm statute. *See* C.P.L.R. § 302. The court thus dismissed the complaint under Federal Rule of Civil Procedure 12(b)(2).

**Edwardo** timely appealed.

## II. LEGAL STANDARDS

[1] [2] [3]"We review de novo a district court's decision to grant motions under Rule 12(b)(2)." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 167–68 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)). To determine whether jurisdiction exists over a non-domiciliary, we first consider whether the state's long-arm statute provides a statutory basis for jurisdiction and, if so, whether exercising personal jurisdiction would comport with due process. *See id.* at 168.

Here, the statutory basis for jurisdiction is New York's long-arm statute, C.P.L.R. § 302(a). Two sections of the statute are relevant to this case. First, a court may exercise specific personal jurisdiction over a non-domiciliary who, personally or "through an agent," "commits a tortious act [other than defamation] within the state," if the cause of action arises from that activity. C.P.L.R. § 302(a)(2). Second, a court may exercise personal jurisdiction over a non-domiciliary who, personally or "through an agent," "transacts any business within the state or contracts anywhere to supply goods or services in the state" if the claim asserted arises from that business activity. *Id.* § 302(a)(1).

## III. DISCUSSION

**Edwardo** concedes that the district court could not exercise general personal jurisdiction over Defendants, who are all domiciled *74 in Rhode Island. He argues instead that the district court should have exercised specific personal jurisdiction under New York's long-arm statute based on the 1983 trip to New York City with Magaldi. First, **Edwardo** argues that Defendants committed a tortious act in New York through an agent, so jurisdiction is proper under C.P.L.R. § 302(a)(2). Second, **Edwardo** argues that Defendants transacted business in New York and his claim is related to that business, so jurisdiction is proper under C.P.L.R. § 302(a)(1).

### A. C.P.L.R. § 302(a)(2)
**Edwardo** first argues that the district court has personal jurisdiction over Defendants under section 302(a)(2) because Magaldi committed a tortious act in New York and Magaldi was acting as an agent of Defendants. We disagree.

[4]"In determining whether an agency exists under § 302, courts have focused on the realities of the relationship in question rather than the formalities of agency law." *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986). To be considered an agent under section 302, the alleged agent must have acted "for the benefit of and with the knowledge and consent" of the non-resident principal and the non-resident principal must have "exercised some control over" the alleged agent. *Kreutter v. McFadden Oil*

*Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988); *see Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 168 (2d Cir. 2010) (finding that alleged agent's actions in New York may be "imputed" to defendant where "deposition testimony unmistakably demonstrates that there existed a *Kreutter*-type relationship"). **Edwardo** did not allege facts suggesting that Magaldi's sexual abuse occurred in Magaldi's capacity as an agent under section 302(a)(2).

[5] [6]First, **Edwardo** did not allege facts suggesting that Magaldi acted "for the benefit of" Defendants when he sexually assaulted **Edwardo**. "Under New York law, although an employee's tortious acts are imputable to the employer if done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions, an employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." *Swarna v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010) (cleaned up). Accordingly, "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Id.* at 145-46 (quoting *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (collecting cases)). "[F]or example, New York courts have rejected *respondeat superior* claims that a church was liable for its priest's sexual assault of a child." *Id.* at 144 (citing *Paul J.H. v. Lum*, 291 A.D.2d 894, 736 N.Y.S.2d 561, 562 (4th Dep't 2002)); *see also Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932,

933, 693 N.Y.S.2d 67, 715 N.E.2d 95 (1999) ("Assuming plaintiff's allegations of sexual abuse are true, it is clear that the employee here departed from his duties for solely personal motives unrelated to the furtherance of the [defendant's] business.").

[7] [8]Second, **Edwardo** did not allege facts suggesting that Magaldi acted "with the knowledge and consent of" Defendants in committing sexual assault. To establish agency under section 302, the non-resident principal must request not just the alleged agent's general presence in New York but also the activities giving rise to suit. *See* *75 E. N.Y. Sav. Bank v. Republic Realty Mortg. Corp.*, 61 A.D.2d 1001, 402 N.Y.S.2d 639, 641 (2d Dep't 1978) (holding that a tortfeasor is an agent of a nondomiciliary under § 302(a) only where the nondomiciliary "requested the performance of *those activities* in New York" (emphasis added)). **Edwardo** alleges only that Defendants had knowledge of and consented to the trip to New York. He does not allege that Defendants had knowledge of Magaldi's tortious conduct in New York. This renders his pleadings insufficient.

We thus agree with the district court that it could not exercise personal jurisdiction over Defendants based on **Edwardo's** allegations that Magaldi sexually abused him in New York without Defendants' knowledge or consent. *See also Doe v. Roman Cath. Diocese of Erie, Pa.*, No. 20-CIV-257, 2021 WL 5232742, at *4 (N.D.N.Y. Nov. 10, 2021) (reaching the same conclusion); *Powers-Barnhard v. Butler*, No. 19-CIV-1208, 2020 WL 4925333, at *7 (N.D.N.Y. Aug. 21, 2020) (same).2

[9]In addition, jurisdiction under section 302(a)(2) would also be improper to the extent **Edwardo** seeks recovery for *Defendants'* allegedly tortious conduct, rather than Magaldi's. Even if Defendants' own negligence or failure to intervene caused **Edwardo's** injury in New York, their conduct (or lack thereof) occurred entirely in Rhode Island. *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) ("The acts giving rise to [plaintiff's] lawsuit ... were performed by persons physically present in Missouri and not in New York. Even if [plaintiff] suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of § 302(a)(2)."); *Platt Corp. v. Platt*, 17 N.Y.2d 234, 237, 270 N.Y.S.2d 408, 217 N.E.2d 134 (1966) ("The failure of a man to do anything at all when he is physically in one State is not an 'act' done or 'committed' in another State" that would "fall literally within [§ 302(a)(2).]"); *see also Reinhardt v. City of Buffalo*, No. 21-CV-206, 2022 WL 2442300, at *7 (W.D.N.Y. July 5, 2022) ("[A] negligent act that takes place outside of New York—such as negligent hiring—that causes an injury in the state does not confer jurisdiction under § 302(a)(2).").3

### B. C.P.L.R. § 302(a)(1)

[10]**Edwardo** next argues that jurisdiction is proper under § 302(a)(1) because Magaldi's New York meeting constituted a business transaction, and his claims "arise from" the business activity. Again, we disagree.

