**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JENNIFER D. ARAOZ,

                      Plaintiff,

          v.

THE NEW ALBANY COMPANY, LLC, et al.,

                  Defendants.

:
:
:   No. 1:22-cv-00125 (AMD) (RML)
:
:
:
:
:
:
:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFF'S COUNSEL

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iv

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF THE PROCEEDINGS ......................................................... 2

    A.   Plaintiff Sues Defendants Because They Allegedly Employed Jeffrey Epstein And "Owned And/Or Controlled" A Property That She Admits Was Actually Owned By A Non-Party ...................................... 2

    B.   Plaintiff Files, Pursues, And Stipulates To Dismiss A State Court Action Against The Estate of Jeffrey Epstein And Others Alleging The Same Facts And Injuries Presented In Plaintiff's Complaint ................................. 3

    C.   Less Than A Year After Stipulating To Dismiss The State Court Action, Plaintiff Initiates The Instant Case ............................................... 4

        1.   In Disregard For Documents Proving That Defendants Held No Interest In Or Control Over The Property At The Time Of Plaintiff's Injuries, Plaintiff Pursues Another Action Based On The Same Events Against Defendants ........................................... 4

        2.   Nearly A Year After Filing Her Summons With Notice, Plaintiff At Last Files Her Initial Verified Complaint ................................. 5

        3.   At Defendants' Request, The Court Holds A Pre-Motion Conference In Anticipation Of Defendants Filing A Motion To Dismiss – And Expresses Concern Over The Complaint's Significant Defects ................................................................. 5

        4.   Plaintiff Files The Operative First Amended Complaint Without Curing Any Of The Defects Identified By the Court At Its September 7, 2022 Conference ............................................... 6

    D.   Plaintiff's Improper Response To Defendants' Motion To Dismiss ...................... 7

    E.   Plaintiff " Doubles Down" And Files More Irrelevant Data As "Supplemental Authority." ................................................................. 8

III. LEGAL ARGUMENT .................................................................................... 8

    A.   Specific Instances of Sanctionable Conduct Found In The Complaint ................ 8

       1.      Plaintiff Filed A Complaint Barred By *Res Judicata* ...................................9

       2.      Plaintiff Continued To Pursue A Lawsuit Known To Be Frivolous ..........................................................................................................10

B.      Evidence of Bad Faith...........................................................................................12

       1.      Even Though Rule 11 Does Nor Require A Showing Of Bad Faith, The Evidence Plaintiff's Counsel's Bad Faith Is Impossible To Ignore ..................................................................................12

       2.      The Complaint's Other Failings Only Further Confirm That Plaintiff Filed It "for an[] improper purpose ... to harass, cause unnecessary delay, or needlessly increase the cost of litigation" To Defendants. Fed.R.Civ.P. 11(b)(1)........................................................12

             a.      Counsel Knew That *Res Judicata* Barred Plaintiff's Claims And His Representations To the Contrary Strain Credulity ...................................................................................12

             b.      Plaintiff Didn't Bother To Fix The Known Defects In Her Complaint..................................................................................14

             c.      Plaintiff's Counsel Unnecessarily Maligned Defendants' Counsel And Made Incendiary, Irrelevant Accusations Against Mr. Wexner ..................................................14

C.      Specific Incidents of Sanctionable Conduct in the Memo Contra.........................15

       1.      Plaintiff's Invocation Of Plainly Inapplicable *Res Judicata* Exceptions Was Frivolous ..........................................................15

       2.      Plaintiff's Addition Of A Never-Alleged RICO Claim Alone Was Frivolous ...........................................................................17

       3.      Plaintiff's Addition Of Three Trafficking Victims Protection Reauthorization Act Claims With No Merit Whatsoever Was Also Frivolous...........................................................................19

       4.      Plaintiff Maintained Her Frivolous Assertion That The Court Had General Jurisdiction Over Each And Every Defendant Though She Lacked Any Legal Support For It.........................................21

5.     Plaintiff's Counsel Knowingly Misrepresented Multiple Facts
To The Court, Especially Concerning Personal Jurisdiction ....................22

IV.     CONCLUSION....................................................................................................25

CERTIFICATE OF SERVICE .......................................................................................26

**Cases**                                                                                       **Page(s)**

*Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427 (E.D.N.Y. 2013)...................................20

*Areizaga v. ADW Corp.*, 2016 WL 3511788 (N.D. Tex. June 7, 2016) .......................................20

*Asbeka Indus. v. Travelers Indem. Co.*, 831 F. Supp. 74 (E.D.N.Y. 1993) ................................18

*Barash v. N. Tr. Corp.*, 2009 WL 605182 (E.D.N.Y. Mar. 6, 2009) .......................................16, 17

*Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291 (S.D. Fla. 2007).......................1, 19, 21

*Blodgett v. Hanson*, 2012 WL 12897878 (D. Minn. Oct. 30, 2012) ...........................................20

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) ...................................................11

*Carousel Foods of Am., Inc. v. Abrams & Co.*, 423 F. Supp. 2d 119
(S.D.N.Y. 2006) ........................................................................................................................17, 19

*Catcove Corp. v. Patrick Heaney*, 685 F. Supp. 2d 328 (E.D.N.Y. 2010).............................10, 14

*Chirico v. Jaddou*, 2023 WL 2483415 (E.D.N.Y. Mar. 13, 2023).................................................19

*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020) .......................................10, 22

*Corsini v. Bloomberg*, 26 F. Supp. 3d 230 (S.D.N.Y. 2014)..........................................................1

*Craig v. City of New York*, 2022 WL 2238451 (E.D.N.Y. June 22, 2022) ..................................20

*Daimler AG v. Bauman*, 571 U.S. 117 (2014).......................................................................10, 12

*de la Fuente v. DCI Telecommunications, Inc.*, 259 F. Supp. 2d 250 (S.D.N.Y. 2003) ...............21

*DeMarco v. City of New York*, 2011 WL 1104178 (E.D.N.Y. Mar. 23, 2011).............................9

*Edwards v. Barclays Servs. Corp.*, 2020 WL 2087749 (S.D.N.Y. May 1, 2020).................1, 9, 16

*Edwards v. Barclays Servs. Corp.*, 2020 WL 3446870 (S.D.N.Y. June 24, 2020)...................1, 16

*Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406 (E.D.N.Y. 2017)...........................18

*Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770 (2d Cir. 1988) .............................11

*Fuerst v. Fuerst*, 832 F. Supp.2d 210 (E.D.N.Y. 2011) ...............................................................25

**Cases**                                                                   **Page(s)**

Gould v. Fla. Atl. Univ. Bd. of Trustees, 2011 WL 13227873
(S.D. Fla. Nov. 15, 2011)....................................................................................15

Hedger v. Medline Indus., Inc., 2017 WL 396770 (Del. Super. Jan. 27, 2017) ..........................12

Hoatson v. New York Archdiocese, 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007)..........................14

IMAX Corp. v. The Essel Grp., 154 A.D.3d 464 (N.Y. App. Div. 2017) ....................................11

In re Layo, 460 F.3d 289 (2d Cir. 2006) ......................................................................15

Int'l Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388 (2d Cir. 1989)............................11

Jazini v. Nissan Motor Co., 148 F.3d 181 (2d Cir. 1998)..................................................11

Jiang v. Am. Express Nat'l Bank, 2023 WL 144127 (E.D.N.Y. Jan. 10, 2023) .......................9, 13

Kahre-Richardes Fam. Found., Inc. v. Village of Baldwinsville, 141 F.3d 1151
(2d Cir. 1998) ...............................................................................................9

Kahre-Richardes Fam. Found., Inc. v. Vill. of Baldwinsville, N.Y., 953 F. Supp. 39
(N.D.N.Y. 1997) .............................................................................................9

LCS Grp., LLC v. Shire Dev. LLC, 2022 WL 1217961 (2d Cir. Apr. 26, 2022).........................17

LCS Grp., LLC v. Shire LLC, 2019 WL 1234848 (S.D.N.Y. Mar. 8, 2019) ...............................17

Lebron v. Encarnacion, 253 F. Supp. 3d 513 (E.D.N.Y. 2017) ....................................................10

Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 202 F. Supp. 2d 126
(S.D.N.Y. 2002) ...............................................................................................9

Luscier v. Risinger Bros. Transfer, Inc., 2015 WL 5638063
(S.D.N.Y. Sept. 17, 2015)....................................................................................25

Macolor v. Libiran, 2015 WL 1267337 (S.D.N.Y. Mar. 18, 2015) ...........................................25

Mar. Inspection Servs., Inc. v. Thermo-Vales Corp., 1993 WL 43421
(S.D.N.Y. Feb. 18, 1993) .....................................................................................12

McGowan v. Ananas Spa E., LLC, 2009 WL 2883065 (E.D.N.Y. Sept. 2, 2009)
N.Y. C.P.L.R. 5015..........................................................................................13

Nair v. Carmichael, 2005 WL 1115237 (D. Conn. May 9, 2005) ...............................................21

**Cases**                                                                    **Page(s)**

Neustein v. Orbach, 130 F.R.D. 12 (E.D.N.Y. 1990) ...............................................9, 14

Ningbo Prod. Imp. & Exp. Co. v. Eliau, 2011 WL 5142756
(S.D.N.Y. Oct. 31, 2011) .........................................................................................15

Nisenbaum v. Milwaukee Cnty., 333 F.3d 804 (7th Cir. 2003) ...................................22

O'Malley v. New York City Transit Auth., 896 F.2d 704 (2d Cir.1990) .....................14

Odom v. Syracuse City Sch. Dist., 2020 WL 1689879 (N.D.N.Y. Apr. 7, 2020)....................1, 10

Offor v. Ctr., 2016 WL 3566217 (E.D.N.Y. June 25, 2016) ........................................12

Offor v. Mercy Med. Ctr., 2023 WL 2579040 (2d Cir. Mar. 21, 2023) ........................12

Offor v. Mercy Med. Ctr., 698 F. App'x 11 (2d Cir. 2017) ..........................................12

Pastor Enterprises v. GKN Driveline N. Am., Inc., 2020 WL 5366286
(D.N.J. Sept. 8, 2020) .............................................................................................12

Perry v. Ests. of Byrd, 2014 WL 2998542 (S.D.N.Y. July 3, 2014) ...........................16

Rafter v. Liddle, 704 F. Supp. 370 (S.D.N.Y. 2010) ...................................................15

Rankin v. City of Niagara Falls, Dep't of Pub. Works, 569 F. App'x 25, 27
(2d Cir. 2014)..........................................................................................................25

Reich v. Lopez, 858 F.3d 55 (2d Cir. 2017) ........................................................11, 22

Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.,
17 F. Supp. 3d 207 (E.D.N.Y. 2014) .......................................................................18

Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
682 F.3d 170 (2d Cir. 2012) .....................................................................................8

Turner v. New York Rosbruch/Harnik, Inc., 84 F. Supp. 3d 161 (E.D.N.Y. 2015).....................17

UFCW Loc. One Health & Welfare Fund & Pension Fund v. S.M. Flickinger Co.,
1991 WL 46493 (W.D.N.Y. Mar. 25, 1991) .............................................................13

United States ex rel. Hayes v. Allstate Ins. Co., 686 F. App'x 23 (2d Cir. 2017) .........................25

United States v. Gotti, 322 F. Supp. 2d 230 (E.D.N.Y. 2004) .....................................25

**Cases**                                                                                   **Page(s)**

Urb. v. Hurley, 261 B.R. 587 (S.D.N.Y. 2001) ...........................................................15

Velez v. Sanchez, 693 F.3d 308 (2d Cir. 2012)........................................................20

Weddington v. Sentry Indus., Inc., 2020 WL 264431 (S.D.N.Y. Jan. 17, 2020) ..................21, 25

Williamson v. Recovery Ltd. P'ship, 542 F.3d 43 (2d Cir. 2008) .................................................22

Zimmerman v. Poly Prep Country Day Sch., 888 F. Supp. 2d 317 (E.D.N.Y. 2012) ....................9

Zoobuh, Inc. v. Savicom, Inc., 2018 WL 2768665 (D. Utah June 8, 2018) .................................12

**Statutes**                                                                                **Page(s)**

28 U.S.C. § 1927.............................................................................................................2

Fed.R.Civ.P. 11(b)(1)...............................................................................................12, 21

Fed.R.Civ.P. 11(b)(3)....................................................................................................9

Fed.R.Civ.P 60(c)(1)....................................................................................................16

# I.                    **INTRODUCTION**

A court may be forgiving towards *pro se* litigants who reassert previously-dismissed claims.  In contrast, attorneys are held to a higher standard and "cannot claim ignorance of Rule 11's prohibition against duplicative litigation."  <u>Corsini v. Bloomberg</u>, 26 F. Supp. 3d 230, 248 (S.D.N.Y. 2014); <u>see also</u> <u>Edwards v. Barclays Servs. Corp.</u>, 2020 WL 2087749, *6 (S.D.N.Y. May 1, 2020), R&R adopted, 2020 WL 3446870 (S.D.N.Y. June 24, 2020) ("Courts have imposed sanctions where plaintiffs knew or should have known that their claims were . . . barred by res judicata.").  ***This is especially true where Defendants specifically served Plaintiff's counsel with three Rule 11 safe-harbor notices***.  [Exhs. P, T, and U.]

Plaintiff, who demanded $10 million in damages in a perfunctory notice of litigation and suggested to Defendants' Counsel that a "fair and reasonable resolution can be reached[] out of the public spotlight," evidently hoped to "win the lottery."  Like the attorney sanctioned in <u>Odom v. Syracuse City Sch. Dist.</u>, 2020 WL 1689879, *6-8 (N.D.N.Y. Apr. 7, 2020), "Plaintiff [and her counsel] copied the facts alleged in her State-court Amended Complaint into" the complaint counsel filed in federal court and "[a]ll of her causes of action [arose] from those facts."  But with the state court's dismissal, "[e]ven a basic understanding of *res judicata* and collateral estoppel would have led counsel to conclude that the action filed in this Court could not succeed."  <u>Id.</u> at *10.  Here, counsel indulged Plaintiff's quick-rich hopes through a "throwing [everything] against the wall and seeing what sticks" approach to litigation, and asserted claims he knew to be barred by *res judicata* and patently without merit.  <u>Bernal v. All Am. Inv. Realty, Inc.</u>, 479 F. Supp. 2d 1291, 1328 (S.D. Fla. 2007).  This is "precisely the sort of conduct Rule 11 seeks to counter."  <u>Id.</u>

For these reasons, Defendants move for an award of fees and expenses under Rule 11 and 28 U.S.C. § 1927 (in an amount not to exceed $50,000) ***against Plaintiff's counsel***. Defendants request that all fees and costs awarded be paid directly to the Center for Family Safety and Healing at Nationwide Children's Hospital, Columbus, Ohio. Of note, this amount is less than the fees incurred in responding to Plaintiff's Memo Contra the Motion to Dismiss and preparing the third Rule 11 Safe-Harbor Notice. [Exh. V, Little Decl.] It represents merely part of the cost incurred after that point in which counsel could not plausibly deny lack of knowledge.

## II.                        STATEMENT OF THE PROCEEDINGS

### A.     Plaintiff Sues Defendants Because They Allegedly Employed Jeffrey Epstein And "Owned And/Or Controlled" A Property That She Admits Was Actually Owned By A Non-Party.

Plaintiff alleged she was abused by Jeffrey Epstein as a minor at a property located at 9 East 71st Street in New York (the "Property"), more than twenty years ago. [Compl. at ¶¶ 11, 53.][1] In the operative complaint, she sought to hold Defendants the New Albany Company, LLC, the Wexner Family Charitable Fund ("WFCF"), the Wexner Foundation, Mr. Leslie Wexner, Mrs. Abigail Wexner, and the YLK Charitable Fund liable for her claimed injuries because "Defendants," apparently all of them, employed Epstein and other "employees and agents" at the Property who Plaintiff contends contributed to her injuries. [Id. at ¶¶ Intro, 33, 53-54, 162.] Plaintiff also insists that Defendants pay her damages because "all or some" of them "owned and/or controlled" the Property. [Id. at ¶ 53.] Except, as she admits later in the Complaint, they didn't. Non-party Nine East 71st Street Corporation did, and was the sole owner for twenty-two years, including the period of Plaintiff's alleged abuse. [Id. at ¶¶ 63, 180.]

