UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
:
**JENNIFER D. ARAOZ**, :
:
Plaintiff, :
: **MEMORANDUM DECISION AND**
– against – : **ORDER**
:
: 22-CV-125 (AMD) (RML)
:
**THE NEW ALBANY COMPANY, LLC**, et al., :
:
Defendants. :
:
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

Before the Court is the defendants' motion for sanctions against the plaintiff's counsel. For the reasons that follow, the Court determines that the plaintiff's counsel violated Rule 11, but declines to impose a sanction.

## BACKGROUND

The Court assumes familiarity with the facts of this case and recounts them only to the extent necessary to explain its decision.

The gravamen of plaintiff's complaint is that beginning in 2001, Jeffrey Epstein repeatedly sexually assaulted her and eventually raped her when she was a minor, at Nine East 71st Street, New York, New York (the "Property"). (ECF No. 36 ¶¶ 5–7.) Before she filed this action in 2021, the plaintiff filed suit, based on Epstein's conduct, against Epstein's estate and other defendants — but none of the defendants in this case — in New York state court in 2020. (ECF No. 40-3 (State Action First Amended Complaint).) In that case, the plaintiff alleged that the Nine East 71st Street Corporation owned and operated the Property. (*Id.*) In November 2020, the plaintiff entered a stipulation of discontinuance in which she agreed to dismiss the state court action with prejudice. (ECF No. 40-4 (State Action Stipulation of Discontinuance).)

About nine months later, on August 14, 2021, the plaintiff, proceeding *pro se*, brought this action in New York state court against six defendants: The New Albany Company, LLC, the YLK Charitable Fund, the Wexner Family Charitable Fund, the Wexner Foundation, and Leslie Wexner and Abigail Wexner (collectively "the defendants"). (ECF No. 1.) At that point, the plaintiff had filed only a summons and notice, as was permitted under state procedural law. (*Id.*) The defendants removed the case to federal court on January 7, 2022. (*Id.*) Robert J. Hantman of Hantman & Associates filed a notice of appearance on February 15, 2022. (ECF No. 14.)

On March 29, 2022, defendants provided the plaintiff limited preliminary discovery, pursuant to a confidentiality order, to demonstrate to counsel that the plaintiff's allegations were false. (ECF No. 54 ¶¶ 14–15.) When counsel did not withdraw the action, the defendants, citing CPLR § 3012(b), which requires a plaintiff to file a complaint within 20 days of the notice and summons, asked Magistrate Judge Robert Levy to direct the plaintiff to file a complaint. (ECF No. 18.) Judge Levy entered the order on June 6, 2022. The plaintiff filed her complaint on June 29, 2022 — more than ten months after commencing the action in state court. (ECF No. 22.)

As relevant to this motion, the plaintiff pled that Epstein was defendant Leslie Wexner's "employee" and "an officer, director, or employee of many corporate entities and trusts controlled by Leslie Wexner, and defendants in this action;" indeed, the plaintiff alleged each defendants employed Epstein. (*Id.* ¶¶ 18, 25–31.) Through these relationships and an ownership interest in the Property, the plaintiff maintained, the defendants "enabled" Epstein to assault her and rape her. (*Id.* ¶¶ 9, 16, 45.)

At a September 7, 2023 pre-motion conference to discuss the defendants' anticipated motion to dismiss, the Court told the plaintiff's counsel that the complaint was deficient for a

2

variety of reasons. (ECF No. 45.) In particular, the Court expressed concern that it did not have personal jurisdiction over any of the defendants — all of whom were Ohio or Delaware residents. (*Id.*) In addition, defense counsel argued that the plaintiff's action was barred by *res judicata*, because the plaintiff's earlier lawsuit based on the same claims. (*Id.*)

Defense counsel then explained that he had only recently learned about the earlier case and gave the Court and the plaintiff's counsel a packet of materials that emphasized the overlapping allegations in the plaintiff's previous action against Epstein's estate and this case, specifically highlighting that approximately two-thirds of the federal complaint was copied from the state complaint. (*Id.*) Although the Court did not have an opportunity to review the materials before the hearing, it noted that the *res judicata* argument sounded like "a pretty good" one. (*Id.*) The Court cautioned Mr. Hantman that the issues the parties discussed — including jurisdiction and *res judicata*, among others — "are all things that you should consider, and consider whether or not this is an action you want to continue with." (*Id.*) The Court did not set a briefing schedule at that time because there was a motion pending before Judge Levy to disqualify Mr. Hantman for violating the parties' confidentiality order. (*Id.*) Instead, the Court told the parties that once Judge Levy decided the motion to disqualify, the plaintiff should update the Court "on any decisions [the plaintiff] made about whether to continue with the action, [and] whether [the plaintiff was] going to file an amended complaint." (*Id.*) Judge Levy denied the defendants' motion to disqualify Mr. Hantman on November 21, 2022. (ECF No. 21.)