[11] [12]Even assuming Defendants transacted business in New York, the district court correctly dismissed for lack of personal jurisdiction because **Edwardo's** *76 claims do not "arise from" Defendants' business activity. A claim " 'arises from' a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (cleaned up). "Although 'the inquiry under the statute is relatively permissive,' and 'causation is not required,' not every conceivable connection to a New York transaction is substantial enough to confer jurisdiction." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 130 (2d Cir. 2022) (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339, 960 N.Y.S.2d 695, 984 N.E.2d 893 (2012)). "Where this necessary relatedness is lacking, the New York Court of Appeals has characterized the claim as 'too attenuated' from the transaction, or 'merely coincidental' with it." *Id.* (cleaned up) (quoting *Licci*, 20 N.Y.3d at 339–40, 960 N.Y.S.2d 695, 984 N.E.2d 893); *accord Johnson v. Ward*, 4 N.Y.3d 516, 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201 (2005).

The only alleged business activity here was Magaldi's meeting and dinner with von Bülow. But **Edwardo's** claims are unrelated to Magaldi's conduct during the meeting or dinner—the alleged conduct took place at a separate location and at a separate time from the alleged business transaction, and **Edwardo** pleads no facts suggesting how Magaldi's sexual abuse of him in New York has a sufficient "relatedness" to Magaldi's discussions with von Bülow. *See Licci*, 20

N.Y.3d at 340, 960 N.Y.S.2d 695, 984 N.E.2d 893 ("[T]he 'arise-from' prong limits the broader 'transaction-of-business' prong to confer jurisdiction only over those claims in some way arguably connected to the transaction.").

[13]**Edwardo** argues that the nexus requirement is satisfied because Defendants' alleged business activity, conducted through Magaldi, was the "factual cause" of Magaldi's sexual assault of "**Edwardo** in New York." Appellant's Br. at 20. But a chain of causation involving physical presence in New York does not, by itself, create a nexus between an otherwise unrelated tort claim and a business transaction. *See Johnson*, 4 N.Y.3d at 520, 797 N.Y.S.2d 33, 829 N.E.2d 1201 ("The relationship between the negligence claim and defendant's possession of a New York license and registration at the time of the [out-of-state] accident is too insubstantial to warrant a New York court's exercise of personal jurisdiction over defendant" under § 302(a)(1).). Rather, "the claim asserted must arise from th[e] business activity," *Eades*, 799 F.3d at 168, so that there is a "direct relation between the cause of action and the in-state [business] conduct," *Beacon*

*Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983); *see also Ramgoolie v. Ramgoolie*, No. 16-CIV-3345, 2016 WL 11281385, at *5 (S.D.N.Y. Dec. 20, 2016) ("[T]he fact that [the defendant] 'transacted business' in New York within the meaning of CPLR § 302(a)(1) does not provide a basis for the Court to exercise jurisdiction over Plaintiff's wholly unrelated claims" even when the defendant's employees worked in New York), *report and recommendation adopted*, 2017 WL 564680 (S.D.N.Y. Feb. 10, 2017).

## IV. CONCLUSION

We have considered **Edwardo's** remaining arguments and find them to be without merit. Accordingly, we affirm the judgment of the district court.

## All Citations

66 F.4th 69

## Footnotes

\*      Judge Sidney H. Stein of the U.S. District Court for the Southern District of New York, sitting by designation.

1      The following facts are taken from **Edwardo's** Second Amended Complaint. *See* App'x at 8-44. In reviewing the district court's decision on a motion to dismiss for lack of personal jurisdiction, we "constru[e] all pleadings ... in the light most favorable to the plaintiff and resolv[e] all doubts in the plaintiff's favor." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).

2      As **Edwardo** points out, one district court has taken the contrary position, finding that an agent may be acting for the "benefit of and with the knowledge and consent of" his principal in committing sexual assault where the agent was "employed, managed, and supervised" by the principal and the principal "authorized and funded" the agent's travel to New York. *See Love v. West*, No.

19-CIV-10799, 2021 WL 431210, at *4 (S.D.N.Y. Feb. 8, 2021). We agree with the district court's observation that the *Love* decision failed to consider "how an employee's sexual assault in these circumstances benefitted the principal" in a manner that would establish personal jurisdiction. Special App'x at 26 n.13. And we have no occasion to consider the potential application of CPLR § 302(a)(3) in that case, *see infra* note 3.

3    **Edwardo** does not argue that there is personal jurisdiction under C.P.L.R. § 302(a)(3), which permits a court to exercise personal jurisdiction over a defendant who "commits a tortious act without the state causing injury to person or property within the state" in certain circumstances. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 785 & n.2 (2d Cir. 1999).

---

**End of Document**　　　　　　　　　　　　　© 2023 Thomson Reuters. No claim to original U.S. Government Works.