---

[1]      Citations to "Compl." refer to Plaintiff's First Amended Complaint filed January 6, 2023.

**B. Plaintiff Files, Pursues, And Stipulates To Dismiss A State Court Action Against The Estate of Jeffrey Epstein And Others Alleging The Same Facts And Injuries Presented In Plaintiff's Complaint**

Four years ago, however, Plaintiff claimed another group of defendants owned or controlled the Property and that they bore responsibility for her harms – a theory she pursued in state court in the action <u>Jennifer Danielle Araoz v. The Estate of Jeffrey Edward Epstein, et al.</u>, Supreme Court of the State of New York, County of New York, Index No. 950010/19 (the "State Court Action"). [<u>See</u> R. 40-2, Certified Amended State Court Amend. Compl.]

In language similar (and in many instances identical) to her allegations here, Plaintiff claimed in her October 10, 2019 Amended State Court Complaint that an unnamed recruiter lured her to the Property where she was abused by Jeffrey Epstein. [<u>Id.</u> at PgID 473-74, 494-506, 514-24.] Defendants in the State Court Action included Epstein's estate and a number of individuals and entities—***including non-party Nine East 71st Street Corporation*** – all of whom Plaintiff alleged were under Epstein's control either directly, or through an Epstein-owned entity.

On the employment front, Plaintiff further alleged that Epstein "displayed his enormous wealth, power, and influence to ***his employees***; to ***the employees*** of the corporate entities, private foundations, and trusts, ***who worked at his direction***; to the victims procured for sexual purposes; and to the public, in order to advance and carry out and conceal his crimes and torts." [<u>Id.</u> at PgID 489-93, 519.] As for who owned or controlled the Property itself, Plaintiff identified only one actor: Epstein and the various entities she alleged that he alone controlled. [<u>Id.</u> at PgID 479, 490.] Roughly a year after she filed her amended state court complaint, Plaintiff agreed to dismiss the State Court Action "with prejudice," by way of a stipulation of discontinuance entered November 13, 2020. [R. 40-2, Stipulation of Discontinuance.]

**C.** **Less Than A Year After Stipulating To Dismiss The State Court Action, Plaintiff Initiates The Instant Case.**

    **1.** **In Disregard For Documents Proving That Defendants Held No Interest In Or Control Over The Property At The Time Of Plaintiff's Injuries, Plaintiff Pursues Another Action Based On The Same Events Against Defendants.**

On August 14, 2021, only ten months after dismissing the amended complaint in her State Court Action, Plaintiff filed a summons with notice against Defendants in Supreme Court of the State of New York, County of Queens, under Index No. 400298/2021. [See Summons with Notice, R.1-2.] Defendants removed the action to federal court on January 7, 2022.

Pursuant to NY CPLR § 3012(b), Plaintiff was required to file her complaint by January 27, 2022. But she did not. Rather, after Defendants informed Plaintiff's counsel that her anticipated claims were without merit, Plaintiff's counsel expressed a willingness to "avoid litigation." Taking that representation in good faith, Defendants entered into a confidentiality agreement with Plaintiff whereby Defendants agreed to produce certain documents to Plaintiff's counsel which definitively proved that neither Mr. Wexner, nor any of the Defendants held any interest in or control over the Property between 2001 and 2002. The Court deferred entry of a case management order to permit Plaintiff's counsel to review the documents Defendants produced. [See Dkt., Minute Entry 2/16/22.] Documentary proof notwithstanding, it became clear after several weeks that no amount of information would suffice to convince Plaintiff's counsel to dismiss these baseless claims. Accordingly, on May 17, 2022, Defendants requested that the Magistrate Judge compel Plaintiff to file her complaint. [R. 18.] The Magistrate Judge ultimately did so, directing Plaintiff to file her complaint by June 8, 2022. [Dkt., Minute Entry 5/19/22.]

**2.      Nearly A Year After Filing Her Summons With Notice, Plaintiff At Last Files Her Initial Verified Complaint.**

Plaintiff ultimately filed her initial verified compliant on June 29, 2022, ***almost a full year*** after she filed this lawsuit.  [R. 22.]  Of the 301 paragraphs in the initial verified complaint, as many as 189 paragraphs – ***roughly two thirds of the complaint*** – appear to be copied in whole or in part from Plaintiff's Amended State Court Complaint.  [R. 40-5, Verified Complaint with Highlights.]  The claims she asserted also echoed those alleged in the State Court Action:

- ***Negligence on the theories of premises liability, negligent retention, and breach of the duty of voluntary assumption of care***:  Plaintiff alleged all three claims in the State Court Action against various State Court defendants – Epstein's estate, NES, Nine East 71st Street Corporation, Leslie Groff and  Epstein employer Financial Trust Company – and now asserts the same claims in the federal action.

- ***Conspiracy and Aiding and Abetting***: both claims that appeared in the Amended State Court Complaint which are also alleged in the present action.

- ***Even fraudulent transfer***: Plaintiff had asserted that two Epstein-controlled entities had fraudulently transferred interest in the Property, but now claims that same fraudulent transfer was committed by Mr. and Mrs. Wexner among several entity Defendants.[2]

Only one change is of note: whereas Plaintiff previously claimed that Epstein owned and controlled the Property through various employees, entities, and agents she now alleged  that Mr. Wexner owned and controlled the Property through his employees, entities and agents.

**3.      At Defendants' Request, The Court Holds A Pre-Motion Conference In Anticipation Of Defendants Filing A Motion To Dismiss – And Expresses Concern Over The Complaint's Significant Defects.**

On July 5, 2022, within a week of Plaintiff's filing of her initial verified complaint, Defendants requested a pre-motion conference ahead of filing a motion to dismiss.  Defendants cited Plaintiff's impermissible group pleading, the various ways in which her claims failed to plausibly state a claim upon which relief could be granted, and her attempt to establish both

---

[2]      While this list of claims is taken from Plaintiff's initial verified complaint, Plaintiff restated these same claims against the same Defendants in the First Amended Complaint.

jurisdiction and liability upon "information and belief" alone – not to mention the total absence of any alleged facts tying the Ohio-based Defendants to the state of New York. [R. 23.]

The Court held an in-person conference on September 7, 2022. [See Tr. of 9/7/22 Hearing, R. 37-1.] There, it echoed Defendants' concerns about over Plaintiff's complaint, and added a number of its own. In particular, the Court stated:

- "[T]here's . . . not a lot of clarity about what the individual defendant did versus what the organizational defendants did. One of them is not in existence anymore. . . . [T]he complaint just kind of randomly throws in that defendants as a group, employed people and there are other references to - - that claims are made on information and belief and just . . . you know, group pleading is a problem here because it's hard to tell who you're claiming did what." [Id. at PgID 396, 403.]

- "You've got a fraudulent conveyance claim. I don't think that the New York statute extended the statute of limitations on fraudulent conveyance claims." [Id. at PgID 392.]

- "And then look at this conspiracy – sort of free-floating conspiracy claim. I'm not sure that's a valid claim . . ." [Id. at PgID 417.]

- "But you've got five Ohio-based defendants. And there has to be a basis for the exercise of personal jurisdiction over those defendants and I just want to understand what it is." [Id. at PgID 405.]

Even the *res judicata* problem, which Defendants brought to the Court's and to Plaintiff's counsel's attention at hearing, struck the Court as a "pretty good argument." [Id. at. PgID 402.] Closing the hearing, the Court remarked to Plaintiff's counsel, "these are all things you should consider, and consider whether or not this is an action you want to continue with." [Id. at 417.]

***Defendants issued a Rule 11 Safe-Harbor Notice on November 28, 2022***, and outlined therein that continued pursuit of a claim barred by res judicata violated Rule 11. [Exh. P.]