A week later, on November 28, the defendants sent Mr. Hantman the first of three safe harbor notices pursuant to Federal Rule of Civil Procedure 11(c). (ECF No. 54-17.) As they had argued "both orally and in the packet of materials" they provided at the pre-motion conference, the defendants wrote that the plaintiff's claims were "barred by the doctrine of res judicata" and

3

that filing an action barred by *res judicata* was sanctionable conduct. (*Id.*) The plaintiff's case was barred, defense counsel explained, because: (1) "a stipulation of discontinuance with prejudice . . . has the same effect as a final judgment on the merits" (*id.* at 2 (quoting *DeMarco v. City of New York*, 2011 WL 1104178, at *6 (E.D.N.Y. Mar. 23, 2011)); (2) "[a]n employer-employee or agent-principle relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued" (*id.* at 3 quoting (*Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Coop. Educ. Servs.*, 2021 WL 4295418, at *5 (W.D.N.Y. Sept. 21, 2021)); and (3) the claims in both actions "are based on the same underlying facts and concern the same alleged injuries that purportedly occurred at the same property" (*id.* (citing *Mohamad v. Rajoub*, 2018 WL 1737219, at *10 (S.D.N.Y. Mar. 12, 2018)).

On December 13 — before responding to the defendants' first safe harbor notice — Mr. Hantman asked the Court to set a deadline for the plaintiff to "file an amended complaint which we believe we [*sic*] rectify the deficiencies in the pleadings that your Honor brought to our attention." (ECF No. 34.) The defendants did not object (ECF No. 35), and the Court ordered the plaintiff to file the amended complaint by January 6, 2023 (*ECF Order dated Dec. 16, 2022*).

In the interim, on December 19, Mr. Hantman responded to the defendants' first safe harbor notice. (ECF No. 54-18.) He disputed that the case was barred by *res judicata* because "there is no shared interest between any defendant in the prior action and the case at bar," and "the claims against The New Albany Company LLC and Mr. Wexner do not share an interest, or even a common nucleus of facts such that they are barred by the settlement in the prior litigation." (*Id.* at 2.) Additionally, according to the defendants, Mr. Hantman stated in the email accompanying his letter that he had "no personal knowledge of the case and Release which

4

is the subject of [the defendants'] letter." (ECF No. 54-19 at 1.) The defendants responded the following day, reiterating that "your client has already litigated her claim to conclusion, res judicata has attached, and all claims are extinguished against the original defendants, as well as those allegedly standing in privity." (*Id.*) The defendants also demanded that the plaintiff produce any release agreement that led to the stipulation of discontinuance. (*Id.*) Mr. Hantman replied that he did do not have the settlement documents in his possession and suggested that the defendants' counsel "contact Mr. Epstein's lawyers and request all documents from them." (ECF No. 54-20.)

The plaintiff filed the amended complaint on January 9, 2023. (ECF No. 36.) The amended complaint added certain jurisdictional allegations and pled slightly different facts, but it was still largely the same as the complaint in the state court action.[1] On January 13, the defendants served their second safe harbor notice, in which they repeated the warnings in the first notice. (ECF No. 54-21.) The plaintiff did not withdraw her amended complaint.

The Court held another pre-motion conference on February 21, 2023 (*ECF Minute Entry dated Feb. 21, 2023*), at which it pressed Mr. Hantman on the *res judicata* and personal jurisdiction issues. The Court reiterated that the defendants' *res judicata* argument was strong, and initially suggested that the parties brief only that issue.[2] The Court pointed out that the stipulation of discontinuance was with prejudice, which qualified as a final adjudication on the merits. The Court explained that if, as the plaintiff alleged, Epstein was employed by the defendants in this action, there was clear circuit precedent that the defendants were in privity

---

[1] The plaintiff also alleged that a partner in defense counsel's firm told one of Epstein's lawyers that there were accusations against Wexner, who was his client at the time.