> **4. Plaintiff Files The Operative First Amended Complaint Without Curing Any Of The Defects Identified By the Court At Its September 7, 2022 Conference.**

Plaintiff filed the First Amended Complaint on January 6, 2023 – though evidently without much "consideration" for the Court's recommendations. She asserted the same seven

claims against the same six, Ohio-based, non-New York Defendants. [Compl. at ¶¶ 11-24, 175-255.] This time, she added an eighth claim for intentional infliction of emotional distress – not unlike the one she had alleged against various defendants in her State Court Action against Epstein's estate and others. [Id. at ¶¶ 256-264.] Roughly half of the Complaint – 119 paragraphs of 264 paragraphs – is still copied and pasted from the Amended State Court Complaint. [R. 40-6, First Amend. Compl. with Highlights.]   While Plaintiff made a facile attempt to establish personal jurisdiction, she did so in only the most conclusory fashion, repeating that ***every single Defendant***, despite judicially admitting the other Defendants were residents of other states, "was essentially at home in New York." [Id. at PgID 588-90.]   ***On January 13, 2023, Defendants served their second Safe Harbor Notice***. [Exh. T.]

      **D.**      **Plaintiff's Improper Response To Defendants' Motion To Dismiss.**

Defendants thereafter moved for dismissal under Rule 12(b)(6). [R. 40]   Plaintiff responded by attempting to "add" three claims for alleged violations of the Trafficking Victims Protection Reauthorization Act (TVPRA) and a fourth under the Racketeering Influenced and Corrupt Organizations Act (RICO)—each of which were is untimely and meritless.   Just as she did in drafting the complaint, she piggybacked off the efforts of ***other counsel***, representing ***other plaintiffs***, in other cases pending against ***other defendants***, who put in the work to allege viable causes of action, without any meaningful discussion as to how those cases support her claims beyond the fact that they also involve Jeffrey Epstein.   She supported her memorandum in opposition with roughly five-hundred (500) pages of attachments (including affidavits) – none of which can be considered the Rule 12(b)(6) setting – and still demanded discovery "***for the***

*__purpose of filing a sufficient complaint__.*"  In short, she once again "threw everything against the wall," and otherwise ignored a significant portion of Defendants' Motion.[3]

*__In response, on July 14, 2023, Defendants issued their third Safe-Harbor Letter to counsel.__*  [Exh. U.]  Therein Defendants reiterated how Plaintiff's January 6, 2023 Complaint violated Rule 11, and, further, how Defendants' Memorandum Contra (which attempted to assert inapplicable exceptions to res judicata advanced new, baseless claims, and added more false and highly stigmatizing claims) also ran afoul of Rule 11.

    **E.**    **Plaintiff " Doubles Down" And Files More Irrelevant Data As "Supplemental Authority."**

On January 18, 2024, Plaintiff submitted a purported "Supplemental Authority" containing immaterial, impertinent and scandalous matters.  [R. 47; R. 47-2.] 4The Court found the filing of "concededly seal and stricken deposition testimony was improper" and the "orders of another court in a different case do not appear to be relevant."  [Dkt., Minute Entry 2/1/24.]

    **III.**                            **LEGAL ARGUMENT**

    **A.**    **Specific Instances of Sanctionable Conduct Found In The Complaint.**

"The standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2d Cir. 2012) (brackets omitted).  In this respect, "[t]he operative question is whether the argument is frivolous, i.e., the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'"  Id.  (citation omitted). Attorneys are also responsible for ensuring that "the factual contentions" in their filings "have

---

[3]    Plaintiff offered no response to Defendants' arguments that: (1) she lacked standing to pursue her claim for declaratory relief; (2) Counts III to VIII should be dismissed for impermissible group pleading; (3) she failed to plausibly allege any actionable wrongdoing by the New Albany Company, LLC; and (4) her fraudulent conveyance claim under NYDCLR § 273-a failed as a matter of law.

evidentiary support or ... will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3).

### 1. **Plaintiff Filed A Complaint Barred By *Res Judicata*.**

As this Court found, Plaintiff's complaint is barred by *res judicata*.   "A pleading ... is not warranted by existing law if it asserts a claim or defense that is plainly barred by operation of the doctrine of collateral estoppel or *res judicata*[.]"  <u>Neustein v. Orbach</u>, 130 F.R.D. 12, 15 (E.D.N.Y. 1990).  "Here, it should be obvious to any litigant, even a *pro se* litigant, that he can only bring a suit once."  <u>Edwards</u>, 2020 WL 2087749, *6; <u>see also</u> <u>Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 202 F. Supp. 2d 126, 140 (S.D.N.Y. 2002) (assessing sanctions where counsel "could easily have determined the likely success of Plaintiff's claims by examining the case law and considering the fact that many, if not all, of Plaintiff's claims were precluded"); <u>Kahre-Richardes Fam. Found., Inc. v. Vill. of Baldwinsville, N.Y.</u>, 953 F. Supp. 39, 42–43 (N.D.N.Y. 1997), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Kahre-Richardes Fam. Found., Inc. v. Village of Baldwinsville</u>, 141 F.3d 1151 (2d Cir. 1998) (same).

All three traditional elements of *res judicata* were easily satisfied in this case.  *First*, there was a final judgment on the merits, in the form of Plaintiff's stipulation of discontinuance in the State Action.  <u>DeMarco v. City of New York</u>, 2011 WL 1104178, *6 (E.D.N.Y. Mar. 23, 2011).  *Second*, privity existed because Plaintiff herself was a party to both actions, <u>Jiang v. Am. Express Nat'l Bank</u>, 2023 WL 144127, *8 (E.D.N.Y. Jan. 10, 2023) (Donnelly, J.), and because Plaintiff alleged an employment and/or principal agent relationship between Epstein, other individual State Action defendants, and every named federal Defendant, <u>e.g.</u>, <u>Zimmerman v. Poly Prep Country Day Sch.</u>, 888 F. Supp. 2d 317, 335-336 (E.D.N.Y. 2012) (*res judicata* barred state law claims against school and its employees and agents, alleging negligent retention or

supervision and breach of fiduciary duty, in relation to alleged sexual abuse by school's football coach, based on dismissal of plaintiff's prior state court suit). *Third* and finally, "[t]he issues addressed in Plaintiff's state-court action were [plainly] the same issues she attempts to raise here, and those issues have already been resolved." Odom, 2020 WL 1689879 at *8.

To make matters worse, Plaintiff did not even bother to plead exceptions to *res judicata* in her Complaint despite Defendants putting Plaintiff on notice of that defense both at the Court's September 7, 2022 status conference and in their November 28, 2022 letter.

### 2.    Plaintiff Continued To Pursue A Lawsuit Known To Be Frivolous.

In addition to the *res judicata* problem, it is "patently clear" that Plaintiff's claim that all Defendants were "essentially at home" in New York "ha[d] absolutely no chance of success under the existing precedents." Catcove Corp. v. Patrick Heaney, 685 F. Supp. 2d 328, 337 (E.D.N.Y. 2010).  Nor did Plaintiff make any "reasonable argument ... to extend, modify or reverse [jurisdictional] law as it stands." Id.  Countless Supreme Court, Second Circuit, and Second Circuit district court decisions confirm that: (1) save for the most "exceptional" cases, general jurisdiction over corporations is limited to the state of incorporation or principal place of business; and (2) general jurisdiction over an individual is similarly limited to his or her domicile.  Daimler AG v. Bauman, 571 U.S. 117, 127 (2014); see also Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 498 (2d Cir. 2020) ("[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business."); Lebron v. Encarnacion, 253 F. Supp. 3d 513, 519 (E.D.N.Y. 2017) ("In fact, an individual's domicile in New York has become something of a *sine qua non* for exercising all-purpose jurisdiction here.").