[2] Mr. Hantman appeared to be amenable to this approach, remarking, "If I'm going to lose, I want to lose fast." The Court ultimately decided that it was wiser to have the parties brief all the potential arguments for dismissal.

5

with Epstein's estate.  Moreover, the Court stated that based on the pleadings alone, the claims seemed to arise out of the same nucleus of operative facts.  Finally, the parties agreed that it was appropriate for the Court to take judicial notice of the state court action, the complaint in that action, and the stipulation of discontinuance with prejudice.  The Court set a briefing schedule.

On April 17, the defendants moved to dismiss the complaint for various reasons, but their primary contention was that the action was barred by *res judicata*.  (ECF No. 40-1 at 9–14.)  This argument was essentially the same position they presented in the December 2021 and January 2022 safe harbor notices they sent Mr. Hantman.

The plaintiff's response to the *res judicata* argument was the same as her response to the defendants' first safe harbor notice.  She argued that (1) "there is no shared interest between any defendant in the Plaintiff's former action against the Epstein estate;" (2) "the causes of action in this lawsuit rely upon entirely different facts as those in the State Action," and the issues were not "reasonably and plainly comprehended to be within the scope" of that action; and (3) the plaintiff "was not aware" and through due diligence could not have discovered "that the Defendants . . . owned the Property where she was assaulted, . . . employed or controlled employees at the Property, [or] that Epstein was essentially bankrolled by Wexner."  (ECF No. 42 at 10–13.)

In addition, the plaintiff made civil RICO claims and raised Trafficking Victims Protection Reauthorization Act ("TVPRA") violations, even though she had not made these claims in the complaint.  (*Id.* at 5–10.)  Specifically, the plaintiff argued, without any citation to the complaint, that the complaint "alleged facts to support liability for direct perpetration of sex-trafficking." *Id.* at 8; *see also id.* at 7 ("[I]t is clear that Wexner, and potentially his wife and the entity defendants named herein perpetrated 'specific conduct that furthered the sex trafficking

6

venture,' that was 'more than just passive facilitation, but some level of active engagement.'" (internal citations omitted).)

The plaintiff's brief prompted the defendants' third and final Rule 11(c) notice. (ECF No. 54-22.) The defendants repeated that it was sanctionable to continue prosecuting an action that was barred by *res judicata*. (*Id.* at 1.) In addition, the defendants recounted a long list of representations and arguments in the plaintiff's opposition that they also believed were sanctionable, including accusing the defendants of RICO and TVPRA violations. (*Id.* at 9–21.)

While the motion to dismiss was pending, the plaintiff included in a so-called "Notice of Supplemental Authority" portions of the record in *Giuffre v. Maxwell*, No. 15-CV-7433 (S.D.N.Y.), some of which were sealed by court order or had been stricken from the record. (ECF No. 47.) The Court found that "the plaintiff's filing of concededly sealed and stricken deposition testimony was improper," and granted the defendants' motion to strike this material and seal the filings. (*ECF Order dated Feb. 1, 2024.*)

The Court issued a memorandum opinion and order on February 29, 2024, in which it dismissed the plaintiff's claims. (ECF No. 50.) The Court held that the action was barred by *res judicata* because "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." (*Id.* at 5 (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000).) The Court did not reach the defendants' other arguments for dismissal because the *res judicata* holding disposed of the entire action. (*Id.* at 12.)[3] The plaintiff appealed that decision to the Second Circuit Court of Appeals. (ECF No. 55.)

---

[3] Nevertheless, the Court observed that the defendants' arguments on personal jurisdiction would have also disposed of the case because "[t]he plaintiff ha[d] not pled facts sufficient for general jurisdiction

The defendants moved for sanctions shortly after the Court issued its decision. (ECF Nos. 52–54.) The defendants argue that sanctions are appropriate because Mr. Hantman signed the complaint, which was barred by *res judicata*, continued to pursue the action even after he knew it was frivolous, and made frivolous legal arguments and misrepresentations. The defendants also argue that Mr. Hantman acted in bad faith. The defendants ask the Court to impose a $50,000 sanction in the form of a donation to the Center for Family Safety and Healing at Nationwide Children's Hospital in Columbus, Ohio.