Yet even after the Court warned Counsel at the September 7, 2022 status conference that Plaintiff's initial complaint provided no discernable "basis" for exercising personal jurisdiction over the "Ohio-based defendants," [R. 37-1, PgID 405], Plaintiff amended her Complaint to broadly declare that each and every Defendant – despite being domiciled elsewhere – "was essentially at home in New York," in what can only be described as a textbook illustration of legal conclusions devoid of factual specificity. Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998). She offered no allegations demonstrating why this was an "exceptional" case or to prove that Defendants' purported New York contacts were uniquely substantial in comparison to their presence in other states. See Brown v. Lockheed Martin Corp., 814 F.3d 619, 629 (2d Cir. 2016) ("[I]n assessing the extent of a corporation's contacts in a state for general jurisdiction purposes, we must assess the company's local activity … *in the context of the company's overall activity* … nationwide and worldwide."); see also Reich v. Lopez, 858 F.3d 55, 63 (2d Cir. 2017) (general jurisdiction lacking over individual domiciled outside New York, despite having business relationships in New York, owning an apartment in New York, and spending a small percentage of nights in New York); IMAX Corp. v. The Essel Grp., 154 A.D.3d 464, 466 (N.Y. App. Div. 2017) (purchase of New York apartment and business activities in state on behalf of a corporate entity did not render individual defendant "at home" in the state). "[I]t should have been patently obvious to any attorney who had familiarized himself with the law" that claiming the Court had general jurisdiction over every Ohio-based Defendant "was a frivolous" argument. Four Keys Leasing & Maint. Corp. v. Simithis, 849 F.2d 770, 773 (2d Cir. 1988).

"One purpose of Rule 11 of the Federal Rules of Civil Procedure is to prevent an attorney from haling a party into federal court without having performed, at the very least, a reasonable inquiry into the jurisdictional underpinning of the lawsuit." Int'l Shipping Co., S.A. v. Hydra

Offshore, Inc., 875 F.2d 388, 389 (2d Cir. 1989); accord: Mar. Inspection Servs., Inc. v. Thermo-Vales Corp., 1993 WL 43421, *1 (S.D.N.Y. Feb. 18, 1993) (sanctions awarded where counsel made no inquiry into proper venue, and "[i]t is equally clear that neither plaintiff nor counsel made any inquiry into the defendant's presence in this district"). Plaintiff plainly failed to conduct this inquiry and hailed Defendants into a New York court despite having no legal grounds to do so.[4] And as this Court observed, Plaintiff did not even attempt to invoke specific jurisdiction. [R. 50, PgID 1443.]

### B. Evidence of Bad Faith.

#### 1. Even Though Rule 11 Does Nor Require A Showing Of Bad Faith, The Evidence Plaintiff's Counsel's Bad Faith Is Impossible To Ignore.

"Unlike sanctions under Section 1927 and the Court's inherent power, sanctions under Rule 11 do not require a finding of bad faith." Offor v. Ctr., 2016 WL 3566217, *2 (E.D.N.Y. June 25, 2016), aff'd sub nom. Offor v. Mercy Med. Ctr., 698 F. App'x 11 (2d Cir. 2017), and aff'd in part, appeal dismissed in part sub nom. Offor v. Mercy Med. Ctr., 2023 WL 2579040 (2d Cir. Mar. 21, 2023). Nevertheless, Defendants catalogue instances of Counsel's bad faith here because it remains relevant to the Court's discretion in fashioning the proper sanction.

#### 2. The Complaint's Other Failings Only Further Confirm That Plaintiff Filed It "to harass, cause unnecessary delay, or needlessly increase the cost of litigation" To Defendants. Fed.R.Civ.P. 11(b)(1).

##### a. Counsel Knew That *Res Judicata* Barred Plaintiff's Claims And His Representations To the Contrary Strain Credulity.

Remarkably, ***even though nearly two thirds of initial federal complaint (189 of its 301 paragraphs) was copied in whole or in part directly from Plaintiff's State Action complaint,***

---

[4]    See Pastor Enterprises v. GKN Driveline N. Am., Inc., 2020 WL 5366286, *4 (D.N.J. Sept. 8, 2020); Zoobuh, Inc. v. Savicom, Inc., 2018 WL 2768665, *4 (D. Utah June 8, 2018); Hedger v. Medline Indus., Inc., 2017 WL 396770, at *6 (Del. Super. Jan. 27, 2017) (the assertion of general jurisdiction over a corporate entity inconsistent with Daimler is frivolous)

Counsel represented to Defendants that he had "no personal knowledge" of the State Action. Logic dictates that ***Counsel must have known***, from the drafting of the initial complaint, that naming a defendant from the State Action that Plaintiff agreed to dismiss less than a year earlier would have posed a *res judicata* problem. He was right. And since Plaintiff repeatedly alleged that the State Action defendants were in privity with federal Defendants, conspicuously omitting Nine East 71st Street from the federal action did nothing to solve the problem. See Jiang, 2023 WL 144127 at *9 ("A plaintiff cannot avoid the effects of res judicata by 'splitting' [her] claim into various suits, based on different legal theories []with different evidence 'necessary' to each suit."). "Rule 11 obligations to not file frivolous pleadings 'are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.'" McGowan v. Ananas Spa E., LLC, 2009 WL 2883065, *1 (E.D.N.Y. Sept. 2, 2009); see also UFCW Loc. One Health & Welfare Fund & Pension Fund v. S.M. Flickinger Co., 1991 WL 46493, *2 (W.D.N.Y. Mar. 25, 1991) ("The duty under Rule 11 to inquire into the [alleged] facts is a continuing duty and counsel cannot ignore the realities of life once facts come to their attention which indicate that their earlier reliance was misplaced.").

Moreover, even assuming the truth of Counsel's specious claim that he had "no . . . knowledge of" Plaintiff's State Action upon filing the *initial federal complaint*, any purported lack of knowledge cannot excuse Counsel's filing of the amended, January 6, 2023 Complaint. By then, Counsel would have had roughly four months to review the State Action records that Defendants produced at the September 7, 2022 status conference, in addition to the notice provided by Defendants' November 28, 2022 letter. Simply ignoring these facts, as Counsel did, is not an option. "[C]ontinuing to press an obviously meritless lawsuit does tend to indicate bad

faith and further supports the imposition of a rule 11 sanction." O'Malley v. New York City Transit Auth., 896 F.2d 704, 709 (2d Cir.1990); Catcove, 685 F. Supp. 2d at 335. "Sanctions cannot be staved-off by such post hoc slight of hand arguments in an attempt to explain-away a lack of necessary investigation before filing the complaint." Neustein, 130 F.R.D. at 15.

### b. Plaintiff Didn't Bother To Fix The Known Defects In Her Complaint.

Standing as further proof of Plaintiff's bad faith is Counsel's affirmative decision not to remedy a number of the Complaint's defects even after Defendants, and the Court, warned her of the need to do so. Plaintiff, for example, declined to fix the "group pleading" problem and persisted in "lumping" together all Defendants in all wrongdoing without specifying who did what. She also declined to attach her "free-floating" conspiracy claim to any viable underlying tort. [R. 37-1, PgID 396-417.] What is more, she attempted to demonstrate general jurisdiction over every Defendant domiciled elsewhere through only the most conclusory allegations.

### c. Plaintiff's Counsel Unnecessarily Maligned Defendants' Counsel And Made Incendiary, Irrelevant Accusations Against Mr. Wexner.

One of the few revisions Counsel did bother to make in her January 6, 2023 Complaint was to add: (1) irrelevant, groundless accusations of impropriety and breach of client confidences against John Zeiger, a partner at defense Counsel's firm who has never even entered an appearance in this action; and (2) baseless hearsay claims accusing Mr. Wexner of unfounded allegation entirely unrelated to Plaintiff. [Compl. at ¶¶ 93-97.] Resorting to inflammatory, unfounded personal attacks in place of any meritorious allegations only further proves that Plaintiff litigated in bad faith. See Hoatson v. New York Archdiocese, 2007 WL 431098, *15 (S.D.N.Y. Feb. 8, 2007), aff'd, 280 F. App'x 88 (2d Cir. 2008) ("This intent to humiliate and embarrass is further manifested in the amended complaint which is littered with wholly

irrelevant, inflammatory, and embarrassing facts concerning defendants and non-defendants alike that have no bearing on the actions brought, such as 'it was widely known that ... one of the defendants was an alcoholic.' Accordingly, the Court finds that sanctions are necessary in this case." (cleaned up)). "Insinuations that improperly cast a derogatory light on a party have no place in proper pleadings" and are a "form of harassment prohibited by Rule 11." Gould v. Fla. Atl. Univ. Bd. of Trustees, 2011 WL 13227873, *4 (S.D. Fla. Nov. 15, 2011); see also e.g., Urb. v. Hurley, 261 B.R. 587, 594 (S.D.N.Y. 2001) (party ordered to "desist" use of "epithets" against defendants "and warned that such conduct may be sanctioned under Rule 11").