Mr. Hantman opposed, relying in part on a declaration from the plaintiff's appellate counsel previewing arguments that the plaintiff would eventually make to the Second Circuit. (ECF No. 56-1.) Appellate counsel declared that the plaintiff would pursue the theory that the Court had applied the incorrect test of privity because the stipulation of discontinuance was the result of a settlement agreement that was only intended to bind the parties to that contract. (ECF No. 56-1 ¶¶ 5–9.)

In October 2024, the Second Circuit affirmed the Court's decision. *Araoz v. New Albany Co., LLC*, No. 24-748-CV, 2024 WL 4533333 (2d Cir. Oct. 21, 2024) (summary order). The Second Circuit held that the plaintiff had waived or forfeited her argument that the Court should have applied a "contractual privity" analysis instead of the traditional *res judicata* analysis. *Id.* at *1. The Second Circuit also agreed with the Court that there were no applicable exceptions to *res judicata*.

> [T]he question is not what Araoz knew (or could have known) when she filed her earlier complaint or at some other fixed point during that litigation; the question is whether the information was available "prior to the dismissal" of her action in November 2020. Upon review of the record, we agree with the district court that,

---

. . . and the plaintiff concedes that all the foundation defendants are incorporated and maintain their principal places of business in other states." (ECF No. 50 at 12.) The Court also noted that the allegations were "insufficient to demonstrate plausibly that there is specific jurisdiction over the defendants." (*Id.*)

8

by November 2020, Araoz had access to sufficient public information to bring the claims she asserts in the present case. In these circumstances, both the law of this Circuit and the law of New York are in harmony (and thus we need not decide which applies): The fraudulent concealment and non-discoverability exceptions to res judicata do not apply.

*Id.* at *2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 11(b) provides that "an attorney or unrepresented party" who "present[s] to the court a pleading, written motion, or other paper" has "certifie[d]" that, as relevant here:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b). In other words, "Rule 11 sanctions are appropriate if: the legal contentions contained in a writing are frivolous; or the factual contentions therein do not have evidentiary support." *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 247 (S.D.N.Y. 2014) (citation omitted), *aff'd in part, appeal dismissed in part sub nom. Corsini v. Nast*, 613 F. App'x 1 (2d Cir. 2015).

"[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (quoting *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir.2012)). Accordingly, "sanctions under Rule 11 do not require a finding of bad faith." *Offor v. Ctr.*, No. 15-CV-2219, 2016 WL 3566217, at *2 (E.D.N.Y. June 25, 2016), *aff'd sub nom. Offor v. Mercy*

9

*Med. Ctr.*, 698 F. App'x 11 (2d Cir. 2017).  "With respect to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'"  *StreetEasy, Inc.*, 752 F.3d at 307 (*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir.2003)).

The Court may impose "an appropriate sanction on any attorney, law firm, or party that violated [this] rule or is responsible for the violation," as long as the attorney or party has received "notice and a reasonable opportunity to respond."  Fed. R. Civ. P. 11(c)(1).  But even when a court decides that a party or attorney violated Rule 11, sanctions "are discretionary, not mandatory," *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012), and "must be imposed with caution," *Sorenson v. Wolfson*, 683 F. App'x 33, 35 (2d Cir. 2017) (quoting *MacDraw Inc., v. CIT Grp. Equipment Fin., Inc.*, 73 F.3d 1253, 1259 (2d Cir. 1996)).  Therefore, "[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable, courts must resolve all doubts in favor of the signer of the pleading."  *Singh v. City of New York*, No. 19-CV-5030, 2020 WL 5752157, at *17 (E.D.N.Y. Sept. 24, 2020) (quoting *Umar Oriental Rugs, Inc. v. Carlson & Carlson, Inc.*, 757 F. Supp. 2d 218, 228 (E.D.N.Y. 2010)).