### C. Specific Incidents of Sanctionable Conduct in the Memo Contra.

#### 1. Plaintiff's Invocation Of Plainly Inapplicable *Res Judicata* Exceptions Was Frivolous.

Plaintiff's Memo Contra only to served to multiply the frivolous nature of this action. In an attempt to sidestep the preclusive effect of a State Action, Plaintiff claimed that she had uncovered "newly discovered evidence" that Defendants "fraudulently concealed" during the State Action and that she could not have previously "discovered with due diligence." In re Layo, 460 F.3d 289, 292–93 (2d Cir. 2006). Her argument was frivolous. *First*, "[a] plaintiff seeking to apply the fraud exception to *res judicata* must 'allege with particularly' what the defendant 'did to conceal any material information' and why it 'was unable to discover' defendant's actions." Ningbo Prod. Imp. & Exp. Co. v. Eliau, 2011 WL 5142756, *9 (S.D.N.Y. Oct. 31, 2011) (quoting Rafter v. Liddle, 704 F. Supp. 370, 377–78 (S.D.N.Y. 2010)). Specifically, she must plead fraud sufficient to satisfy the requirements of Fed.R.Civ.P. 9(b). Rafter, 704 F. Supp. at 377. Plaintiff did not. Notice of the *res judicata* bar notwithstanding, her Complaint included no allegations whatsoever concerning any evidence that any Defendant concealed concerning Epstein, the Property, or any discovery Plaintiff conducted during the State Action. To the

contrary, in drafting her federal and State Action complaints, Plaintiff correctly identified non-party Nine East 71st Street as the Property owner. Plainly, she was also able to investigate the owners of Nine East 71st Street because, as she alleges here and in the State Action, Epstein was one of them. She did not explain how any Defendant committed "fraud" in relation to the State Action in her Memorandum either.

*Second*, Plaintiff's attack on the State Action judgment was untimely, in any court.[5] Plaintiff is not even in the proper court to make this argument. "[A]n allegation that there has been 'fraud on the court' must be brought before the court that rendered judgment." Edwards, supra, 2020 WL 2087749 at *4; see also Perry v. Ests. of Byrd, 2014 WL 2998542, *5 (S.D.N.Y. July 3, 2014) ("Perry's argument that the 'fraud on the court' exception applies can only be properly be made in the Eastern District of Virginia and New York State Supreme Court"). If Plaintiff wished to collaterally attack the stipulation of discontinuance to which she agreed for some unspecified fraud that she fails to identify, she had to do it in New York State court, not here. See Edwards, 2020 WL 3446870 at *4 ("Plaintiff's fraud exception claim fails because he has not sought relief from the court that originally rendered the judgment[.]").

*Third*, as explained in Defendants' Reply in support of their Motion to Dismiss, "[w]holly conclusory allegations of fraudulent concealment ... are insufficient to avoid *res judicata*." Barash v. N. Tr. Corp., 2009 WL 605182, at *9 (E.D.N.Y. Mar. 6, 2009). That is all Plaintiff offered. She vaguely accused Defendants of "utilizing deceit, covert and overt threats, and coercion to keep their victims silent" without citing a single example of how any Defendant

---

[5]      See Fed.R.Civ.P 60(c)(1) (motions for relief from judgment subject to one-year limitation); see also N.Y. C.P.L.R. 5015 (Practice Commentaries, Hon. Mark C. Dillon) (noting that although "Motions under subdivisions of CPLR 5015(a)(2) through (5)," which include motions for relief from judgment based on the discovery of new evidence or alleged fraud upon the court "are not subject to any stated time limit ... a reasonable time for bringing a vacatur application is implied and 'late' applications are subject to the doctrine of laches.").

did any such thing. [R. 42, PgID 689.] <u>See id.</u> ("Plaintiff does not explain how the new evidence was discovered or why it would have been discovered earlier in the absence of fraud.").

Under these circumstances, Rule 11 sanctions are properly awarded. <u>See</u> <u>Edwards v. Barclays Servs. Corp.</u>, 2020 WL 3446870, *3–5 (S.D.N.Y. June 24, 2020) (awarding damages against *pro se* litigant where claims were barred by *res judicata* and plaintiff failed to allege fraud with particularity, "failed to explain what specific fraud Defendant committed on the Court," failed to identify "what new evidence has been discovered to support his fraud claim," and plaintiff did not seek "relief from the court that originally rendered the judgment"); <u>see</u> <u>also</u> <u>Barash</u>, 2009 WL 605182 at *11 (noting that the court "will issue a separate Order to Show Cause regarding defendants' pending motion for sanctions" where plaintiff's claims were barred by *res judicata* and "plaintiff's allegations [of fraudulent concealment] are wholly conclusory").

## 2. Plaintiff's Addition Of A Never-Alleged RICO Claim Alone Was Frivolous.

"The consequences to anyone of being accused of racketeering are dire." <u>Carousel Foods of Am., Inc. v. Abrams & Co.</u>, 423 F. Supp. 2d 119, 123 (S.D.N.Y. 2006). "As numerous courts in this Circuit have recognized, Rule 11 is particularly significant in the civil RICO context 'because commencement of a civil RICO action has an almost inevitable stigmatizing effect on those named as defendants.'" <u>LCS Grp., LLC v. Shire LLC</u>, 2019 WL 1234848, *15 (S.D.N.Y. Mar. 8, 2019), judgment <u>aff'd,</u> <u>appeal</u> <u>dismissed</u> <u>in</u> <u>part</u> <u>sub</u> <u>nom.</u> <u>LCS Grp., LLC v. Shire Dev. LLC</u>, 2022 WL 1217961 (2d Cir. Apr. 26, 2022). "[C]ivil RICO is an unusually potent weapon– the litigation equivalent of a thermonuclear device." <u>Turner v. New York Rosbruch/Harnik, Inc.</u>, 84 F. Supp. 3d 161, 167 (E.D.N.Y. 2015). Unsurprisingly then, "courts have not hesitated to impose sanctions under Rule 11 when RICO claims have been found to have been frivolous." <u>LCS Group</u>, 2019 WL 1234848 at *15 (citation and brackets omitted).

Plaintiff's RICO claim, which she never alleged in any pleading, and invented for the first time in response to Defendants' Motion, was frivolous.  She failed to articulate RICO's basic elements. The entirety of her argument, in fact, consisted of two sentences:

> Similarly, Judge Rakoff's decision also explains the applicability of RICO claims as against Epstein associates. Here, taking Plaintiff's allegations as true, Wexner exerted some control over and directed the sex trafficking enterprise by employing the Named Employees and unnamed employees, and providing Epstein and others such as Maxwell with money, cars, jet planes, and notably the Property, among other real estate and assets.

[R. 42, PgID 684-85 (citations omitted).]

Nothing in Plaintiff's Memorandum identified: (1) the Defendant(s) constituting the enterprise; (2) any racketeering activity; or (3) a pattern of "at least two predicate acts" that "are related, and that they amount to, or pose a threat of, continuing criminal activity."  Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc., 17 F. Supp. 3d 207, 225 (E.D.N.Y. 2014).  Further, in Plaintiff's attempt to name Mr. Wexner as the person who participated "in the operation or management of the enterprise," her only argument was one that courts in this Circuit have routinely rejected: "a person *__may not be held liable__* merely for taking directions and performing tasks that are 'necessary and helpful to the enterprise,' or *__for providing 'goods and services__* that ultimately benefit the enterprise.'"  Flexborrow LLC v. TD Auto Fin. LLC, 255 F. Supp. 3d 406, 415 (E.D.N.Y. 2017) (emphasis added); Sky Med. Supply, 17 F. Supp. 3d at 224.

"To stem the rising tide of RICO suits commenced without thoughtful attention to fundamental principles attendant upon that cause of action, the imposition of Rule 11 sanctions may serve the salutary purpose of discouraging such thoughtless litigation and of compensating Travelers for the expense it incurred in responding to it."  Asbeka Indus. v. Travelers Indem. Co., 831 F. Supp. 74, 90–91 (E.D.N.Y. 1993).  Plaintiff's half-hearted RICO claim is on all fours with those that have earned Rule 11 sanctions in the past and should be treated accordingly.