## DISCUSSION

"Courts have imposed sanctions where plaintiffs knew or should have known that their claims were repetitive, baseless, or barred by *res judicata*."  *Edwards v. Barclays Servs. Corp.*, No. 19-CV-9326, 2020 WL 2087749, at *6 (S.D.N.Y. May 1, 2020), *report and recommendation adopted,* 2020 WL 3446870 (S.D.N.Y. June 24, 2020).  As this Court held and the Second Circuit affirmed, this action was barred by *res judicata*.  But sanctions are warranted only "in 'extraordinary circumstances,'" *Singh*, 2020 WL 5752157 at *17 (quoting *Stern v. Regency*

10

*Towers*, LLC, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012)), not whenever the Court grants a motion to dismiss.

There are two questions before the Court: (1) Did Mr. Hantman violate Rule 11? (2) If so, was counsel's conduct so extraordinary to warrant sanctions?

**I.      Whether Counsel Violated Rule 11**

When Mr. Hantman filed the complaint — ten months after the plaintiff filed the notice and summons in state court — the defendants had not yet learned that there was a jurisdictional bar to the complaint. While it seems clear that Mr. Hantman must have had some knowledge that the plaintiff previously sued other defendants in connection with the Jeffrey Epstein claims — since much of the language in the federal complaint appears to have been lifted from that first complaint — it was not objectively unreasonable that Mr. Hantman did not recognize when he filed the complaint that the resolution of the first state court case constituted a *res judicata* bar to this case. "[T]he concept of *res judicata* and collateral estoppel i[s] often challenging for many attorneys." *Commins v. Habberstad BMW*, No. 11-CV-2419, 2012 WL 956185, at *10 (E.D.N.Y. Mar. 20, 2012). Moreover, the defendants do not cite any cases — and the Court has found none in this circuit — in which a court sanctioned a plaintiff or an attorney for filing a complaint barred by *res judicata* against defendants who were not parties in the first proceeding.

However, "Rule 11 obligations to not file frivolous pleadings 'are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.'" *McGowan v. Ananas Spa E., LLC*, 2009 WL 2883065, *1 (E.D.N.Y. Sept. 2, 2009) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)). In this case, even if Mr. Hantman reasonably believed that the complaint was not frivolous at first, he was certainly

11

on notice by February 2023. At that point, the defendants had sent two safe harbor notices to Mr. Hantman, in which they described their *res judicata* argument in detail and warned Mr. Hantman that he risked sanctions if he continued to pursue the case. In addition, at the first pre-motion conference, defense counsel gave Mr. Hantman a binder that detailed the bases for the argument. For its part, the Court told Mr. Hantman that the defendants' *res judicata* arguments were likely to succeed and urged him to consider whether he and his client wanted to proceed with this case.

Further, the defendants discussed — and demanded — the settlement agreement from the first case as early as December 2022. Thus, if Mr. Hantman thought that something about the settlement in the state action altered the appropriate preclusion analysis, he had ample opportunity to develop that argument.

At the very least, the multiple warnings put Mr. Hantman on notice of the applicable case law and that he should evaluate his client's claims critically in light of that law. Had he done so, he would have had to conclude that the amended complaint was barred by *res judicata*. Indeed, it would have been objectively unreasonable for an experienced attorney to believe otherwise.

Instead, Mr. Hantman continued to pursue this matter. However, in responding to the motion to dismiss, he did not present a coherent argument against preclusion. As to the first element — a final adjudication on the merits — he seemed to concede that the discontinuance was a final judgment on the merits. On the second element — the identity of the parties — he merely argued that the defendants in the two actions were different; he did not address the defendants' privity arguments which were based on the allegations in the complaint that the defendants employed Epstein. (ECF No. 42 at 11.) And finally, on the third element — whether the claims could have been brought in the earlier case — he insisted that the factual issues were

12

entirely different because the state action concerned the assault and this case concerned the ownership of the property. (*Id.* at 12.) None of these positions were supported by the case law on which he relied. And he did not argue that the settlement agreement upended this analysis.

Rather, Mr. Hantman pressed the argument that *res judicata* did not apply because the defendants fraudulently concealed evidence that would have been necessary to identify them and pursue claims against them in the first action. (*Id.* at 13–15.) But, once again, an objective consideration of these arguments does not withstand scrutiny, and counsel should have recognized that. (ECF No. 50 at 10.)