### 3. Plaintiff's Addition Of Three Trafficking Victims Protection Reauthorization Act Claims With No Merit Whatsoever Was Also Frivolous.

If "[t]he consequences ... of being accused of racketeering are dire," <u>Carousel Foods</u>, 423 F. Supp. 2d at 123, then fallout from being accused of child sex-trafficking is even more distressing. Where, as here, Plaintiff accuses Defendants of serious criminal conduct that can "ruin one's reputation" and "livelihood," she has a heightened duty to investigate the veracity of such claims. <u>See</u> <u>Bernal</u>, 479 F. Supp. 2d at 1327.

With respect to her TVPRA claims, Plaintiff did not do that. How could she, given that she never actually alleged these claims against any Defendant in either of her federal complaints? Equally relevant, why would Plaintiff press these after-the-fact claims in view of the well-settled proposition that "[a] plaintiff cannot amend h[er] complaint in ... response to a motion to dismiss"? <u>Chirico v. Jaddou</u>, 2023 WL 2483415, *3 n.2 (E.D.N.Y. Mar. 13, 2023). Apparently, Counsel's inspiration derived from the fact that *some other* plaintiffs allegedly harmed by Epstein, who had drafted *some other* actually-plausible complaint, were successful in stating TVPRA claims against *some other* defendants, in *some other* case. Riding their coattails, Plaintiff accused Defendants of "some active level of engagement" in "further[ing] [a] sex trafficking venture." In particular, she claimed:

> [I]t is clear that Wexner, and potentially his wife and the entity defendants named herein *perpetrated "specific conduct that furthered the sex trafficking venture," that was "more than just passive facilitation, but some level of active engagement*." Undoubtably [sic], the link between Epstein and the Defendants is much stronger than the nexus between banking institutions and Epstein.

> Again, based upon the numerous sworn testimonies, court documents, documentaries, and journalistic news articles outlining the relationship between Wexner and Epstein, and *the heinous violent crimes perpetrated by Epstein, it is undisputable that Wexner, and potentially his wife, and through them their related entities, knew, or recklessly disregarded the fact that, "force, fraud, or coercion" was used to "cause [a] person to engage in a commercial sex act... or that the*

*person has not attained the age of 18 years and will be caused to engage in a commercial sex act.*"

[R. 42, PgID 682 (emphasis added.)]

Plaintiff went onto claim that Defendants were liable for "***direct perpetration of sex-trafficking***." [Id. at 683 (emphasis added.)] These are severe accusations of grossly abhorrent criminal conduct that are completely unfounded. Plaintiff's Counsel concocted a weapon even more devastating than "the litigation equivalent of a thermonuclear device"; casually accusing Defendants of participating in the literal sex-trafficking of children. "Accusations that adversaries have engaged in wrongdoing, especially criminal malfeasance, should not be made cavalierly without careful consideration of whether they are true. Belief in the righteousness of one's cause is no substitute for facts, which are the bedrock of our legal system." Craig v. City of New York, 2022 WL 2238451, *15 (E.D.N.Y. June 22, 2022); see also e.g., Blodgett v. Hanson, 2012 WL 12897878, *5 (D. Minn. Oct. 30, 2012), R&R adopted, 2013 WL 1249221 (D. Minn. Mar. 26, 2013) ("The *allegations of human trafficking* and prostitution made in support of his RICO claim, in particular, *were frivolous and incendiary*. Therefore, the Court finds that a Rule 11 sanction is warranted." (Emphasis added.)). "Parties should not make filings ... accus[ing] opposing counsel or parties of ... criminal conduct merely because they take factual or legal positions with which a party disagrees." Areizaga v. ADW Corp., 2016 WL 3511788, *9 (N.D. Tex. June 7, 2016), R&R adopted, 2016 WL 3419097 (N.D. Tex. June 22, 2016).

Worse yet, Second Circuit precedent precluded these claims. Plaintiff explicitly alleged that she was injured between 2001 and 2002. And more than a decade ago, the Second Circuit explicitly held that the private action provision in the TVPRA does not retroactively apply to instances of alleged trafficking that took place before December 19, 2003. Velez v. Sanchez, 693 F.3d 308, 324-325 (2d Cir. 2012); Aguirre v. Best Care Agency, Inc., 961 F. Supp. 2d 427,

443 n.11 (E.D.N.Y. 2013). ***Plaintiff, in other words, went out of her way to accuse Mr. and Mrs. Wexner of "direct[ly] perpetrat[ing]" trafficking, a heinous and morally repugnant crime, even though she did not allege facts supporting that claim in her Complaint, with no hope that such a claim would succeed on the merits***. E.g., de la Fuente v. DCI Telecommunications, Inc., 259 F. Supp. 2d 250, 263 (S.D.N.Y. 2003) ("The law on the point had been settled for a decade when the complaint was filed. So plaintiff had no objectively reasonable prospect of prevailing on that theory, either." (citations omitted)). "An officer of the court is expected to know that such accusations must not be casually made." Bernal, 479 F. Supp. 2d at 1327. Perhaps *pro se* litigants "may not be aware of the serious consequences that can flow from making unsupported accusations of criminal conduct," but Counsel has no excuse. Nair v. Carmichael, 2005 WL 1115237, *1 (D. Conn. May 9, 2005). Because the only purpose in leveling these accusations must have been an "improper" one – "to harass" Defendants, see Fed.R.Civ.P. 11(b)(1) – these claims were frivolous and Counsel had no grounds to assert them.

> **4.** **Plaintiff Maintained Her Frivolous Assertion That The Court Had General Jurisdiction Over Each And Every Defendant Though She Lacked Any Legal Support For It.**

"Courts in this district have found the imposition of sanctions appropriate where counsel advanced frivolous jurisdictional arguments." Weddington v. Sentry Indus., Inc., 2020 WL 264431, *7 (S.D.N.Y. Jan. 17, 2020) (collecting cases). Additionally, "courts in the Second Circuit have found sanctions appropriate in cases where a plaintiff files a claim that is clearly deficient and where he advances no plausible argument in favor of validity." de la Fuente, 259 F. Supp. 2d at 262. This is precisely what Plaintiff did here. She maintained that her Complaint "set out grounds for both general and specific jurisdiction over the Defendants," [R. 42, PgID 701], but failed to cite even a single case where any court has ever held that the exercise of

general jurisdiction over any out-of-state Defendant, whether corporate or individual, was constitutionally permissible. Further, Plaintiff made no effort to explain why the instant case is among the most "exceptional," rare instances in which every single Defendant is somehow "essentially at home" in a state that is in fact, not home to any one of them. <u>Chufen Chen</u>, 954 F.3d at 498. She did not argue that any Defendant had substantial contacts to New York when compared to that Defendant's presence in other states. <u>See id.</u> at 500 ("Dunkin Donuts is not incorporated or headquartered in New York. Plaintiffs ... made no showing that the company's relationship with New York was in any way significant or exceptional in relation to the company's nationwide business activity[.]"); <u>see also</u> <u>Reich</u>, 858 F.3d at 63 ("Owning property in a forum does not alone establish domicile. One may have more than one residence in different parts of this country or the world, but a person may have only one domicile."). In the same vein, she failed to address the substance of Defendants' affidavits, each of which proved that every Defendant had either minimal or no contacts with New York. She likewise refused to engage with the significant case law Defendants cited demonstrating that Plaintiff had no hope of establishing general jurisdiction over Defendants in this case. "Burying [her] head in the sand, in the hope that a judge will disregard an adverse decision by the Supreme Court" was Plaintiff's only strategy. <u>Nisenbaum v. Milwaukee Cnty.</u>, 333 F.3d 804, 809 (7th Cir. 2003).