Moreover, Mr. Hantman, in his brief, asserted new and incendiary theories of liability — civil RICO and human trafficking — without any reasonable basis, and without citing the portions of the complaint that he claimed established the elements of each offense. This opposition prompted yet another safe harbor notice, on July 14, 2023, offering Mr. Hantman another off ramp, which he chose not to take. Finally, Mr. Hantman filed a so-called "Notice of Supplemental Authority," which included what he knew were sealed and stricken materials from a case against Jeffrey Epstein. The Court granted the defendants' motion to strike those materials.

The defendants aver that Mr. Hantman acted in bad faith. (ECF No. 53 at 12–15.) They say that his claims of having limited knowledge of the state action are belied by the fact that the complaint in this case borrows heavily from the complaint in the earlier action. They also cite counsel's refusal to remedy the pleading errors that the Court highlighted, and his accusations against a partner in the defense counsel's firm. While aspects of Mr. Hantman's conduct were clearly inappropriate — particularly his failure to research or address the *res judicata* issue and his filing of inappropriate materials on the public docket — the Court concludes that this conduct

13

is not "clear evidence" that the case was "motivated by improper purposes such as harassment or delay." *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000.)

Mr. Hantman asserts that he was doing "what [he] thought was in the client[']s best interests" by "refus[ing] to sacrifice [her] rights." (ECF No. 56 ¶ 3.) But a lawyer has an obligation, if the circumstances warrant, to put an end to an action if there is no basis for it. "The lawyer must find a way to tell his client, firmly but gently, that the case has ended. The lawyer must explain to his client that the law does not offer the client a chance for recovery. Continuing to spend time and money in pursuing the matter will not change the situation, and the best solution for the client is to accept defeat and move on." *Odom v. Syracuse City Sch. Dist.*, No. 19-CV-835, 2020 WL 1689879, at *11 (N.D.N.Y. Apr. 7, 2020).

Giving Mr. Hantman the benefit of the doubt, his conduct in this case stopped short of bad faith; but his decision to pursue this action, after the Court and opposing counsel alerted him to the *res judicata* bar, was objectively unreasonable. Accordingly, he violated Rule 11(b).[4]

## II.     Whether to Impose Sanctions

"Once a violation of Rule 11 is found, it is within the Court's broad discretion whether to impose Rule 11 sanctions." *Singh*, 2020 WL 5752157, at *17 (quoting *Landmark Ventures, Inc. v. Cohen*, No. 13-CV-9044, 2014 WL 6784397, at *5 (S.D.N.Y. Nov. 26, 2014)). "The standard for imposing Rule 11 sanctions . . . is purposefully high, so as not to stifle legal creativity and zealous advocacy." *Id.* (internal citation omitted). Further, "[w]here, as here, the viability of a plaintiff's claim turns on the applicability of an affirmative defense, the standard for imposing

---

[4] Because the Court finds that Mr. Hantman violated Rule 11(b) by pursuing the claim after he should have known it was barred by *res judicata*, the Court does not address the issue of personal jurisdiction.

14

sanctions is arguably even higher." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018).

Mr. Hantman's conduct in this case was troubling. He wasted the Court's resources and caused the defendants to expend time and money defending a claim that Mr. Hantman should have dismissed voluntarily. However, the standard for imposing sanctions is high. Moreover, the Court is guided by the principal that "sanctions decisions are to be made 'with restraint and discretion.'" *Patrizzi v. Bourne in Time, Inc.*, No. 11-CV-2386, 2013 WL 316148, at *4 (S.D.N.Y. Jan. 28, 2013) (quoting *Schlaifer Nance & Co., Inc. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir.1999). Finally, a sanction in this context — where *res judicata* was premised on privity, not because the plaintiff sued the same defendants in the prior action — would be the first of its kind in this circuit. For these reasons, the Court declines after careful consideration to impose sanctions. The Court's finding that Mr. Hantman "engaged in sanctionable conduct is a finding that itself carries a sting." *Singh*, 2020 WL 5752157 at *17 (internal citation omitted). And it should serve as a caution to Mr. Hantman to refrain from similar conduct in the future.

## CONCLUSION

For these reasons, the Court finds that Mr. Hantman violated Rule 11, but declines to impose a sanction.

**SO ORDERED.**

                                               s/Ann M. Donnelly
                                               _____
                                               ANN M. DONNELLY
                                               United States District Judge

Dated: Brooklyn, New York
        March 31, 2025