> **5.  Plaintiff's Counsel Knowingly Misrepresented Multiple Facts To The Court, Especially Concerning Personal Jurisdiction.**

More egregious still is Counsel's misrepresentation to the Court of the facts concerning Defendants' contacts with the state of New York and their purported connections to the Property. "Rule 11 ... allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court." <u>Williamson v. Recovery Ltd. P'ship</u>, 542 F.3d 43, 51 (2d Cir. 2008). Plaintiff's Counsel

repeatedly misrepresented the statements in Defendants' affidavits in an effort to advance her

baseless fraudulent conveyance claim and confer personal jurisdiction where none existed:

- ***Plaintiff's Claim***: Mr. Wexner had "just spent years renovating [the Property] before conveying it to Epstein[.]" [R. 42, PgID 699].

    - ***The truth***: Mr. Wexner and Director of Security Craig White both attested that renovations on the Property were completed in 1992. The Wexners vacated the Property as of 1994, and Epstein began renting it between December of 1994 and early 1995. [White Aff., R. 40-8, ¶¶ 4-8; Mr. Wexner Aff., R. 40-11, ¶¶ 7, 9.] As proven by Mr. Wexner's affidavit, as well as the transfer documentation attached to it and produced to Plaintiff, Mr. Wexner transferred his interest in Nine East 71st Street Corporation, which actually held title to the Property, to Epstein in 1998 and stepped down from his position with the company at the same time – fully six years after renovations were completed. [See R. 40-11, ¶¶ 11-16, and attachments referenced therein.] Going by Plaintiff's alleged timeline, which puts the date of the transfer between late 2007 and early 2008, the gap gets even larger – with the renovations finished a whole 15 to 16 years before the transfer. Representing to the Court that the renovations were completed "just ... before" the Property was transferred to Epstein is in no way accurate.

- ***Plaintiff's Claim***: "[T]he timing of the transfer [was] *right around* when Epstein's sexual crimes were beginning to be publicized[.]" [R. 42, PgID 699 (emphasis added).]

    - ***The truth***: Again, all documentation proves that the transfer of Mr. Wexner's interest in Nine East 71st Street Corp. took place in 1998. And 1998 is not "right around when Epstein's sexual crimes were beginning to be publicized." Rather, Plaintiff alleges in the Complaint that the publicity began a decade later when Epstein pleaded guilty to solicitation of minors in 2008. [Compl. at ¶¶ 161-165.]

- ***Plaintiff's Claim***: Following her discussion of the transfer, Plaintiff stated that "[Mr.] Wexner retained control over the Property as evidence[d] by him stationing his head of security there[.]" [R. 42, PgID 699.]

    - ***The truth***: Security Director Craig White resided at the Property in 1994, four years *before* the 1998 transfer actually took place and at least 13 years before the time that Plaintiff claims the transfer took place in her Complaint. [R. 40-8, ¶¶ 6-7.] Thus, the timing of White's being "station[ed]" at the Property is not evidence that Mr. Wexner "retained" control of anything.

- ***Plaintiff's Claim***: "This Court has personal jurisdiction over ... Mr. Wexner because he maintained a residence at the property *during the time* Epstein was grooming the

Plaintiff or at least rented the Property out to Epstein *during this time*." [R. 42, PgID 704 (emphasis added).]

- ***The truth***: This is perhaps the most insidious of Plaintiff's false statements. Once again, Mr. and Mrs. Wexner vacated the Property in 1994 and Epstein began renting it between December of 1994 and early 1995. Mr. Wexner transferred all his interest in the entity that held the Property to Epstein in 1998. After the Wexners' possessions were removed in 1994, Mr. Wexner "never returned to the Property." [R. 40-11, ¶¶ 10-16.] Mr. Wexner has "always maintained [his] residence in Ohio." [Id. at ¶ 2.] At no point did Mr. Wexner's alleged presence at the Property, or indirect ownership or control over the Property, ever coincide with the period during which Plaintiff claims she was injured, 2001 to 2002. Telling the Court otherwise is a lie.

- ***Plaintiff's Claim***: Mrs. Wexner "coordinated ... Epstein's rental of the Property and the transfer of utilities to him." [R. 42, PgID 705.]

  - ***The truth***: As Counsel would have known from even a cursory review of Defendants' affidavits, it was Craig White, not Mrs. Wexner, who coordinated the transfer of utilities to Epstein. [R. 40-8, ¶ 8.]

- ***Plaintiff's Claim***: YLK Charitable Fund "at one point owned the Property where the Plaintiff suffered her injuries." [R. 42, PgID 705-706.]

  - ***The truth***: Mrs. Wexner attested that YLK "never had any interest, direct or indirect," in the Property. [R. 40-15, ¶ 11.]

- ***Plaintiff's Claim***: "[T]he Wexners' personal family 'Director of Security' also lived at the Property *during the time of the damages* complained hereof." [R. 42, PgID 706 (emphasis added).]

  - ***The truth***: As already explained, and as is plainly evident from Mr. White's affidavit, he temporarily stayed at the Property in 1994, not "during the time of the damages" Plaintiff complains of, which she alleges occurred between some 7 to 8 years later.

Critically, Counsel ***knew these statements were false.*** When he drafted Plaintiff's Memorandum, Counsel had in his possession both Defendants' affidavits and the documentation memorializing the Property transfer that Defendants had already produced, conclusively proving the relevant dates and facts and disproving Counsel's representations. Plaintiff's own arguments are the best proof of Counsel's subjective knowledge. Counsel's repeated pattern of cherry picking true facts

24

– such as, for example, the fact that utilities for the Property were transferred into Epstein's name – and conflating them with significant falsehoods – claiming that Mrs. Wexner "coordinated" their transfer, when in truth, Craig White did – conclusively demonstrates that he read and was familiar with the affidavits and their attachments. See <u>Luscier v. Risinger Bros. Transfer, Inc.</u>, 2015 WL 5638063, *8 (S.D.N.Y. Sept. 17, 2015) (circumstantial evidence can prove "that the lawyer knew that the factual contentions lacked evidentiary support at the time they were presented to the Court"). Still, he misrepresented their contents.[6]

"Every lawyer is an officer of the court and … has a duty of candor to the tribunal." <u>United States v. Gotti</u>, 322 F. Supp. 2d 230, 237 (E.D.N.Y. 2004) (cleaned up). That duty applies regardless of whether Counsel deems his misrepresentations to be inconsequential or benign. <u>E.g.</u>, <u>Macolor v. Libiran</u>, 2015 WL 1267337, *2–4 (S.D.N.Y. Mar. 18, 2015) (sanctioning counsel who misrepresented the reason he was late). Misrepresenting the facts in an effort to prolong an action that Counsel knows cannot withstand Defendants' Motion to Dismiss is not only unethical, it is sanctionable. <u>Fuerst v. Fuerst</u>, 832 F. Supp.2d 210, 220 (E.D.N.Y. 2011).

**IV.**                                      **CONCLUSION**

For these reasons, sanctions in the amount of $50,000 should be imposed against Plaintiff's counsel of record.

Dated: March 14, 2024

Respectfully submitted,
/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (Ohio Bar # 0042679)
*Admitted pro hac vice*
Matthew S. Zeiger (Ohio Bar #0075117)
*Admitted pro hac vice*

---

[6]     "The subjective bad faith standard is met if ... the lawyer knew the factual assertion lacked evidentiary support," but persisted with the representation. <u>Weddington</u>, 2020 WL 264431 at *7; <u>see also</u> e.g., <u>United States ex rel. Hayes v. Allstate Ins. Co.</u>, 686 F. App'x 23, 28 (2d Cir. 2017) (affirming finding of bad faith where attorney falsely asserted to have "personal knowledge" concerning defendants' involvement in wrongdoing); <u>Rankin v. City of Niagara Falls, Dep't of Pub. Works</u>, 569 F. App'x 25, 27 (2d Cir. 2014) (affirming sanctions imposed pursuant to Rule 11(c)(3) where lawyer repeatedly made misleading representations to the court to obtain extensions of time).

ZEIGER, TIGGES & LITTLE LLP
41 S. High St., Suite 3500
Columbus, OH 43215-6110
Phone: (614) 365-9900
Fax: (614) 365-7900
Email: little@litohio.com

*Counsel for Defendants The New Albany
Company, LLC, The Wexner Family
Charitable Fund, The YLK Charitable Fund,
Abigail S. Wexner, The Wexner Foundation,
and Leslie H. Wexner*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 14, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (Ohio Bar # 0042679)

1025152

26